No. 15-1859

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

YASMIN SAIGHI,

*Appellant,*

*v.*

GENERAL SERVICES ADMINISTRATION,

*Appellee,*

Appeal from the Civilian Board of Contract Appeals in
No. 3693, Administrative Judge Jeri Kaylene Somers,
Administrative Judge Jerome M. Drummond, and
Administrative Judge R. Anthony McCann.

CORRECTED
BRIEF OF APPELLANT

Mitchell E. Shamas
Shamas Law Office, pllc
6863 S. Canton Ave.
Tulsa, OK 74136-3405
(918) 496-0994
Fax (918) 496-0982
Attorney for Appellant

# CERTIFICATE OF INTEREST

In accordance with Fed. Cir. Rule 28(a)(1), counsel for Appellant Yasmin Saighi certifies the following:

1.  The full name of every party or amicus represented by me is:

    Yasmin Saighi

2.  The name of the real party in interest represented by me is:

    Yasmin Saighi

3.  All parent corporations and any publicly held companies that own 10 percent of more of the stock of the party or amicus curiae represented by me are:
    None - not applicable

4.  The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

    John G. Beseau
    HERZOG CREBS LLP
    100 N. Broadway, 14th Floor
    St. Louis, MO.  63102

    Yasmin Saighi, *pro se*

    Mitchell E. Shamas
    Shamas Law Office, pllc

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . .  viii

STATEMENT OF JURISDICTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

I.     Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

II.    Analysis and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

       1.     CBCA Erred as a Matter of Law in Ruling That
              Appellant was Required to Show Conclusively That
              Weilbacher's Affidavit Statements were False  . . . . . . . . . . . . . . .  13

       2.     CBCA Errs as a Matter of Law in Finding That
              Appellant is Precluded from Asserting the Contract is
              Voidable Based on the Theories of Agency and Joint Venture  . . . .  15

3. The Knowledge of Weilbacher Regarding the Condition
of the Boat is Imputed to be the Knowledge of GSA . . . . . . . . . . . 17

Joint Venture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CMS-Principal, GSA-Agent . . . . . . . . . . . . . . . . . . . . . . . 20

CMS-Agent, GSA-Principal . . . . . . . . . . . . . . . . . . . . . . . 22

4. The Boat Sale is Voidable by Appellant . . . . . . . . . . . . . . . . . . 22

5. The CBCA Erred as a Matter of Law in Failing
to Sustain Appellant's Cross-Motion for Summary Relief . . . . . . . 27

CONCLUSION AND RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . 30

ADDENDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF FILING AND SERVICE . . . . . . . . . . . . . . . . . . . . . . . . 38

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510,
 91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Baker Farmers Co. v. ASF Corp.,*
 328 N.E.2d 369 (Ill App.Ct, 3rd Dist. 1975) . . . . . . . . . . . . . . . . . . . . . . . 19

*Charbonnages De France v. Smith,*
 597 F.2d 406, 414 (4th Cir.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Contract Cleaning Maint., Inc. v. United States,*
 811 F.2d 586, 592 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Duhl v. Nash Realty Inc.,*
 429 NE 2d 1267 (ILL: Appellate Court, 1st Dist, 1981) . . . . . . . . . . . . . . . 25

*Elec. Contrs., Inc. v. Goldberg & O'brien Elec.,*
 331 NE 2d 238, (240-241) (Ill: Appellate Ct. 1st Dist. 1975) . . . . . . . . . . 18

*Emerald Maint., Inc. v. United States,*
 925 F.2d 1425, 1428 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Felty v.Graves-Humphreys Co.,*
 818 F.2d 1126, 1127-28 (4th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Helen Curtis Industries Inc. v. United States,*
 312 F.2d 774, 160 Court of Claims 437 (1963) . . . . . . . . . . . . . . . . . . . . 24

*Higgins v. E. I. DuPont De Nemours & Co.,*
863 F.2d 1162, 1166-67 (4th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Joseph W. O'Brien Co. v. Highland Lake Construction Co.,*
   292 N.E.2d 205, (Ill. App.Ct, 3ʳᵈ Dist. 1975) . . . . . . . . . . . . . . . . . . . . . . .  19

*Langley v. FDIC,*
   484 US 86 (Supreme Court 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*M. Maropakis Carpentry, Inc. v. US,*
   609 F.3d 1323 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Matsushita Elec. Indus. Co., Ltd  v. Zenith Radio Corp.,*
   475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) . . . . . .  28

*Rex Sys., Inc. v. Cohen,*
   224 F.3d 1367 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Stevens v. Howard D. Johnson Co.,*
   181 F.2d 390, 394 (4th Cir.1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

## Rules and Regulations

Fed. Cir. Rule 28(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Fed. Cir. Rule 28(a)(4) and 47.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 28

## Statutes

28 U.S.C. §1295(a)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

41 U.S.C. §7101 et. seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

41 U.S. Code 7103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

41 U.S. Code §7103(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

47 U.S.C. §7107(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

41 U.S.C. §7107(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

48 C.F.R. § 33.201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

## Other Authorities

Restatement (Second) of Agency §1 (1958) . . . . . . . . . . . . . . . . . . . . . . .  19

Restatement (Second) of Agency §4(2) (1958) . . . . . . . . . . . . . . . . . . . . .  21

Restatement (Third) of Agency §1.04(2)(B)(2006) . . . . . . . . . . . . . . . . . . .  21

Restatement (Second) of Agency §321 (1958) . . . . . . . . . . . . . . . . . . . . .  21

Rex Sys., Inc. v. Cohen, 224 F.3d 1367 (Fed. Cir. 2000) . . . . . . . . . . . . . . .  13

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rules 28 (a) (4) and 47.5, appellant states that there are (a) no other appeals in or from the same proceeding before the Board there were previously before the Federal Circuit; and (b) no other cases known to counsel to be pending in the Federal Circuit that will directly affect or be directly affected by this Court's decision in the pending appeal; **provided, however, there is pending litigation in the state courts of Illinois initially filed October 22, 2014 involving principally the same issues: The case is in the Circuit Court of Randolph County, State of Illinois, Case No. 15-L-5 and styled: Yasmin Saighi v. Kaskaskia Regional Port District, Illinois Department of Central Management Services and Ed Weilbacher**. In that litigation Appellant is represented by John L. Bitzer, Attorney, 502 W. Main St., Suite 200, Collinsville, Illinois 62234, (618) 344-7722.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Yasmin Saighi respectfully submits that oral argument would not significantly aid the Court in deciding this appeal.  The factual and legal issues can be clearly and succinctly presented by briefing.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C.

