# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## 15-1859

---

### YASMIN SAIGHI,

*Appellant,*

*v.*

### GENERAL SERVICES ADMINISTRATION,

*Appellee,*

---

Appeal from the Civilian Board of Contract Appeals in
No. 3693, Administrative Judge Jeri Kaylene Somers,
Administrative Judge Jerome M. Drummond, and
Administrative Judge R. Anthony McCann.

---

### *JOINT APPENDIX*

---

Mitchell E. Shamas
Shamas Law Office, pllc
6863 S. Canton Ave.
Tulsa, OK 74136-3405
(918) 496-0994
Email: mitchell@shamaslaw.com
*Attorney for Appellant*

# TABLE OF CONTENTS

**Pages**

United States Civilian Board of Contract Appeals
3/25/2015 Denial of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . .   A001

United States Civilian Board of Contract Appeals
Certified List of Record of Board Proceedings . . . . . . . . . . . .   A008

4/l/2001       [Tab 1] General Sales Terms and Condition Form 114C       A013

5/6/2013       [Tab 2] GSA Online Terms and Conditions . . . . . . . . . .   A022

5/7/2013       [Tab 3] RCS 06 PPC Available Property Owning
Agency's       Notification of Sale Item . . . . . . . . . . . . . . . . . . . . . . . .   A031

5/14/2013      [Tab 4] Online Solicitation . . . . . . . . . . . . . . . . . . . . . . .   A032

5/30/2013      [Tab 5] Email notification of Award to Appellant . . . . .   A034

5/31/2013      [Tab 6] Successful Bidders List GSA notification to
owning agency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   A037

6/29/2013      [Tab 7] Authorization to remove from Appellant  . . . . .   A054

9/29/2013      [Tab 8] Signed Purchaser's receipt - removal . . . . . . . . .   A056

10/27/2013  [Tab 9] Claim email from Appellant and
10/28/2013   Contracting officer's email acknowledgment . . . .   A058

10/29/2013  [Tab 10] Response emails from Owning Agency  . . . . .   A063

11/19/2013  [Tab 11] GSA contracting officer's response letter  . . . .   A073

12/1/2013    [Tab 12] Response email from Appellant . . . . . . . . . . . .   A076

12/11/2013  [Tab 13] Contracting officer's final decision . . . . . . . . .   A078

1/27/2013    [Tab 14] Notice of appeal . . . . . . . . . . . . . . . . . . . . . . .   A081

1/28/2014    [Tab 15] Notice of docketing CBCA 3693 . . . . . . . . . . .   A112

2/24/2014    [Tab 16] Affidavit of Susan Solon, State Owner
Representative for the State of Illinois (CMC Client Manager
for the State of Illinois) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A113

2/24/2014    [Tab 17] Affidavit of Curtis Howard, State Owner
Representative for the State of Illinois . . . . . . . . . . . . . . . . . . .    A114

2/25/2014    [Tab 18]Affidavit Ed Weilbacher, General Manager
Kaskaskia Regional Port District (CMS Administrator of
Property Control) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A115

2/26/2014    [Tab 19] Victoria C. Knotts Affidavit, GSA, Contracting
Officer, Property Disposal Specialist . . . . . . . . . . . . . . . . . . . .    A116

4/1/2014      Respondent's CBCA Answer . . . . . . . . . . . . . . . . . . . . .    A119

5/8/2014      Appellant's Answers to Respondent's Interrogatories . .    A126

6/30/2014    Respondent's Motion for Summary Relief . . . . . . . . . . .    A133

6/30/2014    Respondent's Statement of Undisputed Facts  . . . . . . . .    A135

6/30/2014    Respondent's Memorandum in Support of Summary
Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A140

7/30/2014    Appellant's Statement of Genuine Issues . . . . . . . . . . . .    A147

**{Following Exhibits to Appellant's Statement of Genuine Issues}**

Exhibit - Affidavit of Walter G. Terry dated 7/11/2014 with
attached exhibits:
Ex. 1- three photographs;
Ex. 2-  5/14/2012 letter from Ed Weilbacher;
Ex. 3- letter to Kaskaskia Port District . . . . . . . . . . . . . . . . . . .    A157

Exhibit - Affidavit of Moh Hassan Mahjoub dated 7/22/2014
with attached exhibits:
Ex. 1. Quote,
Ex. 2. Catalina Yacht  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A164

Exhibit - Affidavit of Yasmin Saighi dated 7/22/2014  . . . . . .    A170

Exhibit A - Affidavit of Donna Garigolli dated 6/10/2014 with attached board minutes of the Kaskaskia Regional Port District for June 11, 2012; May 14, 2012; April 9, 2012; March 12, 2012; February 13, 2012; and January 9, 2012 ("Blankenship" highlighted for convenience) . . . . . . . . . . . . . . . . . . . . . . . . . . .   A173

Exhibit B - Affidavit of Edward J. Weilbacher in support of documents attached in response to subpoena duces tecum ("Blankenship" highlighted for convenience) . . . . . . . . . . . . .   A195

Exhibit C - 7/9/2012 Email from Susan Solon to Edward J. Weilbacher and 7/11/2012 reply . . . . . . . . . . . . . . . . . . . . . . .   A233

Exhibit D - GSA advertisement for Katalina Yacht sale . . . . .   A234

Exhibit E - GSA advertisement for Blankenship sale . . . . . . .   A236

**{End of Exhibits to Appellant's Statement of Genuine Issues}**

7/30/2014    Appellant's Cross-Motion for Summary Relief
{Same Exhibits as Appellant's Statement of Genuine Issues}    A238

7/30/2014    Appellant's Statement of Additional Undisputed Facts
{Same Exhibits as Appellant's Statement of Genuine Issues}    A241

7/30/2014    Appellant's Memorandum Opposing Respondent's Motion for Summary Relief and Supporting Appellant's Cross-Motion for Summary Relief
{Same Exhibits as Appellant's Statement of Genuine Issues}    A244

8/11/2014    Appellant's Objection and Motion to Strike . . . . . . . . .   A250

9/11/2014    Respondent's Response to Appellant's Objection and Motion to Strike . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   A253

9/11/2014    Respondent's Response to Appellant's Statement of Additional Undisputed Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . .   A257

9/11/2014    Respondent's Response to Appellant's Cross-Motion for Summary Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   A261

9/11/2014    Respondent's Memorandum in Support . . . . . . . . . . . . .   A265

10/14/2014  Appellant's Combined Reply to Respondent's Response
To Appellant's Cross-motion for Summary Relief and
Response to Appellant's Objection and Motion to Strike  . . . .    A269

10/14/2014  Brief in Support of Appellant's Combined Reply To
Respondent's Response to Appellant's Cross-motion for
Summary Relief and Response To Appellant's Objection and
Motion to Strike  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A271

**{Following Exhibits to Preceding Brief}**

Exhibit 1 - 70 ILCS Sec 3 . . . . . . . . . . . . . . . . . . . . . . . . .    A282

Exhibit 2 - Proceeds distribution from sale of Boat . . . . . . . . .    A283

Exhibit 3 - $15,028 Check from US Treasury to Illinois . . . . .    A284

Exhibit 4 - Certification of distribution documents . . . . . . . . .    A285

Exhibit 5 - Excerpts from Exhibits A and B to Appellant's
Statement of Genuine Issues . . . . . . . . . . . . . . . . . . . . . . . . .    A286

Exhibit 6 - April 29, 2007 GSA advertisement of Boat . . . . . .    A287

Exhibit 7 - Boat description modification history  . . . . . . . . . .    A288

Exhibit 8 - January 25, 2007 Asbestos and Lead Based Paint
Assessment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A289

iv

DENIED: March 25, 2015

CBCA 3693

YASMIN SAIGHI,

Appellant,

v.

GENERAL SERVICES ADMINISTRATION,

Respondent.

Yasmin Saighi, pro se, Tulsa, OK.

Jenny M. Matte, Office of Regional Counsel, General Services Administration, Atlanta, GA, counsel for Respondent.

Before Board Judges **SOMERS**, **McCANN**, and **DRUMMOND**.

**DRUMMOND**, Board Judge.

This appeal arises out of the purchase of a boat by Yasmin Saighi at an online auction conducted by the General Services Administration (GSA). GSA and Ms. Saighi have filed motions for summary relief. Ms. Saighi has also moved to strike GSA's denial that an agency relationship existed between GSA and Ed Weilbacher, general manager of Kaskaskia Regional Port District, Evansville, Illinois. We grant GSA's motion and deny Ms. Saighi's motions.

## Background

In May 2013, GSA conducted an internet auction for the sale of a fire/patrol boat named the "M/V Blankenship" (boat). The boat information, including photographs, was shown on the website. The boat description estimated that the boat was manufactured in 1987. It stated, *inter alia*, that the boat had "twin draft V6 - 92TA Detroit diesel engines . . . [which were] rebuilt in April 1998 [and a] Kubota V2038 diesel engine, 5 cyl, 46 BHP [and] . . . needs new batteries." The description included the warning that "repairs may be required. Parts may be missing. Deficiencies, when known, have been indicated in the property description. However, absence of any indicated deficiencies does not mean that none exits." The description also included a statement, appearing in all capital letters, warning bidders that GSA did not warrant the condition of the boat.

The boat was docked at the Kaskaskia Regional Port District marina in Evansville, Illinois, and was available for bid only by persons who accepted the terms and conditions of sale which were posted on the website. Ms. Saighi inspected the boat prior to the auction and did not advise GSA as to any problems with the boat. She also agreed to the terms and conditions of the sale, including the following paragraphs:

**Inspection of Property**
Bidders agree to physically inspect the property upon which they bid or thereby waive the opportunity to conduct a physical inspection. In waiving their inspection rights, bidders bear the risk for any gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage that would have been revealed by physical inspection. There are times when access to property may be limited due to property being located in a restricted area. GSA will do all that it can to ensure that photos and detailed descriptions are provided in these instances.

During an inspection at a government facility, actions taken by bidders are at their own risk. The U.S. Government will not be liable for any or all debts, judgments, costs, demands, suits, actions, or claims of any nature arising from or incident to their inspection at the Government facility, including any injuries that a bidder incurs due to their own actions or neglect on during [sic] their visit to a Government facility.

**Reporting Discrepancies/Hazardous Materials**
Prospective purchasers are asked to inform the sales office of any discrepancies in the property descriptions discovered while inspecting the

property and of any lots in this sale that contain hazardous material/waste not indicated in the property descriptions.

**Condition of Property**
**The following replaces Clause 2 of the General Terms and Conditions of the Standard Form (SF) 114C:** Condition of property is not warranted. Deficiencies, when known, have been indicated in the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection. Please also reference the Inspection of Property clause.

**Description Warranty & Refunds**
The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.

The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

**Refunds Claim Procedures**
Please be advised that refunds are not a frequent practice of GSA Auctions. A request for refund must be substantiated in writing to the Contracting Officer for issues regarding misdescribed property, missing property and voluntary defaults within 15 calendar days from the date of payment.

**Refund Amount**
The refund is limited to the purchase price of the misdescribed property.

**Claims of Misdescription**
If items have been awarded but not paid for and the successful bidder feels that the property is misdescribed, he/she must follow these procedures: A written claim needs to be submitted to the Sales Contracting Officer within 15 calendar days from the date of award requesting release of contractual obligation for reasons satisfying that of a misdescription. No verbal contact

with the custodian or the Sales Contracting Officer or any other federal official will constitute a notice of misdescription.

GSA awarded the contract for the boat to Ms. Saighi on May 30, 2013, noting that the bid price was $30,056. Ms. Saighi paid for the boat and took possession of it on June 6, 2013. Ms. Saighi claims that she expended $2200 in repairs. The repairs include installing two new marine batteries and repairing a broken window and door.

The first notification that Ms. Saighi was not satisfied with the condition of the boat is found in her email message dated October 27, 2013, sent to the contracting officer. Ms. Saighi complained that GSA had failed to disclose important information regarding the boat. Ms. Saighi stated that she had recently learned from local residents that the boat partially sank a few years before the sale. She stated further that both engines needed to be overhauled at a cost of approximately $96,000.

By letter dated November 19, 2013, the contracting officer responded to Ms. Saighi's email message dated October 27, 2013. The contracting officer stated that she had

> contacted Ed Weilbacher, the custodian and he confirmed the . . . [boat] was in sound condition and afloat at dock for 2 years prior to this sale. The dip sticks were checked and there was no water in the engines. The . . . [boat] was in the state of remodeling that was never completed. The custodian also confirmed that all bidders were made aware of the condition and he made no assurances or guaurantees that the engines ran.

> On June 29, 2013, you authorized your husband . . . to remove the . . . boat on your behalf . . . in early September. The individual that you hired for towing did not have a big enough engine, and after going up river for a short distance, the . . . [boat] was returned to the deck barge dock.

The record does not indicate the condition of the boat upon its return.

The contracting officer stated further that GSA cautioned bidders that the "written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur."

The contracting officer continued by stating that the "Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any

payment for loss of profit or any other money damages - special, direct, indirect, or consequential."

On December 1, 2013, Ms. Saighi repeated her written complaint that the boat partially sank before the auction. She alleged that GSA knew or should have known about the earlier sinking and GSA should have advised potential bidders of the sinking within the sale description. Ms. Saighi requested that GSA refund the "full purchase price and money invested [presumably the $2200 for repairs]." Alternatively, she requested that GSA "refund 50% of the purchase price." The contracting officer responsible for this contract has stated in her affidavit that neither she nor any other GSA employee had knowledge that the boat sank before the sale. Likewise, Mr. Weilbacher has stated in his affidavit that he has no knowledge or information of the boat sinking prior to the sale.

On December 11, 2013, the contracting officer issued a formal decision denying Ms. Saighi's claim. The decision referenced the terms and conditions above and concluded that the boat was not misdescribed in the sales information, the condition was not guaranteed, and the claim was not timely submitted. The contracting officer concluded by advising Ms. Saighi about her appeal rights.

On appeal, Ms. Saighi alleges breach of contract and fraud due to misdescription and seeks $30,056 in exchange for the boat, reimbursement of the $2200 expended for repairs, and punitive damages exceeding $50,000. Ms. Saighi alleges that Mr. Weilbacher's affidavit statement denying any prior knowledge of the boat sinking is false and has offered documents and sworn statements as support. The Board finds that the documents and sworn statements submitted by Ms. Saighi fail to show conclusively that Mr. Weilbacher's affidavit statements are false. The Board also finds that Ms. Saighi's evidence fails to show that Mr. Weilbacher was acting as an agent of GSA.

## Discussion

GSA has moved for summary relief, asserting that, as a matter of law, the boat was not misdescribed and Ms. Saighi is, in any event, not entitled to relief because she failed to comply with the terms and conditions of the auction. Ms. Saighi has filed a cross motion. She alleges for the first time that the contract is voidable based on agency and joint venture theories. She additionally alleges that she is entitled to punitive damages and attorney fees. Ms. Saighi has additionally moved to strike GSA's statements denying that an agency relationship existed between GSA and the State of Illinois and that the State of Illinois failed to disclose to GSA that the boat sank prior to the sale and that both engines had been submerged. GSA disputes Ms. Saighi's allegations and opposes the motion to strike. GSA

argues that the Board lacks jurisdiction to consider the agency and joint venture allegations, as they were never presented to the contracting officer.

Summary relief is appropriate when the moving party is entitled to judgment as a matter of law, based on undisputed material facts. The moving party shoulders the burden of proving that no genuine issues of material fact exists. *Patick C. Sullivan v. General Services Administration*, CBCA 936, 08-1 BCA ¶ 33,820. The nonmoving party is then required to rebut the motion by articulating facts that show there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The terms and conditions of the auction in which Ms. Saighi purchased the boat preclude the relief she seeks. First, the "Description Warranty" paragraph of the terms and conditions provides that the GSA's only warranty is that the property listed on the website will conform to its description. Ms. Saighi does not allege that the boat did not conform to its written description.

Second, the "Oral Statements and Modifications" paragraph provides that "[a]ny oral statement or representation by any representative of the Government, changing or supplementing the offering or contract or any condition thereof, is unauthorized and shall confer no right upon the bidder or purchaser." Statements by third parties, if made, were oral and therefore confer no right on the purchaser. *Gaven L. Rouse v. General Services Administration*, GSBCA 15993, 03-1 BCA ¶ 32,210.

Third, even if those purported oral statements did confer on Ms. Saighi a right to recover for a misdescription, the "Description Warranty" and "Refund Claim" paragraphs provide that once an item has been moved by the purchaser, a refund is available only if the purchaser fulfills three requirements. She must submit a written notice of misdescription to the contracting officer within fifteen days of the date of award or payment, maintain the property in the purchased condition until it is returned, and return the property to a location specified by the contracting officer. Ms. Saighi did not fulfill any of these requirements.

Fourth, the "Description Warranty" and "Refund Amount" paragraphs limit recovery in the event of a misdescription to a refund of the purchase price. Payment for repairs is not allowed. *William W. Caswell v. General Services Administration*, CBCA 479, 07-2 BCA ¶ 33,679; *John A. Glasure v. General Services Administration*, GSBCA 16046, 03-2 BCA ¶ 32,284; *Dan Parish v. General Services Administration*, GSBCA 16025, 03-1 BCA ¶ 32,211; *Bob's Auto Sales v. General Services Administration*, GSBCA 14447, 98-1 BCA ¶ 29,647; *Garrett J. Veenstra*, GSBCA 7251, 85-2 BCA ¶ 18,127, at 90,983 (Board cannot reform contract to give purchaser of boat at auction the different remedy of keeping the vessel and receiving reimbursement for repairs).

This Board has no subject matter jurisdiction to award punitive damages. *See Schrager Auction Galleries, Ltd. v. Department of the Treasury*, GSBCA 15658-TD, 02-1 BCA ¶ 31,710 (2001). There also is no basis for this Board to decide appellant's allegations that the contract is voidable based on agency and joint venture theories, because these allegations involve different operative facts from those presented to the contracting officer. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323 (Fed. Cir. 2010). These claims must be first presented to the contracting officer. Accordingly, Ms. Saighi's motion to strike is denied.

<u>Decision</u>

The Board grants GSA's motion for summary relief and denies Ms. Saighi's motion for summary relief. This appeal is **DENIED**.

_____
JEROME M. DRUMMOND
Board Judge

We concur:


_____
JERI K. SOMERS
Board Judge

_____
R. ANTHONY McCANN
Board Judge

CAFC No. 15-1859

Yasmin Saighi,

Appellant,

v.

General Services Administration,

Appellee.

CERTIFIED LIST OF
RECORD OF BOARD PROCEEDINGS

The final decision of the U.S. Civilian Board of Contract Appeals that is before the Court for review is the Board's final decision of March 25, 2015 in *Yasmin Saighi v. General Services Administration*, CBCA 3693. The record consists of the Board correspondence, which includes the parties' motions, pleadings, and Rule 4 File. A listing of this record, including a description follows:

**I. The Board's correspondence file is comprised of the following record:**

a) **APPELLANT'S SUBMISSIONS:**

1. Notice of appeal dated 1/19/14, filed 1/27/14;

2. Letter designating notice of appeal as complaint, filed 3/1/14;

3. Motion for issuance of subpoena duces tecum dated 4/15/14, filed 4/16/14;

4. Motion for issuance of subpoenas filed 4/25/14;

5. Entry of appearance by John G. Beseau for appellant, filed and dated 4/25/14;

6. Certificate of Service filed 6/2/14;

7. Appellant's response to motion for summary relief, filed 7/30/14;

8. Appellant's objection and motion to strike filed 8/11/14;

9. Appellant's motion to disqualify assigned judge, filed 9/2/14;

10. Motion to withdraw as counsel for Yasmin Saighi filed by John Beseau, dated 9/4/14;

11. Appellant requested copies of orders dated 8/7/14 and 8/12/14, stating they were missing from their record, email dated 9/8/14;

12. Appellant's motion for reconsideration of order dated 9/4/14, filed 9/10/14;

13. Appellant's brief in support of appellant's combined reply to respondent's response to appellant's cross-motion for summary relief and response to appellant's objection and motion to strike, filed 10/14/14;

**b)    RESPONDENT'S SUBMISSIONS:**

14. Appeal file (one volume, 19 exhibits), filed 2/27/14;

15. Answer filed 4/1/15;

16. Interrogatories and request for production of documents filed and dated 5/7/14;

17. Respondent's objection to RFP (submitting one protected and one redacted) copy filed 5/6/14;

18. Respondent's motion for summary relief, statement of undisputed facts, and memo in support of motion filed 6/30/14;

19. Respondent's response to motion to disqualify filed and dated 9/3/14;

20. Respondent's motion for additional time to respond to appellant's cross-motion and motion to strike filed 9/10/14;

21. Respondent's letter categorically rejecting all allegations against GSA counsel filed by appellant, filed and dated 9/11/14;

22. Respondent's motion to withdraw request for additional time; response to appellant's objection and motion to strike; response to appellant's statement of additional undisputed facts; response to appellant's cross motion for summary relief and memorandum of support filed 9/11/14;

**c)  BOARD CORRESPONDENCE:**

23. Notice of docketing dated 1/28/14;

24. Order accepting notice of appeal as complaint and requesting the respondent to file an answer by 4/3/14, dated 3/10/14;

25. Scheduling order, dated 1/29/14;

26. Memorandum of conference and order dated 4/8/14 [re: jurisdictional issues, discovery and hearing];

27. Memorandum of conference and order dated 4/21/14 [re: subpoena duces tecum];

28. Memorandum of conference and order dated 5/9/14 [re: discuss appellant's objections to respondent's proposed discovery responses];

29. Order dated 7/1/14 [re: appellant to file response to motion and proceedings suspended];

30. Memorandum of conference and order [re: appellant's objections and motion to strike. Hearing delayed pending ruling on the motions];

31. Motion to disqualify denied, dated 9/4/14;

32. Order granting John Beseau to withdraw as attorney, dated 9/8/14;

33. Order stating that the order dated 8/12/14 is complete and accurate and no change will be made to order, dated 9/9/14;

34. Order denying appellant's motion to reconsider, dated 9/29/14;

35. Opinion denying appeal issued on 3/25/15.

**II. The Rule 4(a) appeal file compendium submitted by the Government consists of nineteen exhibits, including the following:**

**[RESPONDENT'S RULE 4(a) file**
**[consisting of 19 exhibits]**

| TAB | DATE | SUBJECT |
|---|---|---|
| 1 | 4/1/2001 | General Sales Terms and Condition Form 114C |
| 2 | 5/6/2012 | Online Terms and Conditions |
| 3 | 5/7/2013 | RCS 06 PPC Available Property Owning Agency's notification of sale item |
| 4 | 5/14/2013 | Online Solicitation |
| 5 | 5/30/2013 | Email notification of Award to Yasmin Saighi |
| 6 | 5/31/2013 | Successful Bidders List GSA notification to owning agency |
| 7 | 6/29/2013 | Authorization to remove from Ms. Saighi |
| 8 | 9/29/2013 | Signed Purchaser's receipt - removal |
| 9 | 10/27/2013 10/28/2013 | Claim email from Ms. Saighi and Contracting Officer's email acknowledgment |
| 10 | 10/29/2013 | Response emails from Owning Agency |
| 11 | 11/19/2013 | GSA contracting officer's response letter |
| 12 | 12/1/2013 | Response email from Ms. Saighi |
| 13 | 12/11/2013 | Contracting officer's final decision |
| 14 | 01/27/2013 | Notice of appeal |

| 15 | 01/28/2014 | Notice of docketing CBCA 3693 |
| 16 | 2/24/2014 | Affidavit of Susan Solon, State Owner Representative for the State of Illinois (CMC Client Manager for the State of Illinois) |
| 17 | 2/24/2014 | Affidavit of Curtis Howard, State Owner Representative for the State of Illinois |
| 18 | 2/25/2014 | Affidavit Ed Weilbacher, General Manager Kaskaskia Regional Port District (CMS Administrator of Property Control) |
| 19 | 2/26/2014 | Victoria C. Knotts Affidavit, GSA, Contracting Officer, Property Disposal Specialist |

I declare to the best of my knowledge that the foregoing is a true and correct list of all documents and exhibits comprising the record in CBCA 3693.

*Cheryl L. Hilton*

CHERYL L. HILTON
Clerk of the Board
U.S. Civilian Board of Contract Appeals
202-606-8800
202-606-0019 [FAX]



**Notice:** GSA Auctions℠ offers for sale personal property (e.g.cars, computers, heavy equipment, jewelry, furniture, etc.) and real property (real estate). Please note that these Online Sale Terms and Conditions apply to personal property ONLY. Real property sales have separate terms and conditions as specified in the Invitation for Bids (IFB) prepared for each sale. Users/Bidders must complete the Bidder Registration and Bid Form included in the IFB and provide the specified registration deposit before they will be allowed to bid on that property.

**Warning:** GSA reserves the right to change the online sale terms and conditions. Bidders are cautioned to periodically review these terms and conditions for possible changes.

### Bidder Information & Registration

### Eligibility of Bidders

Bidders must be at least 18 years of age.Bidders will be required to provide their birth date at registration. A bidder's birth date will be used only to verify bidder's eligibility. This information is protected by the Privacy Act, 5 U.S.C 552a. In addition, bidders must not be debarred from doing business with the Government. GSA will verify that individuals and companies are not debarred by checking their information against the Excluded Parties List System (EPLS). The EPLS is the electronic version of the Lists of Parties Excluded from Federal Procurement and Non-procurement Programs (Lists), which identifies those parties excluded throughout the U.S. Government (unless otherwise noted) from receiving Federal contracts or certain subcontracts and from certain types of Federal financial and non financial assistance and benefits.

### U.S. Citizenship

Bidding is not limited to U.S. citizens exclusively. However due to National Security and Export restrictions, some items shall only be sold to U.S. Citizens.

### Acceptance Period

By marking the required box at the end of the online sale terms and conditions during registration and submitting a bid, the bidder agrees to the Terms and Conditions of sale and to pay for and remove the property by the dates and times specified in the contract award email notification, if the bid is accepted.

### Bidders Indebted to the Government

The bidder warrants, by accepting the online sale terms and conditions and submitting a bid, which he/she is not delinquent in paying for previous purchases of Federal personal property and any related charges. Indebted bidders will be ineligible for contract awards. Bidders will not be able to bid on items specified on this website until all debts have been cleared.

### Registration

A credit card is required for all registered users in our online community. Credit card validation assists in the prevention of fraudulent bidding activity and ensures that bidders are prepared to accept responsibility for their bidding activity and all submitted bids are valid. This card number is recorded but will not be automatically charged if a bidder is the successful bidder of an item. For security reasons and to prevent fraudulent bidding activities, all registered bidders are subject to

A022

billing address verification. No P.O. Box address will be accepted unless accompanied by a street address. By entering the credit card information, you are attesting you are an authorized user of the card.

It is required that the bidder create and secure their username and password. GSA Auctions℠ does not issue usernames nor does it provide a temporary password if a bidder has forgotten theirs.

Further, bidders shall refrain from creating usernames that are considered profane or offensive in nature. If such names are discovered or otherwise brought to the attention of GSA, the bidder will be contacted and asked to re-register using a more appropriate username, and the "offensively named" account will be blocked to prevent further use.

Debt Collection Improvement Act of 1996
In accordance with Public Law No. 104-134, Section 31001, The Debt Collection Improvement Act of 1996, the Tax Identification Number (TIN) must be provided by anyone conducting business with the Federal Government, from which a debt to the Government may arise. Individuals cannot successfully register to bid on items without providing a TIN. A TIN is defined as an individual's Social Security Number (SSN) or business entity's Employer Identification Number (EIN). TIN validation also assists in the prevention of fraudulent bidding activity and ensures that bidders are prepared to accept responsibility for their bidding activity and all submitted bids are valid.

Submission of Bid

Bids are only accepted in whole U.S. Dollar amounts. Do not enter dollar signs ($) commas (,) or cents (¢). Bidding will begin and end at the dates and times specified for each lot in the GSAAuctions.gov website Please note: The times displayed at GSA Auctions℠ are in Central time. In addition, certain auctions are designed to extend the closing time if there is bidding activity. Bidders are urged to review the bidding details and enhanced bidding logic at GSA Auctions℠ for auction details. It is the responsibility of the bidder to follow-up on the status of his/her bid.

When bidding on property via GSAAuctions.gov website, funds or monies should be readily available; GSA is not obligated to wait for bidders to arrange for financing.

Condition No. 17 of the Standard Form 114C applies to an item(s)/lot(s) where the total bid exceeds $25,000. See Code of Federal Regulations (CFR, Title 41, Section 101-45.313.3).

Consideration of Bid

It is the policy of GSA Auctions℠ to monitor bids and other activity to ensure the proper use of our site. The Government reserves the right to reject any and all bids. Bids can be rejected for any reason, especially those containing inaccurate, incomplete or unverifiable information, or information which is deemed to have been given in bad faith. GSA Auctions℠ monitors for suspicious bids. Such bids are subject to investigation and cancellation at any time. If GSA removes a bid, the bidder with the next highest bid, who is in compliance with the online terms and conditions, will become the current high bid. It is a violation of law to submit bids using a false name or any other fraudulent information, and such bids may not be processed, even if GSA initially accepts a bid. Be aware that if you provide false information, GSA will remove you from the database and pursue all legal means available to the Federal Government to prosecute.

Notification of Sale Results

Successful bidders will be notified by email and must contact the regional sales office within 2 business days from the date and time the award email notification was sent. Bid results will not be furnished via telephone or fax. It is the bidder's responsibility to follow-up on the status of his/her bid and to ensure that his/her email address and all registration data are kept accurate and up-to-date. If at any time, your information changes, it is your responsibility to update the appropriate information at GSA Auctions℠. Warning: If any emails are undeliverable and returned due to an inaccurate email address, GSA may remove such registrants from the database. Sales results may be obtained by a successful bidder in their personal summary after the sale closes.

## Antitrust

Some sales may be subject to antitrust law in accordance with 40 U.S.C. 559. If the high bid meets or exceeds the threshold amount as stated in 40 U.S.C. 559, the bid will be subject to review by the U.S. Attorney General prior to finalization of award. Therefore, bids are binding and GSA Auctions℠ will make award within 60 days, if not sooner, after receipt of the advice of the Attorney General of whether the disposition would be inconsistent with antitrust law.

## Title to Property

Buyers of motor vehicles will receive a GSA Form 27A, "Purchaser's Receipt and Authority to Release Property," and a Standard Form (SF) 97, "The United States Government Certificate To Obtain Title To A Vehicle." SF 97 is not a title; it is evidence of title only for authority to obtain title to a vehicle by the purchaser. Buyers of property other than motor vehicles will receive only the GSA Form 27A. Unless otherwise provided in the Invitation, title to the property sold hereunder shall vest in the Purchaser as and when removal is effected.

The Certificate to Obtain Title that accompanies vehicles may identify the vehicle as Salvage or Scrap, meaning the vehicle is not intended for driving and its condition is poor and/or it is not road-worthy in its present condition.

These provisions may also be applied to certain accident-damaged vehicles. The type of title issued will be determined at the discretion of each state's Department of Motor Vehicles (DMV).

The Certificate to Obtain Title in no way serves as a waiver for payment of registration fees, nor county or State taxes assessed to the vehicle, subsequent to its purchase.

**The way you register will determine how your information is displayed on sales paperwork. Either your name and address as an individual, or your name, company name and address must be completed as you wish it to appear on all subsequent paperwork. You can only select one option to indicate registering as an individual or company. Changes will not be permitted after award. If you wish to participate as an individual and a representative of a company, you must register separately for each and place bids accordingly.**

Note: There are times when buyers require/request a duplicate copy of the SF 97. Please be advised there may be a fee associated with this request.

## Bidding

## Photographs

Photographs may not depict an exact representation of the bid item(s) and should not be relied upon in place of written item descriptions or as a substitute for physical inspection. Please contact the custodian for inspection dates and times.

## Inspection of Property

Bidders agree to physically inspect the property upon which they bid or thereby waive the opportunity to conduct a physical inspection. In waiving their inspection rights, bidders bear the risk for any gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage that would have been revealed by physical inspection. There are times when access to property may be limited due to property being located in a restricted area. GSA will do all that it can to ensure that photos and detailed descriptions are provided in these instances. During an inspection at a government facility, actions taken by bidders are at their own risk. The U.S. Government will not be liable for any or all debts, judgments, costs, demands, suits, actions, or claims of any nature arising from or incident to their inspection at the Government facility, including any injuries that a bidder incurs due to their own actions or neglect on during their visit to a Government facility.

Reporting Discrepancies/Hazardous Materials

Prospective purchasers are asked to inform the sales office of any discrepancies in the property descriptions discovered while inspecting the property and of any lots in this sale that contain hazardous material/waste not indicated in the property descriptions.

Oral Statements and Modifications

Any oral statement or representation by any representative of the Government, changing or supplementing the offering or contract or any condition thereof, is unauthorized and shall confer no right upon the bidder or purchaser. Further, no interpretation of any provision of the contract, including applicable performance requirements, shall be binding on the government unless furnished or agreed to, in writing by the Contracting Officer or his designated representative.

Modification of Bids

The following replaces Clause No. 3.(b) of the SF 114C. Bids received for items offered in the GSAAuctions.gov website may be raised before the closing date and time, as specified in the offering. Proxy bid limits may be replaced with a higher or lower proxy bid limit provided that the amount is greater than or equal to the minimum bid required by the system. The minimum bid is the current high bid plus the amount of the bid increment. Proxy bid limits placed in the system may also be replaced with a flat bid; the flat bid will cancel the proxy bid limit. Additionally, the flat bid must be greater than or equal to the minimum bid required by the system. The minimum bid is the current winning bid plus the amount of the bid increment. Flat (minimum) bids may be replaced with proxy bid limit. Proxy bid limit must be greater than or equal to the minimum bid required by the system. **Bidders cannot cancel bids.**

Bid Extensions

Occasionally, technical problems will interrupt the bidding process for an unspecified amount of time. These interruptions may affect some or all bidders. In the event of an interruption, an evaluation of the length of interruption time and the numbers of bidders affected may prompt GSA Auctions℠ to extend the closing time for an auction. Extension may range from 1 hour to 24 hours based on the aforementioned criteria, to insure fair and full competition. An email notification will be sent to those bidders who participated in these auctions when there are extensions due to technical problems. Bidders must monitor their bidding activity online to obtain new closing dates and times when these extensions occur.

Canceled Auctions

Due to technical problems encountered from time to time, situations may arise that warrant GSA canceling awards because full and open competition consistent with the value and nature of the property was not met. Items may be reoffered at a later date. An email notification will be sent to those bidders who participated in these auctions when they are canceled.

Terminated Auctions

It may be necessary to withdraw items from bidding due to technical errors or uncontrollable circumstances. Auctions may be terminated because the property is no longer available due to Federal or state agency needs; property becomes damaged; property is stolen, or property was improperly described. Items may be reoffered at a later date. An email notification will be sent to those bidders who participated in these auctions when they are terminated.

Reoffering and Resale of Items

Please be advised that items that are available on GSA Auctions℠ are considered property of GSA or the Federal Government until which time it is awarded, paid for and removed from Federal premises. As such, this property may not be advertised, offered, pre-sold or otherwise represented as the property of any bidder for personal gain, prior to the award, payment and full possession of items/lots by the awarded bidder. Actions made in violations of this warning may result in legal action and prosecution against the awarded bidder, by the Government.

## Blocked from Bidding

In the event bidders provide false information, bid using unacceptable/profane usernames, or default for non-payment or non-removal, they will lose all rights to place bids for other items. They will only be allowed to "browse" the items. At such time the bidder cures his/her default, he/she will be unblocked and be given access to begin bidding on items. With regards to improper usernames, the bidder will be contacted and asked to re-register using a more appropriate username and the "offensively named" account will be blocked to prevent further use.

## Contract Disputes

## Contract Disputes

Contracts resulting from the sale of any offer in the GSAAuctions.gov website are subject to the Contract Disputes Act of 1978 (41 USC 7101-7109), as amended.

## Condition of Property

The following replaces Clause No. 2 of the SF114C. Condition of property is not warranted. Deficiencies, when known, have been indicated in the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection. Please also reference the Inspection of Property clause.

## Description Warranty & Refunds

The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.

The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

## Pre-award Misdescription

Prior to the closing of a sale, the Government may identify or learn of a gross omission regarding the functionality of an item, major missing parts, and/or restrictions with regards to its use. If GSA is aware of this missed information prior to the close of a sale, the item may be pulled from the sale and resubmitted with the information or re-offered at a later date.

## Refunds Claim Procedures

Please be advised that refunds are not a frequent practice of GSA Auctions℠. A request for refund must be substantiated in writing to the Contracting Officer for issues regarding mis-described property, missing property and voluntary defaults within 15 calendar days from the date of payment.

## Refund Amount

The refund is limited to the purchase price of the misdescribed property.

## Claims of Misdescription

If items have been awarded but not paid for and the successful bidder feels that the property is mis-described, he/she must follow these procedures: A written claim needs to be submitted to the Sales Contracting Officer within 15 calendar days from the date of award requesting release of contractual obligation for reasons satisfying that of a mis-description. No verbal contact with the custodian or the Sales Contracting Officer or any other federal official will constitute a notice of misdescription.

A026

When items are awarded and payment has been received, regardless of the removal status (removal may or may not have occurred), the successful bidder must submit a written notice to the Sales Contracting Officer within 15 calendar days from the date of payment email notification (the Purchaser's Receipt). If property has been removed and the claim is accepted by the Sales Contracting Officer, the purchaser must maintain the property in its purchased condition and return it at their expense to the location designated by the Sales Contracting Officer or any other federal official.

Default

Bidders are cautioned to bid only on items they are prepared to pay for and remove in accordance with the online sale terms and conditions of this sale. Failure to pay for and remove all awarded items, or all items within a lot within the timeframe specified, could result in termination of the contract. The bidder will also be subject to paying liquidated damages. The following supersedes Clause No. 9 of the SF 114C.

If you are awarded an item on GSA Auctions℠, you have a responsibility to pay for the item or lot that you were awarded within 2 business days from the date and time the award email notification was sent and promptly remove it within 10 business days from the date and time the award email notification was sent, unless otherwise specified in the contract. If you fail to meet either of these two conditions, you will be in violation of the online sale terms and conditions of your contract with the Government and will be considered "in default".

As a defaulted bidder, you will be responsible for the payment of liquidated damages, an administrative fee for the processing and re-handling of the item for which you neglected to pay for and/or remove. A breakdown of the fee structure follows:

| Purchase Price | Fee Assessed |
| --- | --- |
| <$325.00 | Fee will equal to the award amount |
| $325.00 - $100,000.00 | Fee will be $325.00 |
| >$100,000.00 | Fee will be equal to 5% of the award amount |

The Government shall be entitled to retain (to collect) this amount of the purchase price of the item(s) as to which the default occurred. Please note that in cases where bid deposits are required, the full amount of the bid deposit may be retained for the payment of liquidated damages.

Further, if an item or lot has been paid for but only a portion of the lot has been removed, you will not be entitled to any kind of refund. You will lose all rights and title to the property that you failed to remove prior to the removal deadline. Defaulted bidders, whose purchase price contains sufficient funds to cover the liquidated damages due, may continue to bid. If applicable, refunds will be issued for the balance.

In the event of a default, a bidder will lose all rights to place bids for other items for sale on GSA Auctions℠ until liquidated damages have been paid and the payment processed (see below). Defaulted bidders will only be allowed to "browse" items. At the time that liquidated damages are paid, the bidder will be given access to begin bidding on items. In the case of partial non-removal, the loss of title to the property constitutes liquidated damages paid.

Liquidated Damages

Liquidated damage payments paid by credit cards are processed by GSA's Finance office on a daily basis. If a credit card is used in payment of liquidated damages owed, it can take up to 2 business days to process this payment and clear a user's GSA Auctions℠ account. Avoid if at all possible, incurring liquidated damages.

Payment & Removal

**Payment and Removal Timeframes**

If you are the successful bidder, property must be paid for within 2 business days and property removed within 10 business days from the time and date of the award email notification of sale results, unless otherwise specified in the contract. After payment is processed, a copy of the Purchaser's Receipt and Authority to Release Property will automatically be emailed to the successful bidder based upon the email address that was provided at the time of registration, or will be either faxed or mailed, continguent upon the information that was provided at the time of registration.

**Withdrawal of Property After Award**

The Government reserves the right to withdraw for its use any or all of the property covered by this contract, if a bona fide requirement for the property develops or exists up to the time of the Government's acceptance of the high bid of the property. In the event of a withdrawal under this condition, the Government shall be liable only for the refund of the contract price of the withdrawn property or such portion of the contract price as it may have received.

**Forms of Payment**

Payment is restricted to the following instruments: U.S. currency (no greater than $10,000); bank cashier's check; credit union cashier's check issued by a Federal or State chartered Credit Union; U.S. Postal Service or commercial money order; travelers' checks; properly endorsed United States Federal, State, or local government checks; MasterCard, VISA, Discover (Novus), American Express, processed manually or online through the Department of Treasury's electronic payment service via GSA Auctions℠ bidder's summary page. Certified checks, bank drafts and debit cards with dollar limitations and/or requiring a PIN number are not acceptable. All checks and money orders must be made payable to the General Services Administration or GSA.

Credit card payments can be made via GSA Auctions℠ from the "My Summary" page utilizing the "Trades" feature. Online payments are processed through the Department of Treasury's electronic payment service via GSA Auctions℠, which is a secure government-wide payment collection portal and transaction engine created and managed by the U.S. Department of the Treasury's Financial Management Service (FMS). By Treasury policy, credit card payments are restricted to a $99,999.99 (effective June 30, 2012, credit card payments will be restricted to $49,999.99) dollar limit and one card per transaction.

If you are making payment in U.S. currency, please contact the regional Sales office responsible for a specific item to make arrangements. Some of our regional offices are not equipped to accept cash and other walk-in payments.

A personal or company check will be accepted only when accompanied by a bank letter guaranteeing payment. This letter must be on bank letterhead and must state (1) that payment is guaranteed, (2) that the guarantee is valid for 30 days after the date of the award email notification, and (3) that the guarantee covers the purchase of U.S. Government personal property only. The letter must be dated, include the bidder's name, the amount the guarantee is for, date of sale, sale and lot number and signed by a bank official authorized to guarantee payment.

All sales are final.

**Property of Federal Government**

Please be advised that title does not transfer for property of the Federal Government until such time as the property is removed from federal premises. If the property is located on local government or private property, it is still considered Federally-owned property until such time as it is removed.

**Removal**

Property must be removed within 10 business days from the date and time of award email notification. An e-signature Purchaser's Receipt and Authority to Release Property must be presented prior to removal of property to verify proof of purchase; otherwise removal will not be permitted. In addition, if successful bidder appoints/designates another person or agent to remove property on his/her behalf, the successful bidder must provide the person or agent assigned, authorization allowing them to remove the subject property. Some locations may require successful bidders to call for an appointment

prior to inspection and or removal of property. Bidders are responsible to pay close attention to the requirements listed on the item description page. Property Custodian phone numbers are listed by the property description in the auction site. The authorization must include: (1) the name of the person the successful bidder is authorizing to pickup the property; (2) the sale and lot number of the item; and (3) must be signed by the successful bidder. In addition to the letter of authorization, the person must present a photo id, and a signed Purchaser's Receipt and Authority to Release Property to verify proof of purchase prior to removal: otherwise removal will not be permitted.

SUCCESSFUL BIDDERS ARE CAUTIONED THAT THEY ARE RESPONSIBLE FOR PACKING, LOADING AND REMOVAL OF ANY AND ALL PROPERTY AWARDED TO THEM FROM THE EXACT PLACE WHERE THE PROPERTY IS LOCATED, AS INDICATED ON THE ITEM DESCRIPTION PAGE FOR EACH ITEM THAT THEY PURCHASE ON THE GSAAUCTIONS.GOV WEBSITE. THE PURCHASER WILL MAKE ALL ARRANGEMENTS AND PERFORM ALL WORK NECESSARY TO EFFECT REMOVAL OF THE PROPERTY, TO INCLUDE PACKING, LOADING AND TRANSPORTATION OF THE PROPERTY.

## Special Notes

### Crashed Test Vehicles

The United States Department of Transportation, National Highway Traffic Safety Administration (NHTSA) purchases and provides passenger cars, light trucks and school buses as Government Furnished Property to contractors to conduct various compliance and experimental crash tests related to motor vehicle safety. After completion of testing, GSA sells these vehicles as "not repairable for highway use" (used for parts or scrap metal only).

Buyers of crashed test vehicles must sign a disclaimer statement acknowledging in writing that he/she understands that the property is sold for parts or scrap only and is "not repairable for highway use (NRHU)"; agrees not to attempt to repair the vehicle for highway use; and further agrees to notify any subsequent purchaser of this NRHU stipulation.

Buyers of crashed test vehicles will receive a GSA Form 27A, "Purchaser's Receipt and Authority to Release Property," and a Standard Form (SF) 97, "The United States Government Certificate To Obtain Title To A Vehicle" marked with "NOT TO BE TITLED FOR HIGHWAY USE" statement. This SF97 is not a title; it is certificate to obtain a non-repairable or salvage certificate.

These provisions may also be applied to certain accident-damaged vehicles.

### State Sales and/or Use Tax

Purchasers of Federal personal property may be subject to payment of a State sales and/or use tax. The U.S. Government is not responsible for collection of State taxes. Purchasers may obtain information from a State tax office. Sales and/or use tax officials are permitted to examine records of Federal personal property sales to determine tax liability.

### Sales to Government Employees

GSA employees or spouse or minor child of GSA employees, or their agents, may not bid on Federal personal property. An employee of another agency may bid if he/she is not prohibited from doing so by his/her employing agency's rules or regulations.

### Special Security Notification

Bidders are warned that the misuse of items to compromise national security and/or to create or disseminate biological warfare agents is illegal. Further, the re-sale and/or exportation of certain technological items to countries subject to trade security controls is prohibited as outlined in the "Export Restriction Notice" referenced in the Other Special Requirements and Conditions below. Bidders may be subject to prosecution if items are used for illegal activity.

**Other Special Requirements and Conditions**

Please click here to view other special requirements and conditions pertaining to property that may be listed in the GSAAuctions.gov website.

Any offering from the U.S. General Services Administration, Federal Supply Service's Internet Website, www.GSAAuctions.gov, is subject to the Online Sales Terms and Conditions as well as the General Sales Terms and Conditions (Standard Form 114C, April 2001). To view pdf files, you need Adobe's Acrobat Reader. Download Adobe Reader for free, if you do not have it already.

I recognize that I am subject to the Online Sale Terms and Conditions, General Sale Terms and Conditions (Standard Form 114C, April 2001) and the Special Requirements and Conditions, and that they are applicable to any item offered on the GSAAuctions.gov website, I offer and agree to purchase the item(s) at the price(s) for each item(s) as indicated.

**Terms & Conditions Effective Date: 05/06/2012**
GSA reserves the right to change the online sale terms and conditions. Bidders are cautioned to periodically review these terms and conditions for possible changes.

```
REPORTING ACTIVITY                      LOCATION OF PROPERTY         REPORTED     NATL STOCK NO    1940-
                                                                                 AGENCY / BUREAU  4757
Illinois Federal Surplus Property       KASKASKIA REGIONAL PORT DISTRICT         ITEM CONTROL NO  4751F231220001A
1924 S. 10 1/2 Street                   EVANSVILLE MARINA                        GSA CONTROL NO   43-635286
                                                                                 AGY CONTROL NO
Springfield, IL-62703                   EVANSVILLE, IL-62242                     SURPLUS RL DATE  05/07/2013
                                                                                 EXCESS REL DATE  05/02/2013
POC NAME : SUSAN SOLON                  COML NO: 217-785-6903, (FAX)217-785-6905  CONDITION  CODE  7
    EMAIL : SUSAN.SOLON@ILLINOIS.GOV                                             UNIT OF ISSUE    EA
PODI NAME: ED WEILBACHER                COML NO: 618-282-3807, (FAX)618-282-3808  QUANTITY         1
    EMAIL : ED@KASKASKIAPORT.COM                                                 UNIT PRICE       721,502.00
                                                                                 ACQUISITON COST  721,502.00
PART NUMBER     :                                                                FAIR MARKET VAL
MANUFACTURER    : KINGS CRAFT                                                    DATE REPORTED    05/02/2013
MAKE            : KINGS CRAFT                                                    DATE MANUFACTUR  01/01/1987
MODEL           : 5F                                                             ACQN. DATE       07/02/2007
CL LINE ITEM#   :                                                                PHOTO AVAILABLE  Y
CL REF#         :                                                                EXCHANGE / SALE  N
PLANT CL CASE NO :                      VESSELS 50 FEET & OVER : Y               REIMBURSEMNT CD  2
APPROP. FUND DATA: SASPR                                      REIMB. OPTION :NR  REIMB. REQUIRED  N
SPECIAL DESC CODE: 000000                                                        DONA ELIGIBLITY  Y
SPECIAL DESC TEXT:                                                               CONTRCTR INV CD  N
NOUN NOMENCLATURE: M/V BLANKENSHIP FIRE/PATROL BOAT                              FSCAP-CODE
                                                                                 DEMIL-CODE       A
ITEM DESCRIPTION                                                                 ALC/STA DEP
                                                                                 HAZARD MAT IND
```

M/V BLANKENSHIP, 65'L, 18'W, 5'DRAFT. TWIN DRAFT V6-92TA DETROIT DIESEL ENGINES,
ALLISON GEAR BOAES, MDL: 20L AND 20R. ENGINES REBUILT APRIL 1998 AND GEAR BOXES
JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF 25KW, 1800 RPM (JUNE 1998) 120V, 1
PH, 60 HZ, 104A, 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A AND STB MDL: 25.0 MDK
AF/9492 7A. KUBOTA V2803B DIESEL ENGINE, 5 CYL, 46 BHP (34.7KW) MICHIGAN PAC-MAS
TER PROPELLER FOR HEAVY DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP CRACKED,
STRAINER CASTINGS CRACKED, NEEDS NEW BATTERIES. VESSEL INCLUDES FURUNO SONAR, AP
C POWER SUPPLY, RASIO "RAY JEFFER", MARINE COLOE ECHO DEPTH SOUNDER AND RADIO RM
. TWO WAY BASE STATION. VESSEL HAS BEEN STRIPPED OF INTERIOR WALLS AND FINISHES
FOR RESTORATION. THERE HAVE BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED HAZARDO
US MATERIALS, SPECIFICALLY PCBS OR ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT
. VESSEL AS-IS. INTERESTED PARTIES ENCOURAGED TO CONTACT PROPERTY CUSTODIAN.

Terms & Conditions   FAQ   Subscribe   Contact Us   Credit Card Form   DC Area Fixed Price Sales



Find us on
Facebook

Home     All Categories     Real Estate     Offline Sales

All Categories             SEARCH   Advanced Search          LOGIN   REGISTER

All Categories >

Warning: In order to view the most up-to-date information, please click the refresh button on your browser.

## Item Information

### FIRE/PATROL BOAT

|  |  |
|---|---|
| Sale-Lot Number: | 41QSCI13375001 |
| City, State: | Evansville, IL |
| Current Bid: | 30,056 USD |
| Bidders: | 15 |
| Close Time: | 05/30 05:38 PM CT (Closed) |
| Time Remaining: | |

Description     Bidding Details     Bid History     Item Location

M/V BLANKENSHIP, 65~L, 18~W, 5~DRAFT, ESTIMATED DATE OF MFG: 1987, TWIN DRAFT V6 -92TA DETROIT DIESEL ENGINES, ALLISON GEAR BOXES, MDL: 20L AND 20R. ENGINES REBUILT APRIL 1998 AND GEAR BOXES JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF 25KW, 1800 RPM (JUNE 1998) 120V, 1 PH, 60 HZ,104A, 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A AND STB MDL: 25.0 MDKAF/94927A. KUBOTA V2803B DIESEL ENGINE. 5 CYL, 46 BHP (34.7KW) MICHIGAN PAC-MASTER PROPELLER FOR HEAVY DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP CRACKED, STRAINER CASTINGS CRACKED, NEEDS NEW BATTERIES. VESSEL INCLUDES FURUNO SONAR, APC POWER SUPPLY, RADIO "RAY JEFFER", MARINE COLOR ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE STATION. VESSEL HAS BEEN STRIPPED OF INTERIOR WALLS AND FINISHES FOR RESTORATION. THERE HAVE BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT. REPAIRS MAY BE REQUIRED. PARTS MAY BE MISSING. DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN THE PROPERTY DESCRIPTION. HOWEVER, ABSENCE OF ANY INDICATED DEFICIENCIES DOES NOT MEAN THAT NONE EXISTS. 4751F231220001A

**THE CONDITION OF THE PROPERTY IS NOT WARRANTED.**

Click here for pricing guides.

SPECIAL INSPECTION INFORMATION

PLEASE CONTACT THE CUSTODIAN LISTED TO SCHEDULE AN

APPOINTMENT TO INSPECT THE LISTED PROPERTY.

Please contact the custodian for inspection dates and times and for removal arrangements.

PROPERTY REMOVAL: Due to security issues at property locations, successful bidders are required to contact the custodian prior to entering the facility to remove property, and at times, they are not permitted to use security phones. Therefore, successful bidders must communicate with the custodians in advance to make arrangements for removal and/or have a cell phone with them to contact them once they arrive at the secured location.

Successful bidders are cautioned that they will be responsible for loading, packing and removal of any and all property awarded to them from the exact place where the property is located, as indicated below.

**Property Location and inquiries/questions regarding property inspection and/or removal:**

Kaskaskia Regional Port District
Evansville Marina
Evansville, IL 62242

## Item Photos





Go Green... Reuse is Recycling!

Carbon savings for this item are not available.

Select an Equivalency:  Gallons of Gasoline Used

Click here for additional information.

A032

Contact: Ed Weilbacher
Phone: 618-282-3807
Fax: 618-282-3808
ED@KASKASKIAPORT.COM

For inquiries/questions regarding payment, contact the following sales office:

GSA, FAS, 4QSCC
SALES OFFICE
77 FORSYTH STREET
ATLANTA , GA 30303

Phone: 404-331-0040
Fax: 404-331-7584

For inquiries/questions regarding contractual issues, contact the following sales contracting
officer/property disposal specialist:

VICTORIA KNOTTS
Phone: 404-331-1190
VICTORIAC.KNOTTS@GSA.GOV

(*) Possible Extension. See Bidding Rules.

| | | |
|---|---|---|
| About GSA Auctions | Federal Acquisition Service | Terms & Conditions |
| Help | GSA Fleet Vehicle Sales | Protecting Your Privacy |
| FAQ | GSA Surplus Sales | Accessibility Policy |
| Sales Abbreviations | Real Property Disposal | System Status |
| RSS | Public Buildings Service | Browser Support |
| Credit Card Form | | |
| Contact Us | | |

Copyright © 2001 U.S. General Services Administration



## ~ You have the high bid for Sale lot # 41QSCI13375001

**GSAAuctions.GSACentralOffice@gsa.gov**                    Thu, May 30, 2013 at 6:39
<GSAAuctions.GSACentralOffice@gsa.gov>                                        PM
Reply-To: VICTORIAC.KNOTTS@gsa.gov
To: mmah902194@aol.com
Cc: sysadmin.gsaauctions@gsa.gov

> GSA FEDERAL ACQUISITION SERVICE
> OFFICE OF PERSONAL PROPERTY MANAGEMENT

Yasmin Saighi,
7543 South Richmond Ave
Tulsa, OK 74136

Dear Yasmin Saighi,
Congratulations!  You are the winning bidder for the
FIRE/PATROL BOAT.

Here are the details of your contract award.

Sale Lot Number:       41QSCI13375001
Contract Number:       GS04F13FBE8027
Item Name:             FIRE/PATROL BOAT
Your Bid/Award Amount:   $30056.00

This property must be paid for within 2 business days from the
date and time this email notification was sent to you. Your
payment should be made to the Regional Sales Office
provided at the end of this message. After your payment is processed,
a copy of your Purchaser's Receipt and Authority
to Release Property will automatically be emailed to you,
based upon the email address that was provided at the time of
registration, or will be either faxed or mailed to you,
contingent upon the information that was provided at the
time of registration.
Please note that this auction may or may not have required you
(as the successful bidder) to electronically or physically sign
documentation (such as the Statement of Intent) which is due to GSA at
page to find out if this was a requirement:
https://gsaauctions.gov/gsaauctions/aucdsclnk?SL=41QSCI13375001
If so, please complete, sign and return to the
Sales Contracting Officer listed below as soon as possible.

Property must be removed within 10 business days from the date and time
this email notification was sent to you. A signed purchaser's receipt
must be presented prior to removal of property to verify proof of
purchase; otherwise removal will not be permitted.  In addition,
person(s) or agent(s) attempting removal on your behalf must provide a

letter of authorization with your signature.  Failure to make payment
or remove the property within the specified time outlined in
GSA Auctions(R) on-line Sale Terms and Conditions constitutes a breach
of contract, and your contract will be terminated.  In addition to
contract termination, you will lose all rights, title and interest to
the property and may be liable for liquidated damages.

For your convenience, GSA Auctions(R) accepts secure online
payments. Credit card payments can be made via GSA Auctions(R)
from the "My Summary" page utilizing the "Trades" feature. Online
payments are processed by pay.gov, which is a secure government-wide
payment collection portal and transaction engine created and managed
by the U.S. Department of the Treasury's Financial Management
Service (FMS).

To make payment online, you must:

1. Login to GSA Auctions(R) with your username and password;
2. Select the "My Summary" option located on the light blue bar line;
3. Next, select the "Trades" tab; and
4. Then, locate the awarded item you wish to pay for online and select
   the "PayNow" option.

OR

Directly go to the trade page by clicking here:
https://gsaauctions.gov/gsaauctions/aucdsclnk?val=LOG+41QSCl13375001

GSA Auctions(R) accepts the following credit cards: American Express,
Discover/Novus, MasterCard and Visa. For the option of faxing credit
card payments, please go to
https://gsaauctions.gov/html/GSA/CreditCardPaymentForm.pdf for a credit
card form.  Please complete the form and submit credit card information
by express mail, priority mail, or fax(emailed credit card information
will not be accepted). Other methods of payment can be found in the
online Sale Terms and Conditions. Please refer there for detail.

Note: The credit card form is in Adobe Acrobat (PDF) format.  Adobe
Acrobat Reader can be downloaded for free at
http://www.adobe.com/products/acrobat/readstep.html.

If you make payment by check (bank check, business check, personal
check, US Treasury check, money order or cashier check), you authorize
GSA to process the payment as a check transaction. Checks are
processed through the Over the Counter Channel Application (OTCnet).
Checks will not be returned, but will be destroyed after processing.

Thank you for taking part in GSA Auctions(R). Your interest in the
GSA Sales program is greatly appreciated and we look forward to your
continued participation in future GSA surplus property sales.

Property Location and Custodian information:

Agency Name:          Kaskaskia Regional Port District
Address:              Evansville Marina

City:         Evansville

A035

State, Zip:          IL 62242
Point of Contact:    Ed Weilbacher
Phone:               618-282-3807
Fax:                 618-282-3808

For additional inquiries about payment and pickup of this item(s),
contact:

Regional Sales Office: GSA, FAS, 4QSCC
Address:             SALES OFFICE
                     77 FORSYTH STREET
City:                ATLANTA
State, Zip:          GA 30303
Phone:               404-331-0040
Fax:                 404-331-7584
Email:               GSAAuctions.SoutheastSunbelt@GSA.GOV

VICTORIA  KNOTTS
Sales Contracting Officer
VICTORIAC.KNOTTS@GSA.GOV
404-331-1190
—


This is a automated mail sent from GSA Auctions(SM)

A036

| BIDDER<br>NUMBER | PURCHASERS NAME<br>ADDRESS | LOT<br>NO. | BID AMOUNT |
|------|------|------|------|
| 124098 | SAIGHI              , YASMIN    ,<br>7543 SOUTH RICHMOND AVE<br>TULSA                    , OK 74136-0000<br>DAY:     918-494-3799  EXT.<br>EVENING: 918-494-3799<br>FAX:     918-492-2992<br>MMAH9021940AOL.COM | 1 | 30056.00 |

                                               TOTAL BIDS      30056.00


'I HAVE REVIEWED ALL LOT NUMBERS AND AMOUNTS AND VERIFY
THAT ALL TOTALS AND AMOUNTS CORRESPOND WITH THE BIDS
AND GSA FORMS 27/27A, NOTICE OF AWARD/PURCHASER'S
RECEIPT AND AUTHORITY TO RELEASE PROPERTY.  THE VALUE STATED
FOR EACH LOT IS CORRECT.'

Victoria C. Knatts    5/16/13

SIGNATURE, SALES CONTRACTING OFFICER  DATE


--------------------------------------  ----------------------
SIGNATURE, SALES MANAGER                DATE

A037



# . W: Release of Blankenship

**Solon, Susan** <Susan.Solon@illinois.gov>                    Tue, Oct 29, 2013 at 12:49 PM
To: Victoria Knotts - 4QSCA <victoriac.knotts@gsa.gov>

Susan D. Solon
CMS Client Manager
1924 S. 10 1/2 St.
Springfield, Illinois 62703
(office) 217.558.1667
(fax) 217.785.6905

**From:** edweilbacher [mailto:ed@kaskaskiaport.com]
**Sent:** Monday, July 01, 2013 9:55 AM
**To:** Solon, Susan
**Subject:** Release of Blankenship

Susan

I released the Blankenship to Yasmin Saighi through her husband Mr. Hassan.

Here is the documentation. Let me know if you need anything else.

Thanks for all of your help through this long ordeal. We really appreciate your assistance.

Ed Weilbacher

General Manager

Kaskaskia Regional Port District

154 S. Main St.

Red Bud, IL 62278

A054

618 282-3807 Voice

618 282-3808 FAX

618 975-5979 Cell

ed@kaskaskiaport.com

www.kaskaskiaport.com

---

**3 attachments**

Authorization From Yasmin Saighi.pdf
178K

Drivers License.pdf
157K

MV Blankenship Bill of Sale and Signature Sheet.pdf
536K

A055



| From: | Solon, Susan <Susan.Solon@Illinois.gov> |
| --- | --- |
| Sent: | Thursday, June 06, 2013 10:39 AM |
| To: | edweilbacher |
| Cc: | Philip, George |
| Subject: | FW: Purchaser's Receipt to Custodin2 for Sale/Lot 41QSCI13375/001 - Register No P43G0474 (IF YOU ARE NOT THE CUSTODIAN, PLEASE FORWARD THIS EMAIL TO THE CUSTODIAN) |

FYI

Susan D. Solon
CMS Client Manager
1924 S. 10 1/2 St.
Springfield, Illinois 62703
(office) 217.558.1667
(fax) 217.785.6905

-----Original Message-----
From: GSAAuctions.SoutheastSunbelt@gsa.gov [mailto:GSAAuctions.SoutheastSunbelt@gsa.gov]
Sent: Thursday, June 06, 2013 10:24 AM
To: Solon, Susan
Subject: Purchaser's Receipt to Custodin2 for Sale/Lot 41QSCI13375/001 - Register No P43G0474 (IF YOU ARE NOT THE CUSTODIAN, PLEASE FORWARD THIS EMAIL TO THE CUSTODIAN)

            GSA FEDERAL ACQUISITION SERVICE
       OFFICE OF PERSONAL PROPERTY MANAGEMENT


       PURCHASER'S RECEIPT   AND   AUTHORITY TO RELEASE PROPERTY
     --------------------------------------------------------
   1. FROM:               2. PAYMENT INFORMATION
      GSA, FAS, 4QSCC        A. TYPE
      SALES OFFICE, STE. 130     N REFUND DUE  Y PAID IN FULL
      77 FORSYTH STREET       B. AMOUNT: C. FORM OF PAYMENT: C
      ATLANTA             $30056.00
      GA 30303            D. REGISTER/REPORT NO.
      VICTORIA KNOTTS         (INTERNAL USE ONLY)
      TEL: (404)331-1190       P43G0474/4751F2-3122-0001-A
      FAX: (404)331-7584      E. REG TYPE: M (INTERNAL USE ONLY)
      VICTORIAC.KNOTTS@GSA.GOV    3. DEPOSIT INFORMATION
                     A. APPROPRIATION ACCOUNT NUMBER
            SASPR
    --------------------------------------------------------------
      ACKNOWLEDGEMENT IS MADE OF PAYMENT IN FULL FOR THE PROPERTY LISTED
      BELOW. RELEASE OF PROPERTY AT THE REQUEST OF THE PURCHASER IS AUTHORIZED.
      PURCHASER MUST PRESENT THIS DOCUMENT AT TIME OF REMOVAL.
    --------------------------------------------------------------

1

4. DATE PURCHASER MUST REMOVE    5. COLLECTION OFFICER
   PROPERTY BY, UNLESS NOTIFIED    /S/ 4G  4G
   BY GSA:  06/17/13            06/06/13

6. PURCHASER              7. OWNING AGENCY OR REPORTING OFFICE
   BIDDER NO.: 124098         Illinois Federal Surplus Property
   SAIGHI        ,         1924 S. 10 1/2 Street
   YASMIN
   7543 SOUTH RICHMOND AVE       Springfield
   TULSA          IL 62703
   OK 74136          SUSAN   SOLON
   TEL: (918)494-3799      TEL: (217)785-6903
   FAX: (918)492 2992      FAX: (217)785-6905
   MMAH902194@AOL.COM      ED@KASKASKIAPORT.COM

*N.H. Mahjunt*
*for*
*YASMIN SAIGHI*

              8B. SIGNATURE OF PURCHASER
                 OR DESIGNATED PERSON
8A. PROPERTY LOCATION      (ACCOMPANIED WITH WRITTEN AUTHORIZATION)
KASKASKIA REGIONAL PORT DISTRICT
EVANSVILLE MARINA
EVANSVILLE          8C. DATE
IL 62242
ED WEILBACHER
TEL: (618)282-3807      8D. EXCEPTIONS NOTED BELOW
FAX: (618)282-3808      _ YES _ NO
ED@KASKASKIAPORT.COM

          9. PROPERTY DESCRIPTION
A. SALE NO.      B. LOT NO.   C. CONTRACT NO.   D. QUANTITY  E. UNIT
   41QSCI13375      001      GS04F13FBE8027   1      LT
      M/V BLANKENSHIP, 65'L, 18'W, 5'DRAFT, ESTIMATED
      DATE OF MFG: 1987, TWIN DRAFT V6-92TA DETROIT
      DIESEL ENGINES, ALLISON GEAR BOXES, MDL: 20L AND
      20R. ENGINES REBUILT APRIL 1998 AND GEAR BOXES
      JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF
      25KW, 1800 RPM (JUNE 1998) 120V, 1 PH, 60
      HZ,104A, 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A
      AND STB MDL: 25.0 MDKAF/94927A. KUBOTA V2803B
      DIESEL ENGINE, 5 CYL, 46 BHP (34.7KW) MICHIGAN
      PAC-MASTER PROPELLER FOR HEAVY
      DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP
      CRACKED, STRAINER CASTINGS CRACKED, NEEDS NEW
      BATTERIES. VESSEL INCLUDES FURUNO SONAR, APC
      POWER SUPPLY, RADIO "RAY JEFFER", MARINE COLOR
      ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE
      STATION. VESSEL HAS BEEN STRIPPED OF INTERIOR
      WALLS AND FINISHES FOR RESTORATION. THERE HAVE
      BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED
      HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR

2

A057



# RE: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose

mmah902194@aol.com <mmah902194@aol.com>
To: VICTORIAC.KNOTTS@gsa.gov
Cc: ed@kaskaskiaport.com

Sun, Oct 27, 2013 at 2:50 PM

Mrs.Victoria Knotts
GSA contracting officer

via email

Subject: GSA failure to disclose known vital & crucial data in the sale of M/V Blankenship

Dear Mrs.Knots;

I purchased the Blankenship boat on May.30.2013 in good faith, counting on the GSA provided description to be accurate.

Yet, recently couple weeks ago, I was informed by several local residents of Evansville, IL, where the Blankenship was docked at the purchase date, and still there that the Blankenship did sink couple years ago, before the sale's date.

The sinking of Blankenship was a very well known event to most of the Evansville residents, whom I spoke to several in my recent investigation.

One resident did witness the sinking of Blankenship, and was physically there at the event, whereas the said resident did pump the water out of the Blankenship.Every one in Evansville, IL knew the history of the Blankenship & its sinking.

Furthermore the said resident visually did see both Blankenship detroit two engines & and the two generators were "totally sunk" and immersed in the water, wherefore the water line was above the engines heights. Other residents did witness also the sunken ship event.

The said resident also provided the attached photos of the sunken Blankenship.

Upon finding out this recent huge undisclosed fact by GSA, in the auction item's description, I contacted last week Detroit engine company and brief them with the situation. The company stated both engines need to be overhauled.

Attaching cost of overhauling for "ONE" engine of Blankenship boat from Detroit company's distributor.(both engines will cost approx $96,000 USD for overhaul).

Had I've known this crucial & vital info about the sunken ship, which should have been declared & disclosed in the sale item's description, I wouldn't bid on the vessel at all, or at least I wouldn't pay not even half what I paid for the Blankenship.

Notwithstanding I have so far invested in the Blankenship additional money, time, labor,parts before I knew this crucial fact, thus obtaining title for the ship in my name as customary.and required by the law to prove ownership.

Meanwhile; the custodian of the Blankenship Mr.Ed Weilbacher was courteous, hand out the vessel logbooks in time, and went out of his ordinary duty to extend help.

A058

I am awaiting your proper recourse action to be taken in lieu of this very crucial un-disclosed information by GSA about the Blankenship' sale

B. regards,

Yasmin Saighi
P.O.Box 471154
Tulsa, OK.74147
Tel:(918)-494-3799

**6 attachments**



**Blankenship-1.JPG**
1708K



**Blankenship-4[1].JPG**
3088K



**Blankenship-5.JPG**
1850K



**IMG_0138[1]**
1772K



**IMG_0147[1]**
2507K

**quote-Blankenship- Engine.pdf**
20K



# RE: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose

**Solon, Susan** <Susan.Solon@illinois.gov>                     Tue, Oct 29, 2013 at 10:06 AM
To: Victoria Knotts - 4QSCA <victoriac.knotts@gsa.gov>
Cc: "Howard, Curtis" <Curtis.Howard@illinois.gov>, "George, Philip" <Philip.George@illinois.gov>

Victoria,

It was never disclosed to me that the ship had experienced any sinking or any other incident of that nature. Attached are the minutes of the Tri-City Regional Port District; they had considered acquiring the ship but declined. No mention of a previous sinking was in their minutes (they are located in the same geographic area and would undoubtedly known of any incident impacting this ship).

Susan D. Solon
CMS Client Manager
1924 S. 10 1/2 St.
Springfield, Illinois 62703
(office) 217.558.1667
(fax) 217.785.6905

**From:** Victoria Knotts - 4QSCA [mailto:victoriac.knotts@gsa.gov]
**Sent:** Tuesday, October 29, 2013 7:46 AM
**To:** Solon, Susan
**Subject:** Fwd: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose

Susan,

Please see the below claim from Mr. Saighi concerning the sinking of the Blankenship.

---------- Forwarded message ----------
From: **Victoria Knotts - 4QSCA** <victoriac.knotts@gsa.gov>
Date: Mon, Oct 28, 2013 at 9:25 AM

Subject: Re: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose
To: "mmah902194@aol.com" <mmah902194@aol.com>
Cc: "ED@KASKASKIAPORT.COM" <ed@kaskaskiaport.com>, Heather Bischoff - 4QSCB
<heather.bischoff@gsa.gov>

This email is to inform you that I will research your below claim and will respond within the next 7-10 business days.

On Sun, Oct 27, 2013 at 2:50 PM, mmah902194@aol.com <mmah902194@aol.com> wrote:

Mrs.Victoria Knotts                                                                via email
GSA contracting officer

Subject: GSA failure to disclose known vital & crucial data in the sale of M/V Blankenship

Dear Mrs.Knots;

 I purchased the Blankenship boat on May.30.2013 in good faith, counting on the GSA provided description to be accurate.

Yet, recently couple weeks ago, I was informed by several local residents of Evansville, IL, where the Blankenship was docked at the purchase date, and still there that the Blankenship did sink couple years ago, before the sale's date.

The sinking of Blankenship was a very well known event to most of the Evansville residents, whom I spoke to several in my recent investigation.

One resident did witness the sinking of Blankenship, and was physically there at the event, whereas the said resident did pump the water out of the Blankenship.Every one in Evansville, IL knew the history of the Blankenship & its sinking.

Furthermore the said resident visually did see both Blankenship detroit two engines & and the two generators were "totally sunk" and immersed in the water, wherefore the water line was above the engines heights. Other residents did witness also the sunken ship event.

The said resident also provided the attached photos of the sunken Blankenship.

Upon finding out this recent huge undisclosed fact by GSA, in the auction item's description, I contacted last week Detroit engine company and brief them with the situation. The company stated both engines need to be overhauled.

Attaching cost of overhauling for "ONE" engine of Blankenship boat from Detroit company's distributor.(both engines will cost approx $96,000 USD for overhaul).

Had I've known this crucial & vital info about the sunken ship, which should have been declared & disclosed in the sale item's description, I wouldn't bid on the vessel at all, or at least I wouldn't pay not even half what I paid for the Blankenship.

Notwithstanding I have so far invested in the Blankenship additional money, time, labor,parts before I knew this crucial fact, thus obtaining title for the ship in my name as customary.and required by the law-to prove ownership.

Meanwhile; the custodian of the Blankenship Mr.Ed Weilbacher was courteous, hand out the vessel logbooks in time, and went out of his ordinary duty to extend help.

I am awaiting your proper recourse action to be taken in lieu of this very crucial un-disclosed information by GSA about the Blankenship' sale

B. regards,

Yasmin Saighi
P.O.Box 471154
Tulsa, OK.74147
Tel:(918)-494-3799

—

Victoria C. Knotts

Contracting Officer

404-331-1190

Fax 404-331-7584

—

Victoria C. Knotts

Contracting Officer

404-331-1190

Fax 404-331-7584

📄 **Minutes-03-12-121.pdf**
43K



# RE: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose

**Howard, Curtis** <Curtis.Howard@illinois.gov>                                    Tue, Oct 29, 2013 at 11:18 AM
To: "Solon, Susan" <Susan.Solon@illinois.gov>, Victoria Knotts - 4QSCA <victoriac.knotts@gsa.gov>
Cc: "George, Philip" <Philip.George@illinois.gov>

Wow, I have no knowledge of any issues with this claim of sinking either. That's not something that would go unnoticed.


v/r

Curtis A. Howard

Administrator

CMS Property Control

1924 S. 10 1/2 Street

Springfield, IL 62703

Voice: (217) 785-6903

Fax: (217) 785-6905

Email: curtis.howard@illinois.gov



**From:** Solon, Susan
**Sent:** Tuesday, October 29, 2013 9:06 AM
**To:** Victoria Knotts - 4QSCA
**Cc:** Howard, Curtis; George, Philip
**Subject:** RE: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose


Victoria,


It was never disclosed to me that the ship had experienced any sinking or any other incident of that nature. Attached are the minutes of the Tri-City Regional Port District; they had considered acquiring the ship but declined. No mention of a previous sinking was in their minutes (they are located in the same geographic area and would undoubtedly known of any incident impacting this ship).

Susan D. Solon
CMS Client Manager
1924 S. 10 1/2 St.
Springfield, Illinois 62703
(office) 217.558.1667
(fax) 217.785.6905


**From:** Victoria Knotts - 4QSCA [mailto:victoriac.knotts@gsa.gov]
**Sent:** Tuesday, October 29, 2013 7:46 AM
**To:** Solon, Susan
**Subject:** Fwd: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose


Susan,


Please see the below claim from Mr. Saighi concerning the sinking of the Blankenship.

———— Forwarded message ————
From: **Victoria Knotts - 4QSCA** <victoriac.knotts@gsa.gov>
Date: Mon, Oct 28, 2013 at 9:25 AM
Subject: Re: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose
To: "mmah902194@aol.com" <mmah902194@aol.com>
Cc: "ED@KASKASKIAPORT.COM" <ed@kaskaskiaport.com>, Heather Bischoff - 4QSCB
<heather.bischoff@gsa.gov>

This email is to inform you that I will research your below claim and will respond within the next 7-10 business days.


On Sun, Oct 27, 2013 at 2:50 PM, mmah902194@aol.com <mmah902194@aol.com> wrote:

Mrs.Victoria Knotts                                                                        via email
GSA contracting officer

Subject: GSA failure to disclose known vital & crucial data in the sale of M/V Blankenship

Dear Mrs.Knots;

 I purchased the Blankenship boat on May.30.2013 in good faith, counting on the GSA provided description to be
accurate.

Yet, recently couple weeks ago, I was informed by several local residents of Evansville, IL, where the
Blankenship was docked at the purchase date, and still there that the Blankenship did sink couple years ago,
before the sale's date.

The sinking of Blankenship was a very well known event to most of the Evansville residents, whom I spoke to

several in my recent investigation.

One resident did witness the sinking of Blankenship, and was physically there at the event, whereas the said resident did pump the water out of the Blankenship.Every one in Evansville, IL knew the history of the Blankenship & its sinking.

Furthermore the said resident visually did see both Blankenship detroit two engines & and the two generators were "totally sunk" and immersed in the water, wherefore the water line was above the engines heights. Other residents did witness also the sunken ship event.

The said resident also provided the attached photos of the sunken Blankenship.

Upon finding out this recent huge undisclosed fact by GSA, in the auction item's description, I contacted last week Detroit engine company and brief them with the situation. The company stated both engines need to be overhauled.

Attaching cost of overhauling for "ONE" engine of Blankenship boat from Detroit company's distributor.(both engines will cost approx $96,000 USD for overhaul).

Had I've known this crucial & vital info about the sunken ship, which should have been declared & disclosed in the sale item's description, I wouldn't bid on the vessel at all, or at least I wouldn't pay not even half what I paid for the Blankenship.

Notwithstanding I have so far invested in the Blankenship additional money, time, labor,parts before I knew this crucial fact, thus obtaining title for the ship in my name as customary.and required by the law to prove ownership.

Meanwhile; the custodian of the Blankenship Mr.Ed Weilbacher was courteous, hand out the vessel logbooks in time, and went out of his ordinary duty to extend help.

I am awaiting your proper recourse action to be taken in lieu of this very crucial un-disclosed information by GSA about the Blankenship' sale

B. regards,

Yasmin Saighi
P.O.Box 471154
Tulsa, OK.74147
Tel:(918)-494-3799

--

Victoria C. Knotts

Contracting Officer

404-331-1190

Fax 404-331-7584



# ʀe: Purchaser's Receipt for Blankenship

**Victoria Knotts - 4QSCA** <victoriac.knotts@gsa.gov>                Wed, Oct 30, 2013 at 1:30 PM
To: "Howard, Curtis" <Curtis.Howard@illinois.gov>
Cc: edweilbacher <ed@kaskaskiaport.com>, "Solon, Susan" <Susan.Solon@illinois.gov>

Thanks for all the information.

On Wed, Oct 30, 2013 at 10:22 AM, Howard, Curtis <Curtis.Howard@illinois.gov> wrote:

Victoria,

This should be reasonable grounds to deny the claim.

v/r

Curtis A. Howard

Administrator

CMS Property Control

1924 S. 10 1/2 Street

Springfield. IL 62703

Voice: (217) 785-6903

Fax: (217) 785-6905

Email: curtis.howard@illinois.gov

**From:** edweilbacher [mailto:ed@kaskaskiaport.com]
**Sent:** Wednesday, October 30, 2013 9:04 AM
**To:** Howard, Curtis; Solon, Susan
**Subject:** RE: Purchaser's Receipt for Blankenship

*Based on your reply below, it is your position that this vessel was in sound condition and afloat at the time of sale—at the he took possession?*

Yes. The vessel was in "sound condition" and afloat at the time of sale. It has always been afloat at this side of the dock for 2 years. The "sound condition" needs to be clarified. It was in a state of remodeling that was

**A069**

never completed. The photos of the interior were the photos that were characteristic of the condition that were posted on the web site at the time of the auction. There was an additional photo that was provided to all bidders that inquired about the condition of the vessel. That additional photo documented a gap in the bumper rail. See attached photo. This photo was also provided to the buyer during the auction period. The dip sticks on the engine were checked and there was no water in the engines. All bidders were aware of the condition. I made no assurances or guarantees that the engines ran.

*In the photos attached, is this your dock where its moored?*

The vessel is docked at our dock but not in the location as shown in the photos. The vessel is docked on the river side of the large deck barge and has been in that location for approximately the past two years. It was docked in this location during the GSA Auction. The pictures in the GSA posting were of the vessel at this location. It was open to the public for inspection.

In the photo provided it was docked on the land side of our courtesy dock and I understood that the vessel was actually sitting on the ground in the water.

*Did this sinking occur prior to the GSA Sale?*

I was unaware that the boat was in that situation. I was never informed that the boat "sunk". I never saw the picture of the vessel taking on water until this claim.

*Did something happen while it was being stored for this buyer after the sale?*

Nothing has happened to this boat since the sale. The buyer attempted to remove it in early Sept. He had a person agree to tow it to New Athens, IL and store it at the Marina there. I understand that the person pulling the vessel did not have a big enough boat to pull it and after going up river a short distance they returned the vessel to the deck barge dock.

Many people have tried to help the buyer but he does not want to spend any money to move it or scrap it. Another person has offered to tow it to his oxbow and store it there over the winter.

Other bidders in the GSA Auction that lost out have inquired about why the boat is still at the dock. One has even contacted the buyer to buy the boat.

Since the vessel is not welcome at this location and he is not current on any dock fees we are considering this vessel to be abandoned.

Ed Weilbacher

General Manager

Kaskaskia Regional Port District

154 S. Main St.

Red Bud, IL 62278

618 282-3807 Voice

618 282-3808 FAX

618 975-5979 Cell

ed@kaskaskiaport.com

www.kaskaskiaport.com

**From:** Howard, Curtis [mailto:Curtis.Howard@Illinois.gov]
**Sent:** Tuesday, October 29, 2013 4:34 PM
**To:** Solon, Susan; ED@KASKASKIAPORT.COM
**Subject:** RE: Purchaser's Receipt for Blankenship

Hi Ed,

Based on your reply below, it is your position that this vessel was in sound condition and afloat at the time of sale—at the he took possession?

In the photos attached, is this your dock where its moored?

Did this sinking occur prior to the GSA Sale?

Did something happen while it was being stored for this buyer after the sale?

We need more information to understand how and when this happened.

v/r

Curtis A. Howard

Administrator

CMS Property Control

1924 S. 10 1/2 Street

Springfield, IL 62703

Voice: (217) 785-6903

Fax (217) 785-6905

Email: curtis.howard@illinois.gov

**From:** Solon, Susan
**Sent:** Tuesday, October 29, 2013 4:26 PM
**To:** Howard, Curtis
**Subject:** FW: Purchaser's Receipt for Blankenship

Susan D. Solon
CMS Client Manager
1924 S. 10 1/2 St.
Springfield, Illinois 62703
(office) 217.558.1667
(fax) 217.785.6905

**From:** edweilbacher [mailto:ed@kaskaskiaport.com]
**Sent:** Tuesday, October 29, 2013 3:21 PM
**To:** Solon, Susan
**Cc:** Donna Gariglietti
**Subject:** RE: Purchaser's Receipt for Blankenship

Susan

Mr. Moh Hassan Mahjoub is the husband to the purchaser of the Blankenship – Yasmin Saighi. He was the authorized agent to accept the boat. We had Mr. Mahjoub's wife FAX an authorization to us on June 29, 2013 to accept the property. Mr. M. H. Mahjoub signed the release on June 27, 2013.

Mr. Mahjoub **never inspected the boat prior to bidding on the vessel.** His first time to see the vessel was on June 27, 2013. He asked if he could harbor it there for a few weeks extra until he could make arrangements to have it moved. I agreed to allow him to keep it there for no longer than 2 months – July and August for $100.00 per month. Due to the upcoming harvest and the proximity to the barge grain loading facility we needed to have the vessel moved. We provided Mr. Mahjoub several contacts that could assist him to move it including a diesel mechanic.



November 19, 2013

Mrs. Yasmin Saighi
7543 South Richmond Avenue
Tulsa, Ok 74136

Dear Mr. Saighi:

This is in response to your email dated October 27, 2013, regarding contract GS04F13FBE8027, on sale 41QSCI13375, Lot 1, which consist of the M/V Blankenship sold on GSAAuctions.gov, internet online auctions that closed on May 30, with a removal date of June 17, 2013.

In your email you stated "I was informed by several local residents of Evansville, IL, where the Blankenship was docked at the purchase date, and still there that the Blankenship did sink a couple of years ago. You also stated "Furthermore the said resident visually did see both Blankenship Detroit two engine and the two generators were total sunk and immersed in the water, wherefore the water line was above the engines heights. Other resident did witness the sunken ship event."

As the Contracting Officer of this sale, I contacted Ed Weilbacher, the custodian and he confirmed the Blankenship was in sound condition and afloat at dock for 2 years prior to this sale. The dip sticks on the engines were checked and there was no water in the engines. The Blankenship was in the state of remodeling that was never completed. The custodian also confirmed that all bidders were made aware of the condition and he made no assurances or guarantees that the engines ran.

On June 29, 2013, you authorized your husband Mr. Mahjoub to remove the vessel on your behalf. An attempt to remove the Blankenship was made in early September. The individual that you hired for towing did not have a big enough engine, and after going up river for a short distance, the Blankenship was returned to the deck barge dock.

You made arrangements with the Mr. Weilbacher to harbor the Blankenship for a few weeks paying storage of $100.00 per month and he provided you with several contacts that could assist you with towing and a diesel mechanic.

You agreed to the following terms and conditions of the sale prior to becoming an active bidder .

**U.S. General Services Administration**
77 Forsyth Street, SW
Atlanta, GA 30303-3458
www.gsa.gov

## Inspection of Property

Bidders agree to physically inspect the property upon which they bid or thereby waive the opportunity to conduct a physical inspection. In waiving their inspection rights, bidders bear the risk for any gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage that would have been revealed by physical inspection. There are times when access to property may be limited due to property being located in a restricted area. GSA will do all that it can to ensure that photos and detailed descriptions are provided in these instances.

During an inspection at a government facility, actions taken by bidders are at their own risk. The U.S. Government will not be liable for any or all debts, judgments, costs, demands, suits, actions, or claims of any nature arising from or incident to their inspection at the Government facility, including any injuries that a bidder incurs due to their own actions or neglect on during their visit to a Government facility

## Claims of Mis-description

If items have been awarded but not paid for and the successful bidder feels that the property is mis-described, he/she must follow these procedures: A written claim needs to be submitted to the Sales Contracting Officer within 15 calendar days from the date of award requesting release of contractual obligation for reasons satisfying that of a mis-description. No verbal contact with the custodian or the Sales Contracting Officer or any other federal official will constitute a notice of misdescription.

When items are awarded and payment has been received, regardless of the removal status (removal may or may not have occurred), the successful bidder must submit a written notice to the Sales Contracting Officer within 15 calendar days from the date of payment email notification (the Purchaser's Receipt). If property has been removed and the claim is accepted by the Sales Contracting Officer, the purchaser must maintain the property in its purchased condition and return it at their expense to the location designated by the Sales Contracting Officer or any other federal official.

## Condition of Property

**The following replaces Clause No. 2 of the SF114C.** Condition of property is not warranted. Deficiencies, when known, have been indicated in the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection. Please also reference the Inspection of Property clause.

## Description Warranty & Refunds

The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further

cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.

The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

The clauses listed above were expressly noted in the terms and conditions of this sale when you first registered.

Sincerely,

Victoria C. Knotts
Sales Contracting Officer



# Re: M/V Blankenship- Sale lot number- 41QSCl13375001/ GSA failure to disclose/Follow up

**mmah902194@aol.com** <mmah902194@aol.com>                     Sun, Dec 1, 2013 at 8:39 PM
To: victoriac.knotts@gsa.gov

Dear Mrs.Knotts;

I acknowledge receiving your certified letter pertaining GSA failure to disclose crucial sale data.

FYI; I have inspected the vessel along with a vessel expert before I did bid on the Blankenship vessel. Furthermore at the inspection there was no water inside the engines room, and by all means no way on earth neither I nor the expert will know that the vessel had sunken.

Yet at the inspection, we found out the rotten vynle wall on the starboard side, which was caused by continious rain poured in from the 2 broken windows on that side. I did submit in my previous email photos of the rotten walls' vynle.

Furthermore what at stake here is the failure of the GSA/custodian of the Blankenship to inform GSA about the accurate condition of the Blankeship although the custodian & the long time Kaskasian port secretary were fully aware of the sunken events, and I have 5 witnesses whom will testify to these facts.
One of the witness is the one who provided the photos, and he rescued the sunken ship.The said person owned the Blankeship before the sale, thereafter Mr.Ed Weilbacher( the custodian) reneged his commitment to the said owner.

As you know the whole sunken ship won't worth what I paid had GSA disclosed the vital & crucial sunken event before the sale.

WHEREFORE: I am suggesting two options to resolve this issue:

1 -GSA to refund full purchase price and money invested by me so far on the Blankenship. OR
2- GSA refund 50 percent of the purchase price.

I dealt with GSA for 7 years, and all previous purchases, GSA was honest and forthcoming on the items' conditions except this sale

In the normal course of GSA sale,US government and GSA won't withhold crucial information when they list the items but this time the GSA acted differently.

Looking forward to hearing from you.

B. regards,

Yasmin Saighi
P.O.Box 471154
Tulsa, OK.74147
Tel: 918-494-3799

——Original Message——
From: Victoria Knotts - 4QSCA <victoriac.knotts@gsa.gov>



December 11, 2013

Mrs. Yasmin Saighi
7543 South Richmond Avenue
Tulsa, Ok 74136

Dear Mrs. Saighi:

This is in response to your email dated December 1, 2013, regarding contract GS04F13FBE8027, on sale 41QSCI13375, Lot 1, which consist of the M/V Blankenship sold on GSAAuctions.gov, internet online auctions that closed on May 30, with a removal date of June 17, 2013 in the amount of $30,056.

You stated in your email that you inspected the vessel with a vessel expert before you bid on the Blankenship. On June 27, your husband Mr. M.H. Majoub inspected the vessel for the first time and you faxed an authorization for him to remove on your behalf. He then signed and dated the paid purchaser's receipt on June 29, and asked if he could harbor the Blankenship for a few weeks until he could make arrangements for removal. An attempt to remove the Blankenship was made in early September. The Blankenship was to be towed to New Athens, IL and stored at the Marina. The boat that was used was not large enough to pull the Blankenship and therefore returned to the barge dock.

The GSAAuctions.gov online solicitation specifically read:

M/V BLANKENSHIP, 65'L, 18'W, 5'DRAFT, ESTIMATED
DATE OF MFG: 1987, TWIN DRAFT V6-92TA DETROIT
DIESEL ENGINES, ALLISON GEAR BOXES, MDL: 20L AND
20R. ENGINES REBUILT APRIL 1998 AND GEAR BOXES
JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF
25KW, 1800 RPM (JUNE 1998) 120V, 1 PH, 60
HZ,104A, 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A
AND STB MDL: 25.0 MDKAF/94927A. KUBOTA V2803B
DIESEL ENGINE, 5 CYL, 46 BHP (34.7KW) MICHIGAN
PAC-MASTER PROPELLER FOR HEAVY
DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP
CRACKED, STRAINER CASTINGS CRACKED, NEEDS NEW
BATTERIES. VESSEL INCLUDES FURUNO SONAR, APC
POWER SUPPLY, RADIO "RAY JEFFER", MARINE COLOR
ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE
STATION. VESSEL HAS BEEN STRIPPED OF INTERIOR

WALLS AND FINISHES FOR RESTORATION. THERE HAVE
BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED
HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR
ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT.
REPAIRS MAY BE REQUIRED. PARTS MAY BE MISSING.
DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN
THE PROPERTY DESCRIPTION. HOWEVER, ABSENCE OF ANY
INDICATED DEFICIENCIES DOES NOT MEAN THAT NONE EXISTS."

When you registered as a bidder you agreed to the terms and conditions of the sales before being
accepted as an active bidder. The terms and conditions of the sale, under "Claims of Mis-
description, states "If items have been awarded but not paid for and the successful bidder feels
that the property is mis-described, he/she must follow these procedures: A written claim needs to
be submitted to the Sales Contracting Officer within 15 calendar days from the date of award
requesting release of contractual obligation for reasons satisfying that of a mis-description. No
verbal contact with the custodian or the Sales Contracting Officer or any other federal official
`will constitute a notice of misdescription.

When items are awarded and payment has been received, regardless of the removal status
(removal may or may not have occurred), the successful bidder must submit a written notice to
the Sales Contracting Officer within 15 calendar days from the date of payment email
notification (the Purchaser's Receipt). If property has been removed and the claim is accepted by
the Sales Contracting Officer, the purchaser must maintain the property in its purchased
condition and return it at their expense to the location designated by the Sales Contracting
Officer or any other federal official."

The terms and conditions of a sale under " Condition for Property , states, **The following
replaces Clause No. 2 of the SF114C.** Condition of property is not warranted. Deficiencies,
when known, have been indicated in the property descriptions. However, absence of any
indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the
condition of the item through physical inspection. Please also reference the Inspection of
Property clause.

Also under" Description Warranty and Refunds state " The Government warrants to the original
purchaser that the property listed in the GSAAuctions.gov website will conform to its written
description. Features, characteristics, deficiencies, etc. not addressed in the description are
excluded from this warranty. GSA further cautions bidders that GSA's written description
represents GSA's best effort to describe the item based on the information provided to it by the
owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite
major missing parts and/or restrictions with regards to usage may occur."

The Government does not warrant the merchantability of the property or its purpose. The
purchaser is not entitled to any payment for loss of profit or any other money damages - special,
direct, indirect, or consequential.

In the terms and conditions of the sale that you agreed to prior to becoming an active bidder states claims of mis-description must be received within 15 calendar days from the date of payment. Your payment was processed on June 6. The first email I received from you was dated October 28, 2013, 5 months after the sale had closed..

In the terms and condition since the acceptance period clause, claims of mis-description, condition of property clause, description warranty clause, and refund claim clause, was noted in the terms and conditions of this sale when you first registered, your request for a full refund, money invested or 50% of the purchase price is denied.

This is the Contracting Officer's final decision. Subject to the Contract Disputes Act of 1978, Public Law 95-5563, this decision may be appealed to the Civilian Board of Contract Appeals, within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision this action is taken.

The notice shall indicate an appeal is intended, should reference this decision, and identify the contract number.

If you appeal to the Civilian Board of Contract Appeal, you may, solely at your selection, proceed under the Board's small claims procedures for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less.

In lieu of appealing to the cognizant Civilian Board of Contract Appeals, you may bring actions directly in the United States Court of Federal Claims within 12 months of the date you received this decision.

Sincerely,

Victoria C. Knotts
Contracting Officer

Enclosures

| NOTICE OF APPEAL | DATE<br>1/19/2014 | OMB APPROVAL NO.<br>**3090-0221** |
|---|---|---|

TO:    Civilian Board of Contract Appeals

I/We hereby appeal the final decision of  Victoria C. Knotts                                issued        12/11/2013          ,
(Name of Contracting Officer)                                                   (Date)

in connection with a dispute under Contract No.  GS04F13FBE8027        .  This contract was awarded    05/30/2013
(Date)

for   41QSCI13375, Lot 1, which consist of the M/V Blacnkenship sold on GSAAuctions.gov
(Type of commodity, service, or construction)

by   GSA Southeast Sunbelt Region                                        ,  Evansville, IL
(Name of agency and organizational unit)                                      (City and State)

1. DESCRIBE THE NATURE OF THE DISPUTE INVOLVED IN THE FINAL DECISION AND ANY OTHER CIRCUMSTANCES GIVING RISE TO THIS APPEAL:

PLEASE SEE ATTACHED

2. DESCRIBE THE RELIEF WHICH YOU SEEK INCLUDING AN ESTIMATE OF THE AMOUNT OF MONEY IN CONTROVERSY, IF ANY, AND IF KNOWN:
I am requesting the return of $30,056.00 in exchange of the Boat and reimbursement for expenses in the amount of $2,200.
Further, I am requesting punitive damages in the amount in excess of $50,000.00.

| APPELLANT | ATTORNEY FOR APPELLANT |
|---|---|
| NAME   Yasmin Saighi | NAME |
| TITLE | FIRM |
| STREET    7543 South Richmond Ave. | STREET |
| CITY   Tulsa | CITY |
| STATE    ZIP CODE    TELEPHONE NUMBER<br>OK           74136        (918)492-2992 | STATE         ZIP CODE         TELEPHONE NUMBER<br>(    ) |
| APPELLANT'S SIGNATURE | ATTORNEY'S SIGNATURE |

**GENERAL SERVICES ADMINISTRATION**                                          **GSA 2465** (REV. 6/2007)
AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION NOT USABLE

On May 30, 2013, I purchased the M/V Blankenship (the "Boat") for $30.056.00 from GSA as advertised in the attached Exhibit "A," which is fully incorporated herein. Prior to purchasing the Boat, my agent, Moh H. Mahjoub, inspected the Boat at the GSA's custodian, Kaskaskia Regional Port District, Evansville Marina, Evansville, IL 62242.

During his inspection, the Boat incurred approximately 10 inches of water due to rain entering from a broken starboard window. The Boat showed no visible (to the naked eye) signs of being sunk at that time. Further, the Boat had been marketed as under remodeling. However, agents of GSA in possession of the Boat knew that the Boat had been sunken and failed to disclose such fact in order to deter from devaluing the boat.

The custodian of the Boat, Mr. Ed Weilbacher of Kaskaskia Regional Port District, and his secretary had first-hand knowledge that the Boat sank prior to my purchase, since it happened when the Boat was in their custody and care. Pictures of the Boat when it sank prior to my purchase are attached as Exhibit "B," which are fully incorporated herein. As contracting agents of GSA, such knowledge was known or should have been known to GSA's contracting agent, Mrs. Victoria C. Knotts. This failure to disclose such a material fact led to the detrimental decision to purchase the Boat at a value for an un-sunken Boat. The cost of overhauling one engine in order to remedy the problem caused by GSA's custody and care of the boat amounts to $52,322.72, as shown in the attached Exhibit "C" and is fully incorporated herein.

The lack of disclosure of this material fact was only first discovered after the purchase was made. Further, the weakened hull from the first breach, and inevitable submersion, caused a second breach and submersion of the Boat, which is still in the possession of Mr. Weilbacher.

I brought my claim to Mrs. Knotts' via email on October 27, 2013 and received a denial of claim in Mrs. Knotts' letter dated December 11, 2013. These communications are attached as Exhibit "D," and fully incorporated herein.

Therefore, I am submitting this Notice of Appeal and elect for an accelerated procedure for claims of $100,000 or less. The actions of GSA's contracting officer, Victoria C. Knotts, and GSA's custodian, Mr. Ed Weilbacher, amount to fraud and breach of contract.

Fraud includes any statement or act that is intended to deceive another party in order to influence him or her to enter into the contract. In addition, the party must have relied on the fraudulent statement or act in entering into the contract. Fraud consists of:

> 1. A person's concealing something that he or she knows is the truth; or

> 2. A person's remaining silent when he or she had a duty to speak. Seller had a duty to tell Buyer about a material fact that was not disclosed because Seller knew Buyer was relying on the lack of disclosure in valuing Seller's property, or

> 3. Any other statement or act intended to deceive.

Here, Mrs. Knotts and Mr. Weilbacher knew that I was purchasing the Boat for $30,056.00 based upon the lack of disclosure that the Boat had sunk. I justifiably relied on such lack of disclosure, causing me to purchase government property which was not held out as encompassing the true characteristics of the Boat. My purchase was at a value which does not merit the Boat's quality and Mrs. Knotts and Mr. Weilbacher knew of such fact. Relying on the lack of such disclosures I have incurred a loss of $30,056.00 plus $2,200.00 in related expenses incurred resulting from tis non-disclosure.

Had Mrs. Knotts disclosed the fact that the Boat was sunken, I would NOT have purchased the Boat for $30,056.00. Further, Mrs. Knotts now clearly makes such disclosure for boats which have sunken as shown in the attached Exhibit "E," which is fully incorporated herein.

Mrs. Knotts actions amount to a breach of contract. A contract is breached or broken when a party does not do what he or she promised to do in the contract. The sale of the Boat is subject to GSA Auctions' Terms and Conditions, attached as Exhibit "F," and fully incorporated herein.

Such terms state that "Contracts resulting from the sale of any offer in the GSAAuctions.gov website are subject to the Contract Disputes Act of 1978 (41 USC 7101-7109), as amended." Such act states that "[e]ach claim by a contractor against the Federal Government relating to a contract and each claim by the Federal Government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim."

Further, the GSA Auctions' Terms and Conditions states that "[w]hen items are awarded and payment has been received, regardless of the removal status (removal may or may not have occurred), the successful bidder must submit a written notice to the Sales Contracting Officer within 15 calendar days from the date of payment email notification (the Purchaser's Receipt)." However, this breach of contract results from Mrs. Knotts non-disclosure of the Boat being sunken when the Boat was advertised on GSAAuctions.gov. Therefore, the breach of contract claim did not accrue until the undisclosed fact was discovered on October 25, 2013, when Walter G. Terry notified my agent of his first-hand knowledge that the Boat had been sunken.

Mr. Terry was the gentleman who recovered the Boat after it initially sank prior to my purchase. Mr. Terry also notified my agent that the description used by Mrs. Knotts of GSA regarding the "VESSEL HAS BEEN STRIPPED OF INTERIOR WALLS AND FINISHES FOR RESTORATION" resulted from mold build up due to the Boat being sunken. Within two (2) days, my agent submitted my claim to Mrs. Knotts. This is well within the time period prescribed by the terms and conditions and also under the Contract Disputes Act of 1978. Mr. Terry may be contacted at 618-973-4040 or at WallyTerry@akrentalsllc.com.

Therefore, Mrs. Knotts mis-discription and failing to remedy such mis-description resulted in a breach of contract. Furthermore, such actions by GSA agents amount to fraud. My damages are as outlined in the Notice of Appeal.

Terms & Conditions | FAQ | Subscribe | Contact Us | Credit Card Form | DC Area Fixed Price Sales





Home | All Categories | Real Estate | Offline Sales | My Preferences | My Summary | My Favorites | My Messages

All Categories | Advanced Search

All Categories >

**Warning:** In order to view the most up-to-date information, please click the refresh button on your browser.

## Item Information

### FIRE/PATROL BOAT

| | |
|---|---|
| Sale-Lot Number: | 41QSCI13375001 |
| City, State: | Evansville, IL |
| Current Bid: | 30,056 USD |
| Bidders: | 15 |
| Close Time: | 05/30 05:38 PM CT (Closed) |
| Time Remaining: | |

**Item Photos**



  

   



---

**Description** | Bidding Details | Bid History | Item Location

M/V BLANKENSHIP, 65–L, 18–W, 5–DRAFT, ESTIMATED DATE OF MFG: 1987, TWIN DRAFT V6-92TA DETROIT DIESEL ENGINES, ALLISON GEAR BOXES, MDL: 20L AND 20R. ENGINES REBUILT APRIL 1998 AND GEAR BOXES JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF 25KW, 1800 RPM (JUNE 1998) 120V, 1 PH, 60 HZ,104A, 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A AND STB MDL: 25.0 MDKAF/94927A. KUBOTA V2803B DIESEL ENGINE, 5 CYL, 46 BHP (34.7KW) MICHIGAN PAC-MASTER PROPELLER FOR HEAVY DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP CRACKED, STRAINER CASTINGS CRACKED, NEEDS NEW BATTERIES. VESSEL INCLUDES FURUNO SONAR, APC POWER SUPPLY, RADIO "RAY JEFFER", MARINE COLOR ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE STATION. VESSEL HAS BEEN STRIPPED OF INTERIOR WALLS AND FINISHES FOR RESTORATION. THERE HAVE BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT. REPAIRS MAY BE REQUIRED. PARTS MAY BE MISSING. DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN THE PROPERTY DESCRIPTION. HOWEVER, ABSENCE OF ANY INDICATED DEFICIENCIES DOES NOT MEAN THAT NONE EXISTS. 4751F231220001A

**THE CONDITION OF THE PROPERTY IS NOT WARRANTED.**

Click here for pricing guides.

**SPECIAL INSPECTION INFORMATION**

PLEASE CONTACT THE CUSTODIAN LISTED TO SCHEDULE AN

APPOINTMENT TO INSPECT THE LISTED PROPERTY.

Please contact the custodian for inspection dates and times and for removal arrangements.

PROPERTY REMOVAL: Due to security issues at property locations, successful bidders are required to contact the custodian prior to entering the facility to remove property, and at times, they

♻ **Go Green... Reuse is Recycling!**

Carbon savings for this item are not available.

Select an Equivalency: Long Flight Miles

Click here for additional information.

are not permitted to use security phones. Therefore, successful bidders must communicate with the custodians in advance to make arrangements for removal and/or have a cell phone with them to contact them once they arrive at the secured location.

Successful bidders are cautioned that they will be responsible for loading, packing and removal of any and all property awarded to them from the exact place where the property is located, as indicated below.

**Property Location and inquiries/questions regarding property inspection and/or removal:**

Kaskaskia Regional Port District
 Evansville Marina
 Evansville, IL 62242

Contact: Ed Weilbacher
 Phone: 618-282-3807
 Fax: 618-282-3808
 ED@KASKASKIAPORT.COM

**For inquiries/questions regarding payment, contact the following sales office:**

GSA, FAS, 4QSCC
 SALES OFFICE
 77 FORSYTH STREET
 ATLANTA , GA 30303

Phone: 404-331-0040
 Fax: 404-331-7584

**For inquiries/questions regarding contractual issues, contact the following sales contracting officer/property disposal specialist:**

VICTORIA KNOTTS
 Phone: 404-331-1190
 VICTORIAC.KNOTTS@GSA.GOV

(*) Possible Extension. See Bidding Rules.



About GSA Auctions
Help
FAQ
Sales Abbreviations
RSS
Credit Card Form
Contact Us

Federal Acquisition Service
GSA Fleet Vehicle Sales
GSA Surplus Sales
Real Property Disposal
Public Buildings Service

Terms & Conditions
Protecting Your Privacy
Accessibility Policy
System Status
Browser Support





Copyright © 2001 U.S. General Services Administration

A086




A088



A089



**Exhibit C**    1 of 1    Page(s)

# QUOTE

## 1400 Destrehan Avenue -FMWGD
## HARVEY, LA 70058

| Date | Quote Number |
|---|---|
| 10/21/13 | **7386416 SQ** |
| **Customer Number** | **Customer Inquiry Nbr** |
| **204568** | **QUOTE ONLY** |
| **Branch No.** | |
| **031000** | |

| 504 | 347-4326 | Main Line |
|---|---|---|
| 504 | 341-2084 | FAX |
| 800 | 535-4185 | Toll Free |

## Quote Accepted By:_____

THE QUOTE EVIDENCED BY THIS QUOTE IS SUBJECT TO TERMS AND CONDITIONS ON THE FRONT AND REVERSE SIDE OF THIS DOCUMENT.

| QUOTE TO: | SHIP TO: |
|---|---|
| **MASTER/VISA (Harvey)** | **MASTER/VISA (Harvey)** |
| **STEWART & STEVENSON SERVICES, INC.** | **STEWART & STEVENSON SERVICES, INC.** |
| **1400 DESTREHAN AVENUE** | **1400 DESTREHAN AVENUE** |
| **HARVEY LA 70058** | **HARVEY LA 70058** |

| Sales Person | Freight | Final Destination | Quote Validity |
|---|---|---|---|
| **RODRIGUJ** | Best Way - prepaid/add | USA & TERRITORIAL WATERS | 11/21/13 |

| LINE # | PART/DESCRIPTION | WEIGHT | UM | ORDER B/O | SHIP | UNIT PRICE | EXTENDED PRICE | TAX |
|---|---|---|---|---|---|---|---|---|
| | *Attention:* | | | | | | | |
| | *SAM* | | | | | | | |
| | *Shipping Instructions:* | | | | | | | |
| | : | | | | | | | |
| 1.000 | RE6V92T    6V92T ENG | | | | | 42,623.4000 | | |
| | Core Deposit | | | | | 4,375.0000 | | |
| | | | EA | 1.000 | 1.000 | 46,998.4000 | 46,998.40 | Y |
| | HANDLING CHARGE: | | | | | | 1,114.44 | |
| | . . . . . . . . . . . . . . . Tax Group Summary . . . . . . . . . . . . . . . | | | | | | | |
| | V190511020 | 8.750 | | 48,112.84 | | | 4,209.88 | |
| | St: LA | 4.000 | | 48,112.84 | | 1,924.52 | | |
| | Co: JEFFERSON | 4.750 | | 48,112.84 | | 2,285.36 | | |
| | Ct: HARVEY | | | 48,112.84 | | | | |
| | Ds: HARVEY | | | 48,112.84 | | | | |
| | **Tax ID Sold To:**    **Tax ID Ship To:** | | | | | | | |
| | **Tax Cert:**    **Tax Expl Code:**    S | | | | | | | |

| TERMS | COD    Cash on Delivery | TOTAL WEIGHT | 4,365.152 | TOTAL | USD | 52,322.72 |
|---|---|---|---|---|---|---|

WE CANNOT ACCEPT MERCHANDISE RETURNED WITHOUT OUR PERMISSION. A HANDLING CHARGE WILL BE MADE ON ALL RETURNED MERCHANDISE.

## Customer Copy

# Terms and Conditions

1. DEFINITIONS: As used in these General Terms and Conditions of Sale, the term "Goods" shall mean the machinery, equipment, products and other tangible property from time to time sold or offered for sale by Seller; the term "Services" shall mean the labor from time to time provided by Seller; the term "Seller" shall mean the entity selling or offering such Goods or Services; and the term "Buyer" shall mean the person to whom such Goods or Services is sold or offered.

2. OTHER TERMS: If this is an acceptance or written confirmation, it is expressly made conditional upon your assent to any terms contained herein that are additional to or different from those of your offer. If this is an offer, your acceptance hereof is expressly limited to the specific terms contained herein. These General Terms and Conditions of Sale shall contain all of the terms applicable to any sale of or offer to sell Goods or Services. Seller specifically objects to any additional or different terms contained in any document used by Buyer. Any acceptance of Goods or Services by Buyer or any payment by Buyer of any part of the purchase price shall be deemed to be a waiver of any additional or different terms contained in Buyer's documents and an acceptance of all of the General Terms and Conditions of Sale, notwithstanding the acknowledgment by Seller of Buyer's purchase order or other document provided by Buyer. No order for Goods or Services shall be binding on Seller until it is acknowledged in writing by Seller.

3. SUPERVISION: All Services performed by Seller at a location owned or controlled by Buyer shall be performed by Seller's personnel under the supervision and control of Buyer.

4. ACCESS, PERMITS AND UTILITIES: Seller's employees shall have free and unobstructed access to the site at which Services are to be performed. Buyer shall furnish safe and proper equipment, parts, tools and working conditions, safe storage for Seller's property, and all necessary lifting equipment, steam, electricity, gas, oil, water and other utilities necessary to perform the Services. Buyer shall obtain all licenses, registrations, and permits necessary for Seller to perform the Services.

5. PRICE: Unless otherwise stated, all prices are in U.S. Dollars. Prices relating to Goods are ex factory, place of manufacture. Labor rates shall be subject to change without notice and shall apply from the time of dispatch until return or dispatch to another job. No amount is included in any price for sales, use, privilege, excise or other taxes imposed on or measured by the gross receipts from the sale of the Goods or Services. Buyer shall promptly pay any such charge directly to the governmental authority assessing them or reimburse on demand any such charges paid by Seller.

6. PAYMENTS: All payments shall be in the agreed upon currency, without offset, backcharge, retention or withholding of any kind. All invoices shall be payable within ten (10) days. Any amounts not paid when due will be subject to interest at the rate of 1-1/2% per month or the highest nonusurious rate permitted by applicable law, whichever is less. At the request of Seller, payments will be made through a confirmed irrevocable letter of credit in form and on banks acceptable to Seller.

7. DELIVERY: Delivery to the carrier, including carriers owned or controlled by Seller, or notification that Goods are ready for shipment shall constitute delivery to the Buyer for all purposes.

8. SHIPMENT: Prices include the cost of packing and crating required for normal domestic transportation. Freight charges included in any price are subject to adjustment for actual cost incurred by Seller. In the event that any Goods will be shipped out of the continental limits of the Untied States of America, all fees and expenses relating to export documentation, export packing, marking or importation into the country of destination shall be the responsibility of the Buyer.

9. ACCEPTANCE: All Goods shall be finally inspected and accepted within thirty (30) days after delivery. All Services shall be inspected and accepted within thirty days after they are performed. Failure of Buyer to provide Seller with an itemized list of defects within such thirty (30) days or to permit Seller a reasonable opportunity to correct any listed defects shall be deemed acceptance of the Goods or Services. In the event of multiple shipments or extended Services, each individual shipment shall be separately accepted and Services shall be periodically inspected and accepted. Buyer expressly waives any right to reject Goods or Services that substantially conform to the specifications relating thereto and any right to revoke acceptance after such thirty (30) day period.

10. DELAYS: Seller shall have no liability for any failure to deliver the Goods or perform Services to Buyer if such failure arises from causes beyond the reasonable control of Seller, including but not limited to, delays of suppliers or carriers, government actions, shortages of materials, labor difficulties, fires, floods, acts of God and the effects of civil disobedience.

11. CHANGES: Seller reserves the right to change the details of any Goods provided that such change shall not impair the performance or critical dimensions of such Goods.

12. ADDITIONAL COSTS: In addition to the purchase price, Buyer shall pay to Seller any costs incurred as a result of (a) changes in the Goods or Services or delays in delivery requested by Buyer; (b) delays in delivery arising from Buyer's failure to provide information, drawings or materials; or (c) changes in the laws, codes, rules or regulations applicable to the Goods or Services after the date of quotation by Seller.

**13. WARRANTY: To the extent that Goods are warranted by their original manufacturers, and to the extent that such warranties are assignable to Buyer, Seller assigns to Buyer any rights and remedies it has relating to such Goods. Seller further agrees to perform any obligations of the original manufacturer under the manufacturer's warranty to the extent that such manufacturer authorizes Seller to perform such warranty obligations. SELLER WARRANTS GOODS MANUFACTURED AND SERVICES PERFORMED BY IT PURSUANT TO THE WARRANTY POLICY STATEMENTS ISSUED FROM TIME TO TIME BY SELLER. EXCEPT AS SET FORTH IN THE APPLICABLE WARRANTY POLICY STATEMENT, SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO GOODS OR SERVICES, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

14. CANCELLATION: Orders for Goods or Services may not be cancelled by Buyer after acceptance by Seller. Seller shall be entitled to request reasonable assurances that Buyer will accept and pay for any Goods or Services, including but not limited to requiring payments on account or in advance, if there are reasons to believe that Buyer will not accept and pay for Goods or Services when delivered. Until such assurances are received, Seller shall be entitled to stop work on the Goods or Services, cancel any agreement to sell the Goods or Services, sue to recover the purchase price or any expenses incurred to the date of cancellation, resell the Goods or Services to a third party, or exercise any other remedy available at law or in equity for breach of contract.

15. INTERPRETATION: Any sale or agreement to sell Goods or Services shall be interpreted according to the laws of the State of Texas, excluding any provision thereof that would direct the application of the laws of another jurisdiction. Buyer agrees that any sale of or agreement to sell Goods or Services will be deemed to be made and performed solely in Harris County, Texas to the exclusion of all other jurisdictions.

**16. LIMITATION OF LIABILITY: Neither Seller nor Buyer shall have any liability to the other for any incidental or consequential damages arising from the sale of Goods or Services or the failure of either party to fully perform any agreement to sell Goods or Services. SELLER SHALL HAVE NO LIABILITY FOR ANY LOSS, DAMAGE OR COST ARISING FROM THE FAILURE TO DISCOVER OR REPAIR LATENT DEFECTS OR DESIGN DEFECTS IN ANY GOODS OR SERVICES. BUYER SPECIFICALLY WAIVES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ANY CLAIM FOR INCIDENTAL, RESERVOIR, SPECIAL, INDIRECT, CONSEQUENTIAL AND EXEMPLARY DAMAGES, INCLUDING BUT NOT LIMITED TO MULTIPLE DAMAGES UNDER ANY DECEPTIVE TRADE PRACTICE OR CONSUMER PROTECTION LAWS.**

17. WAIVER: The waiver by either Seller or Buyer of any breach under these General Terms and Conditions of Sale shall not be deemed to be a waiver of any subsequent breach of a like or different nature. The failure to enforce any provision of the General Terms and Conditions of Sale shall not be deemed a waiver of such provision.

18. ARBITRATION: Any dispute arising from or relating to the sale of Goods or Services, including the interpretation of these General Terms and Conditions of Sale, shall be resolved by binding arbitration according to the **Stewart & Stevenson Arbitration Program.**

**19. INDEMNITY (INCLUDING FOR NEGLIGENCE): BUYER HEREBY ASSUMES AND AGREES TO INDEMNIFY, DEFEND, PROTECT, SAVE, KEEP, AND HOLD HARMLESS SELLER, ITS AGENTS, EMPLOYEES, SUBCONTRACTORS, AND INVITEES FROM AND AGAINST ANY AND ALL LOSSES, DAMAGES, INJURIES, CLAIMS, CAUSES OF ACTION, LIABILITIES, DEMANDS AND EXPENSES (INCLUDING ATTORNEY FEES AND OTHER LEGAL EXPENSES) OF WHATSOEVER KIND AND NATURE, FOR INJURY TO, OR ILLNESS OR DEATH OF ANY PERSON AND FOR ALL DAMAGE TO, LOSS OR DESTRUCTION OF PROPERTY (COLLECTIVELY LOSSES), RELATING TO, CONNECTED WITH IN ANYWAY, ARISING OUT OF, OR ON ACCOUNT OF, THE GOODS OR SERVICES PURCHASED HEREUNDER, INCLUDING, WITHOUT LIMITATION, ANY SUCH LOSSES CAUSED OR OCCASIONED BY ANY NEGLIGENT ACT OR OMISSION OF SELLER, ITS OFFICERS, AGENTS, EMPLOYEES, SUBCONTRACTORS, INVITEES OR LICENSEES. The foregoing indemnity is a material part of this transaction, supported by and in consideration of a reduction in the purchase price and is intended to apply notwithstanding the joint or concurrent negligence of Seller.**

20. RISK OF LOSS: Seller shall bear the risk of loss of the Goods until the Goods are delivered to the carrier, including carriers owned or controlled by Seller or notification to Buyer that the Seller is ready for shipments whichever occurs first. Thereafter, Buyer shall bear the entire risk of loss of the Goods.

21. ENTIRE AGREEMENT: These Terms and Conditions of Sale constitute the entire agreement of the parties and supersede all discussions, arrangements, negotiations, representations and warranties, if any, relating to the Goods or Services covered hereby.

22. EXPORT LAWS: This commodity may be subjected to the Export Laws of the United States.



# Fwd: RE: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose
1 message

**mmah902194@aol.com** <mmah902194@aol.com>                                    Sun, Jan 5, 2014 at 5:15 PM
To: samer.mahjoub.law@gmail.com


-----Original Message-----
From: mmah902194 <mmah902194@aol.com>
To: VICTORIAC.KNOTTS <VICTORIAC.KNOTTS@GSA.GOV>
Cc: ed <ed@kaskaskiaport.com>
Sent: Sun, Oct 27, 2013 1:50 pm
Subject: RE: M/V Blankenship- Sale lot  number- 41QSCI13375001/ GSA failure to disclose

Mrs.Victoria Knotts
                                 via email
GSA contracting officer

Subject: GSA failure to disclose known vital & crucial data in the sale
of M/V Blankenship

Dear Mrs.Knots;

 I purchased the Blankenship boat on May.30.2013 in good faith,
counting on the GSA provided description to be accurate.

Yet, recently couple  weeks ago, I was informed by several local
residents of Evansville, IL, where the Blankenship was docked at the
purchase date, and still there that the Blankenship did sink couple
years ago, before the sale's date.

The sinking of Blankenship  was a very well known event to most of the
Evansville residents, whom I spoke to several in my recent
investigation.

One resident did witness the sinking of Blankenship, and was physically
there at the event, whereas the said resident did pump the water out of
the Blankenship.Every one in Evansville, IL knew the history of the
Blankenship & its sinking.

Furthermore the said resident visually did see both Blankenship detroit
two engines & and the two generators were "totally sunk" and immersed
in the water, wherefore the water line was above the engines heights.
Other residents did witness also the sunken ship event.

The said resident also provided the attached photos of the sunken
Blankenship.

Upon finding out this recent huge undisclosed fact by GSA, in the
auction item's description, I contacted last week Detroit engine
company and brief them with the situation. The company stated both
engines need to be overhauled.

Attaching cost of overhauling for "ONE" engine of Blankenship boat from

A092

Detroit company's distributor.(both engines will cost approx $96,000 USD for overhaul).

Had I've known this crucial & vital info about the sunken ship, which should have been declared & disclosed in the sale item's description, I wouldn't bid on the vessel at all, or at least I wouldn't pay not even half what I paid for the Blankenship.

Notwithstanding I have so far invested in the Blankenship additional money, time, labor,parts before I knew this crucial fact, thus obtaining title for the ship in my name as customary.and required by the law to prove ownership.

Meanwhile; the custodian of the Blankenship Mr.Ed Weilbacher was courteous, hand out the vessel logbooks in time, and went out of his ordinary duty to extend help.

I am awaiting your proper recourse action to be taken in lieu of this very crucial un-disclosed information by GSA about the Blankenship' sale

B. regards,

Yasmin Saighi
P.O.Box 471154
Tulsa, OK.74147
Tel:(918)-494-3799

---

**6 attachments**

**Blankenship-1.JPG**
1708K

**Blankenship-4[1].JPG**
3088K

**Blankenship-5.JPG**
1850K

**IMG_0138[1]**
1772K

**IMG_0147[1]**
2507K

**quote-Blankenship-_Engine.pdf**
20K



November 19, 2013

Mrs. Yasmin Saighi
7543 South Richmond Avenue
Tulsa, Ok 74136

Dear Mr. Saighi:

This is in response to your email dated October 27, 2013, regarding contract GS04F13FBE8027, on sale 41QSCI13375, Lot 1, which consist of the M/V Blankenship sold on GSAAuctions.gov, internet online auctions that closed on May 30, with a removal date of June 17, 2013.

In your email you stated "I was informed by several local residents of Evansville, IL, where the Blankenship was docked at the purchase date, and still there that the Blankenship did sink a couple of years ago. You also stated "Furthermore the said resident visually did see both Blankenship Detroit two engine and the two generators were total sunk and immersed in the water, wherefore the water line was above the engines heights. Other resident did witness the sunken ship event."

As the Contracting Officer of this sale, I contacted Ed Weilbacher, the custodian and he confirmed the Blankenship was in sound condition and afloat at dock for 2 years prior to this sale. The dip sticks on the engines were checked and there was no water in the engines. The Blankenship was in the state of remodeling that was never completed. The custodian also confirmed that all bidders were made aware of the condition and he made no assurances or guarantees that the engines ran.

On June 29, 2013, you authorized your husband Mr. Mahjoub to remove the vessel on your behalf. An attempt to remove the Blankenship was made in early September. The individual that you hired for towing did not have a big enough engine, and after going up river for a short distance, the Blankenship was returned to the deck barge dock.

You made arrangements with the Mr. Weilbacher to harbor the Blankenship for a few weeks paying storage of $100.00 per month and he provided you with several contacts that could assist you with towing and a diesel mechanic.

You agreed to the following terms and conditions of the sale prior to becoming an active bidder .

**U.S. General Services Administration**
77 Forsyth Street, SW
Atlanta, GA 30303-3458
www.gsa.gov

A094

**Inspection of Property**

Bidders agree to physically inspect the property upon which they bid or thereby waive the opportunity to conduct a physical inspection. In waiving their inspection rights, bidders bear the risk for any gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage that would have been revealed by physical inspection.There are times when access to property may be limited due to property being located in a restricted area. GSA will do all that it can to ensure that photos and detailed descriptions are provided in these instances.

During an inspection at a government facility, actions taken by bidders are at their own risk. The U.S. Government will not be liable for any or all debts, judgments, costs, demands, suits, actions, or claims of any nature arising from or incident to their inspection at the Government facility, including any injuries that a bidder incurs due to their own actions or neglect on during their visit to a Government facility

**Claims of Mis-description**

If items have been awarded but not paid for and the successful bidder feels that the property is mis-described, he/she must follow these procedures: A written claim needs to be submitted to the Sales Contracting Officer within 15 calendar days from the date of award requesting release of contractual obligation for reasons satisfying that of a mis-description. No verbal contact with the custodian or the Sales Contracting Officer or any other federal official will constitute a notice of misdescription.

When items are awarded and payment has been received, regardless of the removal status (removal may or may not have occurred), the successful bidder must submit a written notice to the Sales Contracting Officer within 15 calendar days from the date of payment email notification (the Purchaser's Receipt). If property has been removed and the claim is accepted by the Sales Contracting Officer, the purchaser must maintain the property in its purchased condition and return it at their expense to the location designated by the Sales Contracting Officer or any other federal official.

**Condition of Property**

**The following replaces Clause No. 2 of the SF114C.** Condition of property is not warranted. Deficiencies, when known, have been indicated in the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection. Please also reference the Inspection of Property clause.

**Description Warranty & Refunds**

The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further

cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.

The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

The clauses listed above were expressly noted in the terms and conditions of this sale when you first registered.

Sincerely,

Victoria C.Knotts
Sales Contracting Officer



## Fwd: Re: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose/Follow up

1 message

**mmah902194@aol.com** <mmah902194@aol.com>                    Sun, Jan 5, 2014 at 5:20 PM
To: samer.mahjoub.law@gmail.com


-----Original Message-----
From: mmah902194 <mmah902194@aol.com>
To: victoriac.knotts <victoriac.knotts@gsa.gov>
Sent: Sun, Dec 1, 2013 7:39 pm
Subject: Re: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA failure to disclose/Follow up

Dear Mrs.Knotts;

I acknowledge receiving your certified letter pertaining GSA failure to
disclose crucial sale data.

FYI; I have inspected the vessel along with a vessel expert before I
did bid on the Blankenship vessel. Furthermore at the inspection there
was no water inside the engines room, and by all means no way on earth
neither I nor the expert will know that the vessel had sunken.

Yet at the inspection, we found out the rotten vynle wall on the
starboard side, which was caused by continious rain poured in from the
2 broken windows on that side. I did submit in my previous email photos
of the rotten walls' vynle.

Furthermore what at stake here is the failure of the GSA/custodian of
the Blankenship to inform GSA about the accurate condition of the
Blankenship although the custodian & the long time Kaskasian port
secretary were fully aware of the sunken events, and I have 5 witnesses
whom will testify to these facts.
One of the witness is the one who provided the photos, and he rescued
the sunken ship.The said person owned the Blankeship before the sale,
thereafter Mr.Ed Weilbacher( the custodian) reneged his commitment to
the said owner.

As you know the whole sunken ship won't worth what I paid had GSA
disclosed the vital & crucial sunken event before the sale.

WHEREFORE: I am suggesting two options to resolve this issue:

1 -GSA to refund full purchase price and money invested by me so far on
the Blankenship. OR
2- GSA refund 50 percent of the purchase price.

I dealt with GSA for 7 years, and all previous purchases, GSA was
honest and forthcoming on the items' conditions except this sale

In the normal course of GSA sale,US government and GSA won't withhold
crucial information when they list the items but this time the GSA
acted differently.

A097

Looking forward to hearing from you.

B. regards,

Yasmin Saighi
P.O.Box 471154
Tulsa, OK.74147
Tel: 918-494-3799

-----Original Message-----
From: Victoria Knotts - 4QSCA <victoriac.knotts@gsa.gov>
To: mmah902194 <mmah902194@aol.com>
Sent: __aolWsbDateToL10n__Tue, Nov 19, 2013 6:01 pm__aolWsbDateToL10n__
Subject: Re: M/V Blankenship- Sale lot number- 41QSCI13375001/ GSA
failure to disclose/Follow up

The certified letter was mailed today.



December 11, 2013

Mrs. Yasmin Saighi
7543 South Richmond Avenue
Tulsa, Ok 74136

Dear Mrs. Saighi:

This is in response to your email dated December 1, 2013, regarding contract
GS04F13FBE8027, on sale 41QSCI13375, Lot 1, which consist of the M/V Blankenship sold
on GSAAuctions.gov, internet online auctions that closed on May 30, with a removal date of
June 17, 2013 in the amount of $30,056.

You stated in your email that you inspected the vessel with a vessel expert before you bid on the
Blankenship. On June 27, your husband Mr. M.H. Majoub inspected the vessel for the first time
and you faxed an authorization for him to remove on your behalf. He then signed and dated the
paid purchaser's receipt on June 29, and asked if he could harbor the Blankenship for a few
weeks until he could make arrangements for removal. An attempt to remove the Blankenship
was made in early September. The Blankenship was to be towed to New Athens, IL and stored
at the Marina. The boat that was used was not large enough to pull the Blankenship and therefore
returned to the barge dock.

The GSAAuctions.gov online solicitation specifically read:

M/V BLANKENSHIP, 65'L, 18'W, 5'DRAFT, ESTIMATED
DATE OF MFG: 1987, TWIN DRAFT V6-92TA DETROIT
DIESEL ENGINES, ALLISON GEAR BOXES, MDL: 20L AND
20R. ENGINES REBUILT APRIL 1998 AND GEAR BOXES
JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF
25KW, 1800 RPM (JUNE 1998) 120V, 1 PH, 60
HZ,104A, 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A
AND STB MDL: 25.0 MDKAF/94927A. KUBOTA V2803B
DIESEL ENGINE, 5 CYL, 46 BHP (34.7KW) MICHIGAN
PAC-MASTER PROPELLER FOR HEAVY
DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP
CRACKED, STRAINER CASTINGS CRACKED, NEEDS NEW
BATTERIES. VESSEL INCLUDES FURUNO SONAR, APC
POWER SUPPLY, RADIO "RAY JEFFER", MARINE COLOR
ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE
STATION. VESSEL HAS BEEN STRIPPED OF INTERIOR

U.S. General Services Administration
77 Forsyth Street, SW
Atlanta, GA 30303-3458
www.gsa.gov

WALLS AND FINISHES FOR RESTORATION. THERE HAVE
BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED
HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR
ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT.
REPAIRS MAY BE REQUIRED. PARTS MAY BE MISSING.
DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN
THE PROPERTY DESCRIPTION. HOWEVER, ABSENCE OF ANY
INDICATED DEFICIENCIES DOES NOT MEAN THAT NONE EXISTS."

When you registered as a bidder you agreed to the terms and conditions of the sales before being accepted as an active bidder. The terms and conditions of the sale, under "Claims of Mis-description, states "If items have been awarded but not paid for and the successful bidder feels that the property is mis-described, he/she must follow these procedures: A written claim needs to be submitted to the Sales Contracting Officer within 15 calendar days from the date of award requesting release of contractual obligation for reasons satisfying that of a mis-description. No verbal contact with the custodian or the Sales Contracting Officer or any other federal official `will constitute a notice of misdescription.

When items are awarded and payment has been received, regardless of the removal status (removal may or may not have occurred), the successful bidder must submit a written notice to the Sales Contracting Officer within 15 calendar days from the date of payment email notification (the Purchaser's Receipt). If property has been removed and the claim is accepted by the Sales Contracting Officer, the purchaser must maintain the property in its purchased condition and return it at their expense to the location designated by the Sales Contracting Officer or any other federal official."

The terms and conditions of a sale under " Condition for Property , states, "**The following replaces Clause No. 2 of the SF114C.** Condition of property is not warranted. Deficiencies, when known, have been indicated in the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection. Please also reference the Inspection of Property clause.

Also under" Description Warranty and Refunds state " The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur."

The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

In the terms and conditions of the sale that you agreed to prior to becoming an active bidder states claims of mis-description must be received within 15 calendar days from the date of payment. Your payment was processed on June 6. The first email I received from you was dated October 28, 2013, 5 months after the sale had closed..

In the terms and condition since the acceptance period clause, claims of mis-description, condition of property clause, description warranty clause, and refund claim clause, was noted in the terms and conditions of this sale when you first registered, your request for a full refund, money invested or 50% of the purchase price is denied.

This is the Contracting Officer's final decision. Subject to the Contract Disputes Act of 1978, Public Law 95-5563, this decision may be appealed to the Civilian Board of Contract Appeals, within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision this action is taken.

The notice shall indicate an appeal is intended, should reference this decision, and identify the contract number.

If you appeal to the Civilian Board of Contract Appeal, you may, solely at your selection, proceed under the Board's small claims procedures for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less.

In lieu of appealing to the cognizant Civilian Board of Contract Appeals, you may bring actions directly in the United States Court of Federal Claims within 12 months of the date you received this decision.

Sincerely,

Victoria C. Knotts
Contracting Officer

Enclosures

Terms & Conditions | FAQ | Subscribe | Contact Us | Credit Card Form | DC Area Fixed Price Sales



...a GovSales.gov partner


Find us on Facebook

Home | All Categories | Real Estate | Offline Sales

All Categories | Advanced Search

All Categories >

**Warning:** In order to view the most up-to-date information, please click the refresh button on your browser.

## Item Information

### KATALINA YACHT

| | |
|---|---|
| Sale-Lot Number: | 41QSCI14823001 |
| City, State: | Ponce, PR |
| Current Bid: | 5,611 USD |
| Bidders: | 6 |
| Close Time: | 01/07 06:18 PM CT (Closed) |
| Time Remaining: | |

## Item Photos





| Description | Bidding Details | Bid History | Item Location |
|---|---|---|---|

50 FT. YACHT THE VESSEL HAS DUAL DETROIT DIESEL ENGINES 8V92. THE VESSEL WAS SANK IN A MAJOR STORM. IT WAS RAISED AND THE OIL WAS DRAINED & REFILLED, THE ENGINES HAVE BEEN STARTED MULTIPLE TIMES, THE STARBOARD ENGINE NEEDS WORK, ALL OF THE INTERIOR TRIM, COMFORTS AND COMPONENTS AS WELL AS, THE ELECTRONICS WATER DAMAGED AND MILDEWED, MFG: CHEOY LEE, MDL: SPORTFISHERMAN. ******************SALVAGE****************** 47329233500001

**THE CONDITION OF THE PROPERTY IS NOT WARRANTED.**

Click here for pricing guides.

**SPECIAL INSPECTION INFORMATION**

PLEASE CONTACT THE CUSTODIAN LISTED TO SCHEDULE AN

APPOINTMENT TO INSPECT THE LISTED PROPERTY

Please contact the custodian for inspection dates and times and for removal arrangements.

PROPERTY REMOVAL: Due to security issues at property locations, successful bidders are required to contact the custodian prior to entering the facility to remove property, and at times, they are not permitted to use security phones. Therefore, successful bidders must communicate with the custodians in advance to make arrangements for removal and/or have a cell phone with them to contact them once they arrive at the secured location.

Successful bidders are cautioned that they will be responsible for loading, packing and removal of any and all property awarded to them from the exact place where the property is located, as indicated below.

**Property Location and inquiries/questions regarding property inspection and/or removal:**

Ponce Yacht & Fishing Club

3631 Paseo Laguancha

## Go Green... Reuse is Recycling!

Carbon savings for this item are not available.

Select an Equivalency: Long Flight Miles

Click here for additional information.

A102

Ponce, PR 00716

Contact: Sophia Orta
 Phone: 787-842-9003
 Fax: 787-844-1300
ANTHONYJ.JOHNSON@MARYLAND.GOV

**For inquiries/questions regarding payment, contact the following sales office:**

GSA, FAS, 4QSCC
 SALES OFFICE
 77 FORSYTH STREET
 ATLANTA , GA 30303

Phone: 404-331-0040
 Fax: 404-331-7584

**For inquiries/questions regarding contractual issues, contact the following sales contracting
 officer/property disposal specialist:**

VICTORIA KNOTTS
 Phone: 404-331-1190
VICTORIAC.KNOTTS@GSA.GOV

(*) Possible Extension. See Bidding Rules.



About GSA Auctions    Federal Acquisition Service    Terms & Conditions
Help    GSA Fleet Vehicle Sales    Protecting Your Privacy
FAQ    GSA Surplus Sales    Accessibility Policy
Sales Abbreviations    Real Property Disposal    System Status
RSS    Public Buildings Service    Browser Support
Credit Card Form
Contact Us





Copyright © 2001 U.S. General Services Administration

A103



> **Notice:** GSA Auctions? offers for sale personal property (e.g.cars, computers, heavy equipment, jewelry, furniture, etc.) and real property (real estate). Please note that these Online Sale Terms and Conditions apply to personal property ONLY. Real property sales have separate terms and conditions as specified in the Invitation for Bids (IFB) prepared for each sale. Users/Bidders must complete the Bidder Registration and Bid Form included in the IFB and provide the specified registration deposit before they will be allowed to bid on that property.

> **Warning:** GSA reserves the right to change the online sale terms and conditions. Bidders are cautioned to periodically review these terms and conditions for possible changes.

## Bidder Information & Registration

### Eligibility of Bidders

Bidders must be at least 18 years of age.Bidders will be required to provide their birth date at registration. A bidder's birth date will be used only to verify bidder's eligibility. This information is protected by the Privacy Act, 5 U.S.C 552a. In addition, bidders must not be debarred from doing business with the Government. GSA will verify that individuals and companies are not debarred by checking their information against the Excluded Parties List System (EPLS). The EPLS is the electronic version of the Lists of Parties Excluded from Federal Procurement and Non-procurement Programs (Lists), which identifies those parties excluded throughout the U.S. Government (unless otherwise noted) from receiving Federal contracts or certain subcontracts and from certain types of Federal financial and non financial assistance and benefits.

### U.S. Citizenship

Bidding is not limited to U.S. citizens exclusively. However due to National Security and Export restrictions, some items shall only be sold to U.S. Citizens.

### Acceptance Period

By marking the required box at the end of the online sale terms and conditions during registration and submitting a bid, the bidder agrees to the Terms and Conditions of sale and to pay for and remove the property by the dates and times specified in the contract award email notification, if the bid is accepted.

### Bidders Indebted to the Government

The bidder warrants, by accepting the online sale terms and conditions and submitting a bid, which he/she is not delinquent in paying for previous purchases of Federal personal property and any related charges. Indebted bidders will be ineligible for contract awards. Bidders will not be able to bid on items specified on this website until all debts have been cleared.

### Registration

A credit card is required for all registered users in our online community. Credit card validation assists in the prevention of fraudulent bidding activity and ensures that bidders are prepared to accept responsibility for their bidding activity and all submitted bids are valid. This card number is recorded but will not be automatically charged if a bidder is the successful bidder of an item. For security reasons and to prevent fraudulent bidding activities, all registered bidders are subject to billing address verification. **No P.O. Box address will be accepted unless accompanied by a street address**. By entering the credit card information, you are attesting you are an authorized user of the card.

It is required that the bidder create and secure their username and password. GSA Auctions? does not issue usernames nor does it provide a

temporary password if a bidder has forgotten theirs.

Further, bidders shall refrain from creating usernames that are considered profane or offensive in nature. If such names are discovered or otherwise brought to the attention of GSA, the bidder will be contacted and asked to re-register using a more appropriate username, and the "offensively named" account will be blocked to prevent further use.

**Debt Collection Improvement Act of 1996**
In accordance with Public Law No. 104-134, Section 31001, The Debt Collection Improvement Act of 1996, the Tax Identification Number (TIN) must be provided by anyone conducting business with the Federal Government, from which a debt to the Government may arise. **Individuals cannot successfully register to bid on items without providing a TIN.** A TIN is defined as an individual's Social Security Number (SSN) or business entity's Employer Identification Number (EIN). TIN validation also assists in the prevention of fraudulent bidding activity and ensures that bidders are prepared to accept responsibility for their bidding activity and all submitted bids are valid.

**Submission of Bid**

Bids are only accepted in whole U.S. Dollar amounts. Do not enter dollar signs ($) commas (,) or cents (¢). Bidding will begin and end at the dates and times specified for each lot in the GSAAuctions.gov website Please note: The times displayed at GSA Auctions? are in **Central time**. In addition, certain auctions are designed to extend the closing time if there is bidding activity. Bidders are urged to review the bidding details and enhanced bidding logic at GSA Auctions? for auction details. It is the responsibility of the bidder to follow-up on the status of his/her bid.

When bidding on property via GSAAuctions.gov website, funds or monies should be readily available; GSA is not obligated to wait for bidders to arrange for financing.

Condition No. 17 of the Standard Form 114C applies to an item(s)/lot(s) where the total bid exceeds $25,000.
See Code of Federal Regulations (CFR, Title 41, Section 101-45.313.3).

**Consideration of Bid**

It is the policy of GSA Auctions? to monitor bids and other activity to ensure the proper use of our site. The Government reserves the right to reject any and all bids. Bids can be rejected for any reason, especially those containing inaccurate, incomplete or unverifiable information, or information which is deemed to have been given in bad faith. GSA Auctions? monitors for suspicious bids. Such bids are subject to investigation and cancellation at any time. If GSA removes a bid, the bidder with the next highest bid, who is in compliance with the online terms and conditions, will become the current high bid. It is a violation of law to submit bids using a false name or any other fraudulent information, and such bids may not be processed, even if GSA initially accepts a bid. Be aware that if you provide false information, GSA will remove you from the database and pursue all legal means available to the Federal Government to prosecute.

**Notification of Sale Results**

Successful bidders will be notified by email and must contact the regional sales office within 2 business days from the date and time the award email notification was sent. Bid results will not be furnished via telephone or fax. It is the bidder's responsibility to follow-up on the status of his/her bid and to ensure that his/her email address and all registration data are kept accurate and up-to-date. If at any time, your information changes, it is your responsibility to update the appropriate information at GSA Auctions?. Warning: If any emails are undeliverable and returned due to an inaccurate email address, GSA may remove such registrants from the database. Sales results may be obtained by a successful bidder in their personal summary after the sale closes.

**Antitrust**

Some sales may be subject to antitrust law in accordance with 40 U.S.C. 559. If the high bid meets or exceeds the threshold amount as stated in 40 U.S.C. 559, the bid will be subject to review by the U.S. Attorney General prior to finalization of award. Therefore, bids are binding and GSA Auctions? will make award within 60 days, if not sooner, after receipt of the advice of the Attorney General of whether the disposition would be inconsistent with antitrust law.

**Title to Property**

A105

Buyers of motor vehicles will receive a GSA Form 27A, "Purchaser's Receipt and Authority to Release Property," and a Standard Form (SF) 97, "The United States Government Certificate To Obtain Title To A Vehicle." SF 97 is not a title; it is evidence of title only for authority to obtain title to a vehicle by the purchaser. Buyers of property other than motor vehicles will receive only the GSA Form 27A. Unless otherwise provided in the Invitation, title to the property sold hereunder shall vest in the Purchaser as and when removal is effected.

The Certificate to Obtain Title that accompanies vehicles may identify the vehicle as Salvage or Scrap, meaning the vehicle is not intended for driving and its condition is poor and/or it is not road-worthy in its present condition.

These provisions may also be applied to certain accident-damaged vehicles. The type of title issued will be determined at the discretion of each state's Department of Motor Vehicles (DMV).

The Certificate to Obtain Title in no way serves as a waiver for payment of registration fees, nor county or State taxes assessed to the vehicle, subsequent to its purchase.

**The way you register will determine how your information is displayed on sales paperwork. Either your name and address as an individual, or your name, company name and address must be completed as you wish it to appear on all subsequent paperwork. You can only select one option to indicate registering as an individual or company. <u>Changes will not be permitted after award.</u> If you wish to participate as an individual and a representative of a company, you must register separately for each and place bids accordingly.**

**Note:** There are times when buyers require/request a duplicate copy of the SF 97. Please be advised there may be a fee associated with this request.

## Bidding

### Photographs

Photographs may not depict an exact representation of the bid item(s) and should not be relied upon in place of written item descriptions or as a substitute for physical inspection. Please contact the custodian for inspection dates and times.

### Inspection of Property

Bidders agree to physically inspect the property upon which they bid or thereby waive the opportunity to conduct a physical inspection. In waiving their inspection rights, bidders bear the risk for any gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage that would have been revealed by physical inspection. There are times when access to property may be limited due to property being located in a restricted area. GSA will do all that it can to ensure that photos and detailed descriptions are provided in these instances. During an inspection at a government facility, actions taken by bidders are at their own risk. The U.S. Government will not be liable for any or all debts, judgments, costs, demands, suits, actions, or claims of any nature arising from or incident to their inspection at the Government facility, including any injuries that a bidder incurs due to their own actions or neglect on during their visit to a Government facility.

### Reporting Discrepancies/Hazardous Materials

Prospective purchasers are asked to inform the sales office of any discrepancies in the property descriptions discovered while inspecting the property and of any lots in this sale that contain hazardous material/waste not indicated in the property descriptions.

### Oral Statements and Modifications

Any oral statement or representation by any representative of the Government, changing or supplementing the offering or contract or any condition thereof, is unauthorized and shall confer no right upon the bidder or purchaser. Further, no interpretation of any provision of the contract, including applicable performance requirements, shall be binding on the government unless furnished or agreed to, in writing, by the Contracting Officer or his designated representative.

### Modification of Bids

The following replaces Clause No. 3.(b) of the SF 114C. Bids received for items offered in the GSAAuctions.gov website may be raised before

the closing date and time, as specified in the offering. Proxy bid limits may be replaced with a higher or lower proxy bid limit provided that the amount is greater than or equal to the minimum bid required by the system. The minimum bid is the current high bid plus the amount of the bid increment. Proxy bid limits placed in the system may also be replaced with a flat bid; the flat bid will cancel the proxy bid limit. Additionally, the flat bid must be greater than or equal to the minimum bid required by the system. The minimum bid is the current winning bid plus the amount of the bid increment. Flat (minimum) bids may be replaced with proxy bid limit. Proxy bid limit must be greater than or equal to the minimum bid required by the system. **Bidders cannot cancel bids.**

## Bid Extensions

Occasionally, technical problems will interrupt the bidding process for an unspecified amount of time. These interruptions may affect some or all bidders. In the event of an interruption, an evaluation of the length of interruption time and the numbers of bidders affected may prompt GSA Auctions? to extend the closing time for an auction. Extension may range from 1 hour to 24 hours based on the aforementioned criteria, to insure fair and full competition. An email notification will be sent to those bidders who participated in these auctions when there are extensions due to technical problems. Bidders must monitor their bidding activity online to obtain new closing dates and times when these extensions occur.

## Canceled Auctions

Due to technical problems encountered from time to time, situations may arise that warrant GSA canceling awards because full and open competition consistent with the value and nature of the property was not met. Items may be reoffered at a later date. An email notification will be sent to those bidders who participated in these auctions when they are canceled.

## Terminated Auctions

It may be necessary to withdraw items from bidding due to technical errors or uncontrollable circumstances. Auctions may be terminated because the property is no longer available due to Federal or state agency needs; property becomes damaged; property is stolen, or property was improperly described. Items may be reoffered at a later date. An email notification will be sent to those bidders who participated in these auctions when they are terminated.

## Reoffering and Resale of Items

Please be advised that items that are available on GSA Auctions? are considered property of GSA or the Federal Government until which time it is awarded, paid for and removed from Federal premises. As such, this property may not be advertised, offered, pre-sold or otherwise represented as the property of any bidder for personal gain, prior to the award, payment and full possession of items/lots by the awarded bidder. Actions made in violations of this warning may result in legal action and prosecution against the awarded bidder, by the Government.

## Blocked from Bidding

In the event bidders provide false information, bid using unacceptable/profane usernames, or default for non-payment or non-removal, they will lose all rights to place bids for other items. They will only be allowed to "browse" the items. At such time the bidder cures his/her default, he/she will be unblocked and be given access to begin bidding on items. With regards to improper usernames, the bidder will be contacted and asked to re-register using a more appropriate username and the "offensively named" account will be blocked to prevent further use.

## Contract Disputes

### Contract Disputes

Contracts resulting from the sale of any offer in the GSAAuctions.gov website are subject to the Contract Disputes Act of 1978 (41 USC 7101-7109), as amended.

### Condition of Property

**The following replaces Clause No. 2 of the SF114C.** Condition of property is not warranted. Deficiencies, when known, have been indicated in

A107

the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection. Please also reference the Inspection of Property clause.

## Description Warranty & Refunds

The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.

The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

## Pre-award Misdescription

Prior to the closing of a sale, the Government may identify or learn of a gross omission regarding the functionality of an item, major missing parts, and/or restrictions with regards to its use. If GSA is aware of this missed information prior to the close of a sale, the item may be pulled from the sale and resubmitted with the information or re-offered at a later date.

## Refunds Claim Procedures

Please be advised that refunds are not a frequent practice of GSA Auctions?. A request for refund must be substantiated in writing to the Contracting Officer for issues regarding mis-described property, missing property and voluntary defaults within 15 calendar days from the date of payment.

## Refund Amount

The refund is limited to the purchase price of the misdescribed property.

## Claims of Misdescription

If items have been awarded but not paid for and the successful bidder feels that the property is mis-described, he/she must follow these procedures: A written claim needs to be submitted to the Sales Contracting Officer within 15 calendar days from the date of award requesting release of contractual obligation for reasons satisfying that of a mis-description. No verbal contact with the custodian or the Sales Contracting Officer or any other federal official will constitute a notice of misdescription.

When items are awarded and payment has been received, regardless of the removal status (removal may or may not have occurred), the successful bidder must submit a written notice to the Sales Contracting Officer within 15 calendar days from the date of payment email notification (the Purchaser's Receipt). If property has been removed and the claim is accepted by the Sales Contracting Officer, the purchaser must maintain the property in its purchased condition and return it at their expense to the location designated by the Sales Contracting Officer or any other federal official.

## Default

Bidders are cautioned to bid only on items they are prepared to pay for and remove in accordance with the online sale terms and conditions of this sale. Failure to pay for and remove all awarded items, or all items within a lot within the timeframe specified, could result in termination of the contract. The bidder will also be subject to paying liquidated damages. **The following supersedes Clause No. 9 of the SF 114C.**

**If you are awarded an item on GSA Auctions?, you have a responsibility to pay for the item or lot that you were awarded within 2 business days from the date and time the award email notification was sent and promptly remove it within 10 business days from the date and time the award email notification was sent, unless otherwise specified in the contract. If you fail to meet either of these two conditions, you will be in violation of the online sale terms and conditions of your contract with the Government and will be considered "in default".**

A108

As a defaulted bidder, you will be responsible for the payment of liquidated damages, an administrative fee for the processing and re-handling of the item for which you neglected to pay for and/or remove. A breakdown of the fee structure follows:

| Purchase Price | Fee Assessed |
| --- | --- |
| <$325.00 | Fee will equal to the award amount |
| $325.00 - $100,000.00 | Fee will be $325.00 |
| >$100,000.00 | Fee will be equal to 5% of the award amount |

The Government shall be entitled to retain (to collect) this amount of the purchase price of the item(s) as to which the default occurred. Please note that in cases where bid deposits are required, the full amount of the bid deposit may be retained for the payment of liquidated damages.

Further, if an item or lot has been paid for but only a portion of the lot has been removed, you will not be entitled to any kind of refund. You will lose all rights and title to the property that you failed to remove prior to the removal deadline. Defaulted bidders, whose purchase price contains sufficient funds to cover the liquidated damages due, may continue to bid. If applicable, refunds will be issued for the balance.

In the event of a default, a bidder will lose all rights to place bids for other items for sale on GSA Auctions? until liquidated damages have been paid and the payment processed (see below). Defaulted bidders will only be allowed to "browse" items. At the time that liquidated damages are paid, the bidder will be given access to begin bidding on items. In the case of partial non-removal, the loss of title to the property constitutes liquidated damages paid.

### Liquidated Damages

Liquidated damage payments paid by credit cards are processed by GSA's Finance office on a daily basis. If a credit card is used in payment of liquidated damages owed, it can take up to 2 business days to process this payment and clear a user's GSA Auctions? account. Avoid if at all possible, incurring liquidated damages.

### Payment & Removal

#### Payment and Removal Timeframes

If you are the successful bidder, property must be paid for within 2 business days and property removed within 10 business days from the time and date of the award email notification of sale results, unless otherwise specified in the contract. After payment is processed, a copy of the Purchaser's Receipt and Authority to Release Property will automatically be emailed to the successful bidder based upon the email address that was provided at the time of registration, or will be either faxed or mailed, contingent upon the information that was provided at the time of registration.

#### Withdrawal of Property After Award

The Government reserves the right to withdraw for its use any or all of the property covered by this contract, if a bona fide requirement for the property develops or exists up to the time of the Government's acceptance of the high bid of the property. In the event of a withdrawal under this condition, the Government shall be liable only for the refund of the contract price of the withdrawn property or such portion of the contract price as it may have received.

#### Forms of Payment

Payment is restricted to the following instruments: U.S. currency (no greater than $10,000); bank cashier's check; credit union cashier's check issued by a Federal or State chartered Credit Union; U.S. Postal Service or commercial money order; travelers' checks; properly endorsed United States Federal, State, or local government checks; MasterCard, VISA, Discover (Novus), American Express, processed manually or online through the Department of Treasury's electronic payment service via GSA Auctions? bidder's summary page. Certified checks, bank drafts and debit cards with dollar limitations and/or requiring a PIN number are not acceptable. All checks and money orders must be made payable to the General Services Administration or GSA.

A109

Credit card payments can be made via GSA Auctions? from the "My Summary" page utilizing the "Trades" feature. Online payments are processed through the Department of Treasury's electronic payment service via GSA Auctions?, which is a secure government-wide payment collection portal and transaction engine created and managed by the U.S. Department of the Treasury's Financial Management Service (FMS). By Treasury policy, credit card payments are restricted to a $99,999.99 (effective June 30, 2012, credit card payments will be restricted to $49,999.99) dollar limit and one card per transaction.

If you are making payment in U.S. currency, please contact the regional Sales office responsible for a specific item to make arrangements. Some of our regional offices are not equipped to accept cash and other walk-in payments.

A personal or company check will be accepted only when accompanied by a bank letter guaranteeing payment. This letter must be on bank letterhead and must state (1) that payment is guaranteed, (2) that the guarantee is valid for 30 days after the date of the award email notification, and (3) that the guarantee covers the purchase of U.S. Government personal property only. The letter must be dated, include the bidder's name, the amount the guarantee is for, date of sale, sale and lot number and signed by a bank official authorized to guarantee payment.

All sales are final.

### Property of Federal Government

Please be advised that title does not transfer for **property of the Federal Government** until such time as the property is removed from federal premises. If the property is located on local government or private property, it is still considered Federally-owned property until such time as it is removed.

### Removal

Property must be removed within 10 business days from the date and time of award email notification. An e-signature Purchaser's Receipt and Authority to Release Property must be presented prior to removal of property to verify proof of purchase; otherwise removal will not be permitted. In addition, if successful bidder appoints/designates another person or agent to remove property on his/her behalf, the successful bidder must provide the person or agent assigned, authorization allowing them to remove the subject property. Some locations may require successful bidders to call for an appointment prior to inspection and or removal of property. Bidders are responsible to pay close attention to the requirements listed on the item description page. Property Custodian phone numbers are listed by the property description in the auction site. The authorization must include: (1) the name of the person the successful bidder is authorizing to pickup the property; (2) the sale and lot number of the item; and (3) must be signed by the successful bidder. In addition to the letter of authorization, the person must present a photo id, and a signed Purchaser's Receipt and Authority to Release Property to verify proof of purchase prior to removal: otherwise removal will not be permitted.

**SUCCESSFUL BIDDERS ARE CAUTIONED THAT THEY ARE RESPONSIBLE FOR PACKING, LOADING AND REMOVAL OF ANY AND ALL PROPERTY AWARDED TO THEM FROM THE EXACT PLACE WHERE THE PROPERTY IS LOCATED, AS INDICATED ON THE ITEM DESCRIPTION PAGE FOR EACH ITEM THAT THEY PURCHASE ON THE GSAAUCTIONS.GOV WEBSITE. THE PURCHASER WILL MAKE ALL ARRANGEMENTS AND PERFORM ALL WORK NECESSARY TO EFFECT REMOVAL OF THE PROPERTY, TO INCLUDE PACKING, LOADING AND TRANSPORTATION OF THE PROPERTY.**

### Special Notes

### Crashed Test Vehicles

The United States Department of Transportation, National Highway Traffic Safety Administration (NHTSA) purchases and provides passenger cars, light trucks and school buses as Government Furnished Property to contractors to conduct various compliance and experimental crash tests related to motor vehicle safety. After completion of testing, GSA sells these vehicles as "not repairable for highway use" (used for parts or scrap metal only).

Buyers of crashed test vehicles must sign a disclaimer statement acknowledging in writing that he/she understands that the property is sold for parts or scrap only and is "not repairable for highway use (NRHU)"; agrees not to attempt to repair the vehicle for highway use; and further agrees to notify any subsequent purchaser of this NRHU stipulation.

Buyers of crashed test vehicles will receive a GSA Form 27A, "Purchaser's Receipt and Authority to Release Property," and a Standard Form

(SF) 97, "The United States Government Certificate To Obtain Title To A Vehicle" marked with "NOT TO BE TITLED FOR HIGHWAY USE" statement. This SF97 is not a title; it is certificate to obtain a non-repairable or salvage certificate.

These provisions may also be applied to certain accident-damaged vehicles.

**State Sales and/or Use Tax**

Purchasers of Federal personal property may be subject to payment of a State sales and/or use tax. The U.S. Government is not responsible for collection of State taxes. Purchasers may obtain information from a State tax office. Sales and/or use tax officials are permitted to examine records of Federal personal property sales to determine tax liability.

**Sales to Government Employees**

GSA employees or spouse or minor child of GSA employees, or their agents, may not bid on Federal personal property. An employee of another agency may bid if he/she is not prohibited from doing so by his/her employing agency's rules or regulations.

**Special Security Notification**

Bidders are warned that the misuse of items to compromise national security and/or to create or disseminate biological warfare agents is illegal. Further, the re-sale and/or exportation of certain technological items to countries subject to trade security controls is prohibited as outlined in the "Export Restriction Notice" referenced in the Other Special Requirements and Conditions below. Bidders may be subject to prosecution if items are used for illegal activity.

**Other Special Requirements and Conditions**

Please click here to view other special requirements and conditions pertaining to property that may be listed in the GSAAuctions.gov website.

Any offering from the U.S. General Services Administration, Federal Supply Service's Internet Website, www.GSAAuctions.gov, is subject to the Online Sales Terms and Conditions as well as the General Sales Terms and Conditions (Standard Form 114C, April 2001). To view pdf files, you need Adobe's Acrobat Reader. Download Adobe Reader for free, if you do not have it already.

I recognize that I am subject to the Online Sale Terms and Conditions, General Sale Terms and Conditions (Standard Form 114C, April 2001) and the Special Requirements and Conditions, and that they are applicable to any item offered on the GSAAuctions.gov website, I offer and agree to purchase the item(s) at the price(s) for each item(s) as indicated.

**Terms & Conditions Effective Date: 05/06/2012**
GSA reserves the right to change the online sale terms and conditions. Bidders are cautioned to periodically review these terms and conditions for possible changes.

A111

Before the
UNITED STATES
CIVILIAN BOARD OF CONTRACT APPEALS
WASHINGTON, D.C. 20036

YASMIN SAIGHI

     Appellant,

                             CBCA 3693
                             Judge Jerome M. Drummond

GENERAL SERVICES ADMINISTRATION,

     Respondent,

## AFFIDAVIT

1. I, Susan Solon, being duly sworn upon oath, deposes and states as follows:

2. I am the CMS Client Manager for the State of Illinois. As such, I represent the State of Illinois in property disposal and I represented the State of Illinois in the sale of the M/V Blakenship held by the General Services Administration.

3. I do not have any knowledge or information indicating that the M/V Blackenship sank before or after the GSA May 15, 2013 auction.

                                             Susan D. Solon

Subscribed and Sworn to before me this   __24th__   day of  __FEB__ , 2014.

__Philip George__
Notary Public (print and then sign)

My Commission Expires __March 05, 2017__

OFFICIAL SEAL
PHILIP GEORGE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/05/17

Before the
UNITED STATES
CIVILIAN BOARD OF CONTRACT APPEALS
WASHINGTON, D.C. 20036

YASMIN SAIGHI

        Appellant,

                                    CBCA 3693
                                    Judge Jerome M. Drummond

GENERAL SERVICES ADMINISTRATION,

        Respondent,

## AFFIDAVIT

1. I, Curtis A. Howard, being duly sworn upon oath, deposes and states as follows:

2. I am the Administrator of CMS Property Control. As such, I represent the State of Illinois in property disposal and I represented the State of Illinois in the sale of the M/V Blakenship held by the General Services Administration.

3. I do not have any knowledge or information indicating that the M/V Blackenship sank before or after the GSA May 15, 2013 auction.

                                          Curtis A. Howard

Subscribed and Sworn to before me this   24th   day of  FEBRUARY , 2014.

Philip George             
Notary Public (print and then sign)

OFFICIAL SEAL
PHILIP GEORGE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/05/17

My Commission Expires  MARCH 05 2017

Before the
UNITED STATES
CIVILIAN BOARD OF CONTRACT APPEALS
WASHINGTON, D.C. 20036

YASMIN SAIGHI
        Appellant,

                                    CBCA 3693
                                    Judge Jerome M. Drummond

GENERAL SERVICES ADMINISTRATION,
        Respondent.

### AFFIDAVIT of ED WEILBACHER

1. I, Ed Weilbacher, being duly sworn upon oath, deposes and states as follows:

2. I am the General Manager of the Kaskaskia Regional Port District. As such, I know that the M/V Blankenship was docked at the Evansville, Illinois Marina from June 2007 to the present.

3. I do not have any knowledge or information indicating that the M/V Blankenship sank prior to the GSA May 15, 2013 auction.

4. After the Blankenship sold to Yasmin Saighi her husband, Moh Hassan Mohjoub, arranged to sign for the transfer of the Blankenship. When he arrived at our office he asked that I take him to where the Blankenship was docked. He had never seen the boat or knew how to get to the town where the boat was docked.

5. The buyer's representative attempted to remove, tow the M/V Blankenship in early September 2013 to New Athens, Illinois. It is my understanding that the person pulling the vessel did not have a big enough boat to accomplish the job and after a going up river a short distance they returned the M/V Blankenship to the deck barge dock.

6. The M/V Blankenship sank at the dock January 14, 2014 during the cold weather.

                                    _____
                                          Ed Weilbacher

Subscribed and Sworn to before me this _23rd_ day of _February_, 2014.

_Donna K Gangliotti_   _Donna K. Gangliotti_
Notary Public (print and then sign)

My Commission Expires _7-30-14_

DONNA K GANGLIETTI
OFFICIAL MY COMMISSION EXPIRES
SEAL JULY 30, 2014

Before the
UNITED STATES
CIVILIAN BOARD OF CONTRACT APPEALS
Washington, D.C. 20405

| | | |
|---|---|---|
| YASMIN SAIGHI | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | CBCA No. 3693 |
| v. | ) | (Judge Jerome M. Drummond) |
| | ) | |
| GENERAL SERVICES ADMINISTRATION, | ) | |
| | ) | |
| Respondent. ) | | |

AFFIDAVIT of Victoria C. Knotts

Victoria C. Knotts, being duly sworn upon oath, deposes and states as follows:

1. I am a U.S. Government employee in the U.S. General Services Administration (GSA) with office at 77 Forsyth Street, Suite 100, Atlanta, Georgia 30303.

2. I have been employed by the GSA since 1993, I have been a warranted Contracting Officer for Property Management Division sales since 2008 and currently serve in the position of Contracting Officer, Property Disposal Specialist, Property Management Division, Federal Acquisition Service, GSA Southeast Region, Atlanta, Georgia.

3. In my capacity as a Contracting Officer, I represent the GSAAUCTIONS.GOV internet on-line sales for State and Federal Agencies.

4. As such, I was the Contracting Officer for Sale 41QSCI13375, Lot 1, which consisted of the M/V Blankenship sold on GSAAuctions.gov. website.

5. This sale started on May 15, 2013, and closed on May 30. (Exhibit 4, Bidding Details Tab.)

6. The Standard Form 114C (Rev. 4/2001) General Sales Terms and Conditions (Exhibit 1) as well as the On-Line Terms and Conditions (Exhibit 2) applied to this auction.

7. Bidders are invited, urged, and cautioned to inspect the property prior to submitting a bid (Exhibit. 1, clause 1).

8. Bidders agree to physically inspect the property on which they bid or thereby waive the opportunity to conduct a physical inspection. In waiving their inspection rights, bidders bear the risk for any gross omissions (Exhibit 2 bottom of page 3).

9. The M/V Blankenship was listed and offered for sale "as is" and "where is" (Exhibit 1, clause 2).

10. Ms. Saighi, in her email claim dated December 1, 2013, admits that she and her vessel expert, inspected the M/V Blankenship prior to bidding and that no water was found inside the engine room although they did see rotten vinyl on the walls. (Exhibit 12).

11. The government did not warrant the condition of the property. Deficiencies, when known, were indicated in the property description. However, absence of any indicated deficiencies did not mean that none existed. (Exhibit 2, page 5) .

12. Photographs were posted with the on-line solicitation (Exhibit 4). The solicitation advised that photographs may not depict the exact representation of the bid item and should not be relied upon in place of written item descriptions or as a substitute for physical inspection. (Exhibit 2, page 3).

13. Contract GS04F13FBE8027 was awarded to Ms. Yasmin Saighi in the amount of $30,056.00 on May 30, 2013 (Exhibits 5 and 6).

14. On June 29, 2013 Ms. Saighi, authorized her husband, Mr. Moh Hassan Mahjoub, to remove the M/V Blankenship (Exhibit 7).

15. The Buyers representative, attempted to remove the M/V Blankenship in early September but had to return to the dock due to inadequate equipment. (Exhibit 10, email from Ed Weilbacher, page 2/6).

16. On Sunday, October 27, 2013 (150 days after award notification, 150 days after owning the M/V Blankenship, and after attempting to tow the vessel away from the dock the month before), Ms. Saighi sent me an email informing that she had discovered that the M/V Blankenship had previously sank. (Exhibit 9). This was the first communication I received from Ms. Saighi with a claim that the GSA had failed to disclose and/or made misrepresentations. I acknowledged her email when I received it on Monday, October 28, 2013. (Exhibit 9).

17. I do not have any knowledge that the M/V Blankenship sank prior to the GSA Auction and prior to Ms. Saighi's ownership.

18. I do not know anyone at the GSA that has any knowledge that the M/V Blankenship sank prior to the GSA Auction.

19. After receiving Ms. Saighi's email, I contacted the owner agency to inquire into Ms. Saighi's statements. My communications with the owning agency and the marina custodian did not reveal any information leading me to believe that they had knowledge that the M/V Blankenship previously sank (Exhibits 10, 16, 17, 18).

20. I then responded to Ms. Saighi's email and informed her that I could not confirm her allegations that the M/V Blankenship had sank. My letter also reminded her of the Terms and

Conditions related to the purchase of the M/V Blankenship. That letter is dated November. 19, 2013. (Exhibit 11).

21. I received Ms. Saighi's email on December 1, 2013, requesting a refund. (Exhibit. 12).

22. As the contracting officer, I prepared the Final Decision Letter denying her claim December 11, 2013. (Exhibit 13).

_Victoria C. Knotts_

Victoria C. Knotts

Subscribed and Sworn to before me this ___26th___ day of ___February___, 2014.

_Nancy H. Vogel_

_Nancy H. Vogel_

Notary Public (print and then sign)

My Commission Expires ___07/16/2017___

YASMIN SAIGHI          )
                                 )
          Appellant,     )
                                 )     CBCA No. 3693
          v.                 )     (Judge Jerome M. Drummond)
                                 )
GENERAL SERVICES ADMINISTRATION,  )
                                 )
          Respondent,    )

## RESPONDENT'S ANSWER[1]

Pursuant to Rule 6(c) of the United States Civilian Board of Contract Appeals (the Board or CBCA) Rules of Procedure, Respondent, the General Services Administration (GSA, Respondent), hereby answers the Complaint of Appellant, Yasmin Saighi as follows:

1. The GSA admits that Appellant purchased the M/V Blankenship (vessel) on May 30, 2013 for $30,056.00. The allegation that the M/V Blankenship was purchased 'from GSA' is denied as stated insomuch as this could infer that GSA was the owner of the vessel. The allegations that the Appellant purchased the vessel as advertised as per Appellant's attached exhibit are admitted only to the extent that Appellant's attachment constitutes an accurate printout of the website document for which the document itself constitutes the best evidence as to the contents. GSA denies knowledge or information sufficient to form a belief as to the truth that Appellant's agent, Moh H. Mahjoub, inspected the Boat prior to purchasing, at the Kaskaskia Regional Port District, Evansville Marina, Evansville, IL 62242. GSA denies that Kaskaskia Regional Port District is GSA's custodian.

---

[1] Attached is an annotated copy of Appellant's Complaint (pages 1-4 only). See Attachment 1. For ease of reference, the annotated copy numbers the paragraphs of the Complaint. The statements in this Answer correspond to the numbered paragraphs in the annotated Complaint.

1

2. The allegations in sentence one that approximately 10 inches of water entered the boat via a broken starboard window during Appellant's inspection are admitted to show that Appellant had notice that water entered the boat prior to the purchase, had notice that water was able to enter the boat via a broken window, and had notice that at least 10 inches of water had accumulated in the boat. GSA denies knowledge or information sufficient to form a belief as to the truth of the allegations in sentence two. GSA admits that the auction site informed that the vessel had been undergoing remodeling and that the online solicitation description is the best evidence as to the contents (Appeal File - Exhibit 4). GSA denies the allegations in sentence four. Answering further, GSA admits that it did not advertise that the M/V Blankenship sank because it is not allowed to provide incorrect information, i.e., cannot inform that a vessel sank when it had not.

3. GSA denies that the General Manager of the Kaskaskia Regional Port District, Mr. Ed Weilbacher, had knowledge that the M/V Blankenship sank prior to Appellant's purchase, or while the vessel was in the Port's custody and care, and Mr. Weilbacher denies same. (See Mr. Weilbacher's affidavit in Appeal File, exhibit 18). GSA denies knowledge or information sufficient to form a belief as to the truth of the allegations that Mr. Weilbacher has a secretary or that his secretary had first-hand knowledge of the vessel sinking prior to purchase, or that the vessel sank while in the Port's custody and care. GSA denies knowledge or information sufficient to form a belief as to the truth that the pictures provided by Appellant provide an accurate representation relating to Appellant's allegations of the vessel sinking as there is no information confirming the date on the photographs and the photos provided to Respondent are not decipherable. GSA denies that it knew or should have known that the M/V Blankenship sank because the vessel did not sink prior to sale/purchase. GSA denies failure to disclose led to

2

appellant's detrimental purchase. GSA denies knowledge or information sufficient to form a belief as to the truth relating to the cost to overhaul engines as the provided estimate does not have a description of the work to be performed, does not relate the engines to be overhauled as belonging to the M/V Blankenship, does not have the same part number as that provided for the M/V Blankenship, further answers that the estimate is irrelevant to the merits of this case, and further answers that there is no causal connection to the merits of this case and that Appellant has not made such a causal connection.

4. GSA denies the allegation in the fourth paragraph except to admit that the Appellant's vessel eventually sank in January 2014 after Appellant took possession and title to the vessel.

5. GSA admits that GSA denied appellant's claim and that the communications themselves are the best evidence of the contents.

6. The first sentence contains Appellant's procedural request for acceleration for which no response is required of GSA. The second sentence constitute legal conclusions (fraud, breach of contract) for which no response is required; to the extent that said paragraph is considered to be allegations of material fact, Respondent denies.

7. Paragraph seven constitutes Appellant's definition of fraud for which no response is required; to the extent that said paragraph is considered to be allegations of material fact, Respondent denies the remaining allegations.

8. GSA admits that the appellant purchased the M/V Blankenship for $30,056.00 and denies the remaining allegations in paragraph eight.

9. GSA denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph nine. GSA further denies that Mrs. Knotts could

3

have declared the M/V Blankenship had sunk when it had not done so. GSA denies that the remaining statements/allegations are relevant to the current issue.

10. The first sentence constitutes a legal conclusion and the second sentence constitutes the Appellant's definition of a breach of contract for which no response is required; to the extent that these two sentences are considered to be allegations of material fact, Respondent denies. The GSA admits that the sale is subject to GSA Auctions Terms and Conditions, which documents themselves constitute the best evidence as to the contents.

11. The allegations contained in paragraph eleven are admitted only to the extent the allegations are supported by the text of the documents(s) to which they refer, which document(s) themselves constitute the best evidence as to the contents; except as herein admitted, the same are denied.

12. The allegations contained in paragraph twelve relating to the GSA Auction Terms and Conditions, are admitted only to the extent the allegations are supported by the text of the documents(s) to which they refer, which document(s) itself constitutes the best evidence as to the contents; except as herein admitted, the same are denied. GSA denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph twelve.

13. GSA admits Mr. Terry's contact information provided in the last sentence of paragraph thirteen and denies the allegations in sentences one and five. The GSA denies knowledge or information sufficient to form a belief as to the truth of the allegations in the remaining sentences (sentences 2, 3, & 4) of paragraph thirteen.

14. The GSA denies the allegations in paragraph fourteen except for admitting that the appellant's damages are outlined in the Notice of Appeal.

4

Any allegations that have not been expressly admitted are hereby denied.

Wherefore, Respondent request that the relief be denied. By way of further response, respondent states as follows:

1. Respondent completed all of its obligations under GSA Contract No. GS04F13FBE8027 relating to the sale of the M/V Blankenship.

2. Respondent listed the M/V Blankenship for sale, provided a description of the vessel, invited potential bidders to inspect the vessel, and provided Terms and Conditions associated with the sale/purchase of the vessel.

3. Potential bidders had to agree to the Terms and Conditions as a condition of participating in the bidding process. Respondent agreed to the Terms and Conditions and was therefore allowed to participate in the bidding for the M/V Blankenship.

4. Respondent did not make any warranties relating to the condition of the vessel. (Appeal File - Tab 4; Tab 2 – pg. 5 of 9).

5. Appellant admits that she inspected the M/V Blankenship with a vessel expert before bidding; discovered the starboard rotten vinyl wall, discovered 2 broken windows that allowed rain to pour into the vessel. (Appeal File -Tab 12).

6. The Online Terms and Conditions requests prospective purchasers to inform the sales office of any discrepancies in the property descriptions discovered while inspecting the property. (Appeal File - Tab 2, page 4 of 9, 1st ¶). The Appellant did not inform anyone of any alleged discrepancies.

7. The Online Terms and Conditions, when there is a Claim of Misdescription for items that have been awarded and payment has been received (Appeal File – Tab 2, pg. 6 of 9, 1st ¶), require the Appellant to submit a written notice to the Sales Contracting Officer

5

within 15 calendar days from the date of payment email notification (the Purchaser's Receipt). Appellant failed to perform this contract requirement.

8. Curtis Howard, the Administrator of Central Management Services, Surplus Property Program for the State of Illinois, does not have any knowledge of the M/V Blankenship sinking. (Appeal File – Tab 17).

9. Susan Solon, the Client Manager with Central Management Services, Surplus Property Program for the State of Illinois, does not have any knowledge of the M/V Blankenship sinking. (Appeal File – Tab 16).

10. Ed Weilbacher, the General Manager of the Kaskaskia Regional Port District, does not have any knowledge that the M/V Blankenship sank prior to the GSA May 15, 2013 auction/sale. (Appeal File – Tab 18).

11. Victoria C. Knotts, Contracting Officer with the General Services Administration, does not have any knowledge that the M/V Blankenship sank prior to the GSA May 15, 2013 auction/sale. (Appeal File – Tab 19).

12. GSA asserts that, and objects to, Appellant's statement that 'the weakened hull from the first breach, and inevitable submersion, caused a second breach and submersion' as this statement is irrelevant to the merits of this case, is speculative, is a conclusion of fact, there are no facts to substantiate such a conclusion, and remains unproven.

### AFFIRMATIVE DEFENSES

13. The U.S. Civilian Board of Contract Appeals does not have jurisdiction to hear fraud cases.

14. The facts and issues do not amount to fraud.

15. The facts and issues do not arise to a breach of contract claim.

6

16. Appellant has failed to state a claim upon which relief may be granted (tort – punitive damages).

17. Appellant's damages are remote and speculative and therefore not recoverable.

18. To the extent Appellant has suffered any damages, Appellant has failed to mitigate those damages and such requests for costs are unreasonable.

Respondent reserves all affirmative defenses and any other defenses, at law or in equity that may be available now or may become available in the future based on discovery or any other factual investigation of this matter.

Wherefore, Respondent respectfully request that this Board deny Appellant's Complaint in its entirety; and grant such other and further relief as this Board deems appropriate.

Respectfully Submitted,

Jenny M. Matte (Louisiana #24546)
Assistant Regional Counsel
U.S. General Services Administration
77 Forsyth St., Ste. 600
Atlanta, GA 30303
(404) 224-2271 direct
(404) 331-1231 fax
jenny.matte@gsa.gov

7

# UNITED STATES
## CIVILIAN BOARD OF CONTRACT APPEALS
### Washington, D.C. 20405

| | | |
|---|---|---|
| YASMIN SAIGHI | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | **CBCA No. 3693** |
| v. | ) | **(Judge Jerome M. Drummond)** |
| | ) | |
| GENERAL SERVICES ADMINISTRATION, | ) | |
| | ) | |
| Respondent, | ) | |

## RESPONDENT'S MOTION FOR SUMMARY RELIEF

NOW COMES Respondent, by its attorney, who moves the Board for Summary Relief. Respondent, in compliance with Rule 8, spoke with Appellant's counsel the morning of June 30, 2014 to ascertain whether this matter could be resolved amicably. The parties were unable to reach an agreement.

As such, in support of its Motion are a Statement of Uncontested Facts and a Statement of Position. Respondent says the following:

1. Respondent complied with all conditions and terms of the sales contract, Sale No. Sale 41QSCI13375, Lot 1, and Contract No. GS04F13FBE8027, for the M/V Blankenship.

2. When Appellant registered as a bidder to participate in the on-line auction, Appellant agreed to the terms and conditions of the sales contract; this included the Claims of Misdescription provision, Condition of the Property, Description Warranty and Refunds Provision, as well as the Refund Claims and Refund Amount provisions.

3. Appellant inspected the property prior to bidding and had visual knowledge of the condition of the M/V Blankenship. Captain Smair Shabban accompanied appellant during her inspection of the M/V Blankenship.

1

4. Appellant was the winning bidder in the amount of $30,056.00 and received notice of it on May 30, 2013. Contract # GS04F13FBE8027 was awarded to Appellant May 30, 2014 and payment was received and accepted June 6, 2013.

5. According to the On-Line Terms and Conditions, when items are awarded and payment has been received, regardless of the removal status, the bidder must submit a written notice to the Sales Contracting officer within 15 calendar days from the date of payment email notification (15 days from June 6, 2013).

6. Appellant's email alleging misdescription (a/k/a failure by omission) to the Sales Contracting Officer is dated October 27, 2013 and it was received October 28, 2013 – four months and 22 days after payment and payment email notification. Appellant alleges that the M/V Blankenship sank and that the GSA knew or should have known that the vessel sank and should have advertised the sinking within the sale description.

7. The Appellant's Appeal alleges breach of contract and fraud due to misdescription.

8. Respondent has complied with all conditions and terms of the sales contract.

WHEREFORE, based upon the above Respondent moves this Board to grant its Motion for Summary relief and deny the appeal.

Respectfully submitted,

Jenny M. Matte (Louisiana #24546)
Assistant Regional Counsel
U.S. General Services Administration
77 Forsyth St., Ste. 600
Atlanta, GA 30303
(404) 224-2271 direct
(404) 331-1231 fax
jenny.matte@gsa.gov

2

YASMIN SAIGHI )
)
         **Appellant,** )
)     **CBCA No. 3693**
    **v.** )     **(Judge Jerome M. Drummond)**
)
GENERAL SERVICES ADMINISTRATION, )
)
         **Respondent,** )

# RESPONDENT'S STATEMENT OF UNDISPUTED FACTS

NOW COMES Respondent, by its attorney, who moves the Board for Summary Relief. In support of its Motion are a Statement of Uncontested Facts and a Statement of Position. Respondent says the following:

1. GSA hosted an online auction for the sale of the M/V Blankenship, Sale No. Sale 41QSCI13375, Lot 1, and Contract No. GS04F13FBE8027. The sale started May 15, 2013 and closed May 30, 2013. (Appeal File Tab 4)

2. When Appellant registered as a bidder to participate in the on-line auction, Appellant agreed to the terms and conditions of the sales contract. (Appeal File Tab 2)

3. Among the terms and conditions were the following: (Appeal File Tab 2)

**Inspection of Property**
Bidders agree to physically inspect the property upon which they bid or thereby waive the opportunity to conduct a physical inspection. In waiving their inspection rights, bidders bear the risk for any gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage that would have been revealed by physical inspection. There are times when access to property may be limited due to property being located in a restricted area. GSA will do all that it can to ensure that photos and detailed descriptions are provided in these instances.

During an inspection at a government facility, actions taken by bidders are at their own risk. The U.S. Government will not be liable for any or all debts, judgments,

1

costs, demands, suits, actions, or claims of any nature arising from or incident to their inspection at the Government facility, including any injuries that a bidder incurs due to their own actions or neglect on during their visit to a Government facility.

## Reporting Discrepancies/Hazardous Materials
Prospective purchasers are asked to inform the sales office of any discrepancies in the property descriptions discovered while inspecting the property and of any lots in this sale that contain hazardous material/waste not indicated in the property descriptions.

## Condition of Property
**The following replaces Clause No. 2 of the General Terms and Conditions of the Standard Form (SF) 114C:** Condition of property is not warranted. Deficiencies, when known, have been indicated in the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection. Please also reference the Inspection of Property clause.

## Description Warranty & Refunds
The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.

The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

## Refunds Claim Procedures
Please be advised that refunds are not a frequent practice of GSA Auctions℠. A request for refund must be substantiated in writing to the Contracting Officer for issues regarding mis-described property, missing property and voluntary defaults within 15 calendar days from the date of payment.

## Refund Amount
The refund is limited to the purchase price of the misdescribed property.

## Claims of Misdescription
If items have been awarded but not paid for and the successful bidder feels that the property is mis-described, he/she must follow these procedures: A written claim needs to be submitted to the Sales Contracting Officer within 15 calendar

2

days from the date of award requesting release of contractual obligation for reasons satisfying that of a mis-description. No verbal contact with the custodian or the Sales Contracting Officer or any other federal official will constitute a notice of misdescription.

When items are awarded and payment has been received, regardless of the removal status (removal may or may not have occurred), the successful bidder must submit a written notice to the Sales Contracting Officer within 15 calendar days from the date of payment email notification (the Purchaser's Receipt). If property has been removed and the claim is accepted by the Sales Contracting Officer, the purchaser must maintain the property in its purchased condition and return it at their expense to the location designated by the Sales Contracting Officer or any other federal official.

4. The GSA Auction Website included a description of the M/V Blankenship:

M/V BLANKENSHIP, 65~L, 18~W, 5~DRAFT, ESTIMATED DATE OF MFG: 1987, TWIN DRAFT V6-92TA DETROIT DIESEL ENGINES, ALLISON GEAR BOXES, MDL: 20L AND 20R. ENGINES REBUILT APRIL 1998 AND GEAR BOXES JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF 25KW, 1800 RPM (JUNE 1998) 120V, 1 PH, 60 HZ,104A, 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A AND STB MDL: 25.0 MDKAF/94927A. KUBOTA V2803B DIESEL ENGINE, 5 CYL, 46 BHP (34.7KW) MICHIGAN PAC-MASTER PROPELLER FOR HEAVY DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP CRACKED, STRAINER CASTINGS CRACKED, NEEDS NEW BATTERIES. VESSEL INCLUDES FURUNO SONAR, APC POWER SUPPLY, RADIO "RAY JEFFER", MARINE COLOR ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE STATION. VESSEL HAS BEEN STRIPPED OF INTERIOR WALLS AND FINISHES FOR RESTORATION. THERE HAVE BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT. REPAIRS MAY BE REQUIRED. PARTS MAY BE MISSING. DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN THE PROPERTY DESCRIPTION. HOWEVER, ABSENCE OF ANY INDICATED DEFICIENCIES DOES NOT MEAN THAT NONE EXISTS. 4751F231220001A

**THE CONDITION OF THE PROPERTY IS NOT WARRANTED.**

5. Appellant did not rely solely on the GSA on-line description. Appellant inspected the

vessel (Appeal File Tab 12) along with a vessel expert (See Appellant's Response to

Interrogatory No. 4) prior to bidding (Appeal File Tab 12) and/or had the vessel inspected

3

by her agent Moh H. Mahjoub (See Appellant's Notice of Appeal, 1st paragraph, pg. 2 of 4) prior to bidding.

6. Appellant informed that this pre-bid inspection allowed her to ascertain that the condition of the M/V Blankenship included rotten vinyl wall on the starboard side caused by continuous rain that poured in from two broken windows. (Appeal File Tab 12).

7. Appellant also informs that during pre-bid inspection, the vessel incurred approximately 10 inches of water due to rain entering from a broken starboard window. (See Notice of Appeal, 2nd paragraph).

8. Appellant did not inform the sales office of any discrepancies in the property descriptions discovered while inspecting the property.

9. After the Appellant inspected the M/V Blankenship and noted the vessel's condition, Appellant bid on the M/V Blankenship. Contract # GS04F13FBE8027 was awarded to Appellant May 30, 2014 and payment was received and accepted June 6, 2013.

10. Fifteen bidders participated in the on-line auction. Appellant was the winning bidder in the amount of $30,056.00 and received award notice on May 30, 2013.

Bidders in the Auction (Current top 10 bidders)

| Bidder | Bid Amount | Date-Time |
|---|---|---|
| Bidder#14 (Current High Bid) | 30,056 USD | 05/30/2013 05:18:29 PM CT |
| Bidder#12 | 28,711 USD | 05/30/2013 05:17:50 PM CT |
| Bidder#15 | 26,288 USD | 05/30/2013 05:05:21 PM CT |
| Bidder#10 | 15,348 USD | 05/30/2013 03:08:18 PM CT |
| Bidder#13 | 10,000 USD | 05/30/2013 12:31:45 PM CT |
| Bidder#5 | 7,589 USD | 05/30/2013 05:56:34 AM CT |
| Bidder#11 | 7,290 USD | 05/30/2013 03:35:25 AM CT |
| Bidder#9 | 5,166 USD | 05/29/2013 02:13:12 PM CT |
| Bidder#7 | 5,000 USD | 05/23/2013 06:06:42 PM CT |
| Bidder#8 | 3,989 USD | 05/23/2013 03:12:17 PM CT |

4

11. According to the On-Line Terms and Conditions, when items are awarded and payment has been received, regardless of the removal status, the bidder must submit a written notice to the Sales Contracting officer within 15 calendar days from the date of payment and/or payment email notification.

12. Appellant first alleged misdescription *via* email to the Sales Contracting Officer Sunday, October 27, 2013 and it was received by the Contracting Officer Monday, October 28, 2013 (Appeal File Tab 9). Receipt of this email occurred approximately 144 days (4 months, 22 days) after the Appellant's payment and Purchaser's Receipt Notification. Appellant alleges that the M/V Blankenship sank and that the GSA knew or should have known that the vessel sank and should have advertised the sinking within the sale description.

13. The Appellant's Appeal alleges breach of contract and fraud due to misdescription.

14. Respondent has complied with all conditions and terms of the sales contract.

WHEREFORE, Respondent moves this Board to grant its Motion for Summary Relief and ceny the appeal.

Respectfully submitted,

Jenny M. Matte (Louisiana #24546)
Assistant Regional Counsel
U.S. General Services Administration
77 Forsyth St., Ste. 600
Atlanta, GA 30303
(404) 224-2271 direct
(404) 331-1231 fax
jenny.matte@gsa.gov

5

YASMIN SAIGHI )
)
                **Appellant,** )
) CBCA No. 3693
        **v.** ) (Judge Jerome M. Drummond)
)
GENERAL SERVICES ADMINISTRATION, )
)
          **Respondent,** )

## RESPONDENT'S
## MEMORANDUM IN SUPPORT
## OF SUMMARY RELIEF

NOW COMES Respondent, by its attorney, who submits the following in support of its Motion for Summary Relief.

### Introduction

Summary relief is appropriate when there are no genuine issues of material fact in dispute and when the moving party is entitled to relief as a matter of law. *Celotex Corp., v. Catrett,* 477 U.S. 317 (1986); *Matushita Electric Industrial Co. v. Zenith Radio* Corp., 475 U.S. 574 (1986). As evidenced from the pleadings, appeal file, and discovery, the Appellant's claim was untimely and there is no basis for a claim of misdescription.

Even if the Appellant's claim was successful, there is no recoverable relief since Appellant's exclusive remedy if limited to the purchase price when the item is returned in the same condition. Appellant made repairs to the vessel and is unable to return the vessel in the same condition. Moreover, Appellant failed to preserve the vessel in the same condition, i.e., the vessel sank subsequent to the auction/sale of the vessel while in the possession of the Appellant.

1

# Background

GSA hosted an online auction for the sale of a Fire/Patrol Boat, the M/V Blankenship,

Sale No. Sale 41QSCI13375, Lot 1, and Contract No. GS04F13FBE8027. The sale started May

15, 2013 and closed May 30, 2013. (Appeal File Tab 4). Appellant registered as a bidder to

participate in this on-line auction. The act of registering constitutes the Appellant's agreement to

abide by the Terms and Conditions applicable to the sale of the M/V Blankenship. (Appeal File

Tab 2).

The GSA On-Line Auction web site provided a description of the M/V Blankenship as

well as photographs. (Appeal File Tab 4). The description read:

> M/V BLANKENSHIP, 65~L, 18~W, 5~DRAFT, ESTIMATED DATE OF MFG:
> 1987, TWIN DRAFT V6-92TA DETROIT DIESEL ENGINES, ALLISON
> GEAR BOXES, MDL: 20L AND 20R. ENGINES REBUILT APRIL 1998 AND
> GEAR BOXES JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF
> 25KW, 1800 RPM (JUNE 1998) 120V, 1 PH, 60 HZ,104A, 12V BATTERY
> PORT MDL: 25.0 MDKAF/9492 7A AND STB MDL: 25.0 MDKAF/94927A.
> KUBOTA V2803B DIESEL ENGINE, 5 CYL, 46 BHP (34.7KW) MICHIGAN
> PAC-MASTER PROPELLER FOR HEAVY DUTY USE. FRESH WATER
> INTAKE FOR A/C UNIT PUMP CRACKED, STRAINER CASTINGS
> CRACKED, NEEDS NEW BATTERIES. VESSEL INCLUDES FURUNO
> SONAR, APC POWER SUPPLY, RADIO "RAY JEFFER", MARINE COLOR
> ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE STATION.
> VESSEL HAS BEEN STRIPPED OF INTERIOR WALLS AND FINISHES
> FOR RESTORATION. THERE HAVE BEEN NO ALTERATIONS TO THE
> VESSEL THAT ADDED HAZARDOUS MATERIALS, SPECIFICALLY PCBS
> OR ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT. REPAIRS
> MAY BE REQUIRED. PARTS MAY BE MISSING. DEFICIENCIES, WHEN
> KNOWN, HAVE BEEN INDICATED IN THE PROPERTY DESCRIPTION.
> HOWEVER, ABSENCE OF ANY INDICATED DEFICIENCIES DOES NOT
> MEAN THAT NONE EXISTS. 4751F231220001A
>
> **THE CONDITION OF THE PROPERTY IS NOT WARRANTED.**

2

# Discussion

## *Timeliness*

Appellant was the winning bidder in the amount of $30,056.00 and received the award notice on May 30, 2013. According to the On-Line Terms and Conditions, when items are awarded and payment has been received, regardless of the removal status, the bidder must submit a written notice to the Sales Contracting officer within 15 calendar days from the date of payment (Refund Claim Procedures) or 15 calendar days from the date of payment email notification (The Purchaser's Receipt) (Appeal File Tabs 5 - 8). The relevant provisions read:

### Refunds Claim Procedures

Please be advised that refunds are not a frequent practice of GSA Auctions℠. A request for refund must be substantiated in writing to the Contracting Officer for issues regarding mis-described property, missing property and voluntary defaults within 15 calendar days from the date of payment.

### Refund Amount

The refund is limited to the purchase price of the misdescribed property.

### Claims of Misdescription

If items have been awarded but not paid for and the successful bidder feels that the property is mis-described, he/she must follow these procedures: A written claim needs to be submitted to the Sales Contracting Officer within 15 calendar days from the date of award requesting release of contractual obligation for reasons satisfying that of a mis-description. No verbal contact with the custodian or the Sales Contracting Officer or any other federal official will constitute a notice of misdescription.

*When items are awarded and payment has been received, regardless of the removal status (removal may or may not have occurred), the successful bidder must submit a written notice to the Sales Contracting Officer within 15 calendar days from the date of payment email notification (the Purchaser's Receipt).* If property has been removed and the claim is accepted by the Sales Contracting Officer, the purchaser must maintain the property in its purchased condition and return it at their expense to the location designated by the Sales Contracting Officer or any other federal official. **[Emphasis added]**

Appellant had the opportunity to avail herself of a refund by means of the Misdescription Claims Clause as well as the Refund Claims Clause (see above). She did not timely assert a

3

claim under either clause. Appellant submitted four cashier's checks totaling $30,056.00 on June 5, 2013 (Respondent's response to Appellants Request for Production) and received the email notification of payment on June 6, 2013. (Appeal File Tabs 5-8).

Appellant first alleged misdescription *via* email to the Sales Contracting Officer Sunday, October 27, 2013 and it was received by the Contracting Officer Monday, October 28, 2013 (Appeal File Tab 9). Receipt of this email occurred approximately 144 days (4 months, 22 days) after the Appellant's payment and Purchaser's Receipt Notification. Appellant failed to comply with the Terms and Conditions of the sales contract.

### *Misdescription*

Appellant is not alleging that anything in the on-line auction's description is incorrect or inaccurate. Rather, Appellant is alleging that the description is incomplete in that it fails to include a material fact, i.e., that the vessel previously sank. Moreover, by failing to inform that the vessel sank, this equates to a misdescription by omission that constitutes a breach of contract and/or fraud. Appellant contends that the sinking of the M/V Blankenship serves to devalue the vessel and that she would not have bid $30,056.00 for this vessel had she known it had previously sank.

At all times, Respondent denies that the M/V Blankenship sank prior to the auction/sale of May 2013. GSA also asserts that the Board does not have jurisdiction to hear fraud cases/issues.

Appellant, having dealt with the GSA for seven years (Appeal File Tab 12), did not rely solely on the GSA Auction's on-line description. Appellant inspected the vessel (Appeal File Tab 12) along with a vessel expert (See Appellant's Response to Interrogatory No. 4) prior to

4

bidding (Appeal File Tab 12) and/or had the vessel inspected by her agent Moh H. Mahjoub (See Appellant's Notice of Appeal, 1st paragraph, pg. 2 of 4) prior to bidding.

The pre-bid inspection afforded Appellant first-hand knowledge of the vessel's condition. Appellant informed that this pre-bid inspection allowed her to ascertain that the condition of the M/V Blankenship included rotten vinyl wall on the starboard side caused by continuous rain that poured in from two broken windows. (Appeal File Tab 12). Appellant also informs that during pre-bid inspection, the vessel incurred approximately 10 inches of water due to rain entering from a broken starboard window. (See Notice of Appeal, 2nd paragraph).

One of the Terms and Conditions of participating in the auction/sale of the M/V Blankenship consisted of the Reporting of Discrepancies provision. It reads:

> **Reporting Discrepancies/Hazardous Materials**
> Prospective purchasers are asked to inform the sales office of any discrepancies in the property descriptions discovered while inspecting the property and of any lots in this sale that contain hazardous material/waste not indicated in the property descriptions.

Appellant inspected the M/V Blankenship and noted the condition of the vessel. Even so, Appellant did not report such condition as a discrepancy as per the Terms and Conditions requirement.

After successfully bidding, winning, and receiving title and ownership to the M/V Blankenship, Appellant's husband visited the vessel on three or four occasions (Appellant's Answers to Interrogatory #12). During this time, Appellant performed repairs to the vessel by installing two marine batteries and by hiring someone to repair broken windows and doors at a cost of approximately $2,200.00. (Appellant's Answers to Interrogatories #14).

At some point during their ownership, Appellant and/or her husband was informed that the M/V Blankenship previously sank on or about December 21, 2011 (Appellant's Answers to

5

Interrogatories #1). Appellant then wrote to the Sales Contracting Officer claiming misdescription.

In order to prevail on a claim of misdescription, Appellant must comply with the Terms and Conditions of the contract. The relevant portions state:

**Condition of Property**
**The following replaces Clause No. 2 of the General Terms and Conditions of the Standard Form (SF) 114C:** Condition of property is not warranted. Deficiencies, when known, have been indicated in the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection. Please also reference the Inspection of Property clause.

**Description Warranty & Refunds**
The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.

The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

The Appellant, like the Appellant in *Randy Preston v. GSA*, CBCA 1465, (December 3, 2009), suggests that the GSA's website should have described the vessel using terms other than those provided, e.g., sink, sank. As the Board stated in *Preston*, such an argument "does not implicate the accuracy of the description, but rather, the condition of the property." As stated in this case, the GSA Terms and Conditions expressly disavow any warranty of condition.

*Summary*

Appellant does not allege that the on-line description is inaccurate or that the condition of the vessel was misdescribed, only that the description was incomplete. Additionally, Appellant

6

does not allege that the misdescription affected the condition of the vessel, only the amount of what Appellant would have bid had additional details been provided in the description. GSA did not warrant the condition of the vessel and only warranted that the property listed in the website would conform to its written description. These being the only applicable warranties - Appellant's Appeal should be denied.

Appellant filed her claim more than four months after the purchase of the vessel. Appellant agreed to the Terms and Conditions when she registered to participate in the bidding contest. Those Terms and Conditions required Appellant to file her claim within 15 days of payment and/or receipt of the Purchaser's Receipt. Appellant failed to comply with these conditions. Appellant's Appeal should be denied.

WHEREFORE, based upon the above, Respondent moves this Board to grant its Motion for Summary relief and deny the appeal.

Respectfully submitted,

Jenny M. Matte (Louisiana #24546)
Assistant Regional Counsel
U.S. General Services Administration
77 Forsyth St., Ste. 600
Atlanta, GA 30303
(404) 224-2271 direct
(404) 331-1231 fax
jenny.matte@gsa.gov

7

IN THE UNITED STATES CIVILIAN BOARD OF CONTRACT APPEALS

YASMIN SAIGHI,              )
                                 )

       Appellant,        )
                                 )

v.                           )      Case No.     CBCA 3693
                                 )

GENERAL SERVICES     )      (Judge Drummond)
ADMINISTRATION,       )
                                 )

       Respondent.     )

## APPELLANT'S STATEMENT OF GENUINE ISSUES

COMES NOW Appellant, by and through the undersigned counsel, responding to Respondent's Statement of Undisputed Facts, and for her Statement of Genuine Issues, states as follows:

1. GSA hosted an online auction for the sale of the M/V Blankenship, Sale No. Sale 41QSCI13375, Lot 1, and Contract No. GS04F13FBE8027. The sale started May 15, 2013 and closed May 30, 2013. (Appeal File Tab 4)

RESPONSE: Admitted.

2. When Appellant registered as a bidder to participate in the on-line auction, Appellant agreed to the terms and conditions of the sales contract. (Appeal File Tab 2)

RESPONSE: Admitted.

3. Among the terms and conditions were the following: (Appeal File Tab 2)

**Inspection of Property**

1

Bidders agree to physically inspect the property upon which they bid or thereby waive the opportunity to conduct a physical inspection. In waiving their inspection rights, bidders bear the risk for any gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage that would have been revealed by physical inspection. There are times when access to property may be limited due to property being located in a restricted area. GSA will do all that it can to ensure that photos and detailed descriptions are provided in these instances.

During an inspection at a government facility, actions taken by bidders are at their own risk. The U.S. Government will not be liable for any or all debts, judgments, costs, demands, suits, actions, or claims of any nature arising from or incident to their inspection at the Government facility, including any injuries that a bidder incurs due to their own actions or neglect on during their visit to a Government facility.

**Reporting Discrepancies/Hazardous Materials**

Prospective purchasers are asked to inform the sales office of any discrepancies in the property descriptions discovered while inspecting the property and of any lots in this sale that contain hazardous material/waste not indicated in the property descriptions.

**Condition of Property**

**The following replaces Clause No. 2 of the General Terms and Conditions of the Standard Form (SF) 114C:** Condition of property is not warranted. Deficiencies, when known, have been indicated in the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection. Please also reference the Inspection of Property clause.

**Description Warranty & Refunds**

The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA further cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.

The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

**Refunds Claim Procedures**

2

Please be advised that refunds are not a frequent practice of GSA Auctions℠. A request for refund must be substantiated in writing to the Contracting Officer for issues regarding mis-described property, missing property and voluntary defaults within 15 calendar days from the date of payment.

**Refund Amount**

The refund is limited to the purchase price of the misdescribed property.

**Claims of Misdescription**

If items have been awarded but not paid for and the successful bidder feels that the property is mis-described, he/she must follow these procedures: A written claim needs to be submitted to the **Sales Contracting Officer within 15 calendar days from the date of award** requesting release of contractual obligation for reasons satisfying that of a mis-description. No verbal contact with the custodian or the Sales Contracting Officer or any other federal official will constitute a notice of misdescription.

When items are awarded and payment has been received, regardless of the removal status (removal may or may not have occurred), the successful bidder must submit a written notice to the Sales Contracting Officer within 15 calendar days from the date of payment email notification (the Purchaser's Receipt). If property has been removed and the claim is accepted by the Sales Contracting Officer, the purchaser must maintain the property in its purchased condition and return it at their expense to the location designated by the Sales Contracting Officer or any other federal official.

RESPONSE: Admitted.

    4.  The GSA Auction Website included a description of the M/V Blankenship:

> M/V BLANKENSHIP, 65~L, 18~W, 5~DRAFT, ESTIMATED DATE OF MFG: 1987, TWIN DRAFT V6-92TA DETROIT DIESEL ENGINES, ALLISON GEAR BOXES, MDL: 20L AND 20R. ENGINES REBUILT APRIL 1998 AND GEAR BOXES JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF 25KW, 1800 RPM (JUNE 1998) 120V, 1 PH, 60 HZ,104A, 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A AND STB MDL: 25.0 MDKAF/94927A. KUBOTA V2803B DIESEL ENGINE, 5 CYL, 46 BHP (34.7KW) MICHIGAN PAC-MASTER PROPELLER FOR HEAVY DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP CRACKED, STRAINER CASTINGS CRACKED, NEEDS NEW BATTERIES. VESSEL INCLUDES FURUNO SONAR, APC POWER SUPPLY, RADIO "RAY JEFFER", MARINE COLOR ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE STATION. VESSEL HAS BEEN STRIPPED OF INTERIOR WALLS AND FINISHES FOR RESTORATION. THERE HAVE BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED HAZARDOUS MATERIALS, SPECIFICALLY PCBS

3

OR ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT. REPAIRS MAY BE REQUIRED. PARTS MAY BE MISSING. DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN THE PROPERTY DESCRIPTION. HOWEVER, ABSENCE OF ANY INDICATED DEFICIENCIES DOES NOT MEAN THAT NONE EXISTS. 4751F231220001A

THE CONDITION OF THE PROPERTY IS NOT WARRANTED.

RESPONSE: Admitted.

5. Appellant did not rely solely on the GSA on-line description. Appellant inspected the vessel (Appeal File Tab 12) along with a vessel expert (See Appellant's Response to Interrogatory No. 4) prior to bidding (Appeal File Tab 12) and/or had the vessel inspected by her agent Moh H. Mahjoub (See Appellant's Notice of Appeal, 1st paragraph, pg. 2 of 4) prior to bidding.

RESPONSE: Admitted subject to the following: Appellant relied on both the inspection and Respondent's assertion that all known deficiencies had been disclosed. (Aff. of M. Mahjoub, ¶¶10-12; Aff. of Appellant, ¶¶3-7).

6. Appellant informed that this pre-bid inspection allowed her to ascertain that the condition of the M/V Blankenship included rotten vinyl wall on the starboard side caused by continuous rain that poured in from two broken windows. (Appeal File Tab 12).

RESPONSE: Admitted.

7. Appellant also informs that during pre-bid inspection, the vessel incurred approximately 10 inches of water due to rain entering from a broken starboard window. (See Notice of Appeal, 2nd paragraph).

4

RESPONSE: Admitted.

8. Appellant did not inform the sales office of any discrepancies in the property descriptions discovered while inspecting the property.

RESPONSE: Admitted.

9. After the Appellant inspected the M/V Blankenship and noted the vessel's condition, Appellant bid on the M/V Blankenship. Contract # GS04F13FBE8027 was awarded to Appellant May 30, 2014 and payment was received and accepted June 6, 2013.

RESPONSE: Admitted.

10. Fifteen bidders participated in the on-line auction. Appellant was the winning bidder in the amount of $30,056.00 and received award notice on May 30, 2014.

| Bidders in the Auction (Current top 10 bidders) | | | |
|---|---|---|---|
| Bidder Amount | Date-Time | | Bid |
| Bidder#14 (Current 05:18:29 PM CT High Bid) | | 30,056 USD | 05/30/2013 |
| Bidder#12 05:17:50 PM CT | | 28,711 USD | 05/30/2013 |
| Bidder#15 05:05:21 PM CT | | 26,288 USD | 05/30/2013 |
| Bidder#10 03:08:18 PM CT | | 15,346 USD | 05/30/2013 |
| Bidder#13 12:31:45 PM CT | | 10,000 USD | 05/30/2013 |
| Bidder#5 | | 7,589 USD | 05/30/2013 |

5

```
05:56:34 AM CT

Bidder#11                          7,290   USD    05/30/2013
03:35:25 AM CT

Bidder#9                           5,156   USD    05/29/2013
02:13:12 PM CT

Bidder#7                           5,000   USD    05/23/2013
06:06:42 PM CT

Bidder#8                           3,989   USD    05/23/2013
03:12:17 PM CT
```

RESPONSE: Admitted.

11. According to the On-Line Terms and Conditions, when items are awarded and payment
    has been received, regardless of the removal status, the bidder must submit a written
    notice to the Sales Contracting officer within 15 calendar days from the date of payment
    and/or payment email notification.

RESPONSE: Admitted to the extent this paraphrase is consistent with the actual language of the
terms and conditions set forth above in Statement 3.

12. Appellant first alleged misdescription *via* email to the Sales Contracting Officer Sunday,
    October 27, 2013 and it was received by the Contracting Officer Monday, October 28,
    2013 (Appeal File Tab 9). Receipt of this email occurred approximately 144 days (4
    months, 22 days) after the Appellant's payment and Purchaser's Receipt
    Notification. Appellant alleges that the M/V Blankenship sank and that the GSA knew or
    should have known that the vessel sank and should have advertised the sinking within the
    sale description.

6

RESPONSE: Appellant admits that she submitted written notice to the Sales Contracting Officer of the instant claim on October 27, 2013, two (2) days after she first learned of the undisclosed, known deficiencies. Appellant denies that the date of the Officer's date of receipt of that claim is material or relevant as the "receipt" of such notice is not a term of the contract between Appellant and Respondent. (See Statement 3 above). Appellant has not merely alleged a misdescription. Instead, Appellant has alleged and shown that Respondent failed to disclose and/or concealed known deficiencies. As set forth in her response to Statement 14 below, which is incorporated herein by this reference, Respondent had the contractual obligation to disclose known deficiencies and breached the contract with Appellant by failing to do so. (See Statements 3 and 4 above).

13. The Appellant's Appeal alleges breach of contract and fraud due to misdescription.

RESPONSE: Appellant admits that she alleges claims for fraud and breach of contract. However, she denies that such claims are based on misdescription. Rather, such claims are based on Respondent's failure to disclose and/or concealment of known deficiencies. As set forth in her response to Statement 14 below, which is incorporated herein by this reference, Respondent had the contractual obligation to disclose known deficiencies and breached the contract with Appellant by failing to do so. (See Statements 3 and 4 above).

14. Respondent has complied with all conditions and terms of the sales contract.

RESPONSE: Denied. In addition for the following, this statement is not supported as required by Rule 8 of the Rules of Procedure for the Civilian Board of Contract Appeals.

Moreover, Respondent had the contractual obligation to disclose known deficiencies of the M/V Blankenship (the "Boat"). Respondent breached that contractual obligation by failing to disclose or concealing those deficiencies as follows:

A.     The Boat sank on or about December 21, 2011, i.e., prior to the May 30, 2013 sale to Appellant, such that its engines were submerged (the "Deficiencies"). (Aff. of W. Terry, ¶ and Exh. 3 thereto; Minutes of Board Meetings of the Kaskaskia Regional Port District ("KRPD") [Exh. A], pp. 17-18).

B.     At all relevant times, Ed Weilbacher is and was the General Manager of the KRPD. (Exhs. A and B, passim.).

C.     Ed Weilbacher is the agent of Respondent for purposes of the disclosure of the Boat's deficiencies in the instant transaction. (Aff. of Appellant, ¶¶8-9; Aff. of M. Mahjoub, ¶¶13-15, 17; Exhibit C (produced by Respondent); Exhibit E (website listing for the Boat).

D.     Respondent delegated the authority of authoring the description of the Boat in Respondent's website listing to Mr. Weilbacher and used his description which was provided at Respondent's request, which per the description and the contract terms and conditions, was to contain all known deficiencies. (Exhibit C; See Statement 4 above; Exhibit E).

E.     Neither Respondent, nor Mr. Weilbacher, ever in any way communicated that Mr. Weilbacher was not Respondent's agent or that his authority to act on Respondent's behalf was limited in any way. (Aff. of Appellant, ¶9; Aff. of M. Mahjoub, ¶17).

F.     Ed Weilbacher had knowledge of the Deficiencies prior to the May 30, 2013 sale. (Aff. of W. Terry, ¶ and Exh. 3 thereto; Exhibit A, pp. 15, 17-18).

G.    The Deficiencies were not disclosed to Appellant or her agent by anyone, including Respondent and Mr. Weilbacher, prior to the May 30, 2013 sale. (Aff. of Appellant, ¶¶2, 10-11; Aff. of M. Mahjoub, ¶¶7, 16, 18).

H.    Neither Appellant, nor her agent, had any knowledge of the Deficiencies prior to the May 30, 2013 sale. (Aff. of Appellant, ¶¶2, 10-11; Aff. of M. Mahjoub, ¶¶7, 16, 18).

I.    Through her agent, Appellant inspected the Boat, and this inspection did not reveal the Deficiencies. (Aff. of M. Mahjoub, ¶5).

J.    In its actual condition with the Deficiencies, the Boat is valueless. (Aff. of Appellant, ¶13; Aff. of M. Mahjoub, ¶¶8-9).

K.    Had the Deficiencies been disclosed prior to the May 30, 2013 sale, Appellant would not have purchased the Boat at any price. (Aff. of Appellant, ¶¶3-4; Aff. of M. Mahjoub, ¶10).

L.    In other boat sales/auctions by the same Sales Contracting Officer involved in this case, Respondent has disclosed the fact of a boat's sinking in its website listing. (Exhibit D).

Respectfully submitted,

HERZOG CREBS LLP

_____
John G. Beseau, MO: #56704; IL: #6284680
100 N. Broadway, 14th Floor
St. Louis, Missouri 63102
(314) 231-6700 *telephone*
(314) 231-4656 *facsimile*
jgb@herzogcrebs.com
Attorneys for Appellant

**CERTIFICATE OF SERVICE**

I certify that on this 30th day of July 2014, a true and correct copy of the foregoing was sent via electronic mail to the following:

Jenny M. Matte, Esq.
Office of the Regional Counsel, GSA
77 Forsyth Street, Suite 600
Atlanta, Georgia 30303
Jenny.matte@gsa.gov
Counsel for Respondent

A156

IN THE UNITED STATES CIVILIAN BOARD OF CONTRACT APPEALS

YASMIN SAIGHI,                          )
                                        )
        Appellant,                      )
                                        )
v.                                      )       Case No.    CBCA 3693
                                        )
GENERAL SERVICES                        )       (Judge Drummond)
ADMINISTRATION,                         )
                                        )
        Respondent.                     )

### AFFIDAVIT OF WALTER G. TERRY

COMES NOW Walter G. Terry, being sworn upon his oath, and for his Affidavit, states as follows:

1.    I am over the age of twenty-one (21). I have personal knowledge of the facts contained in this Affidavit, and if called as a witness, I can competently testify to these facts.

2.    On or about December 21, 2011, the M/V Blankenship (the "Boat") sank. The Boat's engines were completely submerged.

3.    I hired a wrecker to pull the Boat back to the surface of the water, and I employed pumps to pump the water out of the Boat.

4.    Attached hereto as **Exhibit 1** are true and correct copies of photos that I took of the Boat while the pumps referred to in the preceding paragraph were pumping water from the Boat. These photos are accurate depictions of the subject matter which they purport to represent.

5.    On May 15, 2012, I received the May 14, 2012 letter attached hereto as **Exhibit 2** from Ed Weilbacher, General Manager of the Kaskaskia Regional Port District ("KRPD").

6.    Attached hereto as **Exhibit 3** is a true and correct copy of the letter I sent to KRPD within one (1) or two (2) days of May 15, 2012. The facts set forth in this letter are, upon my oath, true and correct.

FURTHER AFFIANT SAYETH NOT.

STATE OF _ILLINOIS_ )
                     ) SS.
COUNTY OF _ST. CLAIR_ )

_Walter S. Terry_
Walter G. Terry

Subscribed and sworn to before me this _11_ day of July 2014.

_Sara L. Wright_
Notary Public

My commission expires: Oct. 19, 2014

OFFICIAL SEAL
SARA L. WRIGHT
Notary Public - State of Illinois
My Commission Expires Oct 19, 2014



Exhibit 1







Phone: 618/282-3807
888/367-5773
Fax: 618/282-3808

## KASKASKIA
**REGIONAL PORT DISTRICT**    154 South Main, Federal Building    •    Red Bud, Illinois 62278

May 14, 2012

Mr. Wally Terry
Adkris, LLC
11325 Eiff Road
Marissa, Il. 62257

Dear Wally:

The KRPD Board has directed me to do whatever is necessary to transfer the MV Blankenship from the Port back to the proper agency for use and safekeeping. I have checked with Central Management Services since we are obligated to them for the Blankenship regarding the return of the vessel. They are in the process of sending me a transfer form so that it can be made available to another agency or unit of government. I have not been given the option to dispose of it by sale or transfer outside of CMS.

When I spoke with you, several months ago, you indicated that you had an agreement with the Port to receive the Blankenship after 5 years. I have checked our files and cannot find any SIGNED agreement or lease that states that it would be transferred to Adkris after a specified time or date. The UNSIGNED agreement that was drafted between the Port and Adkris states that Adkris would have the use of the Blankenship for the promotion of the river and for public tours and events. The UNSIGNED agreement was to run for 5 years.

It has been 5 years since the Blankenship has been available for you to use and develop. Since that has not happened, we are going to work with CMS to return the Blankenship to them.

If you have documentation otherwise, please provide it to the Port by May 31, 2012 so that we can evaluate the material and determine our course of action as a result of any new information.

Sincerely

Ed Weilbacher
General Manager

> EXHIBIT
> 2

Kaskaskia Port District:

Subject: The boat named Blankenship

I received your letter on Tuesday May 15, 2012. It is my responsibility to let you know the condition of the vessel as it sets. The local kids vandalized the vessel two and a half years ago and pulled the power outlet out and the batteries went dead, the pumps quit and the bottom of the boat filled with water. We pumped the water out and dried it out the best we could, but they then kept opening the doors and tearing things up. They filled the refrigerator with dead animals and it stunk bad. They kept leaving the doors open and letting water in, so the floor got soft. We then found mold growing in the walls and ceiling so we removed all that we could locate. We hired a suppression person to release the pressure on the fire suppression but when he came to do the kitchen he did not work on the boat. Then we moved the boat for the barge trip. The motors would not start or turn over. We moved the boat anyway and about took the docks out. When we parked it down there we did leave it there too long because it did not run and we were working out of town a lot. As you well know when the Corp of Engineers dropped the water level the boat capsized and filled with water. We pumped the water out and put an electric sump in to keep the water pumped out. We have been battling with the kids untying the boat and throwing the cord into the water. I know the Port District wanted the boat moved again but I was afraid of it sinking out in the channel and getting worse. Our mechanic went and drained the water and oil out of the engines and took the starters off to get serviced or repaired. In the decision that you have made to turn the boat back over instead of working with us we will offer our mechanic services at the union rate of $83.07 per hour to work to get the engines working again. Once again I will tell you I feel like we have been taken advantage of on this and many other promises.

Sincerely,

Walter G. Terry
Adkris LLC



EXHIBIT
3

IN THE UNITED STATES CIVILIAN BOARD OF CONTRACT APPEALS

YASMIN SAIGHI,                    )
                                  )
        Appellant,                )
                                  )
v.                                )        Case No.     CBCA 3693
                                  )
GENERAL SERVICES                  )        (Judge Drummond)
ADMINISTRATION,                   )
                                  )
        Respondent.               )

## AFFIDAVIT OF MOH HASSAN MAHJOUB

COMES NOW Moh Hassan Mahjoub, being sworn upon his oath, and for his Affidavit, states as follows:

1.      I am over the age of twenty-one (21). I have personal knowledge of the facts contained in this Affidavit, and if called as a witness, I can competently testify to these facts.

2.      At all times relevant, I was and am the husband of Appellant Yasmin Saighi.

3.      I have nine (9) years of experience in the purchase, sale, maintenance, repair, overhaul, and refurbishment of powerboats.

4.      The M/V Blankenship (the "Boat") is a powerboat with two (2) Detroit (brand) engines.

5.      Prior to the May 30, 2013 purchase of the Boat (the "Purchase"), Captain Samir Shabban (a merchant cargo vessel captain) and I inspected the Boat on or about May 20, 2013. Our inspection did not reveal that the Boat sank or that its engines were submerged.

6.      I was the agent of Appellant in every respect concerning the Boat and its Purchase.

7.      Prior to the Purchase, I had no knowledge that the Boat sank or that its engines were submerged and no one informed me of the same.

8.     The sinking of a boat or the submersion of its engine(s) significantly devalues the boat because the costs of overhauling the engines, repairing the boat, or mitigating the effects of the attendant water damage typically overwhelm the value of the boat.

9.     Because of the sinking of the Boat and submersion of its engines, the cost of overhauling the two (2) engines is about $100,000. This cost far exceeds the value of the Boat as represented. I obtained an estimate from a Detroit engine distributor, stating the cost of overhauling the engines at $52,322.72 each. A true and correct copy of this estimate is attached hereto as **Exhibit 1**, which was originally attached to Appellant's Notice of Appeal as Exhibit C.

10.    Had I been informed that the Boat had sank or that the engines were submerged, I would have advised Appellant not to purchase the Boat at any price.

11.    Regarding her purchase of the Boat, among other things, Appellant relied upon my opinions and expertise.

12.    In recommending the purchase of the Boat to Appellant, I relied on Respondent's website listing for the Boat and Respondent's terms and conditions, both of which stated that "[d]eficiencies, when known, have been indicated in the property description."

13.    From Respondent's website listing identifying Ed Weilbacher of the Kaskaskia Regional Port District ("KRPD") as the custodian of the Boat and the contact person for the questions regarding the the Boat, it was apparent to me that Mr. Weilbacher was Respondent's agent in the sale of the Boat.

14.    I scheduled the above-referenced inspection of the Boat with Mr. Weilbacher.

15.    Moreover, about seven (7) or eight (8) days prior to this inspection, per the website listing, I contacted Mr. Weilbacher by telephone to inquire as to the condition of the Boat. He said that the Boat had been docked at KRPD's Evansville, Illinois port for the last few

years. I knew that Mr. Weilbacher was KRPD's general manager during that time. He told me that he did not have any information beyond that stated in Respondent's website listing, and he did not have any information about the Boat's engines. Given these facts, I concluded that Mr. Weilbacher would have the most complete knowledge of the Boat's condition and incorrectly believed that his description website listing fully disclosed the known deficiencies.

16. Neither Mr. Weilbacher, nor anyone on Respondent's behalf, told me or in any way disclosed to me that the Boat sank or that its engines were submerged.

17. Neither Mr. Weilbachner, nor anyone on Respondent's behalf, informed me that Mr. Weilbacher was not Respondent's agent or that his authority on Respondent's behalf was limited in any way.

18. I learned for the first time on October 25, 2013, after the Purchase, that the Boat sank and its engines were submerged, only by the merest of chances, when I happened to discuss the Boat with Walter Terry. I could not have known of these facts before this conversation.

19. Within two (2) days of this conversation, Appellant notified Respondent's Sales Contracting Officer, Victoria Knotts, in writing of the instant claim.

20. After the Purchase, the Boat was never removed from the possession of its custodian, Ed Weilbachker and the KRPD.

21. The boat shown in Exhibit D, the sinking of which Respondent did disclose, ultimately sold for $501.00 as shown by Respondent's website, a true and correct copy of which is attached hereto as **Exhibit 2**.

FURTHER AFFIANT SAYETH NOT.

STATE OF _Oklahoma_ )
                      ) SS.
COUNTY OF _Tulsa_ )


_M. H. Mahjoub_
Moh Hassan Mahjoub

Subscribed and sworn to before me this 22 day of July 2014.


_Sara Denizot_
Notary Public

My commission expires:

12.07.2017

Notary Public
State of Oklahoma
SARA DENIZOT
TULSA COUNTY
COMMISSION #09009989
Comm. Exp. 12-07-2017

A167



# QUOTE

**1400 Destrehan Avenue -FMWGD**
**HARVEY, LA 70058**

| Date | Quote Number |
|---|---|
| 10/21/13 | 7386416 SQ |

| Customer Number | |
|---|---|
| 204568 | QUOTE ONLY |

| Branch No. |
|---|
| 031000 |

| | | |
|---|---|---|
| 504 | 347-4326 | Main Line |
| 504 | 341-2084 | FAX |
| 800 | 535-4185 | Toll Free |

**Quote Accepted By:**_____

THE QUOTE EVIDENCED BY THIS QUOTE IS SUBJECT TO TERMS AND CONDITIONS ON THE FRONT AND REVERSE SIDE OF THIS DOCUMENT.

**QUOTE TO:**

**MASTER/VISA (Harvey)**
**STEWART & STEVENSON SERVICES, INC.**
**1400 DESTREHAN AVENUE**
**HARVEY LA 70058**

**SHIP TO:**

**MASTER/VISA (Harvey)**
**STEWART & STEVENSON SERVICES, INC.**
**1400 DESTREHAN AVENUE**
**HARVEY LA 70058**

| Sales Person | Freight | Final Destination | Quote Validity |
|---|---|---|---|
| RODRIGUJ | Best Way - prepaid/add | USA & TERRITORIAL WATERS | 11/21/13 |

| LINE # | PART/DESCRIPTION | WEIGHT | UM | ORDER B/O | SHIP | UNIT PRICE | EXTENDED PRICE | TAX |
|---|---|---|---|---|---|---|---|---|
| | *Attention:* | | | | | | | |
| | *SAM* | | | | | | | |
| | *Shipping Instructions:* | | | | | | | |
| | : | | | | | | | |
| 1.000 | RE6V92T    6V92T ENG | | | | | 42,623.4000 | | |
| | Core Deposit | | | | | 4,375.0000 | | |
| | | | EA | 1.000 | 1.000 | 46,998.4000 | 46,998.40 | Y |
| | HANDLING CHARGE: | | | | | | 1,114.44 | |
| | ............... Tax Group Summary ............... | | | | | | | |
| | V190511020 | 8.750 | | 48,112.84 | | | 4,209.88 | |
| | St: LA | 4.000 | | 48,112.84 | | 1,924.52 | | |
| | Co: JEFFERSON | 4.750 | | 48,112.84 | | 2,285.36 | | |
| | Ct: HARVEY | | | 48,112.84 | | | | |
| | Ds: HARVEY | | | 48,112.84 | | | | |
| | Tax ID Sold To: | | Tax ID Ship To: | | | | | |
| | Tax Cert: | | Tax Expl Code: | S | | | | |

**EXHIBIT**

**1**

| TERMS | COD        Cash on Delivery | TOTAL WEIGHT | 4,365.152 | TOTAL | USD | 52,322.72 |
|---|---|---|---|---|---|---|

WE CANNOT ACCEPT MERCHANDISE RETURNED WITHOUT OUR PERMISSION.  A HANDLING CHARGE WILL BE MADE ON ALL RETURNED MERCHANDISE.

**Customer Copy**

◀ ▶ 🔲 📖 ↗ [_____] ✕ ( Google )

EXHIBIT 2

warning. In order to view the most up to date information, please click the refresh button on your browser.

**Item Information**

**Item Photos**

## KATALINA YACHT

| | |
|---|---|
| **Sale-Lot Number:** | 41QSCI14246001 |
| **City, State:** | Ponce, PR |
| **Current Bid:** | 501 USD |
| **Bidders:** | 2 |
| **Close Time:** | 03/19 05:36 PM CT (Closed) |
| **Time Remaining:** | |

**Add to favorites**



**Description     Bidding Details     Bid History     Item Location**

990 KATALINA. 50 FT. THE VESSEL WAS SANK IN A MAJOR STORM. IT WAS RAISED AND
THE OIL WAS DRAINED AND REFILLED. BIDDERS ARE URGED TO INSPECT PRIOR TO
BIDDING. ENGINES WILL NOT START, FROZEN UP. NO EXTENSION WILL BE GRANTED ON
REMOVAL. ***************SALVAGE*********** 47329233500001

**THE CONDITION OF THE PROPERTY IS NOT WARRANTED.**

Click here for pricing guides.

**SPECIAL INSPECTION INFORMATION**

PLEASE CONTACT THE CUSTODIAN LISTED TO SCHEDULE AN

APPOINTMENT TO INSPECT THE LISTED PROPERTY.

Please contact the custodian for inspection dates and times and for removal arrangements.

PROPERTY REMOVAL: Due to security issues at property locations, successful bidders are
required to contact the custodian prior to entering the facility to remove property, and at times, they
are not permitted to use security phones. Therefore, successful bidders must communicate with the
custodians in advance to make arrangements for removal and/or have a cell phone with them to




**♻ Go Green... Reuse is Recycling!**

Carbon savings for this item are not available.

IN THE UNITED STATES CIVILIAN BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| YASMIN SAIGHI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No.    CBCA 3693 |
| | ) | |
| GENERAL SERVICES | ) | (Judge Drummond) |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |

## AFFIDAVIT OF YASMIN SAIGHI

COMES NOW Yasmin Saighi, being sworn upon her oath, and for her Affidavit, states as follows:

1.    I am over the age of twenty-one (21). I have personal knowledge of the facts contained in this Affidavit, and if called as a witness, I can competently testify to these facts.

2.    Prior to the May 30, 2013 purchase of the M/V Blankenship (the "Purchase"), I had no knowledge that the M/V Blankenship (the "Boat") sank or that its engines were submerged and no one informed me of the same.

3.    Had I been informed that the Boat had sank or that the engines were submerged, I would not have purchased the Boat at any price.

4.    Had Moh Hassan Mahjoub, my husband, advised me not to purchase the Boat at any price, I would not have purchased the Boat at any price.

5.    Regarding the Purchase, one of the things I relied upon was the opinions and expertise of Moh Hassan Mahjoub.

6.    Moh Hassan Mahjoub was my agent in every respect concerning the Boat and its Purchase.

7.     Regarding the Purchase, I also relied on Respondent's website listing for the Boat and Respondent's terms and conditions, both of which stated that "[d]efficiencies, when known, have been indicated in the property description," such that I believed there were no undisclosed deficiencies of which Respondent and/or their agents had knowledge.

8.     From Respondent's website listing identifying Ed Weilbacher of the Kaskaskia Regional Port District ("KRPD") as the custodian of the Boat and the contact person for the questions regarding the condition of the Boat, it was apparent to me that Mr. Weilbacher was Respondent's agent in the sale of the Boat.

9.     Neither Mr. Weilbachner, nor anyone on Respondent's behalf, informed me that Mr. Weilbacher was not Respondent's agent or that his authority on Respondent's behalf was limited in any way.

10.     Neither Mr. Weilbacher, nor anyone on Respondent's behalf, told me or in any way disclosed to me that the Boat sank or that its engines were submerged.

11.     Through Moh Hassan Mahjoub, I learned for the first time on October 25, 2013, after the Purchase, that the Boat sank and its engines were submerged.  I could not have known of these facts before this date.

12.     Within two (2) days of October 25, 2013, I notified Respondent's Sales Contracting Officer, Victoria Knotts, in writing of the instant claim.

13.     In the Boat's true, undisclosed condition, it has no value because the cost of repair exceeds the Boat's value as represented by Respondent.  Before learning of this valueless condition, I paid $30,056.00 for the Boat and approximately $2,200 for repairs to the Boat.  My damages are at least $32,256.00.

FURTHER AFFIANT SAYETH NOT.

STATE OF Oklahoma )
                           ) SS.
COUNTY OF Tulsa )

_____
Yasmin Saighi

Subscribed and sworn to before me this 22 day of July 2014.

_____
Notary Public

My commission expires:

12.07.2017

Notary Public
State of Oklahoma
SARA DENIZOT
TULSA COUNTY
COMMISSION #09009989
Comm. Exp. 12-07-2017

A172

STATE OF _Illinois_ )
)  ss.
COUNTY OF _Randolph_ )

## AFFIDAVIT

Before me, the undersigned authority, personally appeared _Donna Caviglietti_, who being by me duly sworn, deposed as follows:

My name is _Donna Caviglietti_. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of the Kaskaskia Regional Port District. Attached hereto are 21 pages of records from the Kaskaskia Regional Port District. These records are kept in the regular course of business and it was the regular course of business for an employee or representative of the Kaskaskia Regional Port District, with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the records or information thereof to be included in such records; and the records were made at or near the time of the act, event, condition, opinion or diagnosis. The records attached hereto are the original or exact duplicates of the original.

_Donna Caviglietti_
Affiant and Records Custodian for
the Kaskaskia Regional Port District

In Witness whereof, I have hereunto subscribed my name and affixed my official seal the _10th_ day of _June_, 2014.

OFFICIAL SEAL
STEPHANIE LYNNE KADLEC
NOTARY PUBLIC  STATE OF ILLINOIS
MY COMMISSION EXPIRES 06-21-2016

_Stephanie Lynne Kadlec_
Notary Public

My Comm. Exp: _6-21-16_

EXHIBIT
A

A173



**KASKASKIA**
**REGIONAL PORT DISTRICT**    154 South Main, Federal Building  •  Red Bud, Illinois 62278

## MINUTES OF THE REGULAR MONTHLY BOARD MEETING
### JUNE 11, 2012

The regular monthly meeting of the Members of the Board of the Kaskaskia Regional Port District was held on Monday, June 11, 2012 at the Port District office, 154 South Main Street, Red Bud, Illinois. Chairman George Obernagel called the meeting to order at 12:00 Noon, and upon the call of roll, the following Members were present: Charles Bauer, Virgil Becker, Mike Conrad, Bernard Heck, Jr., Terry Liefer, Rodney Linker, Joe Luechtefeld, Robert Myerscough, George Obernagel, and Robert Pautler. Members Brian Funk and Nancy Schilling were absent. Also in attendance at the meeting were the following people: General Manager, Ed Weilbacher; Mark Rujawitz of Rhutasel & Associates; Secretary, Donna Gariglietti; Kurt Johnson of Southern Illinois Transfer; Richard Guebert, Jr.; Dennis Rodenberg; and Roger Rubemeyer.

The Minutes of the May 14, 2012 Board Meeting were presented, and upon the motion of Member Charles Bauer, and the second of Member Robert Pautler, Resolution No. 12-6-11-1 approving said Minutes was adopted by the Members of the Board. The Minutes of the May 14, 2012 Business Committee Meeting were presented and upon the motion of Member Robert Myerscough, and the second of Member Bernard Heck, Jr., Resolution No. 12-6-11-2 approving said Minutes was adopted by the Board. Thereupon, the Minutes as prepared in written form were ordered to be filed.

The Treasurer's Report of May 31, 2012 was considered, and after a correction, upon the motion of Member Terry Liefer, and the second of Member Mike Conrad, Resolution No. 12-6-11-3 was adopted, which provided that the Treasurer's Report be approved and filed, a copy of which is attached to the official copy of these Minutes.

At this time, there was a general discussion by the Members of the Board regarding the bills that were received. Upon the motion of Member Joe Luechtefeld and the second of Member Robert Pautler, Resolution No. 12-6-11-4 was adopted:

That bills in the amount of $13,353.44 are approved.

Next, the Chairman introduced Kurt Johnson of Southern Illinois Transfer who brought the Members up to date on the happenings at the various facilities. He is well pleased with the working relationship with KinderMorgan at Kellogg Dock and expects them to increase their throughput. KRPD #1 is up and running and he expects to unload 12 or 13 barges of scrubber

stone in November. Dynegy has a new regional manager and he is optimistic that a new agreement can be worked out. He has also met with several interested parties regarding the Fayetteville Terminal.

The proposed 2013 Budget was briefly discussed. Upon the motion of Member Mike Conrad, and the second of Member Robert Myerscough, Reolution No. 12-6-11-5 was adopted:

That the 2013 Budget is approved.

Next, General Manager, Ed Weilbacher, was called upon for his monthly report. The site for the Fayetteville Terminal needs to be cleared of trees and sand needs to be moved for the grain tank foundation. A cost estimate and contract with Kaskaskia River Terminals to perform the work were discussed. Upon the motion of Member Robert Myerscough, and the second of Member Robert Pautler, Resolution No. 12-6-11-6 was adopted:

That the proposed Contract for Services with Kaskaskia River Terminals to prepare the Fayetteville Terminal site for $26,296.00 is approved.

Member Bernard Heck, Jr. abstained from voting on the above Resolution.

We would also like to apply for a grant for construction of the road into the site. Since a highway authority must be the sponsor, St. Clair County would have to be the applicant. Upon the motion of Member Terry Liefer, and the second of Member Mike Conrad, Resolution No. 12-6-11-7 was adopted:

That St. Clair County be asked to serve as the grant applicant for a grant to construct the road into the Fayetteville Terminal.

A proposed Resolution supporting the WAVE 4 Legislation was presented. Upon the motion of Member Rodney Linker and the second of Member Bernard Heck, Jr., Resolution No. 12-6-11-8 was adopted:

That the Board of the Kaskaskia Regional Port District supports the WAVE 4 Legislation (H.R. 4342).

The Requests For Proposals for the Fayetteville Terminal have been sent out and advertised in the newspapers. Proposals are due back on July 16th. Mr. Weilbacher has also met with Peabody to discuss their terminal. They are projecting moving 5-6 million tons, but are waiting until the economy gets better to proceed. Central Stone has not signed a lease yet, but they want to locate there regardless of whether the grain terminal is built.

The Corps' Pilot Study for the Kaskaskia at Fayetteville has not yet been completed. There is money in their budget to dredge at Fayetteville this year.

The Kaskaskia River has been named as a possible choice to be used in a trial study in which budgeting for 2014 would be based on performance measures.

The release forms have been sent back to CMS in order to return the MV Blankenship.

SITCO has applied for a grant to repower tow boats to meet new clean air standards.

Prairie State has been making upgrades to Pike Sawmill Road. They have been making it wider and are raising the road so that it does not flood in low spots.

Several letters of general correspondence were read to the Members.

Wally Terry, owner of Adkris and A & K Rental, has indicated that he would like to be paid the balance of what the Port District owes him. Up to this time, we were being given a credit through his monthly wharfage and rent payments from the Water Street Bar & Grill. After discussion, upon the motion of Member Bernard Heck, and the second of Member Terry Liefer, Resolution No. 12-6-11-9 was adopted:

That the District pay A & K Rental the outstanding balance of $30,258.15.

There being no other business to come before the Members of the Board, upon the motion of Member Joe Luechtefeld, and the second of Member Mike Conrad, the meeting was adjourned at 1:30 P.M.

Donna Gariglietti, Secretary

4



## MINUTES OF THE REGULAR MONTHLY BOARD MEETING
### MAY 14, 2012

The regular monthly meeting of the Members of the Board of the Kaskaskia Regional Port District was held on Monday, May 14, 2012 at the Port District Office, 154 South Main Street, Red Bud, Illinois. Chairman George Obernagel called the meeting to order at 12:00 P.M., and upon the call of roll, the following Members were present: Charles Bauer, Virgil Becker, Mike Conrad, Brian Funk, Bernard Heck, Jr., Rodney Linker, Joe Luechtefeld, Robert Myerscough, George Obernagel, and Robert Pautler. Members Terry Liefer and Nancy Schilling were absent. Also in attendance at the meeting were the following people: General Manager, Ed Weilbacher; Mark Rujawitz of Rhutasel & Associates; Keith Brinkmann of J.W. Boyle; Secretary, Donna Gariglietti; Dennis Rodenberg; and Roger Rubemeyer.

The Minutes of the April 9, 2012 Board Meeting and April 9, 2012 Finance Committee meeting were presented, and upon the motion of Member Charles Bauer, and the second of Member Brian Funk, Resolution No. 12-5-14-1 was adopted by the Members of the Board. Thereupon, the Minutes as prepared in written form were ordered to be filed.

Treasurer, Robert Myerscough, went through the April 30, 2012 Treasurer's Report in detail. Upon the motion of Member Brian Funk, and the second of Member Robert Pautler, Resolution No. 12-5-14-2 was adopted:

That 20% of our one-half of the Kellogg Dock throughput payments be put into the KRPD MMDA Account, which is appropriated for capital improvements.

Upon the motion of Member Mike Conrad, and the second of Member Virgil Becker, Resolution No. 12-5-14-3 was adopted:

That $50,000.00 in the Bond Repayment Account be earmarked for capital improvements.

Upon the motion of Member Bernard Heck, Jr., and the second of Member Robert Pautler, Resolution No. 12-5-14-4 was adopted, which provided that the April 30, 2012 Treasurer's Report be approved and filed, a copy of which is attached to the official copy of these Minutes.

At this time, there was a general discussion by the Members of the Board regarding the bills that were received. Upon the motion of Member Brian Funk, and the second of Member Mike Conrad, Resolution No. 12-5-14-5 was adopted:

That bills in the amount of $5,879.70 are approved for payment.

Robert Myerscough, Chairman of the Business Committee, reported on the meeting which was held prior to the Board meeting. Items discussed included: the draft of the request for proposals and financing for the Fayetteville Terminal; Central Stone's lease and the price of sand; lease and sale rates for KRPD #2 property; TMW's desire to lease additional land for making pallets; noise complaint at KRPD #2; and the repair of a common use area at KRPD #2. TMW has agreed to pay one-half the cost of repairing a common area near the scale. They have an estimate of $14,911. Upon the motion of Member Robert Myerscough, and the second of Member Bernard Heck, Jr., Resolution No. 12-5-14-6 was adopted:

That the Port District pay for one-half of the cost of repairing a common area at KRPD #2 .

Next, General Manager, Ed Weilbacher, was called upon for his monthly report. He received a letter from Attorney Bob Sprague indicating that we prevailed in the Appellate Court, but Dynegy can still appeal. Dynegy has also been in contact with Kurt Johnson regarding a new agreement.

A layout of the Fayetteville grain terminal was distributed. Soil borings have begun. After final revisions, it is expected that the request for proposals will go out in about two weeks. The Board recommended a 45 day period for the RFPs to be returned, which would be around mid-July. The Peabody easement has been recorded.

A Resolution in support of a four-lane highway from Carbondale to Columbia was presented. Upon the motion of Member Robert Myerscough, and the second of Member Charles Bauer, Resolution No. 12-5-14-7 was adopted:

See attached.

A contract from Rhutasel & Associates for engineering services for the Fayetteville Terminal was presented. Upon the motion of Member Brian Funk, and the second of Member Bernard Heck, Jr., Resolution No. 12-5-14-8 was adopted:

That the contract with Rhutasel & Associates for engineering services associated with the Fayetteville Terminal is approved.

Mr. Weilbacher informed the Members that he had looked into having another individual perform the monthly inspections for the railroad crossing at KRPD #2. However, it was discovered that this person did not have liability insurance, and he felt that it would not be in the District's best interest to use this person. Ironhorse will continue to do the monthly inspections.

The Corps of Engineers is finalizing the pilot study for the Fayetteville area. IDNR has a dredge which would be a good fit for the project. Will look into the possibility of working out an agreement with them whereby we could use it.

CMS has sent the release papers for the MV Blankenship. Upon our signing the release, they can offer it to another entity. Mr. Weilbacher has drafted a letter to Wally Terry informing him that we will be returning the vessel. Upon the motion of Member Robert Pautler, and the second of Member Bernard Heck, Jr., Resolution No. 12-5-14-9 was approved:

That the General Manager is authorized to sign the release forms for the MV Blankenship in order that it can be returned to CMS.

Mr. Weilbacher and Member Bernard Heck, Jr., went on a tour of the spoil sites. They need to be attended to comply with IDNR's requirements.

Member Robert Myerscough reported on the Evansville Economic Development meeting. They have three prospects for a fuel station and are still looking at the possibility of an RV park. A 404 permit will be required from the Corps.

Lane Curten, who farms the land near Kellogg Dock, was not given permission by KinderMorgan to farm any of their land inside the railroad tracks due to safety concerns. The land in question is not part of our lease with him, and he was only trying to keep down the weeds at the request of the Port.

Mr. Weilbacher also gave a brief report on the IRPT Conference he recently attended in St. Louis.

EPA has grant funds available to repower tow boats to meet clean air standards. SITCO is interested in the program and it is expected an application will be submitted on their behalf.

A short report was given on the power line meeting held last month. It is expected that another one will be held in about six months.

There being no other business to come before the Members of the Board, upon the motion of Member Rodney Linker, and the second of Member Bernard Heck, Jr., the meeting was adjourned at 1:15 P.M.

Donna Gariglietti, Secretary

7



Phone: 618/282-3807
888/367-5773
Fax: 618/282-3808

**KASKASKIA**

**REGIONAL PORT DISTRICT**    154 South Main, Federal Building  •  Red Bud, Illinois 62278

## MINUTES OF THE REGULAR MONTHLY BOARD MEETING
APRIL 9, 2012

The regular monthly meeting of the Members of the Board of the Kaskaskia Regional Port District was held on Monday, April 9, 2012 at the Port District Office, 154 South Main Street, RedBud, Illinois. Chairman George Obernagel called the meeting to order at 12:10 P.M., and upon the call of roll, the following Members were present: Virgil Becker, Mike Conrad, Brian Funk, Bernard Heck, Jr., Terry Liefer, Rodney Linker, Joe Luechtefeld, Robert Myerscough, George Obernagel, Robert Pautler, and Nancy Schilling. Member Charles Bauer was absent. Also in attendance at the meeting were the following people: General Manager, Ed Weilbacher; Mark Rujawitz of Rhutasel & Associates; Keith Brinkmann of J.W. Boyle; Secretary, Donna Gariglietti; George Andres of Andres Development Services; Jeanne Rhodes of Slay Industries; Richard Galecki of Industry Business Development; Richard Guebert, Jr.; Dennis Rodenberg; and Roger Rubemeyer.

The Chairman introduced Ms. Jeanne Rhodes of Slay Industries who expressed her appreciation of being invited to the meeting. She said the Kellogg Dock will continue to grow over the next few years.

The Minutes of the March 12, 2012 Board Meeting were presented, and upon the motion of Member Bernard Heck, Jr., and the second of Member Brian Funk, Resolution No. 12-4-9-1 was adopted by the Members of the Board. Thereupon, the Minutes as prepared in written form were ordered to be filed.

The Treasurer's Report of March 31, 2012 was considered, and upon the motion of Member Terry Liefer, and the second of Member Nancy Schilling, Resolution No. 12-4-9-2 was adopted, which provided that the Treasurer's Report be approved and filed, a copy of which is attached to the official copy of these Minutes.

At this time, there was a general discussion by the Members of the Board regarding the bills that were received. Upon the motion of Member Brian Funk, and the second of Member Virgil Becker, Resolution No. 12-4-9-3 was adopted:

That bills in the amount of $5,386.50 are approved for payment.

8

Mike Conrad, Chairman of the Finance Committee, reported on the meeting held prior to the Board Meeting. A proposed budget was prepared, which will be sent out before the next Board Meeting.

Next, General Manager, Ed Weilbacher, was called upon for his monthly report. The Port District won the lawsuit against Dynegy, but they now have 30 days to appeal, which we expect they will do.

The orientation trip for the new members was held on March 28th. Both new and existing members attended and everyone thought it was very informative.

A new committee listing was distributed.

Progress continues on the Fayetteville terminal. One of the first steps will be to find an operator for the facility. Upon the motion of Member Terry Liefer, and the second of Member Bernard Heck, Jr., Resolution No. 12-4-9-4 was adopted:

That the District seek qualified bidders for the operation of a grain elevator/terminal at Fayetteville as directed by State statute.

Mr. Weilbacher will also be attending the rezoning meeting this week for the map amendment for two small properties at KRPD #2.

He has also met with the Corps and other interested parties regarding the pilot plan to maintain the channel. A proposal has been submitted, but the Corps will determine the best approach.

The land for the Fayetteville Terminal has been transferred from IDNR and the deed recorded. George Andres then proceeded to show an overview of the project. A permit will be needed from the Corps. The entrance road had to be moved to accommodate Peabody. He and Mr. Weilbacher will be meeting with them to discuss their outline for the new coal mine they are planning to open. The grain elevator layout was discussed as well as the need to request proposals for the operator of the facility. The District would build the basic facility, and as the grain market develops, the operator could expand at their expense.

Tri-City has decided not to take the MV Blankenship. Have not heard from CMS regarding the title for the boat.

Mr. Weilbacher then gave a report on the annual meeting between IDNR, COE and the Port District which was recently held. One of the items discussed was spoil site maintenance. Funds were put into the budget to start the process.

He also attended another Evansville Economic Development meeting. They are working on getting an RV park as well as a gas station for the village.

9



## KASKASKIA
**REGIONAL PORT DISTRICT**   154 South Main, Federal Building • Red Bud, Illinois 62278

### MINUTES OF THE REGULAR MONTHLY BOARD MEETING
### FEBRUARY 13, 2012

The regular monthly meeting of the Members of the Board of the Kaskaskia Regional Port District was held on Monday, February 13, 2012 at the Port District office, 154 South Main Street, Red Bud, Illinois. Chairman George Obernagel called the meeting to order at 12:00 Noon, and upon the call of roll, the following Members were present: Charles Bauer, Virgil Becker, Mike Conrad, Clem Esker, Richard Guebert, Bernard Heck, Jr., Terry Liefer, Robert Myerscough, George Obernagel, Roger Rubemeyer, and Nancy Schilling. Member Ed Cockrell was absent. Also in attendance at the meeting were the following people: General Manager, Ed Weilbacher; Greg Hahn of Rhutasel & Associates; Senator David Luechtefeld; and Secretary, Donna Gariglietti.

The Minutes of the January 9, 2012 Board Meeting and January 11, 2012 Engineering Committee Meeting were presented, and upon the motion of Member Charles Bauer, and the second of Member Richard Guebert, Resolution No. 12-2-13-1 approving said Minutes was adopted by the Members of the Board. Thereupon, the Minutes as written form were ordered to be filed.

The Treasurer's Report of January 31, 2012 was considered, and upon the motion of Member Nancy Schilling, and the second of Member Clem Esker, Resolution No. 12-2-13-2 was adopted, which provided that the Treasurer's Report be approved and filed, a copy of which is attached to the official copy of these Minutes.

At this time, there was a general discussion by the Members of the Board regarding the bills that were received. Upon the motion of Member Roger Rubemeyer, and the second of Member Charles Bauer, Resolution No. 12-2-13-3 was adopted:

That bills in the amount of $9,374.44 are approved for payment.

Next, Chairman George Obernagel welcomed Senator David Luechtefeld to the meeting. The Senator thanked the Members for inviting him to the meeting and brought them up to date on the State of Illinois' financial situation. He also expressed his desire to work with the District in any way he could be of assistance.

14

General Manager, Ed Weilbacher, was then called upon for his monthly report. He first reported on the Engineering Committee meeting which was held at Fayetteville to tour the site. Those in attendance included representatives of the COE, Central Stone, Mayor Funk and Representative Costello.

The loan refinancing for the Silo Storage bond issue is on schedule. The bonds become due on March 15th.

The Randolph County Farm Bureau is hosting a public meeting on March 7th regarding support of the WRDA resolution.

A Summary Judgment hearing on the Dynegy case is set for February 21st. Also, we have been asked to clarify the property being requested for eminent domain. Upon the motion of Member Clem Esker, and the second of Member Bernard Heck, Jr., Resolution No. 12-2-13-4 was adopted:

That the Port District deems it necessary and in the public's best interest to acquire the use of the rail track from Lenzburg, Illinois to 100 feet west of the switch at Jordan Grove by eminent domain.

Jay Johnson, of IDNR, has indicated that the land transfer at Fayetteville is expected to be completed in the very near future.

The Open Meetings Act training for the Board Members is under way. Those that have completed the training are asked to provide the office with a copy of their certificate of completion.

It was brought to Mr. Weilbacher's attention by the Randolph County Zoning Office that we might desire a map amendment at KRPD #2 to include the Lemmerman and Goetting properties which we purchased several years ago. Upon the motion of Member Robert Myerscough, and the second of Member Bernard Heck, Jr., Resolution No. 12-2-13-5 was adopted:

That the General Manager submit a map amendment application to rezone the former Lemmerman and Goetting properties to industrial.

Member Terry Liefer brought up that he would like to set up a meeting with the COE and other interested parties to discuss the business value of the Kaskaskia River.

The Public Relations Committee will meet in the near future to discuss the web site and planning for the 50th anniversary of the Port District.

Mr. Weilbacher showed slides of the MV Blankenship which is located at Evansville. He has contacted CMS about returning the boat and that Tri-City Port District would be interested in it. Before it can be moved, a title must be obtained, which CMS is in the process of doing.

15

Forms were recently filed to certify the improvements at the Evansville waterfront which were done under a Big P Grant several years ago.

Shipments of scrubber stone have started at KRPD #1. Kaskaskia River Terminals will also be getting a reduced tonnage rate to offset the capital improvements they have made at the facility.

We have also started repaying SITCO and Gateway FS for the Kellogg Dock loan payments which they made.

A time line sheet for the Fayetteville project was distributed and discussed. We will try to apply for an EDA grant to help pay for the road and dock improvements.

The Eagle Trek which was recently held was well attended and Mr. Weilbacher thanked the Board for their support. A note from the RC & D thanking the Port District for their support was also read by the Chairman.

There being no other business to come before the Members of the Board, upon the motion of Member Nancy Schilling, and the second of Member Virgil Becker, the meeting was adjourned at 1:15 P.M.

Donna Gariglietti, Secretary

16



Phone: 618/282-3807
888/367-5773
Fax: 618/282-3808

KASKASKIA
REGIONAL PORT DISTRICT    154 South Main, Federal Building  •  Red Bud, Illinois 62278

## MINUTES OF THE REGULAR MONTHLY BOARD MEETING
### JANUARY 9, 2012

The regular monthly meeting of the Members of the Board of the Kaskaskia Regional Port District was held on Monday, January 9, 2012 at the Port District office, 154 South Main Street, Red Bud, Illinois. Chairman George Obernagel called the meeting to order at 12:00 Noon, and upon the call of roll, the following Members were present: Charles Bauer, Virgil Becker, Mike Conrad, Clem Esker, Richard Guebert, Bernard Heck, Jr., Terry Liefer, Robert Myerscough, George Obernagel, Roger Rubemeyer, and Nancy Schilling. Member Ed Cockrell arrived during the meeting. Also in attendance at the meeting were the following people: General Manager, Ed Weilbacher; Mark Rujawitz of Rhutasel & Associates; Representative Jerry Costello, II; and Secretary, Donna Gariglietti.

The Minutes of the December 12, 2011 Board Meeting and December 19, 2011 Business Committee Meeting were presented, and upon the motion of Member Charles Bauer, and the second of Member Virgil Becker, Resolution No. 12-1-9-1 approving said Minutes was adopted by the Members of the Board. Thereupon, the Minutes as written form were ordered to be filed.

The Treasurer's Report of December 31, 2011 was considered, and upon the motion of Member Bernard Heck, Jr., and the second of Member Nancy Schilling, Resolution No. 12-1-9-2 was adopted, which provided that the Treasurer's Report be approved and filed, a copy of which is attached to the official copy of these Minutes.

At this time, there was a general discussion by the Members of the Board regarding the bills that were received. Upon the motion of Member Roger Rubemeyer, and the second of Member Terry Liefer, Resolution No. 12-1-9-3 was adopted:

That bills in the amount of $10,079.67 are approved for payment.

Next, Chairman George Obernagel welcomed Representative Jerry Costello, II to the meeting. Mr. Costello thanked the Members for inviting him to the meeting, told about himself, and how much he looked forward to working with the Board.

General Manager, Ed Weilbacher, informed the Members that First Bank is working on the final loan documents for the refinancing of the silo storage domes. The original bond issue will become due March 15th.

17

Randolph County and St. Clair County have adopted the WRDA Resolution. Monroe County and LKSI are expected to adopt the resolution at their meetings later this month.

Both sides will be filing motions for summary judgment in the Dynegy case by January 19th with oral arguments on February 14th.

Things are still looking positive for the Corps' Pilot Study. There will be an update at the next meeting.

Mr. Weilbacher stated that he had a call from IDNR, and they now want to lease the property at Fayetteville rather than transfer it to the District. They also want to lease us a smaller tract of land. After discussion, upon the motion of Robert Myerscough, and the second of Member Bernard Heck, Jr., Resolution No. 12-1-9-4 was adopted:

That the District proceed to have the lands needed for the Fayetteville project transferred from IDNR to the Port District and not lease them from the State.

It was also brought to the Board's attention that they will now have to complete training on the Illinois Open Meetings Act. The internet link to complete the training will be sent to the Members.

Upon the motion of Member Terry Liefer, and the second of Member Clem Esker, Resolution No. 12-1-9-5 was adopted:

That Donna Gariglietti be appointed the Port District's Freedom of Information Officer.

A list of the new committee appointments and a Board Meeting schedule were distributed. Upon the motion of Member Mike Conrad, and the second of Member Nancy Schilling, Resolution No. 12-1-9-6 was adopted:

That the Board Meeting schedule as presented for 2012 is approved.

The MV Blankenship located at Evansville recently took on water and was lying partially on its side. Pumps were brought in and it was uprighted. During a discussion on what should be done with the boat, it was suggested to move it to another location and possibly have salvagers look at it.

Next, a resolution proposing to rename the Kaskaskia Lock and Dam to the Jerry F. Costello Lock and Dam was presented. Upon the motion of Member Mike Conrad, and the second of Member Bernard Heck, Jr., Resolution No. 12-1-9-7 was adopted:

See attached.

18

Robert Myerscough reported on the Business Committee meeting which was held to discuss the lease for Central Stone at Fayetteville. Upon the motion of Member Robert Myerscough, and the second of Member Charles Bauer, Resolution No. 12-1-9-8 was adopted:

That the lease with Central Stone charge them $1,000 an acre for the land, and a throughput rate of $0.25 a ton. The rate for cow sand will be negotiable.

General Manager, Ed Weilbacher, reported that KRT now wants to move fertilizer across KRPD #1. A permit application has been submitted to the Department of Agriculture. They have also had to rebuild some track in the shaker building to accommodate the limestone shipments as well as work out a few other minor problems with the rail movements.

Mr. Weilbacher will be meeting with Gateway FS and the fire marshal next week to discuss removing the underground fuel tanks at Evansville.

Also, an Engineering Committee meeting will be held on January 12th at Fayetteville to discuss the site with the Corps, Central Stone, and KRT.

A second quarter budget vs. actual report was distributed and discussed.

Mark Rujawitz, of Rhutasel & Associates, stated that he has been working with George Andres on unit costs for the road into the Fayetteville site.

There being no other business to come before the Members of the Board, upon the motion of Member Ed Cockrell, and the second of Member Bernard Heck, Jr., the meeting was adjourned at 1:05 P.M.

Donna Gariglietti, Secretary

19

## AFFIDAVIT OF CUSTODIAN OF BUSINESS RECORDS

STATE OF _Illinois_ )
) SS.
COUNTY, PARISH, OR BOROUGH OF _Randolph_ )

I, _Edward J. Weilbacher_ being first duly sworn, on oath, depose and state

that the name and contact information for me contained below is true, and the copies of the records

attached to this Affidavit are kept in the ordinary course of business and are true copies of the records

described in the Subpoena Duces Tecum issued to Kaskaskia Regional Port District in the following

captioned case: _Yasmin Saighi v. General Services Administration_, Case Number CBCA 3693, United

States Civilian Board of Contract Appeals, Judge Jerome M. Drummond.

_Edward J. Weilbacher_
(Print full name)
_Edward Weilbacher_
Title: _General Manager_
Address: _336 N. Main St._
_Red Bud IL 62278_
Phone Number: _618-282-3807_
Email: _ed@kaskaskiaport.com_

Subscribed and sworn to me before the undersigned on the _2nd_ day of
_May_, 2014.

_Donna K. Gariglietti_
Notary Public

My Appointment Expires: _July 30, 2017_.
Commission No.:_____ [SEAL]

DONNA K GARIGLIETTI
MY COMMISSION EXPIRES
JULY 30, 2014
NOTARY PUBLIC
OFFICIAL SEAL
STATE OF ILLINOIS

### CERTIFICATE OF MAILING

I certify that on the _2nd_ day of _May_, 2014, I mailed, postage prepaid, a
copy of the above and foregoing documents, to:

Yasmin Saighi
7543 South Richmond Avenue
Tulsa, OK 74136

_Donna K. Gariglietti_
(Print full name)
_Donna K. Gariglietti_


EXHIBIT
B

Call to Order and Roll Call

Introduction of Guests: Julie Bigham Eggers, Candidate for the 116th Legislative District
Mike Bigler, Candidate for the 58th Senatorial District

Presentation of Minutes:  September 10, 2012 Board Meeting

Presentation of the Treasurer's Report

Presentation of Bills

Guests: Julie Bigham Eggers
Mike Bigler

Old Business:
Approval of 2011-2012 Audit Report (Distributed at September 10th Meeting)
Low Level of Service Policy Draft by COE and Its Effect for Kaskaskia Lock and Dam

New Business:
Proposals for Archaeology Phase I Survey
Sims Metal Management Lease Renewal with Noise Limits

General Manager's Report:
Update on Fayetteville:
Corps Section 10 Harbor Permit
NPDES Permit Filing
USDA Rural Development Loan
Electric and Road Financing
IDOT Grant for Entrance Road
Operator Agreement for Grain Terminal
IKE Planning Grant for KRPD with Randolph County as Sponsor
Water Street Bar & Grill Closing for the Winter
Update on Central Stone Lease
Update on the Blankenship
Annual Report
Port Working Group

Comments from the Public and Communications to the Board

Adjournment

Upcoming Meetings and Events:
October 23, LKSI Meeting, Prairie State Energy Campus
October 25, Regional Leaders Breakfast, St. Patrick's Church Hall, Ruma, IL
November 5, KRPD Board Meeting , Red Bud, IL (NOTE: DATE CHANGE)
November 12-16, Ed on Vacation

Call to Order and Roll Call

Introduction of Guests: Kurt Johnson, Southern Illinois Transfer/Kaskaskia River Terminals

Presentation of Minutes: October 8, 2012 Board Meeting

Presentation of the Treasurer's Report

Presentation of Bills

Guests: Kurt Johnson    Logistics from KRPD #1 to Prairie State

Old Business:
    Sims Metal Management Lease
    Letter from Mississippi River Commission Regarding General Manager's Testimony

New Business:
    Kellogg Fleeting Easement/Farmland Rental
    Air Permit Proposal for KRPD #1 to Handle Fertilizer (Reimbursed by KRT)
    Deposition by Obernagel for Dredge Worker Complaint
    No Trespassing Signs – Purple Paint Marking

General Manager's Report:
    Update on Fayetteville:
        Corps Section 10 Harbor Permit Received
        Archaeological Phase 1 Study Started
        SCI Engineering – Air Permit Application Under Development
        USDA Rural Development Loan - Pre-application Approved
        IDOT Grant for Entrance Road
        Operator Agreement for Grain Terminal
    IKE Planning Grant for KRPD with Randolph County as Sponsor
    Update on Central Stone Lease
    Update on the Blankenship
    KRPD #2 Concrete pavement Completed

Comments from the Public and Communications to the Board

Adjournment

Upcoming Meetings and Events:

November 6 – Port Holiday (Election Day)
November 12-16 - Ed on Vacation
November 12 – Port Holiday (Veterans Day)
November 22-23 Port Holiday (Thanksgiving)

K KRPD Board Minutes Treasurers Reports and Agendas and Meeting Notices FY 2013 Minutes and Treasurer's Reports 2012 November Regular Board Meeting Agenda.docx

A200

Call to Order and Roll Call

Presentation of Minutes:   November 5, 2012 Board Meeting
                           November 21, 2012 Special Board Meeting

Presentation of the Treasurer's Report

Presentation of Bills

Old Business:
> St. Clair Service Company Operator Agreement and alternatives
> Renewal of Consulting Agreement with George Andres
> Dynegy – Brief and Argument by Robert Sprague
> Letter Addendum - Trackage Agreement with Dynegy

New Business:
> St. Clair Service Company – New Athens access to the River
> Congressman Costello reports $800,000 emergency dredging at Kaskaskia mouth forthcoming
> Sponsor of Eagle Trek at the Kaskaskia Lock and Dam - $250.00
> Southwestern Illinois Port Authority relationship

General Manager's Report:
> Update on Fayetteville:
>> Corps begins rock removal at Fayetteville week of December 10 - J.D. Summers, contractor
>> Archaeological Phase 1 Study completed
>> SCI Engineering – Air permit application submitted
>> USDA Rural Development Loan – Full application being developed
>> IDOT Grant for entrance road
>> USDA NRCS and IDOA Farmland Assessment Impact – Application submitted
> IKE Planning Grant for KRPD with Randolph County as sponsor
> Update on the Blankenship
> KRPD #2 concrete pavement - Completed
> Sims Metal Management Lease – Completed
> Letter to Congress regarding low river levels
> Adkris Lease
> Final Report on Kaskaskia River Project Low Use Navigation Pilot Study by the Corps

Comments from the Public and Communications to the Board

Adjournment

Upcoming Meetings and Events:
December 25 - Holiday – Christmas
January 1 - Holiday – New Year's Day
January 14 - KRPD Board Meeting at Noon
January 21 - Holiday – Martin Luther King Day
January 23 - LKSI Meeting

K:\KRPD Board\Minutes Treasurers Reports and Agendas and Meeting Notices\FY 2013 Minutes and Treasurer's Reports\2012 December Regular Board Meeting Agenda.docx

7

A201

Call to Order and Roll Call

Presentation of Minutes:   December 10, 2012 Board Meeting

Presentation of the Treasurer's Report

Presentation of Bills
            6 Month Budget Analysis

Guest: Mr. Robert Sprague (If schedule permits)

Old Business:
            Report on the George Obernagel Deposition
New Business:
            Draft Policy on Board Meeting Participation by Electronic Means
            Draft Policy on Freedom of Information
            Draft Policy on Public Recording of Meetings
            Property Management Services – Fountains Rental
            Property for Office Space
General Manager's Report:
            St. Clair Service Company – New Athens access to the River
            Update on Fayetteville:
                Meeting with Buchheits
                Corps begins rock removal at Fayetteville week of December 10 - J.D. Summers, Contractor
                SCI Engineering – Air permit application submitted
                USDA Rural Development Loan – Full application being developed
                IDOT Grant for entrance road approved
            IKE Planning Grant for KRPD implementation with Chris Martin assisting
            Update on the Blankenship
            Southwestern Illinois Port Authority relationship
            Adkris Lease
            Dredging at the Lock and Dam
            KRPD #2 Lead and Chris Martin assistance
            Freight Study for St. Louis
            Waterloo Rotary Club December 18th
Comments from the Public and Communications to the Board

Adjournment

Upcoming Meetings and Events:
January 21 - Holiday – Martin Luther King, Jr. Day
January 23 - LKSI Meeting
February 2 - Eagle Trek at the Kaskaskia Lock and Dam
February 11 – KRPD Board Meeting at Noon
February 12 – Holiday - Lincoln's Birthday
February 18 – Holiday - - President's Day

K:\KRPD Board\Minutes Treasurers Reports and Agendas and Meeting Notices\FY 2013 Minutes and Treasurer's Reports\2013 January Regular Board Meeting Agenda.docx

8

A202

Kaskaskia Regional Port District
154 South Main Street, Red Bud, IL
Regular Board Meeting Agenda
February 11, 2013- 12:00 PM (Noon)

Call to Order and Roll Call

Presentation of Minutes:  January 14, 2013 Board Meeting

Presentation of the Treasurer's Report

Presentation of Bills

Guest: Mr. Robert Sprague

Old Business:

New Business:
>> Resolution for participation in Surplus Property Program
>> Easement for fiber optic cable crossing railroad at KRPD #2
>> Resolution to move March Board Meeting to March 4th

General Manager's Report:
>> Update on Fayetteville:
>>> IDOT Road Grant for entrance road – timeline
>>> Status of negotiations for terminal operator
>> Permit for Kellogg – repair of cells
>> IKE Planning Grant for KRPD – RFP's
>> Update on the <mark>Blankenship</mark>
>> Dredging at the Lock and Dam
>> New Bourbon Port Authority

Comments from the Public and Communications to the Board

Adjournment

Upcoming Meetings and Events:
February 12 – Holiday - Lincoln's Birthday
February 13 – Presentation at the Monroe County Economic Development Council
February 18 – Holiday - - President's Day
February 27 – LKSI Meeting at New Athens – Speaker Paul Rhode, Waterways Council
March 4 -      KRPD Board Meeting (moved up one week)
March 11 -     KWA Summit at Carlyle

K:\KRPD Board\Minutes Treasurers Reports and Agendas and Meeting Notices\FY 2013 Minutes and Treasurer's Reports\2013 February Regular Board Meeting Agenda.docx

A203

9

Kaskaskia Regional Port District
154 South Main Street, Red Bud, IL
Regular Board Meeting Agenda
March 4, 2013 - 12:00 PM (Noon)

Call to Order and Roll Call

Presentation of Minutes:  February 11, 2013 Board Meeting
                          February 15, 2013 Building Committee Meeting

Presentation of the Treasurer's Report

Presentation of Bills

Guest: Dr. Marc Kiehna, County Commissioner

Committee Reports:
          Business Committee – Bob Myerscough, Chair
          Building Committee – Terry Liefer, Chair

Old Business:
           Approval of Final Dynegy Track Usage Agreement
          Office Building Purchase

New Business:
          Resolution for Dedication of Public Right of Way on Port Land at Fayetteville
          Resolution to participate in the Middle Mississippi River Partnership
          Potential Sale of Property at Baldwin

General Manager's Report:
          Update on Fayetteville:
              Widen shoulders – No turn lane
              Status of negotiations for terminal operator
          IKE Planning Grant for KRPD – March 1 deadline for RFP's
          2013 Conservation Congress
          Update on the Blankenship
          Dredging at the Lock and Dam
          Monroe County Economic Development Committee

Comments from the Public and Communications to the Board

Adjournment

Upcoming Meetings and Events:
March 11 -    KWA Summit at Carlyle
March 20-22   IRPT Annual Meeting New Orleans, LA
March 26      Meeting with Jackson-Union Port District
March 27      LKSI Board Meeting and Barge Committee

K:\KRPD Board\Minutes Treasurers Reports and Agendas and Meeting Notices\FY 2013 Minutes and Treasurer's Reports\2013 March Regular Board Meeting Agenda.docx

A204

Kaskaskia Regional Port District
154 South Main Street, Red Bud, IL
Regular Board Meeting Agenda
April 8, 2013 - 12:00 PM (Noon)

Call to Order and Roll Call

Presentation of Minutes: March 4, 2013 Board Meeting, Building and Business Committees

Presentation of the Treasurer's Report

Presentation of Bills

Guest: Mr. Mark Kern, Chairman of the St. Clair County Board

Old Business:
>Office building purchase – Special Use Permit
>Resolution authorizing signature for closing documents
>9 month budget to actual comparison
>10 year financial projections

New Business:
>Resolution to Declare Surplus Property at Baldwin
>Lease Amendment with Gateway FS to modify land and adjust throughput rate

General Manager's Report:
>Illinois Port Working Group with IDOT Sec. Ann Schneider
>Update on Fayetteville
>>Road agreement with St. Clair County
>>Air permit secured
>>Status of negotiations for terminal operator
>>IDNR riverside configuration details
>IKE Planning Grant for KRPD – HeartLands Conservancy selected as contractor
>2013 Conservation Congress
>Kaskaskia Watershed Summit
>Report on the IRPT Annual Meeting in New Orleans
>Jackson-Union Port District visit
>New lessee for Water Street Bar and Grill
>Update on the Blankenship
>LKSI - Jointly hosting meeting on May 22 at KRPD #1
>Schedule Finance Committee for 2014 Budget
>Regional Leaders Breakfast – Board Members attending

Comments from the Public and Communications to the Board

Adjournment
Upcoming Meetings and Events:
April 19 – Regional Leaders Breakfast American Legion Hall, Steeleville, IL
April 24 – LKSI Meeting at Kaskaskia Lock and Dam – Dedicate Ed Crow stone
May 13 – KRPD Regular Board Meeting

A205



Phone: 618/282-3807
888/367-5773
Fax: 618/282-3808

KASKASKIA
REGIONAL PORT DISTRICT    154 South Main. Federal Building  •  Red Bud, Illinois 62278

## MINUTES OF THE REGULAR MONTHLY BOARD MEETING
### JULY 9, 2012

The regular monthly meeting of the Members of the Board of the Kaskaskia Regional Port District was held on Monday. July 9. 2012 at the Port District office. 154 South Main Street. Red Bud. Illinois.  Chairman George Obernagel called the meeting to order at 12:00 Noon. and welcomed newly appointed Board Members Richard Guebert, Jr., Dennis Rodenberg, and Roger Rubemeyer.  Upon the call of roll, the following Members were present:  Charles Bauer, Virgil Becker, Mike Conrad, Brian Funk, Richard Guebert, Jr., Bernard Heck, Jr., Terry Liefer, Rodney Linker, Robert Myerscough, George Obernagel, Robert Pautler, Dennis Rodenberg, Roger Rubemeyer, and Nancy Schilling.  Member Joe Luechtefeld was absent.  Also in attendance at the meeting were the following people:  General Manager, Ed Weilbacher; Mark Rujawitz of Rhutasel & Associates; Kieth Brinkmann of J. W. Boyle; Secretary, Donna Gariglietti; George Andres of Andres Development Services; Mr. Jason Plummer; and Ms. Deb Detmers.

The Minutes of the June 11, 2012 Board Meeting were presented, and upon the motion of Member Charles Bauer, and the second of Member Rodney Linker, Resolution No. 12-7-9-1 approving said Minutes was adopted by the Members of the Board.  Thereupon, the Minutes as prepared in written form were ordered to be filed.

The Treasurer's Report of June 30, 2012 was considered, and upon the motion of Member Bernard Heck, Jr., and the second of Member Charles Bauer, Resolution No. 12-7-9-2 was adopted, which provided that the Treasurer's Report be approved and filed, a copy of which is attached to the official copy of these Minutes.

At this time, there was a general discussion by the Members of the Board regarding the bills that were received.  Upon the motion of Member Terry Liefer, and the second of Member Dennis Rodenberg, Resolution No. 12-7-9-3 was adopted:

That bills in the amount of $21,725.28 are approved for payment.

An updated report showing actual income/expenses as of June 30th was distributed and briefly discussed.

Next, the Chairman introduced Mr. Jason Plummer. Republican candidate for the 12th Congressional District seat.  After speaking briefly, Mr. Plummer answered questions from the Members of the Board regarding issues they felt were of importance to the District.

12

Letters from Attorney Robert Sprague regarding the Dynegy lawsuit were acknowledged. Mr. Weilbacher will be meeting with him next week.

A Resolution for the Port District to be in compliance with the Prevailing Wages Act was presented. Upon the motion of Member Robert Myerscough, and the second of Member Robert Pautler, Resolution No. 12-7-9-4 was adopted:

See attached.

A new committee list to include the new Board Members was distributed.

Next, George Andres was called upon to give an update on the Fayetteville Terminal. A revised cost estimate for the grain terminal was distributed. The site needs to be leveled and a 20' pile of material needs to be formed where the tank foundations will be constructed. Rhutasel has been working on the road survey and the Corps' permit application was submitted last week.

General Manager, Ed Weilbacher, stated that the site clearing for the road and terminal so far have cost about $12,960. He is also working on the Rural Development pre-application for financing. The proposals for terminal operator are due on July 16th. The Engineering and Business Committees will be meeting on July 24th at 10:00 A.M. to review the proposals.

Mr. Weilbacher also contacted a forester to inspect the site to see if it would be feasible to harvest any trees from the spoil site. His report was discussed.

Prairie State has completed the renovation of Pike Sawmill Road. They raised the road to prevent flooding and rocked it.

CMS has indicated that before they put the MV Blankenship up for interested parties to look at, they will need to know the present condition of the vessel. Mr. Weilbacher will complete their request.

A letter from the Grain Belt Express Clean Line, which indicated that they would not be locating in this area, was read.

There being no other business to come before the Members of the Board, upon the motion of Member Terry Liefer, and the second of Member Mike Conrad, the meeting was adjourned at 1:00 P.M.

Donna Gariglietti, Secretary

13



**KASKASKIA**
**REGIONAL PORT DISTRICT**   154 South Main, Federal Building   •   Red Bud, Illinois 62278

MINUTES OF THE REGULAR MONTHLY BOARD MEETING
OCTOBER 8, 2012

The regular monthly meeting of the Members of the Board of the Kaskaskia Regional Port District was held on Monday, October 8, 2012 at the Port District office, 154 South Main Street, Red Bud, Illinois. Chairman George Obernagel called the meeting to order at 12:00 Noon, and upon the call of roll, the following Members were present: Charles Bauer, Mike Conrad, Brian Funk, Richard Guebert, Jr., Bernard Heck, Jr., Terry Liefer, Rodney Linker, Joe Luechtefeld, Robert Myerscough, George Obernagel, Robert Pautler, Roger Rubemeyer, and Nancy Schilling. Members Virgil Becker and Dennis Rodenberg were absent. Also in attendance at the meeting were the following people: General Manager, Ed Weilbacher; Mark Rujawitz of Rhutasel & Associates; Keith Brinkmann from J. W. Boyle; Secretary, Donna Gariglietti; Julie Bigham Eggers; Mike Bigler; and Andrew Boner.

The Minutes of the September 10, 2012 Board Meeting were presented, and upon the motion of Member Brian Funk, and the second of Member Benard Heck, Jr., Resolution No. 12-10-8-1 approving said Minutes, with a noted correction, was adopted by the Members of the Board.

The Treasurer's Report of September 30, 2012 was considered, and upon the motion of Member Rodney Linker, and the second of Member Nancy Schilling, Resolution No. 12-10-8-2 was adopted:

That the September 30, 2012 Treasurer's Report be approved and that $42,000 in the Bond Repayment Account be moved to the General Account, with the stipulation that the funds be returned when they become available from the construction loan for the Fayetteville Terminal.

At this time, there was a general discussion by the Members of the Board regarding the bills that were received. Upon the motion of Member Richard Guebert, Jr., and the second of Member Terry Liefer, Resolution No. 12-10-8-3 was adopted:

That bills in the amount of $33,217.48 are approved for payment.

The Chairman then introduced Mr. Mike Bigler, Democratic candidate for the 58th Senatorial District. Mr. Bigler talked to the Members about his qualifications for running for the

20

position, as well as what he would like to accomplish if elected. He also answered questions from those present.

Also speaking to the Members of the Board was Ms. Julie Bigham Eggers, Republican candidate for the 116th Legislative District. She also spoke about her qualifications and her priorities.

The Annual Audit Report, which was prepared by J. W. Boyle and distributed at the last meeting, was briefly discussed. Upon the motion of Member Robert Pautler, and the second of Member Brian Funk, Resolution No. 12-10-8-4 was adopted:

That the June 30, 2012 Annual Audit Report is approved.

At this time, General Manager, Ed Weilbacher, was called upon for his monthly report. He met with Colonel Hall of the St. Louis District Corps of Engineers to discuss the proposed reduction in hours of operation at the Kaskaskia Lock & Dam. It was decided that the Corps will continue to look at the situation, and by the time a decision is made, we should be over the required 1,000 annual lockages to warrant 24/7 service.

Mr. Weilbacher presented two proposals for an Archaeology Phase I Survey, which is now required for the road into the Fayetteville Terminal. Upon the motion of Member Terry Liefer, and the second of Member Bernard Heck, Jr., Resolution No. 12-10-8-5 was adopted:

That the proposal from Archaeological Research Center to perform an Archaeology Phase I Survey for the amount of $1,998.00 is approved.

A revised lease, which contained language limiting the hours of operation to reduce noise, was submitted to Sims Metal Management for their consideration last month. We have not heard back from them. Upon the motion of Member Brian Funk, and the second of Member Bernard Heck, Jr., Resolution No. 12-10-8-6 was adopted:

That the revised lease with Sims Metal Management is approved.

A proposal from SCI Engineering to prepare the air permit application for the Fayetteville Terminal was discussed. Upon the motion of Member Terry Liefer, and the second of Member Richard Guebert, Jr., Resolution No. 12-10-8-7 was adopted:

That the proposal from SCI Engineering to prepare the Fayetteville Terminal air permit application for the amount of $3,500.00 is approved.

IDNR has requested more information before signing off on the Corps permit. Revised plans will be sent to them. The NPDES permit application has been submitted.

Rural Development will let us know next week how much loan money will be available for the Fayetteville Terminal. We are expecting that it will be about $4,000,000. A construction loan will be taken from the bank and then repaid with the Rural Development funds.

21

The IDOT grant application for the entrance road has been submitted. The electric service and other road expenses will be included in the construction loan. Revenue from the Central Stone lease would be used to repay this loan.

St. Clair Service has a draft of an Operator Agreement.

Water Street Bar & Grill sent the Port District a letter stating that they would be closing for the winter. It was suggested that we resolve the matter of their past due rent.

Susan Solan of CMS recently inspected the Blankenship. She is going to advertise it State wide.

Mr. Weilbacher has completed his annual report which was distributed.

He also gave a brief report on the Port Working Group, which will be meeting quarterly.

The next Board meeting will be held on November 5th, rather than the 12th.

There being no other business to come before the Members of the Board, upon the motion of Member Robert Myerscough, and the second of Member Rodney Linker, the meeting was adjourned at 1:15 P.M.

Donna Gariglietti, Secretary

22



## MINUTES OF THE REGULAR MONTHLY BOARD MEETING
### FEBRUARY 11, 2013

The regular monthly meeting of the Members of the Board of the Kaskaskia Regional Port District was held on Monday, February 11, 2013 at the Port District office, 154 South Main Street, Red Bud, Illinois. Chairman George Obernagel called the meeting to order at 12:00 Noon, and upon the call of roll, the following Members were present: Charles Bauer, Mike Conrad, Brian Funk, Bernard Heck, Jr., Terry Liefer, Joe Luechtefeld, Robert Myerscough, George Obernagel, Dennis Rodenberg, and Nancy Schilling. Members Virgil Becker, Richard Guebert, Jr., Rodney Linker, Robert Pautler and Roger Rubemeyer were absent. Also in attendance at the meeting were the following people: General Manager, Ed Weilbacher; Mark Rujawitz of Rhutasel & Associates; Robert Sprague of Sprague & Urban; and Secretary, Donna Gariglietti.

The Minutes of the January 14, 2013 Board Meeting were presented, and upon the motion of Member Bernard Heck, Jr., and the second of Member Charles Bauer, Resolution No. 13-2-11-1 approving said Minutes was adopted by the Members of the Board. Thereupon, the Minutes as prepared in written form were ordered to be filed.

The Treasurer's Report of January 31, 2013 was considered, and upon the motion of Member Brian Funk, and the second of Member Nancy Schilling, Resolution No. 13-2-11-2 was adopted, which provided that the Treasurer's Report be approved and filed, a copy of which is attached to the official copy of these Minutes.

At this time, there was a general discussion by the Members of the Board regarding the bills that were received. Upon the motion of Member Joe Luechtefeld, and the second of Member Brian Funk, Resolution No. 13-2-11-3 was adopted:

That bills in the amount of $9,731.33 are approved for payment.

The Chairman then introduced Mr. Robert Sprague, Attorney for the District. Mr. Sprague brought the Members up to date on various activities he has been working on.

A Resolution for the Port District to continue to participate in the Surplus Property Program was introduced. Upon the motion of Member Robert Myerscough, and the second of Member Brian Funk, Resolution No. 13-2-11-4 was adopted:

See attached.

Next, the General Manager was called upon for his monthly report. A proposed easement from Delta Communications to have a fiber optic cable cross under the railroad at KRPD #2 on the north side of Illinois Rt 154 in the State's right of way was presented. After discussion, upon the motion of Member Terry Liefer, and the second of Member Dennis Rodenberg, Resolution No. 13-2-11-5 was adopted:

That the Fiber Optic Cable Easement with Delta Communications is approved.

There was also a discussion regarding moving the date of the next Board meeting due to the conflict with the KWA Summit. Upon the motion of Member Dennis Rodenberg, and the second of Member Charles Bauer, Resolution No. 13-2-11-6 was adopted:

That the next Board meeting be held on March 4th rather than March 11th.

General Manger, Ed Weilbacher, updated those present on the Fayetteville project. The grant for the road has been approved. We will need to provide IDOT with a document dedicating the road as a public right of way. Mr. Weilbacher will check with IDNR to make sure they approve of such action. Peabody may have to do the same with their part of the road. An intergovernmental agreement with St. Clair County and/or the township will also be needed. Mr. Weilbacher met with Buchheit last month and they seem to still be interested in operating the grain terminal. The president of the company has been out of the country. The rock which was dredged from the river is piled on the bank. Mr. Weilbacher has also learned that Corps of Engineers' monies remaining in funds allocated for dredging have gone into a pool for long range planning.

Repairs are under way on two cells at Kellogg Dock. No new permit was needed from the Corps. Kinder Morgan informed us today that a runaway barge had damaged two other cells in December. They are working on a settlement with the barge company.

Work is in progress on the IKE grant. Chris Martin from the Randolph County Economic Development office has prepared the request for proposals, which will be due March 1. There will be two components – planning and developing and mapping.

No news on the Blankenship. Mr. Weilbacher was hoping to get the authority to scrap the vessel.

He also spent time with the New Bourbon Port Authority. He attended one of their Board meetings and gave them copies of our annual report and brochures we have available.

Preliminary costs for remodeling the building for new office space were more than anticipated. The property is in foreclosure and the bank is willing to take less than the advertised price. It was decided to appoint a committee to look into the building further. Those appointed to the committee were: Terry Liefer, Brian Funk, Robert Myerscough, Mike Conrad and George Obernagel.

Two thank you notes were read by the Chairman. One was from the Heartland Conservancy for sponsoring the Eagle Trek and the other was from the family of Eugene Linker.

31

It was also brought to the Board's attention that donations are being accepted for rebuilding the pavilion at Fort Kaskaskia which burned. It was decided to wait until more definite plans are in place to rebuild before making a donation.

There being no other business to come before the Members of the Board, upon the motion of Member Bernard Heck, Jr., and the second of Member Charles Bauer, the meeting was adjourned at 12:50 P.M.

Donna Gariglietti, Secretary

31

**From:** edweilbacher
**To:** Solon, Susan
**Subject:** RE: Checking in on the next step for the Blankenship
**Date:** Wednesday, July 11, 2012 10:11:45 AM

M/V Blankenship, 65' long, 18' wide, 5' draft, twin draft V-6-92TA Detroit Diesel engines, Allison gear boxes, MDL: 20-L and 20-R. Engines rebuilt Apr 1998 and gear boxes June 1998. Generator Sets: Onan Series MDKAF 25 KW, 1800 RPM (June 1998) 120V, 1 PH, 60 HZ, 104 A, 12 V battery port MDL: 25.0 MDKAF/9492 7A and STB MDL: 25.0 MDKAF/9492 7A Kubota V2803B Diesel Engine, 5 CYL, 46 BHP (34.7 KW) Michigan Pac-Master Propeller for heavy duty use. Has lead base and asbestos report. Fresh water intake for A/C unit pump cracked strainer castings cracked, needs new batteries. Vessel includes: Furuno Sonor, APC Power Supply, Radio "Ray Jeffer", Marine Color Echo depth sounder, and Radio RM Two way base station. Vessel has been stripped of interior walls and finishes for restoration. There have been no alterations to the vessel that added hazardous materials, specifically PCBs or asbestos.

Ed Weilbacher
General Manager
Kaskaskia Regional Port District
154 S. Main St.
Red Bud, IL 62278
618 282-3807 Voice
618 282-3808 FAX
618 975-5979 Cell
ed@kaskaskiaport.com
www.kaskaskiaport.com

**From:** Solon, Susan [mailto:Susan.Solon@Illinois.gov]
**Sent:** Monday, July 09, 2012 8:29 AM
**To:** edweilbacher
**Subject:** RE: Checking in on the next step for the Blankenship

(sorry for the last-minute reply; I was waiting on the Fed reply!)

The Blankenship will be listed on GSAXcess for 60 days for federal agencies to get a shot at it. It would be most helpful if you could continue to store it during this time.

Also, can you provide an updated description of the boat, describing any changes since it was last reported on the GSAXcess system? (See the attachments for the previous descriptors.) Can you confirm that there were no alterations to the vessel that added hazardous materials, specifically PCBs or asbestos?

Thanks much,

Susan D. Solon
CMS Client Manager
1924 S. 10 1/2 St.


EXHIBIT
C


...a GovSales.gov partner



| Home | All Categories | Real Estate | Offline Sales |

All Categories    Search    Advanced Search    Login    Register

All Categories >

**Warning:** In order to view the most up-to-date information, please click the refresh button on your browser.

## Item Information

### Item Photos

### KATALINA YACHT

| | |
|---|---|
| Sale-Lot Number: | 41QSCI14823001 |
| City, State: | Ponce, PR |
| Current Bid: | 5,611 USD |
| Bidders: | 6 |
| Close Time: | 01/07 06:18 PM CT (Closed) |
| Time Remaining: | |



| Description | Bidding Details | Bid History | Item Location |

50 FT. YACHT THE VESSEL HAS DUAL DETROIT DIESEL ENGINES 8V92. THE VESSEL WAS SANK IN A MAJOR STORM. IT WAS RAISED AND THE OIL WAS DRAINED & REFILLED, THE ENGINES HAVE BEEN STARTED MULTIPLE TIMES, THE STARBOARD ENGINE NEEDS WORK, ALL OF THE INTERIOR TRIM, COMFORTS AND COMPONENTS AS WELL AS, THE ELECTRONICS WATER DAMAGED AND MILDEWED, MFG: CHEOY LEE, MDL: SPORTFISHERMAN. ****************SALVAGE******************* 47329233500001

**THE CONDITION OF THE PROPERTY IS NOT WARRANTED.**

Click here for pricing guides.

**SPECIAL INSPECTION INFORMATION**

PLEASE CONTACT THE CUSTODIAN LISTED TO SCHEDULE AN

APPOINTMENT TO INSPECT THE LISTED PROPERTY

Please contact the custodian for inspection dates and times and for removal arrangements.

PROPERTY REMOVAL: Due to security issues at property locations, successful bidders are required to contact the custodian prior to entering the facility to remove property, and at times, they are not permitted to use security phones. Therefore, successful bidders must communicate with the custodians in advance to make arrangements for removal and/or have a cell phone with them to contact them once they arrive at the secured location.

Successful bidders are cautioned that they will be responsible for loading, packing and removal of any and all property awarded to them from the exact place where the property is located, as indicated below.

**Property Location and inquiries/questions regarding property inspection and/or removal:**

Ponce Yacht & Fishing Club

3631 Paseo Laguncha





### ♻ Go Green... Reuse is Recycling!

Carbon savings for this item are not available.

Select an Equivalency:    Long Flight Miles

Click here for additional information.


A234

Exhibit D

Ponce, PR 00716

Contact: Sophia Orta
 Phone: 787-842-9003
 Fax: 787-844-1300
ANTHONYJ.JOHNSON@MARYLAND.GOV

**For inquiries/questions regarding payment, contact the following sales office:**

GSA, FAS, 4QSCC
 SALES OFFICE
 77 FORSYTH STREET
 ATLANTA , GA 30303

Phone: 404-331-0040
 Fax: 404-331-7584

**For inquiries/questions regarding contractual issues, contact the following sales contracting officer/property disposal specialist:**

VICTORIA KNOTTS
 Phone: 404-331-1190
VICTORIAC.KNOTTS@GSA.GOV

(*) Possible Extension. See Bidding Rules.



| | | | |
|---|---|---|---|
| About GSA Auctions | Federal Acquisition Service | Terms & Conditions | |
| Help | GSA Fleet Vehicle Sales | Protecting Your Privacy | |
| FAQ | GSA Surplus Sales | Accessibility Policy | |
| Sales Abbreviations | Real Property Disposal | System Status | |
| RSS | Public Buildings Service | Browser Support | |
| Credit Card Form | | | |
| Contact Us | | | |

  

Copyright © 2001 U.S. General Services Administration





| Home | All Categories | Real Estate | Offline Sales | My Preferences | My Summary | My Favorites | My Messages |

Search    All Categories    Search    Advanced Search    Logout

All Categories >

**Warning:** In order to view the most up-to-date information, please click the refresh button on your browser.

## Item Information

### FIRE/PATROL BOAT

**Sale-Lot Number:** 41QSCI13375001

**City, State:** Evansville, IL

**Current Bid:** 30,056
USD

Remove from favorites

**Bidders:** 15

**Close Time:** 05/30 05:38 PM CT (Closed)

**Time Remaining:**

| Description | Bidding Details | Bid History | Item Location |

M/V BLANKENSHIP, 65~L, 18~W, 5~DRAFT, ESTIMATED DATE OF MFG: 1987, TWIN DRAFT V6-92TA DETROIT DIESEL ENGINES, ALLISON GEAR BOXES, MDL: 20L AND 20R. ENGINES REBUILT APRIL 1998 AND GEAR BOXES JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF 25KW, 1800 RPM (JUNE 1998) 120V, 1 PH, 60 HZ,104A, 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A AND STB MDL: 25.0 MDKAF/94927A. KUBOTA V2803B DIESEL ENGINE, 5 CYL, 46 BHP (34.7KW) MICHIGAN PAC-MASTER PROPELLER FOR HEAVY DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP CRACKED, STRAINER CASTINGS CRACKED, NEEDS NEW BATTERIES. VESSEL INCLUDES FURUNO SONAR, APC POWER SUPPLY, RADIO "RAY JEFFER", MARINE COLOR ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE STATION. VESSEL HAS BEEN STRIPPED OF INTERIOR WALLS AND FINISHES FOR RESTORATION. THERE HAVE BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT. REPAIRS MAY BE REQUIRED. PARTS MAY BE MISSING. DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN THE PROPERTY DESCRIPTION. HOWEVER, ABSENCE OF ANY INDICATED DEFICIENCIES DOES NOT MEAN THAT NONE EXISTS. 4751F231220001A

**THE CONDITION OF THE PROPERTY IS NOT WARRANTED.**

Click here for pricing guides.

**SPECIAL INSPECTION INFORMATION**

PLEASE CONTACT THE CUSTODIAN LISTED TO SCHEDULE AN

APPOINTMENT TO INSPECT THE LISTED PROPERTY.

Please contact the custodian for inspection dates and times and for removal arrangements.

PROPERTY REMOVAL: Due to security issues at property locations, successful bidders are
required to contact the custodian prior to entering the facility to remove property, and at times, they

## Item Photos







♻ **Go Green... Reuse is Recycling!**

Carbon savings for this item are not available.

Select an Equivalency:    Long Flight Miles

Click here for additional information.

A236

Exhibit E

are not permitted to use security phones. Therefore, successful bidders must communicate with the custodians in advance to make arrangements for removal and/or have a cell phone with them to contact them once they arrive at the secured location.

Successful bidders are cautioned that they will be responsible for loading, packing and removal of any and all property awarded to them from the exact place where the property is located, as indicated below.

**Property Location and inquiries/questions regarding property inspection and/or removal:**

Kaskaskia Regional Port District
 Evansville Marina
 Evansville, IL 62242

Contact: Ed Weilbacher
 Phone: 618-282-3807
 Fax: 618-282-3808
ED@KASKASKIAPORT.COM

**For inquiries/questions regarding payment, contact the following sales office:**

GSA, FAS, 4QSCC
 SALES OFFICE
 77 FORSYTH STREET
 ATLANTA , GA 30303

Phone: 404-331-0040
 Fax: 404-331-7584

**For inquiries/questions regarding contractual issues, contact the following sales contracting officer/property disposal specialist:**

VICTORIA KNOTTS
 Phone: 404-331-1190
VICTORIAC.KNOTTS@GSA.GOV

(*) Possible Extension. See Bidding Rules.



| | | | |
|---|---|---|---|
| About GSA Auctions | Federal Acquisition Service | Terms & Conditions | |
| Help | GSA Fleet Vehicle Sales | Protecting Your Privacy | |
| FAQ | GSA Surplus Sales | Accessibility Policy | |
| Sales Abbreviations | Real Property Disposal | System Status | |
| RSS | Public Buildings Service | Browser Support | |
| Credit Card Form | | | |
| Contact Us | | | |



Copyright © 2001 U.S. General Services Administration

# IN THE UNITED STATES CIVILIAN BOARD OF CONTRACT APPEALS

YASMIN SAIGHI,        )
                              )
      Appellant,        )
                              )
v.                         )      Case No.      CBCA 3693
                              )
GENERAL SERVICES        )      (Judge Drummond)
ADMINISTRATION,        )
                              )
      Respondent.       )

## APPELLANT'S CROSS-MOTION FOR SUMMARY RELIEF

COMES NOW Appellant, by and through the undersigned counsel, and for her Cross-Motion for Summary Relief, states as follows:

1.     Respondent's Motion for Summary Relief ("Motion") argues that it is entitled to summary relief because Appellant failed to comply with the Misdescription portion of the Terms and Conditions of the Contract between her and Respondent, in that she did not provide written notice to Respondent within fifteen (15) days of receiving her receipt for payment for the M/V Blankenship (the "Boat").

2.     This argument is founded on the incorrect assertion that Respondent complied with all conditions and terms of the sales contract for the Boat. If Respondent failed to fulfill its obligations on the contract, it cannot assert the contract terms as a bar to Appellant's recovery on the contract. It is axiomatic that a party who first breaches a contract cannot thereafter enforce its terms.

3.     As summarized in Respondent's motion, both Respondent's website listing and the terms and conditions of the sales contract it drafted state that "[d]eficiencies, when known, have been indicated in the property description." Accordingly, it is indisputable that Respondent

1

had the contractual obligation to disclose known deficiencies and that this obligation preceded any of Appellant's contractual obligations.

4. It is also indisputable that known deficiencies were not disclosed. In marketing the Boat, Respondent anointed Ed Weilbacher of the Kaskaskia Regional Port District ("KRPD") as Respondent's actual or apparent agent. Of course, facts within the knowledge of an agent are binding on the principal. In other words, Mr. Weilbacher's knowledge of the Boat was and is imputed to Respondent, such that Respondent had knowledge of the Boat's deficiencies of which Mr. Weilbacher had knowledge.

5. There can be no dispute that Mr. Weilbacher had knowledge that the Boat had sank prior to the sale (i.e. December 2011) and that its engines were submerged in that sinking.

6. These deficiencies were never disclosed to Appellant or her agent prior to the May 30, 2013 sale of the Boat to Appellant.

7. Such deficiencies were material because they render the Boat essentially valueless, in that the costs of repairing a sunken Boat and its engines far exceed the Boat's value. Had such deficiencies been disclosed, Appellant would not have purchased the Boat at any price, thereby rendering Respondent's non-disclosure as material.

8. Because of Respondent's breach of its contractual obligation to disclose known deficiencies, Appellant paid $30,056 for a worthless Boat and $2,200 in repairs thereto, all before learning of the deficiencies. Accordingly, Appellant's damages as a result of Respondent's breach of the contract are in the principal amount of at least $32,256.00 before her attorney's fees.

9. There is no genuine dispute to any of the foregoing, and Appellant is entitled to judgment as a matter of law (as further detailed in Appellant's Memorandum of Law opposing

2

Respondent's Motion and supporting her Cross-Motion for Summary Relief, which is incorporated herein by this reference).

WHEREFORE, Appellant prays this Court to deny Respondent's Motion and enter judgment in her favor and against Respondent in the principal amount of $32,256.00, together with her costs incurred herein, pre-judgment and post-judgment interest, attorney's fees, and any such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

HERZOG CREBS LLP

John G. Beseau, MO: #56704; IL: #6284680
100 N. Broadway, 14th Floor
St. Louis, Missouri 63102
(314) 231-6700 *telephone*
(314) 231-4656 *facsimile*
jgb@herzogcrebs.com
Attorneys for Appellant

## CERTIFICATE OF SERVICE

I certify that on this 30th day of July 2014, a true and correct copy of the foregoing was sent via electronic mail to the following:

Jenny M. Matte, Esq.
Office of the Regional Counsel, GSA
77 Forsyth Street, Suite 600
Atlanta, Georgia 30303
Jenny.matte@gsa.gov
Counsel for Respondent



3

IN THE UNITED STATES CIVILIAN BOARD OF CONTRACT APPEALS

YASMIN SAIGHI,          )
                               )
      Appellant,       )
                               )
v.                         )    Case No.    CBCA 3693
                               )
GENERAL SERVICES     )    (Judge Drummond)
ADMINISTRATION,     )
                               )
      Respondent.     )

## APPELLANT'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS

COMES NOW Appellant, by and through the undersigned counsel, and for her Statement of Additional Undisputed Facts, states as follows:

A.     The Boat sank on or about December 21, 2011, i.e., prior to the May 30, 2013 sale to Appellant, such that its engines were submerged (the "Deficiencies"). (Aff. of W. Terry, ¶ and Exh. 3 thereto; Minutes of Board Meetings of the Kaskaskia Regional Port District ("KRPD") [Exh. A], pp. 17-18).

B.     At all relevant times, Ed Weilbacher is and was the General Manager of the KRPD. (Exhs. A and B, passim.).

C.     Ed Weilbacher is the agent of Respondent for purposes of the disclosure of the Boat's deficiencies in the instant transaction. (Aff. of Appellant, ¶¶8-9; Aff. of M. Mahjoub, ¶¶13-15, 17; Exhibit C (produced by Respondent); Exhibit E (website listing for the Boat)).

D.     Respondent delegated the authority of authoring the description of the Boat in Respondent's website listing to Mr. Weilbacher and used his description which was provided at Respondent's request, which per the description and the contract terms and conditions, was to contain all known deficiencies. (Exhibit C; See Statement 4 above; Exhibit E).

1

E.     Neither Respondent, nor Mr. Weilbacher, ever in any way communicated that Mr. Weilbacher was not Respondent's agent or that his authority to act on Respondent's behalf was limited in any way. (Aff. of Appellant, ¶9; Aff. of M. Mahjoub, ¶17).

F.     Ed Weilbacher had knowledge of the Deficiencies prior to the May 30, 2013 sale. (Aff. of W. Terry, ¶ and Exh. 3 thereto; Exhibit A, pp. 15, 17-18).

G.     The Deficiencies were not disclosed to Appellant or her agent by anyone, including Respondent and Mr. Weilbacher, prior to the May 30, 2013 sale. (Aff. of Appellant, ¶¶2, 10-11; Aff. of M. Mahjoub, ¶¶7, 16, 18).

H.     Neither Appellant, nor her agent, had any knowledge of the Deficiencies prior to the May 30, 2013 sale. (Aff. of Appellant, ¶¶2, 10-11; Aff. of M. Mahjoub, ¶¶7, 16, 18).

I.     Through her agent, Appellant inspected the Boat, and this inspection did not reveal the Deficiencies. (Aff. of M. Mahjoub, ¶5).

J.     In its actual condition with the Deficiencies, the Boat is valueless. (Aff. of Appellant, ¶13; Aff. of M. Mahjoub, ¶¶8-9).

K.     Had the Deficiencies been disclosed prior to the May 30, 2013 sale, Appellant would not have purchased the Boat at any price. (Aff. of Appellant, ¶¶3-4; Aff. of M. Mahjoub, ¶10).

L.     In other boat sales/auctions by the same Sales Contracting Officer involved in this case, Respondent has disclosed the fact of a boat's sinking in its website listing. (Exhibit D). In that sale, the yacht was ultimately sold for $501. (Aff. of M. Mahjoub, ¶21 and Exh. 2 thereto).

M.     Appellant's damages are at least $32,256.00. (Aff. of Appellant, ¶¶4, 13; Aff. of M. Mahjoub, ¶¶8-10).

2

N.    Appellant learned of the Deficiencies on at the earliest possible opportunity October 25, 2013. (Aff. of Appellant, ¶11; Aff. of M. Mahjoub, ¶18).

O.    The Boat was never removed from the custody and possession of KRPD. (Aff. of M. Mahjoub, ¶20).

WHEREFORE, Appellant prays this Court to deny Respondent's Motion and enter judgment in her favor and against Respondent in the principal amount of $32,256.00, together with her costs incurred herein, pre-judgment and post-judgment interest, attorney's fees, and any such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

HERZOG CREBS LLP

John G. Beseau, MO: #56704; IL: #6284680
100 N. Broadway, 14th Floor
St. Louis, Missouri 63102
(314) 231-6700 *telephone*
(314) 231-4656 *facsimile*
jgb@herzogcrebs.com
Attorneys for Appellant

## CERTIFICATE OF SERVICE

I certify that on this 30th day of July 2014, a true and correct copy of the foregoing was sent via electronic mail to the following:

Jenny M. Matte, Esq.
Office of the Regional Counsel, GSA
77 Forsyth Street, Suite 600
Atlanta, Georgia 30303
Jenny.matte@gsa.gov
Counsel for Respondent

3

IN THE UNITED STATES CIVILIAN BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| YASMIN SAIGHI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No.    CBCA 3693 |
| | ) | |
| GENERAL SERVICES | ) | (Judge Drummond) |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |

## APPELLANT'S MEMORANDUM OPPOSING RESPONDENT'S MOTION FOR SUMMARY RELIEF AND SUPPORTING APPELLANT'S CROSS-MOTION FOR SUMMARY RELIEF

COMES NOW Appellant, by and through the undersigned counsel, and for her Memorandum Opposing Respondent's Motion for Summary Relief and Supporting her Cross-Motion for Summary Relief, states as follows:

### INTRODUCTION

On May 30, 2013, Appellant purchased the M/V Blankenship (the "Boat") from Respondent. Prior to this sale, the Boat sank on or about December 21, 2011, such that its engines were submerged. Both before and after the sale, the Boat was in custody of Ed Weilbacher and the Kaskaskia Regional Port District ("KRPD") in Illinois during all times relevant to this case, including the time during which the Boat sank, the sale to Appellant, and presently. The fact of the Boat's sinking and/or the submersion of its engines were never disclosed to Appellant prior to the sale in any way, including Respondent's written disclosures, verbal communications, or by Appellant's own inspection.

After the sale, on or about October 25, 2013, Appellant first learned of that the Boat's sinking in 2011. On October 27, 2013, Appellant informed Respondent's Sales Contracting Officer in writing of the non-disclosure.

1

Respondent's Motion for Summary Relief ("Motion") argues that it is entitled to summary relief due to Appellant's <u>post-sale</u> failure to comply with the Misdescription portion of the Terms and Conditions of the Contract between her and Respondent, in that she did not provide written notice to Respondent within fifteen (15) days of receiving her receipt for payment for the Boat (the "15-Day Notice").

This argument is founded on the incorrect assertion that Respondent complied with all conditions and terms of the sales contract for the Boat. (See ¶¶1 and 8 of Respondent's Motion). Because Respondent did not fulfill its obligations on the contract, it cannot assert this contract term as a bar to Appellant's recovery on the contract. The evidence on the record accomplishes two (2) things: 1) at the very least, it creates a question of fact as to whether Respondent fulfilled its obligations under the contract to disclose known deficiencies, thereby defeating Respondent's Motion premised on the 15-Day Notice; and 2) it conclusively establishes Respondent's liability to Appellant for its breach of this contract obligation.

Additionally, during the April 8, 2014, the Court asked Respondent whether it was asserting any claim that the 15-Day Notice barred any of Appellant's claims in this case. Respondent stated that it was not and thereby waived any such argument.

### ARGUMENT

It is axiomatic that a party who first breaches a contract cannot thereafter take advantage of the contract terms that benefit the breaching party. *McBride v. Pennant Supply Corp.*, 623 N.E.2d 1047, 1051 (Ill. App. Ct. 1993).

As summarized in Statements 3 and 4 of Respondent's Statement of Undisputed Facts, both Respondent's website listing and the terms and conditions of the sales contract it drafted state that "[d]eficiencies, when known, have been indicated in the property description."

2

Accordingly, Respondent had the contractual obligation to disclose known deficiencies, and this obligation preceded any of Appellant's contractual obligations. It is also indisputable that known deficiencies were not disclosed. (Statement of Additional Undisputed Facts ["SAUF"] G).

In marketing the Boat, Respondent anointed Ed Weilbacher of the KRPD as Respondent's actual or apparent agent. (SAUF C-E). A principal will be bound not only bound by the authority it actually gives to another, but also by the authority it appears to give. *Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 795 (Ill. 1993). Whether an agent has such authority is a question of fact. *Gilbert*, 622 N.E.2d at 795.

On its website listing, Respondent listed Mr. Weilbacher as the custodian of the Boat and the contact regarding the inspection and removal of the Boat with all of his contact information. (Aff. of M. Mahjoub, ¶¶13-15; Exhibit E). Appellant's agent scheduled the inspection of the Boat with Mr. Weilbacher and discussed the condition of the Boat with him, in which Mr. Weilbacher affirmed that he knew of no issues that were not stated in the website description of the Boat and had no knowledge of the condition of the engines. Mr. Weilbacher also relayed that the Boat had been in his possession for several years. (Aff. of M. Mahjoub, ¶¶14-15). Respondent delegated the authority of authoring the description of the Boat in Respondent's website listing to Mr. Weilbacher and used the description he provided at Respondent's request. (SAUF D). Neither Respondent, nor Mr. Weilbacher, ever in any way communicated that Mr. Weilbacher was not Respondent's agent or that his authority to act on Respondent's behalf was limited in any way. (SAUF E). Based on the foregoing, it was Appellant and her agent's reasonable belief that Mr. Weilbacher was Respondent's agent. (Aff. of M. Mahjoub, ¶¶13-15,

3

17; Aff. of Appellant, ¶¶8-9). Accordingly, considering these circumstances, Mr. Weilbacher was Respondent's actual or apparent agent.

Of course, facts within the knowledge of an agent are imputed to its principal. *Protective Ins. Co. v. Coleman*, 494 N.E.2d 1241, 1249 (Ill. App. Ct. 1986). In other words, Mr. Weilbacher's knowledge of the Boat was and is imputed to Respondent, such that Respondent is deemed to have the same knowledge as Mr. Weilbacher regarding the Boat's deficiencies. This result is emphasized by the fact that Respondent essentially delegated its contractual obligation to disclose known deficiencies to Mr. Weilbacher by requesting his description of the Boat and using the same on Respondent's website listing. (SAUF D).

There can be no dispute that Mr. Weilbacher, and therefore Respondent, knew the Boat sank prior to the May 30, 2013 sale and that its engines were submerged in that sinking. (SAUF F). In KRPD's January 2012 Board meeting, which Mr. Weilbacher attended, it was reported that the Boat was taking on water and was lying partially on its side. (Exhibit A, pp. 17-18). Thereafter, in the KRPD's February 2012 meeting, Mr. Weilbacher even showed slides of the Boat. (Exhibit A, p. 15). Moreover, he and KRPD received the May 2012 letter from Walter Terry describing the numerous problems with the Boat, including that the Boat capsized and filled with water, the engines had been drained of oil and water, and that the engines were not working.[1] (Aff. of W. Terry and Exh. 3 thereto).

---

[1] Despite being provided with all of this information by the undersigned on June 15, 2014, Respondent, in its June 30, 2014 Memorandum (p. 4), continues to assert its denial of the fact that the Boat sank prior to the May 2013 sale. This continued recalcitrance boggles the mind. It could not be more clear that Ed Weilbacher's February 25, 2014 Affidavit (Appeal File—Tab 18) claiming no "knowledge or information indicating that the [Boat] sank prior to the" May 2013 sale is a false affidavit. Instead of doubling down on this false testimony, Respondent should have withdrawn this affidavit. (See Model Rules of Professional Conduct, 3.3(a)(3)).

4

None of these deficiencies were ever disclosed to Appellant or her agent prior to the May 30, 2013 sale of the Boat to Appellant. (SAUF G). Such deficiencies were material because they render the Boat essentially valueless, in that the costs of repairing a sunken Boat and its engines far exceed the Boat's value. (SAUF J-K, M). Had such deficiencies been disclosed, Appellant would not have purchased the Boat at any price, thereby rendering Respondent's non-disclosure to be a material one. (SAUF K). Moreover, such materiality is conclusively demonstrated by the fact that, in another sale, Respondent (via the same Sales Contracting Officer as in the instant case) disclosed that the yacht being sold sank, which resulted in the miniscule sale price of $501. (SUAF L).

Because of Respondent's breach of its contractual obligation to disclose known deficiencies, Appellant paid $30,056 for a worthless Boat and $2,200 in repairs thereto, all before learning of the deficiencies. Accordingly, Appellant's damages as a result of Respondent's breach of the contract are in the principal amount of at least $32,256.00 before her attorney's fees. (SAUF M; Aff. of Appellant, ¶13).

To prevail on its Motion for Summary Relief, Respondent must indisputably show that it fully performed its contractual obligations to Appellant. (See ¶14 of Respondent's Statement of Undisputed Facts). These facts, at the very minimum, show that there is a genuine dispute as to whether Respondent did so. Therefore, Respondent's Motion should be denied.

Moreover, in the absence of Respondent's production of sufficient evidence showing a genuine disputing of the foregoing facts supporting Appellant's right to recover from Respondent, Appellant is entitled to judgment as a matter of law due to Respondent's breach of its contract with Appellant.

WHEREFORE, Appellant prays this Court to deny Respondent's Motion and enter judgment in her favor and against Respondent in the principal amount of $32,256.00, together with her costs incurred herein, pre-judgment and post-judgment interest, attorney's fees, and any such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

HERZOG CREBS LLP

John G. Beseau, MO: #56704; IL: #6284680
100 N. Broadway, 14th Floor
St. Louis, Missouri 63102
(314) 231-6700 *telephone*
(314) 231-4656 *facsimile*
jgb@herzogcrebs.com
Attorneys for Appellant

## CERTIFICATE OF SERVICE

I certify that on this 30th day of July 2014, a true and correct copy of the foregoing was sent via electronic mail to the following:

Jenny M. Matte, Esq.
Office of the Regional Counsel, GSA
77 Forsyth Street, Suite 600
Atlanta, Georgia 30303
Jenny.matte@gsa.gov
Counsel for Respondent

6

IN THE UNITED STATES CIVILIAN BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| YASMIN SAIGHI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | CBCA No. 3693 |
| v. | ) | (Judge Drummond) |
| | ) | |
| GENERAL SERVICES ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |

## APPELLANT'S OBJECTION AND MOTION TO STRIKE

COMES NOW Appellant, by and through the undersigned counsel, and objects to the statement by counsel for Respondent repudiating the existence of an agency relationship between Respondent and Ed Weilbacher and moves that such repudiation be stricken by the Court from consideration as evidence. In support thereof, Appellant states:

1. In Appellant's pleadings, Statement of Undisputed Facts, Memorandum of Law, and throughout the entire course of Appellant's claim the existence of an agency relationship between Respondent and Ed Weilbacher has been asserted and evidentiary exhibits presented proving the same.

2. Respondent GSA has never denied this agency relationship; Not in its initial denial determination, nor in its Answer, nor in its Motion for Summary Judgment, nor in its Statement of Facts, nor in its Memorandum of Law, nor in the affidavit of Mr. Weilbacher; nor has Respondent presented any evidence refuting the agency relationship evidence presented by Appellant.

3. Only in the recent in-court statement of Respondent's counsel was such denial made for the first time. Statements of counsel are not considered evidence, only argument. This denial of agency should be stricken by the Court from consideration as evidence.

1

4. In considering Respondent's Motion for Summary Relief and Appellant's Cross-Motion for Summary Relief, the Court should assume that an agency relationship exists between Respondent and Ed Weilbacher because such relationship has never been disputed.

5. Appellant presents compelling evidence proving that prior to sale the boat sank; Mr. Weilbacher knew of the sinking; Mr. Weilbacher was the agent of Respondent in approving the authenticity of the advertising disclosure which specifically stated all known defects are being disclosed; that the advertising disclosure approved by Mr. Weilbacher only disclosed minor defects and was totally silent as to the sinking and submersion of the engines; that the submersion of the engines is significant and material in affecting the value of the boat and the bid amounts; that such known omission could not be reasonably discovered by a buyer before the bidding nor within 15 days thereafter; that this knowledge was not only hidden from the Appellant until several months after the sale, but also attempted to be hidden from this Court by false written denials of both the sinking and Mr. Weilbacher's knowledge of the sinking.

6. Because the agency relationship has never been denied, to grant Respondent's Motion for Summary Relief it must be found as a matter of law that: Even if GSA has actual knowledge of a significant hidden defect materially affecting value, but falsely represents it was disclosing all known defects, a sale cannot be set aside more than 15 days after the sale.

WHEREFORE, premises considered, Appellant prays the Court strike from consideration as evidence Respondent's counsel's unsupported denial of Ed Weilbacher agency relationship with Respondent regarding sale of the instant boat, together with any such other and further relief as the Board deems just and proper under the circumstances.

Respectfully submitted,

HERZOG CREBS LLP

John G. Beseau, MO: #56704; IL: #6284680
100 N. Broadway, 14th Floor
St. Louis, Missouri 63102
(314) 231-6700 *telephone*
(314) 231-4656 *facsimile*
jgb@herzogcrebs.com
Attorneys for Appellant

## CERTIFICATE OF SERVICE

I certify that on this 11th day of August 2014, a true and correct copy of the foregoing was sent via electronic mail to the following:

Jenny M. Matte, Esq.
Office of the Regional Counsel, GSA
77 Forsyth Street, Suite 600
Atlanta, Georgia 30303
Jenny.matte@gsa.gov
Counsel for Respondent

IN THE UNITED STATES CIVILIAN BOARD OF CONTRACT APPEALS

YASMIN SAIGHI,

        Appellant,

                           CBCA No. 3693
v.                               (Judge Drummond)

                         )
GENERAL SERVICES ADMINISTRATION,  )
                         )
        Respondent.          )

## RESPONDENT'S RESPONSE TO APPELLANT'S OBJECTION AND MOTION TO STRIKE

NOW COMES Respondent GSA, by and through the undersigned counsel, who responds to the Appellant's Objection and Motion to Strike as follows:

1. In Appellant's pleadings, Statement of Undisputed Facts, Memorandum of Law, and throughout the entire course of Appellant's claim the existence of an agency relationship between Respondent and Ed Weilbacher has been asserted and evidentiary exhibits presented proving the same.

**RESPONSE**: Admitted that Appellant claims the existence of an agency relationship.

Denied that the Appellant has any evidence or exhibits proving agency relationship.

2. Respondent GSA has never denied this agency relationship; Not in its initial denial determination, nor in its Answer, nor in its Motion for Summary Judgment, nor in its Statement of Facts, nor in its Memorandum of Law, nor in the affidavit of Mr. Weilbacher; nor has Respondent presented any evidence refuting the agency relationship evidence presented by Appellant.

**RESPONSE**: Denied in part. Throughout its Answer Respondent denied such a relationship. Specifically, see Respondent's Answer #'s 2 and 3. In an abundance of caution, Respondent's Answer includes this statement, "Any allegations that have not

11

been expressly admitted are hereby denied." See Respondent's Answer, first sentence top of page five (depending on printing outcome). Since Respondent has not expressly admitted an agency relationship, the existence of such a relationship is deemed denied. This denial was made throughout Respondent's Answer. Admitted that Ed Weilbacher's affidavit does not deny such a relationship and Respondent further asserts that the affidavit does not admit to such a relationship.

3. Only in the recent in-court statement of Respondent's counsel was such denial made for the first time. Statements of counsel are not considered evidence, only argument. This denial of agency should be stricken by the Court from consideration as evidence.

**RESPONSE**: Denied. See Response to Number 2.

4. In considering Respondent's Motion for Summary Relief and Appellant's Cross Motion for Summary Relief, the Court should assume that an agency relationship exists between Respondent and Ed Weilbacher because such relationship has never been disputed.

**RESPONSE**: Denied.

5. Appellant presents compelling evidence proving that prior to sale the boat sank; Mr. Weilbacher knew of the sinking; Mr. Weilbacher was the agent of Respondent in approving the authenticity of the advertising disclosure which specifically stated all known defects are being disclosed; that the advertising disclosure approved by Mr. Weilbacher only disclosed minor defects and was totally silent as to the sinking and submersion of the engines; that the submersion of the engines is significant and material in affecting the value of the boat and the bid amounts; that such known omission could not be reasonably discovered by a buyer before the bidding nor within 15 days thereafter; that this knowledge was not only hidden from the Appellant until several months after the sale, but also attempted to be hidden from this

2

Court by false written denials of both the sinking and Mr. Weilbacher's knowledge of the sinking.

      **RESPONSE:**    Denied.

      6.  Because the agency relationship has never been denied, to grant Respondent's Motion for Summary Relief it must be found as a matter of law that: Even if GSA has actual knowledge of a significant hidden defect materially affecting value, but falsely represents it was disclosing all known defects, a sale cannot be set aside more than 15 days after the sale.

      **RESPONSE:**    As written, Appellant's statement is confusing and can only be responded to as follows: Respondent denied the agency relationship in its Answer. Respondent's Motion for Summary Relief is based on the failure of Appellant to comply with the terms of the contract, i.e., Appellant failed to timely place the Contracting Officer on notice of the alleged mis-description. Respondent denies that it falsely represented any information and denies that there were any hidden defects that materially affected the value of the boat. The Terms and Conditions of the Contract speak for itself.

      WHEREFORE, Respondent requests that this Board deny Appellant's Objection and Motion to Strike with all costs to borne by Appellant.

                                Respectfully submitted,

                                  Jenny M. Matte (Louisiana #24546)
                                Assistant Regional Counsel
                                U.S. General Services Administration
                                77 Forsyth St., Ste. 600
                                Atlanta, GA 30303
                                (404) 224-2271 direct
                                (404) 331-1231 fax
                                jenny.matte@gsa.gov

3

CERTIFICATE OF SERVICE

I certify that on this 11th day of September 2014, a true and correct copy of the foregoing was sent *via* electronic mail to the following:

Jerome M. Drummond, Board Judge @ cbca.efile@cbca.gov

Yasmin Saighi (Appellant, pro se) @ mmah902194@aol.com

Jenny M. Matte
Counsel for Respondent

YASMIN SAIGHI,

     Appellant,

                                   CBCA No. 3693

v.                                  (Judge Drummond)

                                  )

GENERAL SERVICES ADMINISTRATION,   )

                                  )

     Respondent.               )

## RESPONDENT'S RESPONSE TO APPELLANT'S
## STATEMENT OF ADDITIONAL UNDISPUTED FACTS

NOW COMES Respondent, by and through the undersigned counsel, who responds to

the Appellant's Statement of Additional Undisputed Facts as follows:

A.     The Boat sank on or about December 21, 2011, i.e., prior to the May 30, 2013

sale to Appellant, such that its engines were submerged (the "Deficiencies").

**RESPONSE:** Denied. (See Ed Weilbacher's affidavit in Appeal File, exhibit 18; State

of Illinois Property Control, exhibits 16 (Susan Solon) and 17 (Curtis Howard)).

B.     At all relevant times, Ed Weilbacher is and was the General Manager of the

KRPD.

**RESPONSE:** Admitted. (See Mr. Weilbacher's affidavit in Appeal File, exhibit 18).

C.     Ed Weilbacher is the agent of Respondent for purposes of the disclosure of the

Boat's deficiencies in the instant transaction.

**RESPONSE:** Denied.

D.     Respondent delegated the authority of authoring the description of the Boat in

Respondent's website listing to Mr. Weilbacher and used his description which was provided at

Respondent's request, which per the description and the contract terms and conditions, was to

contain all known deficiencies.

**RESPONSE:** Denied.

    E.      Neither Respondent, nor Mr. Weilbacher, ever in any way communicated that Mr. Weilbacher was not Respondent's agent or that his authority to act on Respondent's behalf was limited in any way.

> **RESPONSE:** Admitted that Respondent did not communicate that Mr. Weilbacher was not Respondent's agent or that his authority to act on Respondent's behalf was limited in any way because he was <u>not</u> the Respondent's agent and did not have any authority <u>to</u> limit. Respondent cannot answer on behalf of Mr. Weilbacher.

    F.      Ed Weilbacher had knowledge of the Deficiencies prior to the May 30, 2013 sale.

    **RESPONSE:** Denied. (See Mr. Weilbacher's affidavit in Appeal File, exhibit 18).

    G.      The Deficiencies were not disclosed to Appellant or her agent by anyone, including Respondent and Mr. Weilbacher, prior to the May 30, 2013 sale.

> **RESPONSE:** Denied that there were any deficiencies to disclose.

    H.      Neither Appellant, nor her agent, had any knowledge of the Deficiencies prior to the May 30, 2013 sale.

> **RESPONSE:** Denied that there were any deficiencies to disclose.

    I.      Through her agent, Appellant inspected the Boat, and this inspection did not reveal the Deficiencies.

> **RESPONSE:** Denied that there were any deficiencies to disclose. However, Respondent further avers that the Appellant's inspection of the boat <u>did</u> reveal the condition of the boat. (See Appeal file Tab 12).

    J.      In its actual condition with the Deficiencies, the Boat is valueless.

    **RESPONSE:** Denied.

K.      Had the Deficiencies been disclosed prior to the May 30, 2013 sale, Appellant would not have purchased the Boat at any price.

**RESPONSE:** GSA denies knowledge or information sufficient to form a belief as to the truth of these allegations.

L.      In other boat sales/auctions by the same Sales Contracting Officer involved in this case, Respondent has disclosed the fact of a boat's sinking in its website listing.

**RESPONSE:** Admitted. In other boat sales/auctions, the Sales Contracting Officer has disclosed the sinking of boats that actually sank.

M.      Appellant's damages are at least $32,256.00.

**RESPONSE:** Denied. (See Terms and Conditions)

N.      The Boat was never removed from the custody and possession of KRPD.

**RESPONSE:** Denied.

WHEREFORE, Respondent prays this Board deny Appellant's Motions and dismiss this Appeal together with all costs, including attorney's fees, be borne by Appellant, and any such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

Jenny M. Matte (Louisiana #24546)
Assistant Regional Counsel
U.S. General Services Administration
77 Forsyth St., Ste. 600
Atlanta, GA 30303
(404) 224-2271 direct
(404) 331-1231 fax
jenny.matte@gsa.gov

## CERTIFICATE OF SERVICE

I certify that on this 11th day of September 2014, a true and correct copy of the foregoing was sent *via* electronic mail to the following:

Jerome M. Drummond, Board Judge @ cbca.efile@cbca.gov

Yasmin Saighi (Appellant, pro se) @ mmah902194@aol.com

Jenny M. Matte
Counsel for Respondent

IN THE UNITED STATES CIVILIAN BOARD OF CONTRACT APPEALS

YASMIN SAIGHI,

      Appellant,

v.                                Case No.    CBCA 3693

GENERAL SERVICES               (Judge Drummond)
ADMINISTRATION,

      Respondent.

---

**RESPONDENT'S RESPONSE to APPELLANT'S
CROSS-MOTION for SUMMARY RELIEF**

NOW COMES Respondent GSA, by and through the undersigned counsel, who responds to the Appellant's Cross-Motion for Summary Relief as follows:

1.    Respondent's Motion for Summary Relief ("Motion") argues that it is entitled to summary relief because Appellant failed to comply with the Misdescription portion of the Terms and Conditions of the Contract between her and Respondent, in that she did not provide written notice to Respondent within fifteen (15) days of receiving her receipt for payment for the M/V Blankenship (the "Boat").

**RESPONSE**: Respondent avers that its Motion for Summary Relief constitutes the best evidence as to its contents.

2.    This argument is founded on the incorrect assertion that Respondent complied with all conditions and terms of the sales contract for the Boat. If Respondent failed to fulfill its obligations on the contract, it cannot assert the contract terms as a bar to Appellant's recovery on the contract. It is axiomatic that a party who first breaches a contract cannot thereafter enforce its terms.

**RESPONSE**: Denied.

3.     As summarized in Respondent's motion, both Respondent's website listing and the terms and conditions of the sales contract it drafted state that "[d]eficiencies, when known, have been indicated in the property description." Accordingly, it is indisputable that Respondent had the contractual obligation to disclose known deficiencies and that this obligation preceded any of Appellant's contractual obligations.

**RESPONSE**: Respondent avers that the GSA auction site and the Terms and Conditions constitute the best evidence as to its contents. Additionally, Appellant has not produced any evidence that the GSA had knowledge of a known deficiency. Respondent denies that a known deficiency existed. Respondent denies the remaining allegations.

4.     It is also indisputable that known deficiencies were not disclosed. In marketing the Boat, Respondent anointed Ed Weilbacher of the Kaskaskia Regional Port District ("KRPD") as Respondent's actual or apparent agent. Of course, facts within the knowledge of an agent are binding on the principal. In other words, Mr. Weilbacher's knowledge of the Boat was and is imputed to Respondent, such that Respondent had knowledge of the Boat's deficiencies of which Mr. Weilbacher had knowledge.

**RESPONSE**: Denied.

5.     There can be no dispute that Mr. Weilbacher had knowledge that the Boat had sank prior to the sale (i.e. December 2011) and that its engines were submerged in that sinking.

**RESPONSE**: Denied.

6.     These deficiencies were never disclosed to Appellant or her agent prior to the May 30, 2013 sale of the Boat to Appellant.

**RESPONSE**: Respondent avers that the GSA auction site and the Terms and Conditions constitute

2

the best evidence as to its contents to show what information was provided. Respondent denies the remaining allegations.

7.    Such deficiencies were material because they render the Boat essentially valueless, in that the costs of repairing a sunken Boat and its engines far exceed the Boat's value. Had such deficiencies been disclosed, Appellant would not have purchased the Boat at any price, thereby rendering Respondent's non-disclosure as material.

**RESPONSE**: GSA denies knowledge or information sufficient to form a belief as to the truth of the allegations.

8.    Because of Respondent's breach of its contractual obligation to disclose known deficiencies, Appellant paid $30,056 for a worthless Boat and $2,200 in repairs thereto, all before learning of the deficiencies. Accordingly, Appellant's damages as a result of Respondent's breach of the contract are in the principal amount of at least $32,256.00 before her attorney's fees.

**RESPONSE**: Admitted that Appellant paid $30,056 for the boat. GSA denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

9.    There is no genuine dispute to any of the foregoing, and Appellant is entitled to judgment as a matter of law (as further detailed in Appellant's Memorandum of Law opposing Respondent's Motion and supporting her Cross-Motion for Summary Relief, which is incorporated herein by this reference).

**RESPONSE**: Denied.

WHEREFORE, Respondent requests that this Board deny Appellant's Cross-Motion for Summary Relief with all costs to be borne by Appellant.

Respectfully submitted,

Jenny M. Matte (Louisiana #24546)
Assistant Regional Counsel
U.S. General Services Administration
77 Forsyth St., Ste. 600
Atlanta, GA 30303
(404) 224-2271 direct
(404) 331-1231 fax
jenny.matte@gsa.gov

## CERTIFICATE OF SERVICE

I certify that on this 11th day of September 2014, a true and correct copy of the foregoing was sent *via* electronic mail to the following:

Jerome M. Drummond, Board Judge @ cbca.efile@cbca.gov

Yasmin Saighi (Appellant, pro se) @ mmah902194@aol.com

Jenny M. Matte
Counsel for Respondent

YASMIN SAIGHI,

    Appellant,

v.                                  Case No.    CBCA 3693

GENERAL SERVICES                   (Judge Drummond)
ADMINISTRATION,

    Respondent.

## RESPONDENT'S MEMORANDUM in SUPPORT

NOW COMES Respondent GSA, by and through undersigned counsel, who responds to the Appellant's Cross-Motion for Summary Relief and Objection and Motion to Strike as follows:

### CBCA HAS NO JURISDICTION TO ENTERTAIN TORT CLAIMS

Appellant's Cross-Motion attempts to defeat the Terms and Conditions of the GSA Sales Contract by alleging the existence of an agent relationship between GSA and Ed Weilbacher, General Manager of the Kaskaskia Regional Port District. As agent of GSA, Ed Weilbacher's (in)actions harmed the Appellants. Those (in)actions are thus imputed to GSA *via* the relationship.

These allegations constitute a tort theory. As such, the United States Civilian Board of Contract Appeals does not have jurisdiction to hear tort cases.

The Civilian Board of Contract Appeals (CBCA) was established on January 6, 2007, pursuant to section 847 of the National Defense Authorization Act (the Act) for Fiscal Year 2006, to hear and decide contract disputes between government contractors and civilian executive agencies under the provisions of the Contract Disputes Act, 41 U.S.C. §§ 7107-7109.

As such, the Board is empowered to hear this contract dispute associated with the disposal of personal property (the M/V Blankenship). 41 U.S.C. § 602(a)(4). However, the Act does not empower the Board to hear tort issues.

Because the Board does not have jurisdiction to consider Appellant's Cross-Motion that is based in torts, Appellant's Cross-Motion should be dismissed as it is based on a tort claim.

Because Appellant has not shown there is a genuine issue of fact as required by Rule 8, Respondent's Motion for Summary Relief should be granted.

Rule 8 states:

> When a motion for summary relief is made and supported as provided in Rule 8, an opposing party may not rest upon the mere allegations or denials of its pleadings. The opposing party's response, by affidavits or as otherwise provided by Rule 8, must set forth specific facts showing that there is a genuine issue of material fact. If the opposing party does not so respond, summary relief, if appropriate, shall be entered against that party. For good cause shown, if an opposing party cannot present facts essential to justify its opposition, the Board may defer ruling on the motion to permit affidavits to be obtained or depositions to be taken or other discovery to be conducted, or may make such other order as is just.

A review of Appellant's Statement of Genuine Issues informs that the Appellant admits to agreeing with the Terms and Conditions of the sale. Appellant also admits that a bidder must submit written notice to the Sales Contracting Officer within 15 days from the date of payment and/or email notification and that she submitted notice more than four months after the payment and/or email notification date. As such, Appellant has not shown there are genuine issues of material fact and Respondent's Motion for Summary Relief should be granted with all associated costs to be borne by Appellant.

## GSA DENIED AGENT RELATIONSHIP

Appellant's alleges that the Respondent failed to timely object to the existence of an agency relationship between Respondent and Ed Weilbacher and thus, should be prohibited from objecting at this time.

For these allegations to be true, one would have to ignore the Respondent's Answer to the Appellant's Appeal.

Throughout its Answer Respondent denied such a relationship. (Specifically, see Responses 2 and 3 in Respondent's Answer). In an abundance of caution, Respondent's Answer includes this statement, "Any allegations that have not been expressly admitted are hereby denied." (See Respondent's Answer, first sentence top of page five (depending on printing outcome)). Since Respondent has not expressly admitted an agency relationship, the existence of such a relationship is deemed denied. This denial was made throughout Respondent's Answer.

Because there is no merit to Appellant's Objection and Motion to Strike it should be denied with all associated costs to be borne by Appellant.

## SUMMARY

Appellant failed to carry her burden in support of her Objection and Motion to Strike as the record reflects that the Respondent entered its objections to such an alleged relationship in its Answer. Neither has Respondent admitted to such a relationship.

Appellant failed to carry her burden in support of her Opposition to Respondent's Motion for Summary Relief and failed to carry her burden of proof in support of her Cross Motion. The Opposition and Cross Motion are based on an agent relationship that sounds in tort for which this Board does not have jurisdiction to hear. Appellant admits to the Terms and Conditions of the sales contract and admits to the timing of the events. Appellant merely relies

on allegations of a relationship. That is not enough to defeat Respondent's Motion for Summary Relief.

Wherefore, Respondent requests that this Board deny the Appellant's Objection and Motion to Strike; deny the Appellant's Cross Claim for Summary Relief; and grant the Respondent's Motion for Summary Relief (and dismiss Appellant's Appeal) with all costs to be borne by the Appellant.

Respectfully submitted,

Jenny M. Matte (Louisiana #24546)
Assistant Regional Counsel
U.S. General Services Administration
77 Forsyth St., Ste. 600
Atlanta, GA 30303
(404) 224-2271 direct
(404) 331-1231 fax
jenny.matte@gsa.gov

## CERTIFICATE OF SERVICE

I certify that on this 11th day of September 2014, a true and correct copy of the foregoing was sent *via* electronic mail to the following:

Jerome M. Drummond, Board Judge @ cbca.efile@cbca.gov

Yasmin Saighi (Appellant, pro se) @ mmah902194@aol.com

Jenny M. Matte
Counsel for Respondent

YASMIN SAIGHI,           )
                             )
         Appellant,      )
                             )      CBCA No. 3693
v.                         )      (Judge Drummond)
                             )
GENERAL SERVICES ADMINISTRATION,  )
                             )
         Respondent.    )

### APPELLANT'S COMBINED REPLY TO RESPONDENT'S RESPONSE TO APPELLANT'S CROSS-MOTION FOR SUMMARY RELIEF AND RESPONSE TO APPELLANT'S OBJECTION AND MOTION TO STRIKE

COMES NOW Appellant *pro se*, and for a combined response to Respondent's Response to Appellant's Cross-Motion for Summary Relief and Response to Appellant's Objection and Motion to Strike states:

In their prior briefings neither party fully developed the relationship of Ed Weilbacher to Respondent and the implications for the same. The Board has allowed each party additional pleadings to develop the same.

Appellant asserts:

1. The boat was sunk prior to the sale to Appellant.

2. Ed Weilbacher, as general manager for the Kaskaskia Regional Port District, had actual knowledge of the sinking.

3. The knowledge of Ed Weilbacher is imputed to Respondent.

4. Respondent had an affirmative duty to disclose the sinking.

5. Respondent failed to disclose the sinking and, actually, made false and misleading representations in its advertisement.

6.  The false representations and omissions of Respondent where material in inducing Appellant to contract with Respondent for purchase of the Boat.

7.  The contract between Appellant and Respondent is voidable by Appellant.

WHEREFORE, premises considered, Appellant prays this Board deny Respondent's Motion for Summary Relief and grant Appellant's Motion for Summary Relief or, in the alternative, allow this matter to proceed through discovery and to trial.

Respectfully submitted,

*yasmin saighi*

Yasmin Saighi, *pro se*
P.O. Box 471154
Tulsa, OK 74147
Tel: 918-494-3799
*Appellant*

CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of October, 2014, a true and correct copy of the above and foregoing instrument was sent via electronic mail to:

Jenny M. Matte, Esq.
Office of the Regional Counsel, GSA
77 Forsyth Street, Suite 600
Atlanta, Georgia 30303
Jenny.matte@gsa.gov
Counsel for Respondent

*yasmin saighi*

Yasmin Saighi

YASMIN SAIGHI,             )
                           )
       Appellant,          )
                           )     CBCA No. 3693
v.                           )     (Judge Drummond)
                           )
GENERAL SERVICES ADMINISTRATION,  )
                           )
       Respondent.       )

### BRIEF IN SUPPORT OF APPELLANT'S COMBINED REPLY TO RESPONDENT'S RESPONSE TO APPELLANT'S CROSS-MOTION FOR SUMMARY RELIEF AND RESPONSE TO APPELLANT'S OBJECTION AND MOTION TO STRIKE

COMES NOW Appellant *pro se*, and in support of her combined reply to Respondent's Response to Appellant's Cross-Motion for Summary Relief and Response to Appellant's Objection and Motion to Strike more fully elaborates her assertion that the knowledge of Ed Weilbacher is imputed to Respondent and renders the sale voidable by Appellant.

### Statement of Undisputed Facts

Although generally denied by the pleadings, no evidence has been introduced contradicting the sworn affidavits of Appellant and her husband asserting that the submersion of the Boat's materially affects its value and Appellant would not have bought the Boat had she known.

### Statement of Facts Disputed by Respondent

Respondent denies Appellant's assertation that the engines of the Blankenship were submerged (sunk).

If sunk, Respondent denies Appellant's assertation that Ed Weilbacher had knowledge of the same.

Appellant asserts pre-bid discussion with Ed Weilbacher regarding conditions of Boat, which

Respndent denies.

**Summary of Issues of Law Asserted by Respondent**

If sunk, and Ed Weilbacher had knowledge, such is not imputed to the Respondent.

Appellant is limited to the contracted 15 day period within which to place the Contracting Officer on notice of alleged mis-descriptions and hidden defects.

**Issues Presented by Appellant**

**ISSUE NO 1:**         **The Knowledge of Ed Weilbacher is imputed to Respondent.**

**ISSUE NO 2:**         **There Existed an Affirmative Duty to Disclose Know Material Defects Regarding the Boat Prior to Sales Contract.**

**ISSUE NO 3:**         **Failure to Disclose Know Material Defects prior to Sale Renders Sale Voidable.**

**Arguments and Authorities of Appellant**

**ISSUE NO 1:**         **The Knowledge of Ed Weilbacher is imputed to Respondent.**

Appellant asserts that the knowledge of Ed Weilbacher is legally imputed to Respondent for multiple reasons, any one of which standing alone imputes the knowledge. The knowledge is imputed as a result of:

**Joint Venture**

Both Appellant and Respondent acknowledge Ed Weilbacher is general manager of Kaskaskia Regional Port District. Kaskaskia Regional Port District is a political subdivision of the state of Illinois.[1] The Kaskaskia Regional Port District, through Ed Weilbacher, in his official capacity,

---

[1]ILL Comp Stat §3 which in relevant part provides: "There is created a political subdivision body politic and municipal corporation, named "Kaskaskia Regional Port District". A copy being hereto attached as Exhibit 1

-2-

stored the Boat, prepared and updated the sale description of the Blankenship,[2] and was the contact party for purposes of inspection and physical transfer of the Boat. Ed Weilbacher and the Kaskaskia Regional Port Distirct acted as an agent for the state of Illinois. The knowledge of Ed Weilbacher is imputed to the state of Illinois.[3]

The sale of the Blankenship was a joint venture between the state of Illinois and the Respondent. In *Elec. Contrs., Inc. V. Goldberg & O'brien Elec.*, 331 NE 2d 238, (Ill: Appellate Court, 1st Dist. 1975) the appellate court describes a "joint venture" as: An association of two or more persons to carry out a single enterprise for profit; it is a relation voluntarily assumed; it is created when two or more persons, either expressly or by implication, manifest the intention to become so associated; the relation of joint ventures can be established without formal agreement; evidence of the surrounding circumstances can prove the existence of a joint venture; the conduct of the parties, or the facts and circumstances of a given case, may show that the persons involved did in fact assume such a relation; moreover, to constitute a joint venture, there must be a community of interest and the right to joint control.

The subsequent sale of the Blankenship was a "joint venture" between Respondent and the state of Illinois, with the sale proceeds divided equally between the two joint venturers.[4] In the instant case the Respondent and the state of Illinois have shared a community of interest and the right to joint control regarding the Blankenship from and after the time of its initial donation. The state of

_____

[2]Appellant's Statement of Genuine Issues, Exhibit C

[3]Duewel v. Lahman, 430 NE 2d 662 (Ill: Appellate Court, 2nd Dist. 1981) cites as authority:"(See Doyle v. Teas (1843), 5 Ill. 202, 243 (actual notice to an agent is constructive notice to the principal).)

[4] A copy of the Respondent's disbursement record attached as Exhibit 2. A copy of the Respondent's sale proceeds disbursement check to the state of Illinois attached as Exhibit 3.

A273

Illinois actually acted as the expressed agent for the United States of America in transferring the Boat.[5] The state of Illinois, ex rel Kaskaskia Regional Port District, and the Respondent jointly performed duties and responsibilities instrumental in effectuating the joint venture sale of the Blankenship. The minutes of the Board of Directors of Kaskaskia Regional Port District,[6] the email from Susan D. Solon, CMS Client Manager,[7] and Respondent's sale advertisement[8] all evidence a joint right of control of both the sale proceedings and the physical possession of the Blankenship.

The failure of the state of Illinois to truthfully advertise the known true condition of the Blankenship is equally a failure by Respondent. Every member of a joint venture is liable to third persons for acts of his fellow venturers done in the course of the enterprise.[9]

### Agency Relationship

In Appellant's Memorandum Opposing Respondent's Motion for Summary Relief and Supporting Appellant's Cross-Motion for Summary Relief the apparent agency relationship between Ed Weilbacher and Respondent is argued commencing at page 3, paragraph 2 and continuing through the end of page 4, paragraph 2. That argument is herein incorporated by reference.

In summary, Appellant asserts apparent authority (also called "ostensible authority") exists where the principal's words or conduct would lead a reasonable person in the third party's position

---

[5] Vessel Conditional Transfer Document signatory page attached as Exhibit 4.

[6] Appellant's Statement of Genuine Issues, Exhibits A and B.

[7] Appellant's Statement of Genuine Issues, Exhibit C.

[8] Appellant's Statement of Genuine Issues, Exhibit D.

[9] *Baker Farmers Co. v. ASF Corp.* (1975), 28 Ill. App. 3d 393, 328 N.E.2d 369; *Joseph W. O'Brien Co. v. Highland Lake Construction Co.* (1972), 9 Ill. App. 3d 408, 292 N.E.2d 205.

to believe that the agent was authorized to act, even if the principal and the purported agent had never discussed such a relationship. If a principal creates the impression that an agent is authorized but there is no actual authority, third parties are protected so long as they have acted reasonably. This is sometimes termed "agency by estoppel" or the "doctrine of holding out", where the principal will be estopped from denying the grant of authority if third parties have changed their positions to their detriment in reliance on the representations made.

In the instant circumstance the GSA solely relied upon the state of Illinois to provide the description of the item sold. The description so provided was necessary and and instrumental to accomplish the Respondent's objective of selling the Blankenship. A state agency can be an agent of the United States for purposes of accomplishing an endevor and the United States is thereby deemed to have knowledge[10]

### Agency Relationship Between Respondent and the State of Illinois

Certainly a relationship existed between Respondent and the state of Illinois for the sale of the Blankenship. If that sales arrangement was not that of a "joint venture", then Respondent was acting as the agent for the state of Illinois in effectuating the sale.

The *law of agency* is an area of commercial law dealing with a set of contractual, quasi-contractual and noncontractual fiduciary relationships that involve a person, called the agent, that is authorized to act on behalf of another (called the principle) to create legal relations with a third party. Succinctly, it may be referred to as the equal relationship between a principal and an agent whereby the principal, expressly or implicitly, authorizes the agent to work under his or her control and on his or her behalf. The agent is, thus, required to negotiate on behalf of the principal or bring him or her

---

[10]*Delta Equipment & Constr. Co. v. U.S.,* (1952) 122 Ct Cl 340, 104 F Supp 549.

and third parties into contractual relationship. The principal must make a full disclosure of all information relevant to the transactions that the agent is authorized to negotiate. If the agency relationship is undisclosed or partially disclosed both the agent and the principal are liable.[11] If the agent has acted within the scope of the actual authority given, the principal must indemnify the agent for payments made during the course of the relationship whether the expenditure was expressly authorized or merely necessary in promoting the principal's business.

Although Respondent may be an independent contractor that does not bar the attachment of liability for its actions if it is also an agent. A person may be both an independent contractor and an agent with the authority both to control the details of the work and also "the power to act for and to bind the principal and business negotiations within the scope of the agency."[12]

**ISSUE NO 2:**      **There Existed an Affirmative Duty to Disclose Know Material Defects Regarding the Boat Prior to Sales Contract.**

Although denied by the sworn statement of Ed Weilbacher,[13] the minutes of the Kaskaskia Regional Port District board meetings, at which Mr. Weilbacher was in attendance, clearly demonstrate the contrary.[14] The January 9, 2012 minute states: "The MV Blankenship located at

---

[11]*Petrando v. Barry*, 124 NE 2d 85 (Ill: Appellate Court, 1st Dist., 3rd Div. 1955) citing: *Millikin v. Jones*, 77 Ill. 372; *Wheeler v. Reed*, 36 Ill. 81.

[12]*Horwitz v. Holabird & Root*, 816 NE 2d 272, (Ill: Supreme Court 2004) citing: *Hoffman & Morton Co. v. American Insurance Co.*, 35 Ill.App.2d 97, 103, 181 N.E.2d 821 (1962).

[13] Affidavit of Ed Weilbacher dated February 23, 2014, paragraph 3: "I do not have any knowledge or information indicating that the M/V Blankenship sank prior to the GSA May 15, 2013 auction."

[14]Appellant's Statement of Genuine Issues, Exhibits A and B. *Excerps of references to the Blankenship are attached hereto as Exhibit 5.* The January 9, 2012 minute states: "The MV Blankenship located at Evansville recently took on water and was lying partially on its side. Pumps were brought in and it was uprighted. During a discussion on what should be done with

-6-

Evansville recently took on water and was lying partially on its side. Pumps were brought in and it was uprighted.  During a discussion on what should be done with the boat, it was suggested to move it to another location and possibly have salvagers look at it."

The sworn testimony of Walter G. Terry clearly demonstrates the M/V Blankenship sank on December 21, 2011, with the both engines completely submerged.[15]  Mr. Terry's letter to the Kaskaskia Port District, a copy of which is attached to his affidavit, in addition to reciting the current condition of the boat, stated: "As you well know when the Corps of Engineer dropped the water level the boat capsized and filled with water."  Although Appellant has not found a legal definition for "sunk," she asserts that if a boat "took on water and was lying partially on its side" or "capsized and filled with water," it is "sunk."[16]

The Blankenship had been previously offered for sale in April 2007.[17]  Mr. Weilbacher was asked to "provide an updated description of the boat, describing any changes since it was last reported on the GSAXcess system?"[18]  The updated description Weilbacher authored, while expanded to enhance the apparent value and salability of the boat, wrongfully conceals the material

---

the boat, it was suggested to move it to another location and possibly have salvagers look at it."

[15] Affidavit of Walter G. Terry dated July 11, 2014

[16] In the *United States v. Raven*, 500 F.2d 728 (CCA, 5th Cir, 1974) during a storm the ECLYPSE began to take water while on the St. John's River, Florida, and defendant Raven intentionally grounded her toward the easterly shore.  For purposes of application of 33 USCA Section 409 regarding the duty to mark and remove sunken vessels, it was ruled that the stranded vessel was "sunk."

[17] A copy of the GSA being hereto attached as Exhibit 6.

[18]Appellant's Statement of Genuine Issues, Exhibit C.

fact that the Boat had been sunk and the engines would not start.[19]

Of additional note is the advertised mis-representation that: "THERE HAVE BEEN NO ALTERATIONS TO THE VESSEL THAT ADDED HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR ASBESTOS. HAS A LEAD BASE AND ASBESTOS REPORT," which is highly suggestive that the vessel has been certified clean of asbestos. However, the actual report specifically excludes from asbestos testing the exhaust heat shields located on the engines because the testing entity was requested not to test those shields. It was represented to the testor that the shields would be removed prior to sale. The report emphatically (bolded in report) asserts: "Under no circumstances is the report to be utilized as a bidding document or as a project specification document since it does not have all the components required to serve as asbestos project design document or an abatement workplan." Further, emphasized by the testor: "This report is intended for the sole use of the United States Army Corps of Engineers, St. Louis, Missouri."[20]

The GSA 2013 auction offer included small photographic inserts. An enlargement of the photo of the engines displays the non-abated exhaust heat shields.[21] The implication in the advertisement regarding tested absence of asbestos when the seller was in possession of a contrary report is further example of the false representation that "DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN THE PROPERTY DESCRIPTION."

It is a well settled precedent in the Court of Claims that where the Government possesses

---

[19] The 2007 GSA auction description, July 11, 2012 Weilbarger description, and 2013 GSA auction description of the Boat are extracted in full and provided for comparison on attached Exhibit 7.

[20] ATC Associates Inc. Asbestos and Lead-based Paint Assessment of the Blankenship Vehicle dated July 25, 2007, relevant excerpts provided as Exhibit 8.

[21] A copy of the image being hereto attached as Exhibit 9.

special knowledge, not shared by a contractor, which is vital to the performance of the contract, the Government has an affirmative duty to disclose such knowledge. It cannot remain silent with impunity.[22] Appellant asserts that although this precedent has been more specially espoused in relation to performance contracts with the Government, it is persuasive in affirming that there are circumstances in which the government does have an affirmative duty to disclose special knowledge, particularly when it advertises it has done so.

**ISSUE NO 3:** **Failure to Disclose Know Material Defects prior to Sale Renders Sale Voidable.**

Respondent asserts as an absolute defense that it is shielded from having to repay Appellant under any set of facts because the contract of the parties provided a time period of fifteen (15) days within which discrepancies regarding description can be presented to GSA. Appellant asserted the discrepancy errors more than fifteen (15) days after the sale. Respondent has presented no authority supporting its argument that the contract is not voidable.

Appellant continues to assert the special knowledge of the Boat's sinking is imputed to GSA under the legal theories of joint venture; apparent agency; and GSA's relationship as sales agent for the state of Illinois. As in her Cross-Motion for Summary Relief, Appellant asserts the fifteen (15) day protest period is not applicable because it is a contract provision, which contract Appellant has elected to void. Appellant's right to declare the contract of the parties voidable if there was fraud in the inducement is a right recognized by the US Supreme Court.[23]

It is immaterial if Respondent had fraudulent intent. In *Duhl v. Nash Realty Inc.*, 429 NE 2d

---

[22] *Helene Curtis Industries Inc. v. United States*, 312 F.2d 774, 160 Court of Claims 437 (1963)

[23] *Langley v. FDIC*, 484 US 86 (Supreme Court 1987)

1267 (ILL: Appellate Court, 1st Dist, 1981) an Illinois Appellate Court succinctly stated generally accepted principles regarding fraud in the inducement to contract as follow:

"A party is considered to intend the necessary consequences of his own acts. {citations omitted} Accordingly, one who knowingly makes a false statement to another who relies thereon is guilty of fraud regardless of the defendant's motive and the plaintiff is not required to prove an express fraudulent intent. {citations omitted} And knowledge of wrongdoing sufficient to support an action for fraud exists where representations which are in fact false are made in reckless disregard of their truth or falsity. {citations omitted}. Likewise statements made in culpable ignorance of their truth or falsity are fraudulent. {citations omitted} Indeed, it has been held that good faith is no defense where the fraud and deceit practiced consist, as here, of making false statements of fact as to the knowledge of the speaker. {citations omitted} As the Illinois Supreme Court remarked in *Brennan v. Persselli* (1933), 353 Ill. 630, 635, 187 N.E. 820. 822: 'It is immaterial whether a party misrepresenting a material fact knows it to be false or makes the assertion of the fact without knowing it to be true, for the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other.'"

Kaskaskia Regional Port District not only knew of the sinking of the Blankenship, but also that it's only value was as "salvage" [01/09/2012 meeting] and "scrap" [01/11/2013 meeting]. This knowledge was fraudulently withheld from Appellant.

WHEREFORE, Appellant prays this Court deny Respondent's Motion and enter judgment in her favor in the principal amount of $32,256.00, together with costs, pre-judgment and post-judgment interest, attorney's fees, and any such other and further relief as the Court deems just.

Respectfully submitted,

*yasmin saighi*

Yasmin Saighi, *pro se*
P.O. Box 471154
Tulsa, OK 74147
Tel: 918-494-3799
*Appellant*

-10-

A280

CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of October, 2014, a true and correct copy of the above and foregoing instrument was sent via electronic mail to:

Jenny M. Matte, Esq.
Office of the Regional Counsel, GSA
77 Forsyth Street, Suite 600
Atlanta, Georgia 30303
Jenny.matte@gsa.gov
Counsel for Respondent

*yasmin saighi*
Yasmin Saighi

# Ill COMP STAT § 3 : Illinois Statute - Section 3

## Search Ill COMP STAT § 3 : Illinois Statute - Section 3

**Search by Keyword or Citation**

| Enter Keyword or Citation | **Search** |

0       New

70 ILCS 1830/3) (from Ch. 19, par. 503)

Sec. 3. There is created a political subdivision body politic and municipal corporation, named "Kaskaskia Regional Port District" embracing all of Monroe and Randolph Counties and Freeburg, Millstadt, Smithton, Prairie Du Long, New Athens, Marissa, Fayetteville, Engleman, Mascoutah, Shiloh Valley and Lenzburg Townships of St. Clair County. The Port District may sue and be sued in its corporate name but execution shall not in any case issue against any property owned by the Port District. It may adopt a common seal and change the same at pleasure. The principal office of the Port District shall be in the city of Chester, Illinois.

No rights, duties or privileges of such District, or those of any person, existing before the change of name shall be affected by the change provided by this amendatory Act of 1967. All proceedings pending in any court in favor of or against such District may continue to final consummation under the name in which they were commenced.

(Source: P.A. 80-1495.)

0          New          0          0

EXHIBIT 1

TOTAL PAID:      30,086.00

TOTAL REFUND:

TOTAL LIQ DAM:

TOTAL FIN CHG:

TOTAL TRANSACTIONS:     4

|  | GSA CHARGE | NET PROCEEDS |
|---|---|---|
|  | ---------- | ------------ |
| GSA VEHICLES (B/A:FD4P;F/C:FD15F) |  |  |
| NON-GSA VEHICLES (NOT SURPLUS) (B/A:FD4P;F/C:FD15K) |  |  |
| MISCELLANEOUS REIMBURSABLE (B/A:FD4P;F/C:FD15J) |  |  |
| SURPLUS (B/A:FD4P;FC/:FD151) |  |  |
| SURPLUS REIMBURSABLE (B/A:FD4P;FC/:FD191) |  |  |
| SEIZED/FORFEITED (B/A:FD4P;FC;FD15H) |  |  |
| SASP REIMBURSABLE | 15,028.00 | 15,028.00 |
| Illinois Federal Surplus Property | 15,028.00 | 15,028.00 |
| SASP NON-REIMBURSABLE |  |  |

| CD NUMBER | TOTAL AMOUNT DEPOSITED | WIRE TRANSFER NUMBER | TOTAL AMOUNT DEPOSITED | TOTAL AMOUNT CREDIT CARD TRANSACTIONS |
|---|---|---|---|---|
| 840474 | 30,086.00 |  |  |  |

SIGNATURE   _Diana Dowl_  DATE: 6/1/13
COLLECTION OFFICER

EXHIBIT 2



United States Treasury 16-31/000    K 884,948,193

Check No.

08 20 13 47000016  KANSAS CITY, MO   4030 24432440
000164376087    4030 24432440 N      00000GS13C0676

Pay to
order of   ILLINOIS STATE AGENCY FOR SURPLUS P
           1924 SOUTH 10 1/2 STREET
           SPRINGFIELD IL 62703                    $**15028*00

VOID AFTER ONE YEAR
007

41QSCI13075P43G0474    $15,028.00

GSA

24432440⋅⊩ 0 10813

EXHIBIT 3

IN WITNESS WHEREOF, the Donor and Donee have duly executed this instrument this
13th day of June, 2007.

United States of America, Acting
By and through the Illinois
State Agency for Surplus Property

By _*Curtis A. Howard*_

Title ___Administrator, IL SASP___

DONEE:

By _George C Andre_
Title _GENERAL MANAGER_
_KASKASKIA REGIONAL PORT DISTRICT_
(Institution or Organization)

CITY of _Springfield_
COUNTY of _Sangamon_
STATE of ___ILLINOIS___

On the 13th day of June, 2007, before me appeared _Curtis A. Howard_, to
me personally known, who being by me duly sworn, says that she/he is the person who
executed the foregoing instrument and that such instrument was executed under duly
delegated authority on behalf of the Illinois State Agency for Surplus Property, and
acknowledged the foregoing instrument to be the free act and deed of the State of Illinois.

Given under my hand and official seal the day and year above written.

_Tracy L. Releford_
Notary Public in and for the

CITY of _Springfield_
COUNTY of _Sangamon_
STATE of _ILLINOIS_

OFFICIAL SEAL
TRACY L. RELEFORD
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-17-2010

(SEAL)

EXHIBIT 4

A285

# KASKASKIA REGIONAL PORT DISTRICT
## Minutes of the Regular Monthly Board Meetings
### *Excerps*

**Exhibit A**

JANUARY 9, 2012 -
The MV Blankenship located at Evansville recently took on water and was lying partially on its side. Pumps were brought in and it was uprighted. During a discussion on what should be done with the boat, it was suggested to move it to another location and possibly have salvagers look at it.

February 13, 2012 -
Mr. Weilbacher showed slides of the MV Blankenship which is located at Evansville. He has contacted CMS about returning the boat and that Tr-City Port District would be interested in it. Before it can be moved, a title must be obtained, which CMS is in the process of doing.

March 12, 2012 -
Representatives of Tr-City Port District looked at the Blankenship. but Mr. Weilbacher has not heard back from them.

April 9, 2012 -
Tr-City has decided not to take the MV Blankenship. Have not heard from CMS regarding the title for the boat.

MAY 14, 2012 -
CMS has sent the release papers for the MV Blankenship. Upon our signing the release,they can offer it to another entity. Mr. Weilbacher has drafted a letter to Wally Terry informing him that we will be returning the vessel. Upon the motion of Member Robert Pautler, and the second of Member Bernard Heck. Jr.. Resolution No. 12-5-14-9 was approved: That the General Manager is authorized to sign the release forms for the MV Blankenship in order that it can be returned to CMS.

JUNE 11, 2012 -
The release forms have been sent back to CMS in order to return the MV Blankenship.

**Exhibit B**

JULY 9, 2012 -
CMS has indicated that before they put the MV Blankenship up for interested parties to look at, they will need to know the present condition of the vessel. Mr. Weilbacher will complete their request.

FEBRUARY 11, 2013 -
No news on the Blankenship. Mr. Weilbacher was hoping to get the authority to scrap the vessel.

EXHIBIT 5



**GSAXcess®**

U.S. General Services Administration



| User Guides | | FAQ | Program Links | Contact Links | GSAXcess® HelpDesk |

· Agency Asset Management System (AAMS) · Energy Asset Disposal System (EADS) · Report Property · Want List · Direct Select

| | Basic Search Options | ▼ | Advanced Search | Menu | Home | Logout |

## Property Data Sheet

All Categories > All Items Available - All Categories > Boats >

Add To Cart    View Cart (0)    Checkout                                    *Back*    *Help*

**Item Control Number:** 966402705900011

**Item Name:** BOAT WORK, FIRE/PATROL, MISC

**Screening Ends:** April 29, 2007

FSC/National Stock Number: 1940
| | | |
|---|---|---|
| Quantity Available: | 1 EACH | Quantity Requested: |
| Orig Unit Acq Cost: | $ 721502.27 | Total Acq Cost: $ 721502.27 |

| | |
|---|---|
| Agency Bureau: | Corps of Engineers, Civil |
| Reporting Agency: | US ARMY COPRS OF ENGINEERS |
| POC: | EDWARD RIIF |
| POC Phone: | 314-263-4503  Ext: |
| POC Fax: | 314-263-4166 |
| POC Email: | EDWARD.H.RIIF@MVS02.USACE.ARMY.MIL |
| Property Location: | PHYSICAL SUPPORT SERVICE BASE |
| | FOOT OF ARSENAL ST |
| | ST LOUIS , MO-63119 |

| | |
|---|---|
| Property Custodian: | W.E. WILLIAMS |
| Custodian Phone: | 314-331-8020  Ext: |
| Custodian Fax: | 314-331-8019 |
| Custodian Email: | WILLIAM.E.WILLIAMS@MVS02.USACE.ARMY.MIL |

| | | | |
|---|---|---|---|
| Condition: | Repairable | Make/Mfg: | KINGS CRAFT |
| Hazardous: | No | Part Number: | |
| Demilitarization: | No | Model: | 5F |

Picture Not Availal

### Item Description

M/V BLANKENSHIP, 65'LONG,18'WIDE,5'DRAFT, TWIN DRAFT V-6-92TA DETROIT DIESEL ENGINES,ALLISON GEAR BOXES, MDL: 20-L AND 20-R. ENGINES REBUILT APR 1998 AND GEAR BOXES JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF 25KW,1800RPM(JUNE 1998) 120V,1 PH, 60HZ, 104A, 12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A AND STB MDL: 25.0 MDKAF/9492 7A KUBOTA V2803B DIESEL ENGINE, 5 CYL, 46 BHP(34.7KW) MICHIGAN PAC-MASTER PROPELLER 4 BLADE 26 X 26, STAINLESS STEEL, PROPELLER FOR HEAVY DUTY USE. HAS LEAD BASE AND ASBESTOS REPORT. FRESH WATER INTAKE FOR A/C UNIT PUMP CRACKED STRAINERCASTINGS CRACKED NEEDS NEW BATTERIES

All Categories > All Items Available - All Categories > Boats >

**Item Control Number:** 966402705900011

**Item Name:** BOAT WORK, FIRE/PATROL, MISC

Add To Cart    View Cart (0)    Checkout                                    *Back*    *Help*

[FSS Home] [GSAXcess® Browser Troubleshooting Guide] [GSA Home] [Supported Browsers]

EXHIBIT 6

**2007 GSA auction description**
M/V BLANKENSHIP, 65-LONG, 8WIDE, 5' DRAFT, TWIN DRAFT V-6-92TA DETROIT
DIESEL ENGINES,ALLISON GEAR BOXES, MDL: 20-L AND 20-R. ENGINES REBUILT
APR 1998 AND GEAR BOXES JUNE 1998. GENERATOR SETS: ONAN SERIES MDKAF
25KW,I800RPM(JTJNE 1998) 120V,l PH, 60HZ, 104A, 12V BATTERY PORT MDL: 25.0
MDKAF/9492 7A AND STB MDL: 25.0 MDKAF/9492 7A KUBOTA V2803B DIESEL
ENGINE, 5 CYL, 46 BHP(34.7KW) MICHIGAN PAC-MASTER PROPELLER 4 BLADE 26 X
26, STAINLESS STEEL, PROPELLER FOR HEAVY DUTY USE. HAS LEAD BASE AND
ASBESTOS REPORT. FRESH WATER INTAKE FOR A/C UNIT PUMP CRACKED
STRAINERCASTINGS CRACKED NEEDS NEW BATTERIES

**July 11, 2012 Weilbarger description**
M/V Blankenship, 65' long, 18' wide, 5' draft, twin draft V-6-92TA Detroit Diesel engines,
Allison gear boxes, MDL: 20-L and 20-R. Engines rebuilt Apr 1998 and gear boxes June 1998.
Generator Sets: Onan Series IVDKAF 25 KW, 1800 RPM (June 1998) 120V, I PH, 60 HZ, 104
A, 12 V battery port MDL: 25.0 MDKAF/9492 7A and SIR MDL: 25.0 MDKAF/9492 7A
Kubota V2803B Diesel Engine, 5 CYL, 46 BHP (34.7 KW) Michigan Pac-Master Propeller for
heavy duty use. Has lead base and asbestos report. Fresh water intake for A/C unit pump cracked
strainer castings cracked, needs new batteries. Vessel includes: Furuno Sonor, APC Power
Supply, Radio "Ray Jeffer", Marine Color Echo depth sounder, and Radio RM Two way base
station. Vessel has been stripped of interior walls and finishes for restoration. There have been no
alterations to the vessel that added hazardous materials, specifically PCBs or asbestos.

**2013 GSA auction description**
M/V BLANKENSHIP, 65-L, 18-W, 5-DRAFT, ESTIMATED DATE OF MFG: 1967, TWIN
DRAFT V6-92TA DETROIT DIESEL ENGINES, ALLISON GEAR BOXES, MDL: 20L AND
20R. ENGINES REBUILT APRIL 1996 AND GEAR BOXES JUNE 1996. GENERATOR
SETS: ONAN SERIES MDKAF 25KW. 1600 RPM (JUNE 1998) 120V, 1 PH, 60 HZ. 104A.
12V BATTERY PORT MDL: 25.0 MDKAF/9492 7A AND STB MDL: 25.0 MDKAF/94927A.
KUBOTAV2BO3B DIESEL ENGINE. 5 CYL, 46 BHP (34.7KW) MICHIGAN PAC-MASTER
PROPELLER FOR HEAVY DUTY USE. FRESH WATER INTAKE FOR A/C UNIT PUMP
CRACKED, STRAINER CASTINGS CRACKED, NEEDS NEW BATTERIES. VESSEL
INCLUDES FURUNO SONAR, APC POWER SUPPLY, RADIO "RAY JEFFER", MARINE
COLOR ECHO DEPTH SOUNDER AND RADIO RM. TWO WAY BASE STATION.
VESSEL HAS BEEN STRIPPED OF INTERIOR WALLS AND FINISHES FOR
RESTORATION. THERE HAVE BEEN NO ALTERATIONS TO THE VESSEL THAT
ADDED HAZARDOUS MATERIALS, SPECIFICALLY PCBS OR ASBESTOS. HAS A
LEAD BASE AND ASBESTOS REPORT. REPAIRS MAY BE REQUIRED. PARTS MAY BE
MISSING. DEFICIENCIES, WHEN KNOWN, HAVE BEEN INDICATED IN THE
PROPERTY DESCRIPTION. HOWEVER. ABSENCE OF ANY INDICATED DEFICIENCIES
DOES NOT MEAN THAT NONE EXISTS. 4751F231220001A

EXHIBIT 7



## ASBESTOS AND LEAD-BASED PAINT
## ASSESSMENT

**of**

**BLANKENSHIP VESSEL**
**On Mississippi River**
**St. Louis, Missouri**

ATC Project No. 30.61205.0701

January 25, 2007

Prepared by:

ATC Associates Inc.
14 Sunnen Drive, Suite 143
St. Louis, Missouri 63143
Phone: (314) 644-2500
Fax:    (314) 644-4838

. Prepared for:

United States Army Corps of Engineers
Foot of Arsenal
St. Louis, Missouri 63118

EXHIBIT 8

## TABLE OF CONTENTS

Page

INTRODUCTION...........................................................................................1

ASBESTOS SAMPLING AND ANALYTICAL PROCEDURES ...........................................1

CONCLUSIONS AND RECOMMENDATIONS................................................................4

LEAD-BASED PAINT ...........................................................................................5

ASSUMPTIONS AND LIMITATIONS ........................................................................5

### APPENDICES

Appendix A: Table 1, Lead-Based Paint Assessment Results
Appendix B: Table 2, Asbestos Survey
Appendix C: Bulk Sample Analysis Report and Chain of Custody
Appendix D: Photographic Documentation
Appendix E: Inspector(s) Certifications

## LEAD SAMPLING AND ANALYTICAL PROCEDURES

Random samples, representative of the materials that might contain LBP, were analyzed utilizing a Niton XRF (X-Ray Fluorescence) Model XL-309. Samples are tested in the standard mode. All sample locations were accessible and no paint chips were extracted.

According to the EPA, the term LBP means paint, or other surface coating, that contains lead greater than or equal to 1.0 mg/cm$^2$ or 0.5 % (by weight). This will be referred to as the "EPA Standard" for lead in paint.

XRF results are classified as positive or negative. A positive classification indicates that lead is present in the tested material, at or above the EPA Standard. A negative classification indicates that lead is not present in the tested material, or if present, it was at or below the EPA Standard.

A summary of the XRF results is provided in Table 1 (Appendix A).

## CONCLUSIONS AND RECOMMENDATIONS

ATC performed an asbestos and LBP assessment of the vessel Blankenship located on the Mississippi River in St. Louis, Missouri for the purpose of retiring the vessel. ATC presents the following conclusions and recommendations:

## ASBESTOS CONTAINING BUILDING MATERIALS

- The exhaust heat shields located in the Engine Room on the engines were not sampled at the request of the client. According to the client, the exhaust heat shields are going to be removed prior to the sale of the vessel. Therefore, since the heat shields were not sampled, it is assumed that they contain ACM until verified through sampling.

ATC recommends that all ACMs be removed prior to any renovation or demolition of ACM surfaces. Any unidentified materials discovered during renovation should be sampled prior to continuing the renovation process.

## LEAD-BASED PAINT

A total of thirty-three (33) painted surfaces were tested during the survey. None of the surfaces were identified, through use of an XRF Analyzer, as having lead concentrations above the EPA standard of 1.0 milligram per square centimeter (mg/cm$^2$) (defined as lead-based paint).

## ASSUMPTIONS AND LIMITATIONS

The results, findings, conclusions, and recommendations expressed in the report are based only on conditions that were noted during the January 18, 2007 inspection.

The report is designed to aid the vessel owner, architect, construction manager, general contractors, and potential asbestos or lead abatement contractors in locating ACM and LBP. Under no circumstances is the report to be utilized as a bidding document or as a project specification document since it does not have all the components required to serve as an Asbestos Project Design document or an Abatement Workplan.

Our professional services have been performed, our findings obtained, and our conclusions and recommendations prepared in accordance with customary principles and practices in the fields of environmental science and engineering. This statement is in lieu of other statements either expressed or implied. This report does not warrant against future operations or conditions, nor does it warrant against operations or conditions present of a type or at a location not investigated.

This report is intended for the sole use of the United States Army Corps of Engineers, St. Louis, Missouri. The scope of services performed in execution of this evaluation may not be appropriate to satisfy the needs of other users, and use or re-use of this document or the findings, conclusions, or recommendations is at the risk of said user.

Thank you for the opportunity to provide environmental services to the United States Army Corps of Engineers. Please contact Randy Jackson or Bryan Podkul at (314) 644-2500 if you have any questions regarding this report or the project.

Sincerely,

**ATC ASSOCIATES INC.**

Surveyed by:

Reviewed by:

Bryan Podkul
Project Manager
Missouri Licensed Risk Assessor
#000616-2001172423
Missouri Accredited Asbestos Inspector
#7028032806MOIR7878

Randy Jackson, ASP
Building Sciences Division Manager



EXHIBIT 9

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of December, 2015, the foregoing JOINT

APPENDIX was filed with the Clerk of Court using the CM/ECF System.

Counsel for all parties are registered CW/ECF users and will be served with the

foregoing document by the Court's CW/ECF System.

/s/ Mitchell E. Shamas

Mitchell E. Shamas
Shamas Law Office, pllc
6863 S Canton Ave Tulsa, OK 74136
(918) 496-0994

*Counsel for Appellant*