§1295(a)(10) and 41 U.S.C. §7107(a)(l). The Order of the United States Civilian

Board of Contract Appeals ("CBCA"), CBCA 3693, dated March 25, 2015 is the final

order of the CBCA.

## STATEMENT OF ISSUES

1.     Did the CBCA commit error in concluding as a matter of law that the

Appellant was required to show conclusively that Ed Weilbacher's affidavit statements

were false?

2.     Was Appellant required as a matter of law to assert in her claim to the

contracting officer that the contract is voidable based on agency and joint venture

theories or the same were precluded from consideration by the CBCA?

3.     Is the knowledge of Ed Weilbacher imputed to the sale principals?

4.     If the knowledge of Ed Weilbacher is imputed to the sale principals, is the

agreement of the parties voidable?

5.     Should the decision of the CBCA be reversed and the Cross-Motion for

Summary Relief of Appellant be granted?

## STATEMENT OF THE CASE

On May 30, 2013 Appellant received notice that she was the successful bidder at Respondent's online auction for a boat. On October 27, 2013 Appellant filed her claim with the contracting officer for Respondent asserting entitlement for relief by either reimbursement of purchase price or, in alternative, refund of a portion of purchase price. On December 11, 2013 the contracting officer's final decision denied Appellant's claim. On January 27, 2013 Appellant appealed the contracting officer's adverse decision to the United States Civilian Board of Contract Appeals. In response to Motions and Counter-Motions for Summary Relief filed by the respective parties, the CBCA granted Respondent's Motion for Summary Relief and denied the relief sought by Appellant. July 21, 2015 Appellant filed her Notice of Appeal to this Court.

## STATEMENT OF FACTS

On or about December 21, 2011 the MV Blankenship (hereinafter "Boat") sank with its engines completely submerged. (A157-A163). The Boat had been placed by Contract Management Services of the State of Illinois (hereinafter "CMS") with Kaskaskia Regional Port District (hereinafter "Kaskaskia") in 2007. (A031).

The January 9, 2012 board meeting minutes of Kaskaskia, attended by its

general manager Ed Weilbacher (hereinafter "Weilbacher'), recite:

> "The MV Blankenship located at Evansville recently took on water and was lying partially on its side. Pumps were brought in and it was upright. During a discussion on what should be done with the boat, it was suggested to move it to another location and possibly have salvagers look at it." (A190).

The Kaskaskia board minutes disclose were multiple discussions by the board and Weilbacher regarding the disposition of the Boat. (A173- A232). Ultimately it was decided to return the Boat to CMS. On May 14, 2012, Kaskaskia's minutes recite: "Mr. Weilbacher has drafted a letter to Wally Terry informing him that we will be returning the vessel." (A179). The letter dated May 14, 2012 was sent Mr. Terry. (A162).

After receipt of the letter, Mr. Terry responded advising Weilbacher he considered it his responsibility to let him know the condition of the Boat as it sets:

> "As you well know when the Corps of Engineers dropped the water level the boat capsized and filled with water. We pumped the water out and put an electric sump in to keep the water pumped out. We have been battling with the kids untying the boat and throwing the cord into the water. I know the Port District wanted the boat moved again but I was afraid of it sinking out in the channel and getting worse. **Our mechanic went and drained the water and oil out of the engines and took the starters off to get serviced or repaired**. In the decision that you have made to turn the boat back over instead of working with us we will offer our mechanic services at the union rate of $83.07 per hour to work to get the engines working again." (A163 b*old emphasis added*).

On July 9, 2012 Susan D. Salon, CMS Client Manager, requested Weilbacher provide an updated description of the boat describing any changes since it was last reported on the GSAXcess system. (A022). July 9, 2012 Kaskaskia meeting minutes recite:

> "CMS has indicated that before they put the MV Blankenship up for interested parties to look at, they will need to know the present condition of the vessel. Mr. Weilbacher will complete their request." (A207).

In response, Weilbacher provided the following:

> "M/V Blankenship, 65' long, 18' wide, 5' draft, twin draft V-6-921A Detroit Diesel engines. Allison gear boxes, MDL: 20-L and 20-R. Engines rebuilt Apr 1998 and gear boxes June 1998. Generator Sets: Onan, Series MDKAF 25 KW, 1800 RPM (June 1998) 120V, 1 PH, 60 HZ, 104 A, 12 V battery port MDL: 25.0 MDKAF/9492 7A and STB MDL: 25.0 MDKAF/9492 7A Kubota V2803B Diesel Engine, 5 CYL, 46 BHP (34.7 KW) Michigan Pac-Master Propeller for heavy duty use. Has lead base and asbestos report. Fresh water intake A/C unit pump cracked strainer castings cracked, needs new batteries. Vessel includes: Furuno Sonor, APC Power Supply, Radio "Ray Jeffer", Marine Color Echo depth sounder, and Radio RM Two way base station. Vessel has been stripped of interior walls and finishes for restoration. There have been no alterations to the vessel that added hazardous materials, specifically PCBs or asbestos." (A233).

After receiving no other agency's request for the Boat, at the February 11, 2013 Board meeting it was Weilbacher's opinion it should be scrapped. (A225). However, Appellee (hereinafter "GSA") and CMS elected to proceed. The description provided by Weilbacher was subsequently modified by CMS and GSA (A288) to

4

publish the Boat sales advertisement as:

"M/V BLANKENSHIP, 65-L, 18-W, 5-DRAFT, ESTIMATED DATE OF MFG: 1967, TWIN DRAFT V6-92TA DETROIT DIESEL ENGINES, ALLISON GEAR BOXES, MDL: 20L AND 20R. ENGINES REBUILT APRIL 1996 AND GEAR BOXES JUNE 1996. GENERATOR SETS: ONAN SERIES MDKAF 25KW. 1600 RPM (JUNE 1998) 120V, 1 PH, 60 HZ. 104A. 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A AND STB MDL: 25.0 MDKAF/94927A. KUBOTAV2BO3B DIESEL ENGINE. 5 CYL, 46 BHP (34.7KW) MICHIGAN PAC-MASTER PROPELLER FOR HEAVY DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP CRACKED, STRAINER CASTINGS CRACKED, NEEDS NEW BATTERIES. VESSEL INCLUDES FURUNO SONAR, APC POWER SUPPLY, RADIO "RAY JEFFER", MARINE COLOR ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE STATION. VESSEL HAS BEEN STRIPPED OF INTERIOR WALLS AND FINISHES FOR RESTORATION. THERE HAVE BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT. REPAIRS MAY BE REQUIRED. PARTS MAY BE MISSING. **DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN THE PROPERTY DESCRIPTION.** HOWEVER. ABSENCE OF ANY INDICATED DEFICIENCIES DOES NOT MEAN THAT NONE EXISTS." (A032 *bold emphasis add*).

The advertisement directs bidders to Weilbacher for: "Property Location and inquiries/questions regarding property inspection and/or removal." (A032 - A033).

The GSA Online Terms and Conditions for a sale provides, in relevant part:

"Condition of Property
"The following replaces Clause No. 2 of the SF114C. Condition of property is not warranted. **Deficiencies, when known, have been indicated in the property descriptions. However, absence of any**

**indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection**. Please also reference the Inspection of Properly clause.'

"Description Warranty & Refunds
The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website  will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.'

"The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential." (A026 *bold emphasis added*).

Although disputed by Weilbacher (A115), the CBCA found Appellant had the boat inspected prior to the auction. (A002).  The physical inspection did not disclose the Boat's engines had been submerged. (A164-A166).  As previously reported by Wally Adams in May, 2012 letter, the water within the engines had been drained and replaced with fresh oil. (A163). In conversations with Appellant's husband, Weilbacher asserted he had no information regarding the engines other than that shown in the advertisement. (A164-A166).

Appellant was the high bidder and the ownership was transferred to Appellant (A037). The $30,056 sale proceeds were evenly divided between GSA and CMS. (A283-A285).

Several months later Appellant learned of the Boat's engines being submerged and on October 27, 2013 notified Victoria Knott, GSA contracting officer (hereinafter "CO"), of Appellant's assertion that GSA knew of the Boat's sinking; it failed to disclose the same; the costs of repair for the Boat with its engines and generators submerged was prohibitive; and had Appellant known she would not have bid for the Boat. Photographs made of the Boat taken while engines under water were attached. (A058-A059).

On October 28, 2013 the CO acknowledged receipt of the claim. Susan Sloan and Curtis Howard, both with CMS, denied knowledge of the alleged sinking. Howard's actual initial response was; "Wow, I have no knowledge of any issue with this claim of sinking either. That's not something that would go unnoticed." (A066).

The October 30, 2013 response from Weilbacher implies that the photographs provided by Appellant were false asserting the Boat had been moored on the other side of the dock for approximately the past two years. Further, he states the dipsticks on the engine were checked and there was no water in the engines and he was never

informed that the boat "sunk". Additionally, he states the Boat was currently docked by Appellant at the same deck barge dock from which Appellant had received possession of the Boat. (A069-A070).

On November 19, 2013 the CO responded to Appellant's notification. (A073). On December 1, 2013 Appellant completed her claim asserting that the inspection could not disclose the engines had been flooded; the GSA/custodian of the Boat had knowledge that the engines had been flooded but failed to disclose it; the fact the Boat was sunk was vital and crucial to the sale; and two alternative claim requests were made: either GSA refund the full purchase price and money invested in the Boat, or in the alternative GSA refund 50% of the purchase price. (A076).

On December 11, 2013 the CO's final decision was to deny Appellant's claim. (A080). Appellant appealed to the United States Civilian Board of Contract Appeals (hereinafter "CBCA").

In her Notice of Appeal and complaint Appellant asserted: "..agents of GSA in possession of the Boat knew that the Boat had been sunken and failed to disclose such fact in order to deter from devaluing the boat. The custodian of the Boat, Mr. Ed Weilbacher of Kaskaskia Regional Port District, and his secretary had first-hand knowledge that the Boat sank prior to my purchase, since it happened when the Boat

was in their custody and care." (A082)

Upon the filing of GSA's Motion for Summary Relief (A133) and its accompanying Statement of Undisputed Facts (A135), the CBCA issued its order suspending discovery proceedings. Appellant responded by filing her Statement of Genuine Issues (A147) and her Cross-Motion for Summary Relief. (A235). During a joint telephone conference by the parties with the Board Judge considering the conflicting Motions for Summary Relief, GSA responded to direct inquiry by the by verbally denying an agency relationship with Weilbacher. The Board then allowed the parties to submit additional argument and evidence regarding the issue.

Appellant filed her Objection and Motion to Strike the assertion of GSA's counsel from consideration by the CBCA as evidence. (A250).

GSA filed its Response to Appellant's Objection and Motion to Strike admitting that throughout the entire course of Appellant's claim the existence of an agency relationship between GSA and Weilbacher has been asserted. However, GSA relied upon the general denials of its answer as sufficient to put the agency relationship at issue. (A253).

GSA contemporaneously filed its Response to the Appellant's Statement of Additional Undisputed Facts denying the Boat sank on or about December 21, 2011

with its engines submerged; denying that Weilbacher was the agent of GSA; and denying there were any deficiencies to disclose. (A257)   Additionally, GSA contemporaneously filed its response to Appellant's Cross-Motion for Summary Relief . (A261). Also, GSA filed its Memorandum in Support of its response. (A265).

In response, Appellant filed her Combined Reply to Respondent's Response to Appellant's Cross-Motion for Summary Relief and Response to Appellant's Objection and Motion to Strike (A269), with supporting brief. (A271).

On March 25, 2015 the Board issued its order granting GSA's Motion for Summary Relief and denying both Appellant's Cross-Motion for Summary Relief and her Objection and Motion to Strike. (A001).  The Board found that the documents and sworn statements submitted by Appellant regarding prior knowledge by Weilbacher of the boat sinking failed to show conclusively that Weilbacher's affidavit statements are false.  The Board also found that Appellant's evidence failed to show that Weilbacher acted as an agent for GSA.  The Board further found, as a matter of law, that there was no basis for it to decide Appellant's allegations that the contract is voidable based on agency and joint venture theories because these allegations involve different operative facts from those presented to the contracting officer.

## SUMMARY OF ARGUMENT

The CBCA erred as a matter of law in its ruling that Appellant was required to show conclusively that Weilbacher's affidavit statements were false. Specific findings of fact by the CO are not binding in any subsequent proceeding. Appellant's evidences of the sinking of the Boat and submersion of its engines, with knowledge by Weilbacher are compelling.

The CBCA erred as a matter of law in its ruling that Appellant was required to assert the theories of law of Contract Voidability, Joint Venture and Agency to the CO or such theories of law were precluded from being raised on appeal. Appellant presented allegations that Weilbacher was acting as an agent of CMS and his knowledge was imputed to GSA. Also, Appellant asserted facts showing the omission of the material fact of the engines having been submerged entitled her to refund of her purchase price and cost of improvement. When Appellant requested refund, the Boat had already been returned to the same dock at which it was berthed when purchased.

Appellant asserts that the knowledge of Weilbacher is imputed to GSA because he was acting as an agent for the CMS and GSA sale of the Boat. He acted as custodian of the Boat; principal author of the advertised sale description modifications occurring after 2007; and the Boat's sales designated on-site contact for prospective

11

purchasers. CMS and GSA delegated Weilbacher the task of modifying the advertised offering for any post-2007 changes in the condition of the Boat and for the sales contact person for prospective bidders. GSA assumes the concealed omissions of Weilbacher when it represents, as inducement to bidders, that: "Deficiencies, when known, have been indicated in the property description."

If the engines were submerged; and such fact was wrongfully concealed from Appellant; and the concealed fact materially affected the value of the Boat, the Appellant is entitled to void the contract, return possession, and seek a refund of the purchase price plus any improvements. This is what the Appellant timely did after discovering the Boat's prior submersion.

The CBCA erred in not sustaining Appellant's Motion for Summary Judgment and allowing refund of the purchase price. The evidence compellingly shows that the Boat was sunk and Weilbacher knew the engines had been submerged. Appellant introduced evidence showing that Weilbacher acted in an agency capacity for the CMS-GSA sale of the Boat. Also, had this material fact of the engines being submerged been disclosed, Appellant would either have not bought the Boat or would have bid significantly less. GSA offered no evidence disputing either Weilbacher's agency capacity or the substantial materiality of the omission.

**ARGUMENT**

## I.    Standard of Review

"The decision of [an] agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. Section 7107(b).

The CBCA's decision to grant summary judgment is a legal conclusion, which this Court reviews without deference. *Rex Sys., Inc. v. Cohen, 224 F.3d 1367* (Fed. Cir. 2000). Summary judgment is appropriate in the absence of genuine issues of material fact when the record shows that the moving party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(c).

## II.    Analysis and Argument

## 1.    CBCA ERRED AS A MATTER OF LAW IN RULING THAT APPELLANT WAS REQUIRED TO SHOW CONCLUSIVELY THAT WEILBACHER'S AFFIDAVIT STATEMENTS WERE FALSE.

In arriving at its decision sustaining GSA's Motion for Summary Relief and thereby denying Appellant's claim, CBCA stated: "(It) finds that the documents and sworn statements submitted by Ms. Saigh fail to show conclusively that Mr.

13

Weilbacher's affidavit statements are false." The CBCA errs in saddling Appellant with this overly onerous standard of proof.

If CBCA is asserting that a factual finding by the CO shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence, it is contrary to the standard imposed by statute. 41 U.S. Code §7103(e) provides that if specific findings of fact are made by the CO, the specific findings of fact are not binding in any subsequent proceeding.

If CBCA's determination is there exists no credible evidence contrary to Weilbacher's affidavit denial that the Boat sank, then it errs as a matter of law in failing to consider the verified minutes of the Kaskaskia board meeting of January 9, 2012, at which Weilbacher was present, and the Boat's taking water and being on its side was discussed. (A187) The CBCA further ignores the affidavit of Walter G. Terry dated July 11, 2014. (A157); the three photographs of the Boat listed on its side and partially submerged. (A159 - A161); and the letter from Walter G. Terry (A163) responding to Weilbacher's May 14, 2012 letter.(A162). At the very least this compelling contrary evidence shows that the moving party is not entitled to summary judgment on this material issue. Fed. R. Civ. P. 56(c).

If this had been a trial on the issues rather than a motion for summary relief, and the CBCA made the conclusive findings of fact that the engines had not been submerged; or if submerged, Weilbacher had no knowledge of the same, Appellant would be asserting factual error. Such factual findings would be arbitrary, capricious, so grossly erroneous as to necessarily imply bad faith, and such decision would not be supported by substantial evidence.

2.   **CBCA ERRS AS A MATTER OF LAW IN FINDING THAT APPELLANT IS PRECLUDED FROM ASSERTING THE CONTRACT IS VOIDABLE BASED ON THE THEORIES OF AGENCY AND JOINT VENTURE.**

In its decision sustaining GSA's Motion for Summary Relief and denying Appellant's Motion for Summary Relief and further denying her appeal, the Board asserted there was no basis for the CBCA to decide Appellant's allegations that the contract is voidable based on agency and joint venture theories because these allegations involve different operative facts from those presented to the CO. (A007). This question of the Board's jurisdiction to hear Appellant's allegations is an issue of law for which this Court exercises independent review. *Emerald Maint., Inc. v. United States*, 925 F.2d 1425, 1428 (Fed.Cir.1991).

This action arises under the Contract Disputes Act ("CDA"), 41 U.S.C. Sec. 7101 et seq. 41 U.S. Code §7103 requires all claims by a contractor against the

government relating to a contract be in writing and submitted to the contracting officer for a decision. Because the CDA does not define "claim", this Court in *M. Maropakis Carpentry, Inc. v. US*, 609 F. 3d 1323, - (Fed. Cir. 2010) looked to the Federal Acquisition Regulations (FAR) implementing the CDA for the definition. The FAR defines "claim" as: "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 33.201.

While a CDA claim need not be submitted in any particular form or use any particular wording, it must contain "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987).

The initial written statement of Appellant to GSA advised the CO that prior to her purchase the Boat had sunk and that this was not disclosed by GSA in the Boat's advertised description. The cost of overhauling the engines was estimated by the engine company's distributor at $96,000. Appellant advised that had she known that the Boat had sunk she would not have bid on it or, at least, wouldn't have paid half of what she paid. Photographs of the sunken Boat were attached. (A058-A060).

The subsequent claim statement asserted that the GSA/custodian of the Boat (Weilbacher) failed to tell GSA about the sinking even though he was fully aware of the event. Appellant provided two options: GSA refund full purchase price and money invested in Boat or GSA refund 50% of the purchase price. (A076).

The emails and inquires of the CO made during her investigation showed she was aware of the relationship between GSA and CMS in selling the Boat and dividing the proceeds between the two entities. (A063). Further, the emails and advertisement of sale disclose that Weilbacher was acting in some capacity for CMS and GSA in accomplishing the joint venture sale because he is the party from whom both CMS and GSA sought information regarding the Boat's status.

During the pendency of the appeal claim with CBCA additional facts were disclosed which allowed Appellant to more clearly articulate and support her assertions of law, but there was no basic change in the operative facts upon which her claim was made to the contracting officer. The CBCA erred in asserting it was precluded from determining Appellant's allegations that the contract is voidable based on agency and joint venture theories.

3.    THE KNOWLEDGE OF WEILBACHER REGARDING THE CONDITION OF THE BOAT IS IMPUTED TO BE THE KNOWLEDGE OF GSA.

For purposes of sale of the Boat it is undisputed that some form of business

relationship was established between GSA and CMS. Each entity performed some duties in achieving the mutually desired goal of selling the Boat. The sale proceeds were evenly divided between them.

Three possible business relationships exist. Either GSA and CMS were engaged in a joint venture for the sale; or CMS was the principle and GSA acting as its agent; or GSA had become the principal and CMS an agent. Appellant asserts under each possible business relationship GSA is imputed to have the knowledge of Weilbacher regarding the condition of the Boat.

### Joint Venture

The sale of the Boat was a joint venture between CMS and GSA. In *Elec. Contrs., Inc. V. Goldberg & O'brien Elec.*, 331 NE 2d 238, ( 240-241)   (Ill: Appellate Ct.1st Dist. 1975) the appellate court describes a "joint venture" as:

> "An association of two or more persons to carry out a single enterprise for profit; it is a relation voluntarily assumed; it is created when two or more persons, either expressly or by implication, manifest the intention to become so associated; the relation of joint ventures can be established without formal agreement; evidence of the surrounding circumstances can prove the existence of a joint venture; the conduct of the parties, or the facts and circumstances of a given case, may show that the persons involved did in fact assume such a relation; moreover, to constitute a joint venture, there must be a community of interest and the right to joint control."

GSA and CMS had a shared interest in selling the Boat and each party had the right

to control the sale by withdrawing the Boat from sale.

Restatement (Second Edition) of Agency (1957), Section 1 defines: "(1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. (2) The one for whom action is to be taken is the principal. (3) The one who is to act is the agent." These elements reveal the general policy thrust of agency law - if there is mutual consent to an arrangement involving an agent acting to further the principal's interest and subject to the principal's control, then it is appropriate to make the principal liable for the agent's actions.

Weilbacher acted as an agent for CMS when delegated the duties of describing the current condition of the Boat for the sales advertisement; acting as custodian of the Boat during the sale process; and acting as the on-site representative for displaying the Boat for inspection by bidders.

The failure of CMS to truthfully advertise the known true condition of the Blankenship is equally a failure by GSA. Every member of a joint venture is liable to third persons for acts of his fellow venturers done in the course of the enterprise. *Baker Farmers Co. v. ASF Corp.*, 328 N.E.2d 369 (Ill App.Ct, 3rd Dist. 1975); *Joseph W. O'Brien Co. v. Highland Lake Construction Co.* 292 N.E.2d 205, (Ill App.Ct, 3rd Dist.

1972).

<u>CMS-Principal, GSA-Agent</u>

If the sale was not a joint venture with CMS and GSA both being principals, it may alternatively be a sale by GSA as an agent for the partially disclosed or undisclosed principal CMS. GSA advertised and controlled the terms of the sale and was the contracting party with Appellant for the sale. Neither the advertisements nor the contract discloses the owner of the Boat to be any entity other than GSA. The advertisements do not require bidders to disclose misrepresentations to CMS or to look to CMS for refunds. It may be implied within the sales terms and offering that there might be other agencies, but CMS is not disclosed.

The *law of agency* is an area of commercial law dealing with a set of contractual, quasi-contractual and noncontractual fiduciary relationships that involve a person, called the agent, that is authorized to act on behalf of another (called the principle) to create legal relations with a third party. Succinctly, it may be referred to as the equal relationship between a principal and an agent whereby the principal, expressly or implicitly, authorizes the agent to work under his or her control and on his or her behalf. The agent is, thus, required to negotiate on behalf of the principal or bring him or her and third parties into contractual relationship. The principal must make a full

disclosure of all information relevant to the transactions that the agent is authorized to negotiate. If the agency relationship is undisclosed or partially disclosed both the agent and the principal are liable.

"If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal." Restatement (Second) of Agency § 4(2) (1958). "If the other party has no notice that the agent is acting for a principal, the one for whom he acts is an undisclosed principal." Restatement (Second) of Agency § 4(2) (1958), Restatement (Third) of Agency § 1.04(2)(B) (2006).

The distinction as to whether CMS was a either a partially disclosed or an undisclosed principal is not relevant regarding GSA's liability to Appellant. "Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract." Restatement (Second) of Agency § 321 (1958). "An agent purporting to act upon his own account, but in fact making a contract on account of an undisclosed principal, is a party to the contract."

If CMS was a partially disclosed or an undisclosed principal and GSA the agent to the sale, GSA is bound as a principal to the contract and the knowledge of Weilbacher is imputed to it through his agency relationship with CMS.

<u>CMS-Agent, GSA-Prinicpal</u>

Finally, if GSA is the principal and CMS acted as its agent for purposes of providing the Boat's description, acting as custodian of the Boat, and providing a representative for on-site inspections, Weilbacher became an agent for GSA in performing those tasks. The sales advertisement directing prospective purchasers to Weilbacher for on-site inspections. GSA had knowledge of Weilbacher's performance of duties assigned him by CMS regarding the Boat's sale and GSA accepted him as its agent. GSA is bound by his knowledge when it made the representation that: **"Deficiencies, when known, have been indicated in the property descriptions."**

## 4.    THE BOAT SALE IS VOIDABLE BY APPELLANT

Although denied by GSA, the evidence introduced by Appellant over-whelming demonstrates that on July 11,2012 when Weilbacher completed for CMS the description of the Boat, he knew the Boat's engines had been submerged and, after being floated, the water in the oil had been drained and oil changed. He was present at a meeting on January 9, 2012 when this was discussed. In fact, the discussion also discloses the belief that the Boat should be sent to "salvagers". (A173). He was fully advised of the Boat's condition in May, 2012 by the person refloating the Boat and who had the crankcase water drained.  (A163). As commented by Curtis Howard,

Administrator for CMS Property Control after being advised of Appellant's claim: "Wow, I have no knowledge of any issues with this claim of sinking either. That's not something that would go unnoticed." (A066).

After receiving the Boat description updated by Weilbacher, GSA added the representation that: "DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN THE PROPERTY DESCRIPTION." Such representation was patently false because its agent responsible for describing the condition of the Boat wrongfully omitted disclosing the known material deficiency that the engines had been submerged.

Although not the basis for Appellant's claim of voidability of the sale, additional evidence of GSA's disregard for the accuracy of the Boat's true condition appears in the offering which states: "THERE HAVE BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT," which is highly suggestive that the vessel has been certified clean of asbestos. However, when the actual report was subsequently obtained it disclosed that the exhaust heat shields located on the engines were not tested because the testing entity was requested not to test those shields. It was represented to the testor that the shields would be removed prior to sale. The report emphatically (bolded in report) asserts: **"Under no**

circumstances is the report to be utilized as a bidding document or as a project specification document since it does not have all the components required to serve as asbestos project design document or an abatement workplan." A photograph of the shields still in place appears on the advertised offering. (A284).

It is a well settled precedent that where the Government possesses special knowledge, not shared by a contractor, which is vital to the performance of the contract, the Government has an affirmative duty to disclose such knowledge. It cannot remain silent with impunity. *Helene Curtis Industries Inc. v. United States*, 312 F.2d 774, 160 Court of Claims 437 (1963). Appellant asserts that although this precedent has been more specially espoused in relation to performance contracts with the Government, it is persuasive in affirming that there are circumstances in which the government does have an affirmative duty to disclose special knowledge, particularly when it overtly asserts that it is doing so.

GSA asserts as an absolute defense that it is shielded from having to repay Appellant under any set of facts because the contract of the parties provided a time period of fifteen (15) days within which discrepancies regarding description can be presented to GSA. Appellant asserted the discrepancy errors more than fifteen (15) days after the sale. Before the CBCA GSA presented no authority supporting its

argument that a GSA contract is not voidable if known material misrepresentions are made regarding the Boat offered for sale.

CBCA side-stepped the issue regarding voidability by ruling preclusion as having not been presented to the CO with Appellant's initial claim. Appellant presented facts to the CO regarding the materiality of the misrepresentation which incepted the sale, that the material deficiency in the Boat was know to GSA's agent Weilbacher and not disclosed, and requested refund of the purchase price. These are each of the elements and relief provided by contract voidability.

Weilbacher's special knowledge of the Boat's sinking is imputed to GSA. Appellant asserts the fifteen (15) day protest period upon which CBCA primarily bases its denial of Appellant's claim is not applicable because it is a contract provision, which contract Appellant has elected to void. Appellant's right to declare the contract of the parties voidable if there was fraud in the inducement is a right recognized by the US Supreme Court. *Langley v. FDIC*, 484 US 86 (Supreme Court 1987).

It is immaterial if GSA had fraudulent intent. In *Duhl v. Nash Realty Inc.*, 429 NE 2d 1267 (ILL: Appellate Court, 1st Dist, 1981) that court succinctly stated generally accepted principles regarding fraud in the inducement to contract as follow:

> "A party is considered to intend the necessary consequences of his own
> acts. {citations omitted} Accordingly, one who knowingly makes a false

statement to another who relies thereon is guilty of fraud regardless of the defendant's motive and the plaintiff is not required to prove an express fraudulent intent. {citations omitted} And knowledge of wrongdoing sufficient to support an action for fraud exists where representations which are in fact false are made in reckless disregard of their truth or falsity. {citations omitted}. Likewise statements made in culpable ignorance of their truth or falsity are fraudulent. {citations omitted} Indeed, it has been held that good faith is no defense where the fraud and deceit practiced consist, as here, of making false statements of fact as to the knowledge of the speaker. {citations omitted} As the Illinois Supreme Court remarked in Brennan v. Persselli (1933), 353 Ill. 630, 635, 187 N.E. 820. 822: 'It is immaterial whether a party misrepresenting a material fact knows it to be false or makes the assertion of the fact without knowing it to be true, for the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other."

5.     THE CBCA ERRED AS A MATTER OF LAW IN FAILING TO SUSTAIN APPELLANT'S CROSS-MOTION FOR SUMMARY RELIEF.

For Appellant to prevail in her claim the following would need be found in her favor: 1) the Boat sank and the engines were submerged; 2) this knowledge was known by Weilbacher prior to the sale; 3) Weilbacher was an agent for GSA; 4) As an agent his knowledge is imputed to GSA; 5) GSA failed to disclose the Boat sank and its engines were submerged; 6) Such omitted fact was material in inducing Appellant to contract with GSA for purchase of the Boat; 7) Appellant sufficiently advised the CO of her claim.

Regarding the above:

1.  **The Boat sank and the engines were submerged**. This is an issue of fact disputed by the parties and upon which conflicting evidence has been introduced.

2.  **This knowledge was known by Weilbacher prior to the sale**. This is an issue of fact disputed by the parties and upon which conflicting evidence has been introduced.

3.  **Weilbacher was an agent for GSA**. This is an issue of law submitted to this Court for determination *de novo*. In this regard, no evidence has been introduced by GSA before CBCA disproving agency. Only pleading denials.

4.  **As an agent his knowledge is imputed to GSA**. This is an issue of law submitted to this Court for determination *de novo*.

5. **GSA failed to disclose the Boat sank and its engines were submerged**. This is an undisputed fact by both parties.

6.  **Such omitted fact was material in inducing Appellant to contract with GSA for purchase of the Boat**. This is an issue of fact not addressed by the CBCA but sworn affidavit testimony of Appellant and her husband, as well as her Complaint (Notice of Appeal) to the CBCA, are evidence of the same. GSA presents no evidence to the contrary.

7.  **Appellant sufficiently advised the CO of her claim**. This is an issue of law

to be determined by this Court *de novo*.

This analysis reveals that there are only two issues of disputed facts between the parties, all other issue are either issues of law or undisputed. The two disputed issues of fact are: 1) the Boat sank and the engines were submerged; 2) this knowledge was known by Weilbacher prior to the sale.

Summary judgments are appropriate in those cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In other words, summary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. *Charbonnages De France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). On summary judgment, any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Id.* at 587, 106 S.Ct. at 1356; *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248-49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Most importantly, summary judgments are reviewed de novo on appeal. *Higgins v. E.I. DuPont De Nemours & Co.*, 863 F.2d 1162, 1166-67 (4th Cir.1988); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1127-28 (4th Cir.1987).

In the instant case, only the affidavit of Weilbacher supports a denial of the pre-sale sinking of the Boat (disputed fact issue 1) and his knowledge of the same (disputed fact issue 2). The over-whelming evidence contrary to his affidavit includes the Kaskaskia board minutes (including those in which Weilbacher expresses his opinion that the Boat should be scrapped), photographs, affidavit of Wally G. Terry, and his May, 2012 letter (A163) conclusively rebutes Weilbacher's denials.

In reviewing the evidence *de novo*, this Court should find that no reasonable jury could find in favor of GSA regarding the disputed issues of fact of the Boat's sinking and knowledge by Weilbacher. The Court should reverse the CBCA decision and sustain Appellant's Cross-Motion for Summary Relief.

## CONCLUSION AND RELIEF REQUESTED

For the reasons provided in Appellant's Analysis and Argument above, this Court should reverse the determination of the CBCA which sustained GSA's motion for summary relief, denied Appellant's Cross-Motion for Summary Relief, and denied

Appellant's appeal of the contracting officer's denial of Appellant's claim.

In light of the conclusiveness of the evidence presented by Appellant on the only issues of disputed facts this Court should sustain Appellant's Cross-Motion for Summary Relief and order refund to Appellant of the purchase price.

Dated: October 29, 2015

Respectfully submitted,

/s/ Mitchell E. Shamas
Mitchell E. Shamas
Shamas Law Office pllc
6863 S Canton Ave
Tulsa, Oklahoma 74136-3405
(918) 496-0994

ATTORNEY FOR APPELLANT
YASMIN SAIGHI

DENIED: March 25, 2015

CBCA 3693

YASMIN SAIGHI,

Appellant,

v.

GENERAL SERVICES ADMINISTRATION,

Respondent.

Yasmin Saighi, pro se, Tulsa, OK.

Jenny M. Matte, Office of Regional Counsel, General Services Administration, Atlanta, GA, counsel for Respondent.

Before Board Judges **SOMERS**, **McCANN**, and **DRUMMOND**.

**DRUMMOND**, Board Judge.

This appeal arises out of the purchase of a boat by Yasmin Saighi at an online auction conducted by the General Services Administration (GSA). GSA and Ms. Saighi have filed motions for summary relief. Ms. Saighi has also moved to strike GSA's denial that an agency relationship existed between GSA and Ed Weilbacher, general manager of Kaskaskia Regional Port District, Evansville, Illinois. We grant GSA's motion and deny Ms. Saighi's motions.

## Background

In May 2013, GSA conducted an internet auction for the sale of a fire/patrol boat named the "M/V Blankenship" (boat). The boat information, including photographs, was shown on the website. The boat description estimated that the boat was manufactured in 1987. It stated, *inter alia*, that the boat had "twin draft V6 - 92TA Detroit diesel engines . . . [which were] rebuilt in April 1998 [and a] Kubota V2038 diesel engine, 5 cyl, 46 BHP [and] . . . needs new batteries." The description included the warning that "repairs may be required. Parts may be missing. Deficiencies, when known, have been indicated in the property description. However, absence of any indicated deficiencies does not mean that none exits." The description also included a statement, appearing in all capital letters, warning bidders that GSA did not warrant the condition of the boat.

The boat was docked at the Kaskaskia Regional Port District marina in Evansville, Illinois, and was available for bid only by persons who accepted the terms and conditions of sale which were posted on the website. Ms. Saighi inspected the boat prior to the auction and did not advise GSA as to any problems with the boat. She also agreed to the terms and conditions of the sale, including the following paragraphs:

**Inspection of Property**
Bidders agree to physically inspect the property upon which they bid or thereby waive the opportunity to conduct a physical inspection. In waiving their inspection rights, bidders bear the risk for any gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage that would have been revealed by physical inspection. There are times when access to property may be limited due to property being located in a restricted area. GSA will do all that it can to ensure that photos and detailed descriptions are provided in these instances.

During an inspection at a government facility, actions taken by bidders are at their own risk. The U.S. Government will not be liable for any or all debts, judgments, costs, demands, suits, actions, or claims of any nature arising from or incident to their inspection at the Government facility, including any injuries that a bidder incurs due to their own actions or neglect on during [sic] their visit to a Government facility.

**Reporting Discrepancies/Hazardous Materials**
Prospective purchasers are asked to inform the sales office of any discrepancies in the property descriptions discovered while inspecting the

property and of any lots in this sale that contain hazardous material/waste not indicated in the property descriptions.

**Condition of Property**
**The following replaces Clause 2 of the General Terms and Conditions of the Standard Form (SF) 114C:** Condition of property is not warranted. Deficiencies, when known, have been indicated in the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection. Please also reference the Inspection of Property clause.

**Description Warranty & Refunds**
The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.

The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

**Refunds Claim Procedures**
Please be advised that refunds are not a frequent practice of GSA Auctions. A request for refund must be substantiated in writing to the Contracting Officer for issues regarding misdescribed property, missing property and voluntary defaults within 15 calendar days from the date of payment.

**Refund Amount**
The refund is limited to the purchase price of the misdescribed property.

**Claims of Misdescription**
If items have been awarded but not paid for and the successful bidder feels that the property is misdescribed, he/she must follow these procedures: A written claim needs to be submitted to the Sales Contracting Officer within 15 calendar days from the date of award requesting release of contractual obligation for reasons satisfying that of a misdescription. No verbal contact

with the custodian or the Sales Contracting Officer or any other federal official will constitute a notice of misdescription.

GSA awarded the contract for the boat to Ms. Saighi on May 30, 2013, noting that the bid price was $30,056. Ms. Saighi paid for the boat and took possession of it on June 6, 2013. Ms. Saighi claims that she expended $2200 in repairs. The repairs include installing two new marine batteries and repairing a broken window and door.

The first notification that Ms. Saighi was not satisfied with the condition of the boat is found in her email message dated October 27, 2013, sent to the contracting officer. Ms. Saighi complained that GSA had failed to disclose important information regarding the boat. Ms. Saighi stated that she had recently learned from local residents that the boat partially sank a few years before the sale. She stated further that both engines needed to be overhauled at a cost of approximately $96,000.

By letter dated November 19, 2013, the contracting officer responded to Ms. Saighi's email message dated October 27, 2013. The contracting officer stated that she had

> contacted Ed Weilbacher, the custodian and he confirmed the . . . [boat] was in sound condition and afloat at dock for 2 years prior to this sale. The dip sticks were checked and there was no water in the engines. The . . . [boat] was in the state of remodeling that was never completed. The custodian also confirmed that all bidders were made aware of the condition and he made no assurances or guaurantees that the engines ran.

> On June 29, 2013, you authorized your husband . . . to remove the . . . boat on your behalf . . . in early September. The individual that you hired for towing did not have a big enough engine, and after going up river for a short distance, the . . . [boat] was returned to the deck barge dock.

> The record does not indicate the condition of the boat upon its return.

The contracting officer stated further that GSA cautioned bidders that the "written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur."

The contracting officer continued by stating that the "Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any

payment for loss of profit or any other money damages - special, direct, indirect, or consequential."

On December 1, 2013, Ms. Saighi repeated her written complaint that the boat partially sank before the auction. She alleged that GSA knew or should have known about the earlier sinking and GSA should have advised potential bidders of the sinking within the sale description. Ms. Saighi requested that GSA refund the "full purchase price and money invested [presumably the $2200 for repairs]." Alternatively, she requested that GSA "refund 50% of the purchase price." The contracting officer responsible for this contract has stated in her affidavit that neither she nor any other GSA employee had knowledge that the boat sank before the sale. Likewise, Mr. Weilbacher has stated in his affidavit that he has no knowledge or information of the boat sinking prior to the sale.

On December 11, 2013, the contracting officer issued a formal decision denying Ms. Saighi's claim. The decision referenced the terms and conditions above and concluded that the boat was not misdescribed in the sales information, the condition was not guaranteed, and the claim was not timely submitted. The contracting officer concluded by advising Ms. Saighi about her appeal rights.

On appeal, Ms. Saighi alleges breach of contract and fraud due to misdescription and seeks $30,056 in exchange for the boat, reimbursement of the $2200 expended for repairs, and punitive damages exceeding $50,000. Ms. Saighi alleges that Mr. Weilbacher's affidavit statement denying any prior knowledge of the boat sinking is false and has offered documents and sworn statements as support. The Board finds that the documents and sworn statements submitted by Ms. Saighi fail to show conclusively that Mr. Weilbacher's affidavit statements are false. The Board also finds that Ms. Saighi's evidence fails to show that Mr. Weilbacher was acting as an agent of GSA.

## Discussion

GSA has moved for summary relief, asserting that, as a matter of law, the boat was not misdescribed and Ms. Saighi is, in any event, not entitled to relief because she failed to comply with the terms and conditions of the auction. Ms. Saighi has filed a cross motion. She alleges for the first time that the contract is voidable based on agency and joint venture theories. She additionally alleges that she is entitled to punitive damages and attorney fees. Ms. Saighi has additionally moved to strike GSA's statements denying that an agency relationship existed between GSA and the State of Illinois and that the State of Illinois failed to disclose to GSA that the boat sank prior to the sale and that both engines had been submerged. GSA disputes Ms. Saighi's allegations and opposes the motion to strike. GSA

argues that the Board lacks jurisdiction to consider the agency and joint venture allegations, as they were never presented to the contracting officer.

Summary relief is appropriate when the moving party is entitled to judgment as a matter of law, based on undisputed material facts. The moving party shoulders the burden of proving that no genuine issues of material fact exists. *Patick C. Sullivan v. General Services Administration*, CBCA 936, 08-1 BCA ¶ 33,820. The nonmoving party is then required to rebut the motion by articulating facts that show there is a genuine issue for trial. *Celotex Corp.v. Catrett*, 477 U.S. 317, 324 (1986).

The terms and conditions of the auction in which Ms. Saighi purchased the boat preclude the relief she seeks. First, the "Description Warranty" paragraph of the terms and conditions provides that the GSA's only warranty is that the property listed on the website will conform to its description. Ms. Saighi does not allege that the boat did not conform to its written description.

Second, the "Oral Statements and Modifications" paragraph provides that "[a]ny oral statement or representation by any representative of the Government, changing or supplementing the offering or contract or any condition thereof, is unauthorized and shall confer no right upon the bidder or purchaser." Statements by third parties, if made, were oral and therefore confer no right on the purchaser. *Gaven L. Rouse v. General Services Administration*, GSBCA 15993, 03-1 BCA ¶ 32,210.

Third, even if those purported oral statements did confer on Ms. Saighi a right to recover for a misdescription, the "Description Warranty" and "Refund Claim" paragraphs provide that once an item has been moved by the purchaser, a refund is available only if the purchaser fulfills three requirements. She must submit a written notice of misdescription to the contracting officer within fifteen days of the date of award or payment, maintain the property in the purchased condition until it is returned, and return the property to a location specified by the contracting officer. Ms. Saighi did not fulfill any of these requirements.

Fourth, the "Description Warranty" and "Refund Amount" paragraphs limit recovery in the event of a misdescription to a refund of the purchase price. Payment for repairs is not allowed. *William W. Caswell v. General Services Administration*, CBCA 479, 07-2 BCA ¶ 33,679; *John A. Glasure v. General Services Administration*, GSBCA 16046, 03-2 BCA ¶ 32,284; *Dan Parish v. General Services Administration*, GSBCA 16025, 03-1 BCA ¶ 32,211; *Bob's Auto Sales v. General Services Administration*, GSBCA 14447, 98-1 BCA ¶ 29,647; *Garrett J. Veenstra*, GSBCA 7251, 85-2 BCA ¶ 18,127, at 90,983 (Board cannot reform contract to give purchaser of boat at auction the different remedy of keeping the vessel and receiving reimbursement for repairs).

This Board has no subject matter jurisdiction to award punitive damages. *See Schrager Auction Galleries, Ltd. v. Department of the Treasury*, GSBCA 15658-TD, 02-1 BCA ¶ 31,710 (2001). There also is no basis for this Board to decide appellant's allegations that the contract is voidable based on agency and joint venture theories, because these allegations involve different operative facts from those presented to the contracting officer. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323 (Fed. Cir. 2010). These claims must be first presented to the contracting officer. Accordingly, Ms. Saighi's motion to strike is denied.

## Decision

The Board grants GSA's motion for summary relief and denies Ms. Saighi's motion for summary relief. This appeal is **DENIED**.

JEROME M. DRUMMOND
Board Judge

We concur:

JERI K. SOMERS
Board Judge

R. ANTHONY McCANN
Board Judge

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(iii) because the brief contains 6,742 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfectX7 in Roman BT 14-point font.

/s/ Mitchell E. Shamas
Mitchell E. Shamas

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2015, the foregoing

**CORRECTED BRIEF OF APPELLANT** was filed with the Clerk of Court using

the CM/ECF System. Counsel for all parties are registered CM/ECF users and will

be served with the foregoing document by the Court's CM/ECF System.

/s/ Mitchell E. Shamas
Mitchell E. Shamas
Shamas Law Office, pllc
6863 S Canton Ave
Tulsa, OK 74136
(918) 496-0994

*Counsel for Appellant*